IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**In re: CCA Recordings
2255 Litigation**,
        Petitioners,

v.                                       Case No. 19-cv-2491-JAR-JPO
                                         **(This Document Relates to All Cases)**

**United States of America,**
        Respondent.

## GOVERNMENT'S STATUS REPORT

Comes now the United States of America, by and through Stephen R. McAllister, United States Attorney for the District of Kansas, Carrie N. Capwell, Assistant United States Attorney for the District of Kansas, and Steven D. Clymer, Special Attorney for the United States, and respectfully submits its Status Report, as directed by the Court's Order Setting Status Conference, filed on August 21, 2019 (Doc. 1).

1. On August 21, 2019, the Court scheduled a status conference for September 5, 2019, at 1:30 p.m., and directed the parties to be prepared to discuss certain case management issues outlined by the Court in its Order. The Court further directed the parties to confer in good faith and file status reports setting forth their respective positions by noon on September 3, 2019. The parties met and conferred on August 30, 2019, and the government now offers this report of its position on the various issues raised by the Court.

2. The first issue raised by the Court—"[t]he FPD's estimate of the number of additional § 2255 cases to be filed under Standing Order 18-3"—does not require input from the government.

3. Similarly, the second issue identified by the Court—"[h]ow long the FPD estimates for its review of DVR #6, released by the Court on August 16, 2019"—does not require input from the government. The government respectfully suggests the Court might also want to inquire how long FPD estimates its review of the audio recordings of CCA telephone calls will take to identify those that it claims are potentially privileged.

4. Third, the Court asked for the parties' position on "[w]hether consolidation should include pro se cases filed under § 2255 raising the same Sixth Amendment claims." The government has no objection to consolidation of pro se § 2255 cases. The government notes that some of the pro se § 2255 claims might be second or successive § 2255 claims, which first must be authorized by the Tenth Circuit. In addition, at least two pro se defendants have filed motions for discovery and/or appointment of counsel in connection with their allegations of Sixth Amendment violations by the government, without a § 2255 motion pending. *See, e.g.*, *United States v. James Riccardi*, 02-cr-20060-JWL-01; *United States v. Don Milton Steele*, 10-cr-20037-JWL-01. The government respectfully suggests the Court may want to consider whether it will add these types of cases to its list of consolidated § 2255 cases.

5. Fourth, the Court directed the parties to discuss "[h]ow to most efficiently decide common issues in these cases." As the government previously advised the Court in its motion to extend initial planning deadlines and continue the status conference (Doc. 9), District of Kansas prosecutors will meet with attorneys from the Office of the Deputy Attorney General, as well as other Department of Justice components, on September 10, 2019. At that time, we anticipate receiving guidance on how to move forward with the § 2255 litigation. Thus, at this time, we are not able to commit to a position on how to most efficiently decide common issues in the § 2255 litigation.

6. As to the first common issue the Court identified—collateral waiver and procedural default—despite the Court's decision in the *Petsamai Phommaseng* case, the government intends to continue to assert what it believes to be meritorious waiver and procedural default claims in order to preserve those claims for appeal. With respect to some of the cases giving rise to § 2255 motions, there may be facts or circumstances that distinguish them from the *Phommaseng* case and that may cause this Court to reach a different outcome with respect to the government's waiver and/or procedural default arguments. The government respectfully requests the Court's guidance regarding how it wishes the government to preserve the collateral waiver and procedural default issues in cases with a similar procedural posture as *Phommaseng*, and how the Court wishes the government to identify cases that it believes are factually distinguishable from *Phommaseng*.

7. As to the common issue of "threshold privilege determinations, including a procedure for review of recordings," this Court has recognized that "a threshold showing that the privilege applies must be made before concluding that each video recording contains protected attorney-client communication." (*United States v. Lorenzo Black, et al.*, 16-cr-20032, Doc. 758 at 165.) Each § 2255 movant who claims that his Sixth Amendment rights were violated by intrusion into his attorney-client privileged communications bears the threshold burden of establishing that there were one or more privileged communications in his case. *United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2016). This requires a showing that an audio recording or a soundless video recording *revealed the content of a communication pertaining to legal advice or legal strategy*. *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998).

8. With respect to the soundless video recordings, it is not enough for a movant to establish that an inmate and attorney were discussing privileged matters at the time the soundless video was recorded. Rather, for such a soundless recording to be privileged, the movant must establish that an observer could determine from viewing the recording the content of communications pertaining

to legal advice or legal strategy. That an observer could determine that an inmate was angry, reviewing documents, using or not using an interpreter, or refusing to talk or review documents during a meeting with legal counsel may potentially be useful to the observer, but this information would not be privileged because it would not permit the observer to discern the *content* of communications pertaining to legal advice or strategy.

