UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

In re: CCA Recordings 2255 Litigation,
                        Petitioners,

v.                                                     Case No. 19-cv-2491-JAR

United States of America,                     (This Document Relates to All Cases)
                        Respondent.

**<u>ORDER</u>**

Petitioner Petsamai Phommaseng, whose 28 U.S.C. § 2255 habeas cases[1] have been consolidated here for discovery purposes with other cases arising from *United States v. Black*,[2] has filed a motion for leave to conduct discovery regarding his claim that the government violated his Sixth Amendment rights when it obtained video recordings of protected attorney-client communications (ECF No. 50). The motion is taken under advisement. The court holds Phommaseng has satisfied Rule 6(a) of the Rules Governing Section 2255 Proceedings ("Rule 6") by demonstrating good cause exists for discovery on his claim. But with respect to the specific discovery Phommaseng seeks to serve, the court

---

[1] Case Nos. 18-2477, 18-2478, and 18-2479.

[2] *United States v. Carter*, No. 16-20032-02, 2019 WL 3798142, at *85 (D. Kan. Aug. 13, 2019). The underlying criminal case against multiple defendants bore the caption *United States v. Black,* based on the first-named defendant in the indictment, Lorenzo Black. After Black pleaded guilty and was sentenced on July 18, 2018, the case name changed to *United States v. Carter* because the remaining defendant was Karl Carter. The court, however, continued (and continues) to refer to the underlying case as the *Black* case. *See id.* at *4 n.10.

1

orders the parties to confer and file supplemental briefing addressing disputes as to particular requests.

I. **Procedural Background**

In *Black*, the presiding U.S. District Judge, Julie A. Robinson, found the United States Attorney's Office for the District of Kansas ("USAO") engaged in a practice of collecting audio and video recordings of attorney-client calls and meetings occurring at the Corrections Corporation of America detention facility in Leavenworth, Kansas ("CCA").[3] When this practice became publicly known, more than 100 convicted prisoners sought relief from their sentences under 28 U.S.C. § 2255, alleging the government violated their Sixth Amendment rights to effective counsel by intentionally and unjustifiably becoming privy to their privileged attorney-client communications at CCA. Phommaseng filed his motion for § 2255 relief on September 6, 2018, asserting violations based on the USAO's procurement of video recordings of his meetings with counsel;[4] he later supplemented his motion with evidence that the USAO procured at least 76 audio recordings of calls he placed to his attorney.[5]

---

[3] *See id.* at *82-83. CCA has been renamed CoreCivic.

[4] ECF No. 1 at 7, Case Nos. 18-2477, 18-2478, and 18-2479 ("Facts derived from the ongoing investigations in *Black*, and facts further developed in this matter, will show that, during the course of Petitioner's prosecution, the USAO intentionally procured and possessed video recordings, and potentially phone calls, of privileged communications that took place between Petitioner and his counsel while Petitioner was detained at CCA.").

[5] ECF No. 583 in Case No. 15-20020.

On January 17, 2019, Phommaseng filed a motion for leave to conduct discovery under Rule 6 with respect to both the audio and video recordings.[6] On August 13, 2019, Judge Robinson issued a detailed order granting the motion with respect to the audio recordings, but referring the motion to the undersigned with respect to the video recordings.[7] The order set out the legal standards that petitioners must satisfy to demonstrate "good cause" for discovery under Rule 6.[8] Judge Robinson then determined Phommaseng had demonstrated good cause with respect to the audio recordings by making specific allegations about his attorney-client telephone calls. However, she declined to address discovery regarding the video recordings because, "[u]nlike the phone recordings, [Phommaseng] did not have access to the video recordings at the time of his motion for discovery."[9] In an order issued that same day in the *Black* case, Judge Robinson directed the government to turn over to the Federal Public Defender ("FPD")—Phommaseng's counsel—six DVRs showing video recordings of the attorney-visitation rooms at CCA.[10] Phommaseng's instant motion states the FPD has now reviewed the video recordings and Phommaseng can demonstrate good cause to proceed with discovery related to the video recordings.

---

[6] ECF No. 584 in Case No. 15-20020.

[7] ECF No. 608 in Case No. 15-20020.

[8] *Id.* at 17-21.

[9] *Id.* at 20.

[10] *Carter*, 2019 WL 3798142, at *76.

