UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


In re: CCA Recordings 2255 Litigation,

              Petitioners,

v.                                                    Case No. 19-cv-2491-JAR

United States of America,                             (This Order Relates to Case Nos.
                                                      18-2477, 18-2478, and 18-2479)
              Respondent.


## **ORDER**

Petitioner Petsamai Phommaseng seeks leave to serve specific discovery regarding his claims that the government violated his Sixth Amendment rights when it obtained recordings of protected attorney-client communications occurring at the detention facility operated by Corrections Corporation of America ("CCA") in Leavenworth, Kansas.[1]  The court previously found Phommaseng demonstrated good cause to conduct discovery under Rule 6(a) of the Rules Governing Section 2255 Proceedings ("Rule 6"),[2] but required him

---

[1] CCA is now known as "CoreCivic."  Phommaseng's 28 U.S.C. § 2255 habeas petitions arise out of the court's findings of fact and conclusions of law in *United States v. Black,* Case No. 16-20032-JAR ("the *Black* case") and have been consolidated for discovery with other such petitions.

[2] ECF No. 56 at 11 (where a docket citation does not reference a different case number, the citation is to the consolidated case docket in Case No. 19-2491-JAR); ECF No. 608 in *United States v. Phommaseng*, Case No. 15-20020-JAR-5.

to submit specific discovery requests to the court for approval prior to service.[3]   This enables the court to ensure the discovery is "relevant and appropriately narrow," as required by Rule 6(b).[4]   Pursuant to this set pre-approval process, Phommaseng has filed a motion to serve 14 specific interrogatories (ECF No. 108) and a second motion to serve 33 specific document requests (ECF No. 109).   For the reasons discussed below, the motion to serve interrogatories is granted, and the motion to serve document requests is granted in part and denied in part.

## I.   LEGAL STANDARDS APPLIED TO BOTH MOTIONS

In response to Phommaseng's motions, the government argues that some of the proposed interrogatories and document requests are unreasonably cumulative and duplicative of previously approved discovery requests, and therefore should be prohibited under Fed. R. Civ. P. 26(b)(2)(C).   Rule 26(b)(2)(C) states, "On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative."   "Thus, in certain circumstances, if one discovery request seeks information duplicative of another, the Court

---

[3] ECF No. 82 at 3 (entered jointly by the presiding U.S District Judge, Julie A. Robinson, and the undersigned U.S. Magistrate Judge, James P. O'Hara).

[4] *Id.*

O:\19-2491-JAR, In Re CCA\-108,109.docx

must limit the discovery even if both are relevant requests."[5]  "The purpose of this rule is to guard against redundant or disproportionate discovery; however, the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case."[6]  As noted by the government, it is unlikely that interrogatories or document requests that violate Rule 26(b)(2)(C) could be deemed "appropriately narrow" under Rule 6(b).

## II.   MOTION TO SERVE INTERROGATORIES (ECF No. 108)

Of the 14 interrogatories Phommaseng proposes, the government objects only to Interrogatories 4 and 7.  The government argues these interrogatories are "unreasonably cumulative and duplicative of" each other and previously approved discovery requests, and therefore should be prohibited by Rule 26(b)(2)(C) and Rule 6(b).[7]  As discussed below, the government's objections are overruled, and Phommaseng's motion is granted.

Duplicity of Interrogatory 4

The government first asserts Interrogatory 4 is cumulative and duplicative of Interrogatory (2)(b) set out in Phommaseng's January 14, 2020 motion for discovery[8] and

---

[5] *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2015 WL 3742929, at *3 (D. Kan. June 15, 2015) (quoting *High Point SARL v. Sprint Nextel Corp.*, No. 09–2269, 2011 WL 3241432, at *3 (D. Kan. July 29, 2011)).

[6] *Id.* (quoting *Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings*, No. 07–2388, 2008 WL 3895474, at *3 (D. Kan. Aug. 21, 2008)).

[7] ECF No. 112 at 3.

[8] ECF No. 50 at 5.

3

approved by the court on February 24, 2020.[9]

Interrogatory 4 states: "*For each petitioner, identify any CCA video recording involving such petitioner you became privy to and who became privy to such recordings.*"[10]

Interrogatory (2)(b) sought "the identities of individuals or entities who . . . were privy to recordings of attorney meeting rooms, or permitted or directed such review."

The government argues Interrogatory 4 requests the same information as Interrogatory 2(b), but "in a different form—by petitioner instead of by individual or entity."[11]  As Phommaseng observes, however, Interrogatory 4's request for information about which employees or agents of the United States Attorney's Office for the District of Kansas ("USAO") became privy to which video recordings addresses the legal standard set by the court for the privy element of a Sixth Amendment violation.  As summarized in the undersigned's January 28, 2020 order,

> Judge Robinson has ruled that to establish the "privy" element of a Sixth Amendment violation, a petitioner must do more than show the USAO had access to the video recordings.  In the *Black* order, she stated that the record must be developed in individual § 2255 actions about the "circumstances surrounding [the government's] access to and review of the *particular* recordings."[12]

---

[9] ECF No. 79 at 10.