9. It is the government's position that the Court must make a determination whether any particular soundless video recording or audio recording is privileged after hearing from both the movant and the government, and after both have had an opportunity to review such recordings.[1] The government recognizes that only a "filter attorney" from the government—one who thereafter can have no involvement in any prosecution of the movant regarding any matters revealed by a soundless video recording or an audio recording—should be permitted to view or listen to any recording. Further, the government agrees that the filter attorney will be limited to reviewing only those portions of a recording that the movant identifies as revealing privileged information, and that the Court need not review each entire video or audio recording but also can limit its review to those portions that the movant claims to reveal privileged information, and even then need review only if the government contests that claim. The government opposes any procedure for determining whether any audio recording or video recording is privileged that does not permit *both* review by a government filter attorney and *in camera* judicial review in the event the parties disagree as to whether a soundless video or an audio recording is privileged.

10. Another common issue identified by the Court was the "waiver of audio recordings." The government anticipates that it will maintain its position that the attorney-client privilege does

---

[1] This is only a threshold determination. In order for a § 2255 movant to establish a Sixth Amendment violation, he also must show that the government was "privy to" the communication, that he was prejudiced, and that there was no waiver.

not attach to a telephone conversation between an inmate and legal counsel that the inmate initiates after being warned that the call may be subject to recording but, again, this is a matter subject to discussion with persons at Main Justice during the meetings on September 10, 2019.

11.  As for "good cause for discovery under Rule 6 of the Rules Governing Rule Section 2255 Proceedings," the government is amenable to producing in the case of any individual § 2255 movant documents and records in its possession, if any, reflecting that any government official listened to an audio recording of that movant talking to legal counsel or any video recording of that movant meeting with legal counsel. Discovery should be determined on a case-by-case basis and be limited to documents and records relevant to each particular movant's claims in his or her § 2255 motion. The government will discuss issues relating to Rule 6 discovery with DOJ attorneys at its meeting on September 10, 2019.

12.  Fifth, the Court requested "the parties' views concerning future settlement negotiations, the overall prospect for settlement, and a specific recommendation regarding mediation or any other ADR method." The government needs to consult with DOJ before discussing the prospect of settlement. The government believes that the best way to resolve these cases expeditiously is to select a small number of "test cases," which represent different procedural postures and raise common issues, to be placed on an expedited litigation schedule in the district court with an opportunity for the losing party to seek review in the Tenth Circuit. Once the Tenth Circuit rules on common issues, such as whether soundless video can reveal privileged information and, if so, under what circumstances; whether a Sixth Amendment violation can be shown without proof of government review of a recorded inmate-attorney-communication or prejudice to the defendant; whether an inmate who places a telephone call to legal counsel after hearing the CCA warning preamble loses the protection of the privilege; and the various waiver and procedural default issues, it is likely that remaining cases can either be settled or expeditiously resolved.

13. Furthermore at the "meet and confer" held on August 30, the FPD stated that it opposes allowing the government to view any of the soundless video recordings or listen to any of the recorded telephone calls under any circumstances. Without an ability to do this, the government will not have a fair opportunity to determine whether there were any privileged communications in any particular case, and cannot reasonably be expected to engage in settlement discussions.

14. Last, the Court instructed the parties to consider the possibility of using individual party fact sheets. We do not object to the concept, but cannot commit to details and particulars until after we have spoken to DOJ attorneys on September 10, 2019.

                                                      Respectfully submitted,

                                                      s/Stephen R. McAllister
STEPHEN R. McALLISTER
UNITED STATES ATTORNEY
District of Kansas
500 State Ave., Suite 360
Kansas City, KS  66101
Tel:  (913) 551-6730
Ks. S. Ct. No. 15845
stephen.mcallister@usdoj.gov


s/Carrie N. Capwell
Carrie N. Capwell, # 78677
Assistant United States Attorney
District of Kansas
500 State Ave., Suite 360
Kansas City, KS  66101
Tel:  (913) 551-6730
carrie.capwell@usdoj.gov


s/Steven D. Clymer
Steven D. Clymer
Assistant United States Attorney
Special Attorney for the United States
NDNY Bar Roll # 509281

United States Attorney's Office
Northern District of New York
900 Federal Building
100 South Clinton Street
Syracuse, NY 13261
(v) 315-448-0672
(f) 315-448-0658

## **CERTIFICATE OF SERVICE**

 I hereby certify that on September 3, 2019, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in the above-captioned case.

              s/Carrie N. Capwell
              Carrie N. Capwell, # 78677
              Assistant U.S. Attorney