## II. Legal Standards

As noted above, Judge Robinson discussed the Rule 6 legal standards applicable to discovery in § 2255 proceedings in her August 13, 2019 order.[11] The standards are repeated here for the reader's convenience.

Rule 6 provides, in relevant part:

> **(a) Leave of Court Required**. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. . . .
>
> **(b) Requesting Discovery**. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

The Supreme Court has held that to meet the good-cause requirement under Rule 6(a), a petitioner must provide the court with "specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."[12] Claims or allegations based on "mere speculation" are "unlikely to establish good cause for a discovery request."[13] The court must take care to

---

[11] ECF No. 608 at 8 & 17-18 in Case No. 15-20020.

[12] *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

[13] *Strickler v. Greene*, 527 U.S. 263, 286 (1999).

4

remember that the showing only is "targeted at discovery and is not meant to be judged by whether or not a petitioner would succeed on the merits of his claim."[14]

In evaluating whether a petitioner has demonstrated good cause by making sufficient allegations showing he may be entitled to relief, the court is mindful of the elements necessary to establish a Sixth Amendment violation. Judge Robinson discussed these elements in *Black*. Citing the Tenth Circuit's opinion in *Shillinger v. Haworth*,[15] she ruled, "a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes 'privy to' the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest."[16] If the petitioner establishes these elements, he need not make an affirmative showing that he was prejudiced by the intrusion because prejudice is presumed.[17]

---

[14] *Stouffer v. Reynolds*, 168 F.3d 1155, 1173 (10th Cir. 1999) (citing *Bracy*, 520 U.S. at 909) ("[I]t may well be . . . that petitioner will be unable to obtain evidence sufficient to support a finding of actual judicial bias in the trial of his case, but we hold that he has made a sufficient showing, as required by Habeas Corpus Rule 6(a), to establish 'good cause' for discovery.").

[15] 70 F.3d 1132, 1142 (10th Cir. 1995).

[16] *Carter*, 2019 WL 3798142, at *75.

[17] *Id.* at *71, *75; *see also Shillinger*, 70 F.3d at 1142 (holding no "case-by-case inquiry into prejudice" is necessary because "such intentional and groundless prosecutorial intrusions are never harmless").

5

If a petitioner succeeds in establishing good cause under Rule 6(a), "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."[18] The purpose of Rule 6(b), which then comes into play, is to enable the court to "make certain that the inquiry is relevant and appropriately narrow."[19] Ultimately, "the scope and extent of . . . discovery is a matter confided to the discretion of the District Court."[20]

### III. Application

1. Rule 6(a): "Good Cause"

Phommaseng asserts there is good cause for discovery into his allegations that the government violated his Sixth Amendment rights when it obtained and possessed video recordings of the CCA attorney-visitation rooms. He notes that Judge Robinson has already found the USAO subpoenaed video recordings from CCA while knowing they would contain footage of attorney-client meetings in the rooms,[21] and that "there was no legitimate law-enforcement purpose" in this acquisition of videos.[22] With his motion,

---

[18] *Bracy*, 520 U.S. at 909 (quoting *Harris*, 394 U.S. at 300).

[19] Rule 6 of the Rules Governing Section 2254 Cases, 1976 advisory committee notes. Rule 6 of the § 2254 rules is "fully applicable to discovery under these rules for § 2255 motions." Rule 6 of the Rules Governing Section 2255 Proceedings, 1976 advisory committee notes.

[20] *Bracy*, 520 U.S. at 909.

[21] *See Carter*, 2019 WL 3798142, at *82.

[22] *Id.* ("While a targeted request for video or the crime fraud exception would be examples of legitimate law-enforcement activity, the Court finds that the USAO's large-scale non-specific collection in this case cannot be justified.").

Phommaseng submits the affidavit of Assistant Public Defender Rich Federico, who confirms there are six recordings that show communications between Phommaseng and his then-attorney Jacquelyn Rokusek.[23] The recorded meetings occurred in February and April 2016.[24] Federico submits the quality of the recordings are sufficient to confirm communication took place between Phommaseng and Rokusek.[25] Phommaseng argues that further discovery now is necessary to enable him to demonstrate the government became privy to one or more recordings showing him meeting with counsel. Based on this record, the court finds Phommaseng has demonstrated good cause for discovery related to the video recordings.