[10] ECF No. 108-1 at 7.

[11] ECF No. 112 at 4.

[12] ECF No. 56 at 7 (internal citations omitted).

4

Interrogatory 2(b) will not gather the information petitioners need to meet this standard; Interrogatory 4 likely will.   Because Interrogatory 4 seeks different information than Interrogatory 2(b), the court overrules the government's cumulative and duplicative objection.

### Duplicity of Interrogatory 7

Next, the government objects to Interrogatory 7 as cumulative and duplicative of other discovery requests.

Interrogatory 7 states: "*Identify every CCA video recording or audio recording of a CCA phone call you stored on any computer and identify the person on whose computer the recording was stored.*"[13]

The government first contends Interrogatory 7 is cumulative of Interrogatory 4 (with respect to video recordings) and Interrogatory 3 (with respect to audio recordings of telephone calls).   Interrogatory 3 is nearly identical to Interrogatory 4 set out above, except Interrogatory 3 applies to audio recordings of phone calls.   The government does not explain its position that Interrogatory 7 seeks the same information as these earlier interrogatories.   On its face, Interrogatory 7 seeks the location of where video and audio recordings were stored, but Interrogatories 3 and 4 do not.   Thus, the interrogatories seem to seek different information and, without more depth to the government's argument, this objection is overruled.

---

[13] ECF No. 108-1 at 7.

O:\19-2491-JAR, In Re CCA\-108,109.docx

Next, the government asserts Interrogatory 7 seeks some of the information the government already provided in *Black*. Specifically, the government states that as part of the "telephone discovery project" in *Black*, it voluntarily provided Phommaseng's counsel with phone-call information for 45 petitioners. The problem with this position is that the information provided in the "telephone discovery project," like the information the government promises to provide in response to Interrogatory 3, did not identify where recordings were stored. Thus, Interrogatory 7 would seem to capture different information, and this objection is overruled.

<u>Relevance of Interrogatories 4 and 7</u>

Finally, the government objects to the fact that Interrogatories 4 and 7 seek information about video recordings made in *any* room at CCA, not just recordings of attorney-client meeting rooms previously sought by Interrogatory 2(b). In his motion, Phommaseng discussed how recordings that capture things other than protected communications could be relevant.[14] Phommaseng noted, for example, the court's previous findings that protected and non-protected recordings were often commingled on a CD or DVR,[15] and Phommaseng asserts that if an employee or agent of the USAO listened to or watched non-protected communication, it is more likely that individual also listened to or watched protected communication on the same CD or DVR. Phommaseng

---

[14] ECF No. 108 at 3.

[15] *Id.* (citing ECF No. 758 at 66, 67, and 178–79 in Case No. 16-20032-JAR).

6

contends further that evidence showing an individual "*continued* to indiscriminately request and listen to such discs thereafter indicates it intentionally obtained and listened to . . . attorney-client calls."[16]  The court finds this explanation of relevance sufficient at the discovery phase.

The government states, in any event, it "intends to provide documents related to [recordings not of attorney-client meeting rooms] in response to previously approved discovery requests."[17]  This promise, however, does not indicate whether the "related to" documents will actually provide the information sought in Interrogatories 4 and 7.  Finding the information sought relevant, and absent a showing of duplicity, this objection is overruled.

The court finds Phommaseng's proposed interrogatories relevant and appropriately narrow. The government's objections are overruled.  Phommaseng's request for leave to serve the identified interrogatories is granted.

## III.   MOTION TO SERVE DOCUMENT REQUESTS (ECF No. 109)

The court now turns to Phommaseng's motion to serve 33 specific document requests.   The government objects to 15 of them, asserting they are unreasonably cumulative or duplicative of previously-approved discovery and therefore should be prohibited by Rule 26(b)(2)(C), or they are irrelevant and/or not appropriately narrow and

---

[16] ECF No. 109 at 2 (emphasis in original).

[17] ECF No. 112 at 4.

therefore should be prohibited by Rule 6(b).[18]   The government also challenges the response format Phommaseng sets out in some of the requests (i.e., by petitioner rather than by topic) and questions the applicable date range of responsive documents.

A.      Objections To Specific Requests

As mentioned, the government asserts objections to 15 of the proposed document requests.  The court sustains 7 of these objections and overrules the remaining 8.

<u>Duplicity of Requests 2, 3, 5, and 6</u>

The government first objects to Requests 2, 3, 5, and 6 as "unreasonably cumulative or duplicative" of document requests the court previously approved.[19]  For clarity, the court will refer to earlier document requests as "RFPD."