Judge Robinson has ruled that to establish the "privy" element of a Sixth Amendment violation, a petitioner must do more than show the USAO had *access* to the video recordings.[26] In the *Black* order, she stated that the record must be developed in individual § 2255 actions about the "circumstances surrounding [the government's] access to and review of the *particular* recordings."[27] Because, as Judge Robinson found, "the USAO failed to preserve [computer] hard drives that could have provided information

---

[23] ECF No. 50-1 at 2.

[24] *Id.*

[25] *Id.*

[26] *Carter,* 2019 WL 3798142, at *82.

[27] *Id.* (emphasis added).

about access to the recordings,"[28] Phommaseng correctly observes that he must proceed with document and written discovery to gain information into whether the government became privy to his protected communications. The undersigned finds Phommaseng has made sufficient allegations to show he may be entitled to relief if he is able to further develop the facts underlying his petition.

The government asserts several arguments in opposition to Phommaseng's request for discovery, each of which the court rejects. First, the government appears to argue no discovery should be allowed regarding the video recordings of Phommaseng's six meetings with counsel because, even if the government became privy to such recordings, it did so *after* Phommaseng pleaded guilty, so Phommaseng cannot establish he was prejudiced by such a government intrusion.[29] This argument fails for two reasons. As noted above, the Tenth Circuit has determined "intentional intrusion into [a] defendant's attorney-client relationship producing privileged communications constitutes a per se Sixth Amendment violation, with no need to demonstrate that the defendant has suffered prejudice as a result of the intrusion."[30] And even if Phommaseng were required to demonstrate prejudice, the record reflects a number of significant events occurred in his criminal case after the

---

[28] *Id.* at *37.

[29] ECF No. 54 at 2 (noting "the government did not possess the recordings until May 17, 2016—three weeks *after* Phommaseng pleaded guilty").

[30] *Carter*, 2019 WL 3798142, at *70 (citing *Shillinger*, 70 F.3d at 1141-42); *see also Shillinger*, 70 F.3d at 1142 (holding no "case-by-case inquiry into prejudice" is necessary because "such intentional and groundless prosecutorial intrusions are never harmless").

government took possession of the recordings, including Phommaseng's objection to the presentence investigation report[31] and his motion to withdraw his guilty plea.[32] Phommaseng could attempt to show the government's past intrusion on his attorney-client communications prejudiced him during these proceedings.

Next, the government argues that to satisfy the "good cause" standard, Phommaseng "must specifically allege each of the essential elements of a Sixth Amendment claim."[33] This argument misstates the legal standard. As discussed above, the Supreme Court has ruled a petitioner may establish good cause by providing "specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."[34] The Court imposed no requirement that a petitioner's "specific allegations" address each of the elements of the petitioner's claim.

Moreover, *even if* that were the standard, the government continues to assert theories on the elements of a Sixth Amendment claim that have been rejected by Judge Robinson. For example, the government argues Phommaseng's motion fails because he has not alleged the recordings "reveal the *substance* of privileged communications."[35] Judge Robinson specifically rejected this argument in the August 13, 2019 *Black* order when she

---

[31] *See* ECF No. 353 in Case No. 15-20020.

[32] *See* ECF No. 383 in Case No. 15-20020.

[33] ECF No. 54 at 3.

[34] *Bracy*, 520 U.S. at 908-09 (quoting *Harris*, 394 U.S. at 300).

[35] ECF No. 54 at 3 (emphasis added).

held a petitioner will have the burden to show communication observed on the videos relates to legal advice or strategy sought by the client, but need *not* reveal the specific substance of the conversation.[36]

Finally, the government "renews and reasserts all of the arguments it previously made in opposition to Phommaseng's motion for leave to conduct discovery."[37] Specifically, the government argued

> (1) Phommaseng could not show good cause for the discovery requests because (a) his Sixth Amendment confidential communications claims are waived and/or procedurally defaulted and (b) the majority of his requests are irrelevant to his personal Sixth Amendment claim because they relate to the litigation in *Black* and *Dertinger*, to which he was not a party; (2) his requests are premature as most of them pertain only to the issue of an appropriate remedy should the Court find that the government violated his Sixth Amendment right; and (3) Phommaseng's requests are overbroad, unduly burdensome, irrelevant, seek privileged material, and/or are duplicative of information already provided in the *Black* litigation.[38]

These arguments are noted for the record, but rejected to the extent they are asserted against a Rule 6(a) "good cause" finding, for the reasons discussed by Judge Robinson in the August 13, 2019 order permitting discovery related to audio recordings.[39] To the extent

---

[36] *Carter*, 2019 WL 3798142, at *75, *76.