Requests 2, 3, 5, and 6 seek, for each petitioner, documents related to audio or video recordings requested, obtained, possessed, distributed, or viewed that do not include a defense attorney.  The government recognizes that, on their face, these requests are broader than previous requests (for example, they are not limited to attorney-client communication), but states as a practical matter it has interpreted RFPD 8 in ECF No. 584[20] and RFPD 5 in ECF No. 53 "as including such documents and has initiated searches that

---

[18] ECF No. 113.

[19] *Id.* at 1.

[20] All references to "ECF No. 584" are to Phommaseng's motion for leave to conduct discovery in Case No. 15-20020-JAR-5.

will include such documents."[21]   The court accepts the government's representation that documents sought in Requests 2, 3, 5, and 6 will be produced in response to other document requests[22] and requiring the documents produced a second time is unnecessarily duplicative.   To the extent RFPD 8 stated that documents "filed as exhibits in the *Black* case," need not be produced, such limitation shall no longer be applied (as Requests 2, 3, 5, and 6 contain no such limitation).   The government need not otherwise specifically respond to Requests 2, 3, 5, or 6.

Duplicity of Requests 4 and 7

Next, the government objects that Requests 4 and 7, which seek information related to how the government determined whether recordings contained attorney-client communications, "are substantially similar" to RFPD 7 in ECF No. 584 and RFPD 1(b)-(c) in ECF No. 50, which seek documents that discuss "taint" or "filter" teams.   As noted by Phommaseng, however, Requests 4 and 7 seek materially different information, such as decisions made by prosecutors who were excluded from taint/filter teams.   The government's objections to Requests 4 and 7 are overruled.

---

[21] ECF No. 113 at 3.

[22] Because the government does not condition this representation, the court expects the documents produced truly will be responsive to <u>all</u> portions of Requests 2, 3, 5, and 6, including the phrase "for each petitioner."   To the extent the government did not plan to make clear which documents pertain to which petitioner, it is instructed to do so pursuant to the court's discussion at *supra* page 4 (regarding the burden each petitioner bears to show the  circumstances surrounding the government's access to and review of particular recordings involving petitioner) and *infra* Section III.B (regarding the required format of responses).

<u>Duplicity of Requests 21-24</u>

The government asserts Requests 21-24 seek documents "related to the chain of custody for, and practice, policy, or act of replacing, computer hard drives," and that RFPD 3 and 13 in ECF No. 584 "although broader, cover the same topics."[23]  The court disagrees. RFPD 3 requests documents created by the USAO that concern the retention or production of materials that relate to the investigation in the *Black* case.  RFPD 13 seeks information related to preserving computer equipment only used for viewing video recordings.  Neither RFPD encompasses documents related to the chain of custody of replacing of hard drives, nor has the government represented that its response to these RFPDs will include all documents responsive to Requests 21-24.  The government's objections to Requests 21-24 are overruled.

<u>Duplicity of Requests 27 and 29</u>

Requests 27 and 29 seek documents reflecting a chain of custody for files in closed cases or in cases where documents were purged, destroyed, or lost.  The government objects that these requests seek documents being produced in response to RFPD 1(f)-(g) in ECF No. 50.  This is a close call.  But ultimately the government fails to persuade the court that it will provide the chain-of-custody information sought by Requests 27 and 29 in responding to RFPD 1, which does not specifically seek documents reflecting the chain of

---

[23] ECF No. 113 at 3.

O:\19-2491-JAR, In Re CCA\-108,109.docx

custody or information pertaining to lost documents.  The government's objections to these requests are overruled.

### Breadth of Request 28

Request 28 seeks, for each petitioner "any 'scratch notes,' or documents relating thereto, prepared by" an Assistant United States Attorney ("AUSA") in USAO.  It references, by footnote, the findings of fact and conclusions of law in *Black* discussing testimony by AUSA Jabari Wamble that when a case was closed, he routinely kept most of the case file but "might discard 'scratch notes.'"[24]  The government argues Request 28 is duplicative of other requests, as any scratch notes responsive to any other request will be produced.  And to the extent a scratch note is not encompassed by any of the other numerous requests, its relevance is not apparent, making Request 28 not appropriately narrow.  The court agrees.  Phommaseng's only explanation of relevance is that Request 28 could lead to information showing what documents should exist in case files and perhaps show Phommaseng is entitled to an adverse inference based on the government's failure to preserve them.  This explanation is too attenuated to justify a needle-in-a-haystack search for scratch notes not otherwise related to these consolidated cases.  This objection is upheld; the government need not respond to Request 28.

### Duplicity of Requests 30 and 31

Requests 30 and 31 seek documents relating to the USAO's response during the

---

[24] ECF No. 758 at 44, Case No. 16-20032-JAR.