[37] ECF No. 54 at 4.

[38] *Id.* (citations to past briefs omitted).

[39] ECF No. 608 at 9-18 in Case No. 15-20020.

the government is arguing specific discovery proposed by Phommaseng is irrelevant or not appropriately narrowed under Rule 6(b), however, that argument is addressed below.[40]

The court finds Phommaseng's specific allegations about the six video recordings of his meetings with counsel, viewed in light of the facts derived from the investigation in *Black*, sufficiently establish good cause for discovery to proceed. The court will now discuss the scope of such discovery.

2. Rule 6(b): "Relevant and Appropriately Narrow"

Judge Robinson has ruled, as discussed above, that the purpose of Rule 6(b) is to enable the court to ensure the discovery permitted "is relevant and appropriately narrow."[41] She has deferred to the undersigned determinations of (1) relevance and other "specific discovery objections" and (2) the issue of whether discovery should be bifurcated, as requested by the government, such that Phommaseng must first establish a Sixth Amendment violation before discovery is permitted on "the issue of a remedy."[42]

The parties devote virtually no space in their current briefs addressing the specific discovery propounded by Phommaseng[43] or the government's request for bifurcation. This

---

[40] Judge Robinson limited her findings to whether Phommaseng had "established good cause for his discovery requests" and referred "specific determinations of relevance" to the undersigned. *Id.* at 18.

[41] *Id.* (quoting Rules Governing Section 2254 Cases, Rule 6(b), 1976 advisory committee notes).

[42] *Id.* at 21.

[43] ECF No. 50 at 5 (11 requests for production of documents and 12 interrogatories).

11

is, perhaps, understandable given the briefing page limits set in the court's November 18, 2019 order.[44] The government does note the parties had begun conferring about Phommaseng's specific discovery requests, with the government seeking clarification of certain terms and identifying "areas in which it would be willing to provide information informally," "categories of information it had already provided to FPD," and "limitations in the information available to the government," but these discussions appear to have stopped when Phommaseng filed the instant motion for discovery.[45] The government expresses its willingness to "continue to meet and confer with the FPD on these issues."[46]

Before the undersigned sets the scope and extent of discovery, the record should be more fully developed. The court orders the parties to confer further and file supplemental briefing addressing disputes as to *particular* interrogatories and/or document requests, including any dispute regarding discovery that pertains only to a potential remedy (should the government still request bifurcation). The parties shall confer as soon as possible, but no later than **February 7, 2020.** The government shall file its supplemental brief no later than **February 14, 2020**; and Phommaseng shall file his supplemental brief no later than **February 21, 2020.** Each brief shall be limited to 20, double-spaced pages.

---

[44] ECF No. 38 at 2.

[45] The record is unclear as to why Phommaseng filed the motion while the discussions were ongoing. The deadline previously set for petitioners to file motions for discovery was February 14, 2020. *Id.*

[46] ECF No. 54 at 5.

## IV. Effect on Other Cases

As a final matter, the court notes that a § 2255 petitioner in a case that has been consolidated with this case for discovery purposes, Mamoudou M. Kaba in Case No. 19-2372, recently filed a motion for leave to conduct civil discovery.[47] Kaba, like Phommaseng, is represented in his § 2255 case by the FPD and, of course, counsel for the government is the same in both cases. Though Kaba has made fewer discovery requests than Phommaseng,[48] each of Kaba's requests overlap one or more of Phommaseng's requests. Thus, the parties' discovery agreements (and the court's discovery orders) in Phommaseng's case will impact (and perhaps even moot) Kaba's discovery motion. It is therefore ordered that **briefing on Kaba's discovery motion (ECF No. 53) is hereby stayed**. The court will reset the briefing schedule in its order definitively ruling Phommaseng's motion for discovery.

Similar reasons of efficiency (for both the court and parties) dictate a **filing stay of further motions seeking the same discovery** sought by Phommaseng and Kaba in the currently pending motions. Petitioners in these consolidated actions who seek *different* discovery are still permitted to file discovery motions by the February 14, 2020 deadline.[49]

IT IS SO ORDERED.

---

[47] ECF No. 53.

[48] *Id.* at 4-5.

[49] *See* ECF No. 38 at 2.

Dated January 28, 2020, at Kansas City, Kansas.

                                                  <u>s/ James P. O'Hara</u>
                                                  James P. O'Hara
                                                  U.S. Magistrate Judge