11

*Black* investigation to, respectively, the Special Master's subpoena duces tecum and to AUSA Emily Metzger's direction to complete a litigation-hold form. The government argues RFPD 3 in ECF No. 584 seeks the same documents by requesting documents created by or provided to the USAO "related to retention, preservation, and production of materials that relate to or concern the *Black* investigation." The government further asserts, to the extent Request 31 is not encompassed in RFPD 3, it is duplicative of RFPD 4, which requests documents sent or received by Metzger in response to her instructions concerning the litigation hold. The court agrees with the government that the information sought in Requests 30 and 31 is sufficiently encompassed by RFPD 3 (and, to some extent, RFPD 4). Therefore, the government's Rule 26(b)(2)(C)-based objection is upheld.

## B.    Format of Responses

Another issue raised by Phommaseng's motion to serve document requests is whether responses to the requests may be made on a topical basis or whether they must be made on a petitioner-specific basis. Of the new requests the court approved, Requests 4, 7, 27, and 29 request responses organized by petitioner. There is no dispute that in preparing its responses to previously approved RFPDs, the government began its document gathering and review process on a petitioner-specific basis. On March 13, 2020, the government asked the Federal Public Defender ("FPD") for the names of the next 20 petitioners who would be filing motions for discovery.[25] The FPD responded that, based

---

[25] ECF No. 117 at 8.

O:\19-2491-JAR, In Re CCA\-108,109.docx

on the court's ruling that petitioners could share discovery,[26] "the FPD didn't anticipate filing any 'petitioner-specific' requests."[27]   The government then "shifted gears, recalibrated its searches, and proceeded with running searches and processing results related to the various general topics the petitioners' discovery requests addressed."[28]   The government asserts this shift "was no small task."[29]   Phommaseng states the government misinterpreted his counsel's representation: although the FPD didn't plan to seek discovery *on behalf of* each individual petitioner, "it didn't disavow an intent to seek discovery *about* each individual petitioner."[30]

The government's confusion caused by the FPD's representation is understandable. But the fact remains, the FPD did not represent that Phommaseng would not seek discovery organized by petitioner.   Moreover, as discussed in Section II above, when a discovery request seeks information pertaining to the USAO's access to a recorded attorney-client communication of a particular petitioner (as do Requests 4 and 7), such information is highly relevant to the "privy" element of the petitioner's Sixth Amendment claim.   Finally, only four petitioner-specific requests are now at issue, and the government does not suggest that responding to these requests, as they are written, would be unduly burdensome.

---

[26] *See* ECF No. 96.

[27] ECF No. 123 at 8.

[28] ECF No. 113 at 4; *see also* ECF No. 117 at 8-9.

[29] ECF No. 113 at 4.

[30] ECF No. 115 at 1 n.2.

13

Therefore, as to Requests 4, 7, 27, and 29, the government is ordered to produce documents organized by petitioner.

### C.   Date Range For Responsive Documents

In its response, the government notes that the date range for Phommaseng's newly proposed document requests is "from January 1, 2010 to present," but that this conflicts with an informal agreement between the parties for a date range applicable to the previously approved RFPDs.[31]  The government believed the parties had agreed to the January 1, 2014 to May 1, 2017 date range applicable to the Special Master's August 2018 subpoena in *Black*.[32]  Neither side spends time actually discussing what the *appropriate* date range is for the document requests proposed in the instant motion.  The court therefore leaves it to the parties to confer on the applicable date range for the document requests the court approved herein.  Should the parties be unable to reach agreement, they must file a joint motion to resolve the dispute, limited to two pages of argument for each side, within 5 days of the filing of this order.

## IV.   TIME FOR GOVERNMENT TO RESPOND TO DISCOVERY AUTHORIZED

The government asks that, should the court permit service of any additional interrogatories or document requests, it give the government longer than 14 days to

---

[31] ECF No. 113 at 5.

[32] ECF No. 115 at 1; ECF No. 117 at 10.  *See also*, ECF No. 115-1 at 1-3 (parties' e-mail correspondence).

O:\19-2491-JAR, In Re CCA\-108,109.docx

respond.   As discussed in the undersigned's separate order today ruling on the government's motion to extend the time to respond to discovery (ECF No. 127), the government shall have until July 1, 2020, to respond to the discovery authorized herein.

**IT IS THEREFORE ORDERED** that Phommaseng's motion to serve 14 specific interrogatories (ECF No. 108) is granted.   The government must respond to all 14 interrogatories.

**IT IS FURTHER ORDERED** that Phommaseng's motion to serve 33 specific document requests (ECF No. 109) is granted in part and denied in part.   The government must respond to Requests 4, 7, 21-24, 27, and 29.

Dated April 27, 2020, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

O:\19-2491-JAR, In Re CCA\-108,109.docx