**In the United States District Court
for the District of Kansas**

---

**In re: CCA Recordings 2255 Litigation,**
       **Petitioners,**

**v.**

               **Case No. 19-cv-2491-JAR-JPO**
               **(This Document Relates to All Cases)**

**United States of America,**
       **Respondent.**

---

## MEMORANDUM AND ORDER

    The government seeks leave to conduct discovery in these consolidated habeas cases pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings, including, *inter alia*, requests that disclose attorney-client communications that would otherwise be protected by the attorney-client privilege (Doc. 139). Petitioners have lodged multiple objections to the government's requests.[1] The parties agree, and the Court has determined, that a ruling on some of these requests and objections requires resolution of two legal issues by this Court: (1) the government's implied-waiver argument; and (2) whether facts proving waiver of the attorney-client privilege necessarily prove waiver of petitioners' Sixth Amendment rights. The Court has reviewed the parties' submissions and is prepared to rule on these issues. For the reasons explained in detail below, the Court overrules and denies the government's implied-waiver argument and overrules and denies petitioners' argument that the government has not established good cause for discovery on whether a petitioner waived the attorney-client privilege. The remaining requests and objections shall be resolved by Magistrate Judge O'Hara.

---

[1] Doc. 174.

1

**I.      Background/*Black* Order**

The procedural history of this case is mostly undisputed and the Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the matter before the Court.[2] The Court does not restate the underlying facts in detail, but will provide excerpts from the *Black* Order as needed to frame its discussion of the issues presently before it.

As discussed in the *Black* Order, there are three general components to the Sixth Amendment right to counsel: (1) the absolute right to be represented by counsel in a criminal proceeding that could result in imprisonment; (2) the qualified right to counsel of one's choice; and (3) the right to effective assistance of counsel.[3] The right to effective assistance of counsel includes the ability to speak candidly and confidentially with counsel free from unreasonable government interference.[4] This right is clearly related to the attorney-client privilege, which encourages "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice."[5]

While courts have not recognized the attorney-client privilege as a right guaranteed by the Sixth Amendment, the Supreme Court has held that the government violates the Sixth Amendment right to effective counsel if it deliberately interferes with the confidential relationship and that interference prejudices the defendant.[6] Under extant Tenth Circuit law, the government's purposeful intrusion into the attorney-client relationship with no legitimate law enforcement justification constitutes a per se violation of the Sixth Amendment, with no

---

[2]Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019).

[3]*United States v. Nichols*, 841 F.2d 1485, 1496 n.7 (10th Cir. 1988) (citations omitted).

[4]*See Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977).

[5]*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[6]*United States v. Morrison*, 449 U.S. 361, 365 (1981); *Weatherford*, 429 U.S. at 557–58.

affirmative showing of prejudice necessary.[7]  In *Shillinger v. Haworth*, the court explained that "when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed."[8]  This Court determined that under *Shillinger*, a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[9]  Once these elements are established, prejudice is presumed.[10]

The Court found that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[11]  The Court held, "[a] Sixth Amendment claim arising from the alleged intrusion into the recordings at issue will not lie unless the communications in the videos or calls are *privileged or confidential*."[12]  Once a claimant has shown the privilege is applicable, the Court must determine whether the government became privy to those attorney-client communications because of its purposeful intrusion into the claimant's attorney-client

---

[7]*Shillinger v. Haworth*, 70 F.3d 1132, 1142 (1995).

[8]*Id.*

[9]*Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[10]*Id.*

[11]*Id.* at 163.

[12]*Id.* at 162–63 (emphasis added).

relationship.[13]  Because both the privilege and the Sixth Amendment are personal to the defendant, this determination must be made on an individualized basis.[14]

However, the Court rejected the FPD's argument that the Court could presume that all the recordings contained protected attorney-client communications without reviewing them.[15] Instead, the Court found a minimal showing by the § 2255 litigants was required to establish that the attorney-client communications in the recordings related to legal advice or strategy sought by the client.[16]  The Court explained that this may include affidavits from defense counsel that confirm the nature and purpose of the meetings or calls were within the ambit of protected communications, and review of the recordings by the FPD to determine that: (1) a recording of the meeting or telephone call exists; (2) the quality of the non-verbal communication in the videos is sufficient to confirm confirmation between the detainee and counsel; and (3) a given call contains a protected attorney-client communication, i.e. relating to legal advice or strategy sought by the client.[17]

## II. Discussion

The government seeks leave to conduct discovery to determine, *inter alia*, whether (1) the recordings at issue contain protected attorney-client communications and (2) any petitioner waived any privilege or protection at the time of the recordings.  With respect to the first request, the government seeks access to the recordings at issue and argues that petitioners impliedly waived the attorney-client privilege by placing the content of the communications in the

---

[13]*Id.* at 163.

[14]*Id.*

[15]*Id.* 163–64.

[16]*Id.*

[17]*Id.* at 164–66.

4

recordings at issue by filing their § 2255 motions. With respect to the second request, petitioners argue that there is no good cause for such discovery because even if they waived the attorney-client privilege, such a waiver does not demonstrate they waived their Sixth Amendment rights. The Court addresses each issue in turn.

A. **Implied Waiver**

At the outset of these consolidated proceedings, the Court asked the parties to address the possible use of a neutral party and the government's proposed use of a government taint team/attorney to review the video and audio recordings at issue in these § 2255 cases.[18] After the government raised the issue of whether petitioners impliedly waived the attorney-client privilege as to the communications in the recordings, the Court permitted petitioners to submit further briefing on the issue.[19]

The government's implied-waiver argument is straightforward: "When a plaintiff, like each petitioner here, claims to have been injured by a defendant, the plaintiff cannot both rely on evidence of the alleged injury to prove his or her claim and also hide that evidence from the defendant."[20] Allowing petitioners to use the Sixth Amendment as both a sword and a shield, it contends, would unfairly distort the adversarial system.[21] The government seeks access to recordings of the attorney-client meetings and conversations—recordings that it obtained and kept in its possession for nearly three years without review by a taint team—in order to protect the fairness of judicial proceedings. The government proposes it be permitted to use an out-of-district filter attorney to review the recordings in order to determine whether the communications

---

[18] Doc. 18 at 1–2.
[19] Doc. 40.
[20] Doc. 42 at 4.
[21] *Id.*

5

are privileged. While the Court agrees with the government's characterization of the implied-waiver doctrine, it concludes it is not applicable to the Sixth Amendment claims at issue in these proceedings.

In support of its implied waiver argument, the government invokes the Tenth Circuit's decision in *United States v. Pinson* for the following rule: "When a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications."[22] In *Pinson*, the court noted the seminal ineffective-assistance case, *Strickland v. Washington*, suggests that "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's . . . litigation decisions."[23]

The government asserts that the heart of petitioners' Sixth Amendment claims is the allegation that the government intentionally intruded upon and became privy to protected attorney-client communications. It urges that those communications not only are relevant to the government's defense but are central to it. The government contends that by placing the communications at issue in their § 2255 motions, petitioners have impliedly waived any right to preclude discovery of those communications. The government argues that by alleging interference by the government into confidential attorney-client communications, each petitioner has likewise placed the content of his or her alleged confidential communications before the Court. Thus, *Pinson* supports the government's position that in order to defend itself, it must be permitted to independently assess the content of the communications petitioners claim are protected. The Court disagrees.

---

[22] 584 F.3d 972, 977–78 (10th Cir. 2009).

[23] *Id.* (quoting *Strickand v. Washington*, 466 U.S. 668, 691 (1984)).

The government's implied-waiver argument assumes that all ineffective assistance of counsel claims put the content of attorney-client communications at issue. *Strickland* distinguished between types of Sixth Amendment claims.[24] The Supreme Court explained that it has recognized "the right to counsel is the right to effective assistance of counsel," and that the "[g]overnment violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense."[25] Examples of such government interference identified by the Court include a bar on attorney-client consultation during overnight recess;[26] the requirement that defendant be the first defense witness;[27] and the bar on direct examination of the defendant.[28] The claim at issue in *Strickland*, however, involved a different class of cases that present claims of "actual ineffectiveness," where counsel "deprive[s] a defendant of the right to effective assistance, simply by failing to render 'adequate legal assistance.'"[29] Thus, *Strickland* instructs that ineffective assistance claims fall into two camps: intentional ineffectiveness caused by the government's extrinsic interference and actual ineffectiveness caused by the intrinsic actions or advice of counsel.

*Pinson* falls into the latter camp—the petitioner alleged defense counsel provided actual ineffective assistance due to acts or omissions of counsel.[30] There, the Tenth Circuit held that "when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove

---

[24]*Strickland*, 466 U.S. at 686.

[25]*Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[26]*Geders v. United States*, 425 U.S. 80 (1976).

[27]*Brooks v. Tennessee*, 406 U.S. 605, 612–13 (1972).

[28]*Ferguson v. Georgia*, 365 U.S. 570, 593–96 (1961).

[29]*Strickland*, 466 U.S. at 686 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345–50 (1980)).

[30]*United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009).

his claim."[31] Thus, to establish a Sixth Amendment violation, the petitioner had to show both that defense counsel's performance was deficient and that the deficient performance prejudiced him.[32] In determining whether defense counsel's performance was deficient under the first so-called "*Strickland* prong," the petitioner in *Pinson* had to identify the action that defense counsel performed or failed to perform, then overcome the presumption that defense counsel's action or omission was the product of a reasonably informed strategic decision.[33] Thus, the petitioner's claim in *Pinson* put the contents of his communications with defense counsel at issue.[34]

By contrast, petitioners here assert intentional interference claims: that the government intentionally intruded into the attorney-client relationship—specifically the right to confer privately with counsel—when it obtained recordings of and became privy to protected attorney-client communications. In other words, petitioners claim that the government's intrusion interfered with their right to effective counsel. Thus, the Court agrees with petitioners that, unlike the actual-ineffectiveness claim in *Pinson* and its progeny, their claims do not require the Court to evaluate the reasonableness of defense counsel's performance in order to determine whether the government interfered with the effective assistance of counsel. Nor must the Court determine whether petitioners have demonstrated prejudice, because under petitioners' theory of recovery under *Shillinger*, prejudice is presumed and a Sixth Amendment violation is per se.[35]

---

[31]*Id.*

[32]*Strickland*, 466 U.S. at 687–88, 694.

[33]*Id.* at 687–91.

[34]*Id.* at 689 (requiring courts "to reconstruct the circumstances of counsel's challenged conduct and to evaluate that conduct from counsel's perspective at the time"); *Pinson*, 584 F.3d at 978 (explaining that *Strickland* "hinted at" the basis for the Tenth Circuit's implied-waiver holding when it noted that "[i]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's . . . litigation decisions." (alterations in the original) (quoting *Strickland*, 466 U.S. at 691)).

[35]*Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995). The Court notes that under *Shillinger*, prejudice is not presumed if the government can demonstrate a legitimate law enforcement purpose for the intrusion.

Instead, their claims require the Court to evaluate the reasonableness of the government's conduct.

The government does not cite, and the Court was unable to locate, any cases extending the implied-waiver rule beyond actual ineffectiveness claims and the Court is reluctant to do so under the circumstances of this case. Accordingly, the government's implied-waiver argument is overruled and denied.

### B.     Express Waiver

Petitioners object to the government's request for leave to conduct discovery on whether any petitioner waived the attorney-client privilege at the time of the recording by, for example, revealing the communications to third parties, placing a call after receiving a warning that the call was recorded, or meeting with counsel in a room that was known to be monitored.[36] The Court may authorize discovery if the party shows "good cause why discovery should be allowed."[37] The government may show good cause by demonstrating the requested discovery is necessary for the government to respond to the petitioner's § 2255 motion.[38]

Petitioners contend the government has not demonstrated good cause for discovery on whether a petitioner waived his or her attorney-client privilege because the Sixth Amendment protects a broader range of communications than does the attorney-client privilege. Petitioners argue these discovery requests would yield information this Court previously found irrelevant unless the government identifies additional "facts in individual cases," which the government

---

*Id.* at 1143 (citing *Weatherford v. Bursey*, 429 U.S. 545, 557 (1977)). In addition, a showing of specific prejudice could potentially impact the appropriate remedy in a particular case. *See Black* Order at 150–51.

[36]Docs. 139, 174.

[37]Rule 6 of the Rules Governing Section 2254 Cases, 1976 advisory committee notes. Rule 6 of the § 2254 rules is "fully applicable to discovery under these rules for § 2255 motions." Rule 6 of the Rules Governing Section 2255 Proceedings, 1976 advisory committee notes.

[38]*United States v. Jack*, No. 09-2626, 2013 WL 12329174, at *1 (D.N.M. Oct. 2, 2013).

9

does not do.[39]  Petitioners further argue that these requests are irrelevant to their Sixth Amendment claims because even if the discovery shows a petitioner waived the attorney-client privilege, it does not show the petitioner waived his or her Sixth Amendment right to confidential attorney-client communication.

The government does not directly address petitioners' argument.  It maintains that if the substance of any given recording does not contain privileged attorney-client communications, the corresponding Sixth Amendment claim necessarily fails because petitioners cannot satisfy the "protected communication" element of their claim.

As the Court held in the *Black* Order, a Sixth Amendment claim will not lie unless communications in recordings are privileged *or* confidential.  "Because the [S]ixth [A]mendment ensures a right to effective assistance of counsel, it should follow that the [S]ixth [A]mendment subsumes the attorney-client privilege, a necessary underpinning of that right."[40]  The privilege is an evidentiary rule that prevents courts from compelling disclosure of confidential communications by those the privilege shields.[41]  Thus, the protection afforded by the Sixth Amendment includes, but is not limited to, the scope of the attorney-client privilege.[42]  Indeed,

---

[39]Doc. 174 at 3–4 (citing *Black* Order at 168–76).

[40]*See Government Intrusions into Defense Camp: Undermining the Right to Counsel*, 97 HARV. L. REV. 1143, 1145 (1984) (citing *Weatherford v. Busey*, 429 U.S. 545, 563 (1977); *United States v. Levy*, 577 F.2d 200, 209 (3d Cir. 1978)).

[41]*Howell v Trammell*, 728 F.3d 1202, 1222 (10th Cir. 2013) (citation omitted).

[42]*See Weatherford v. Bursey*, 429 U.S. 545, 554 (1977) (rejecting the idea that every time "a defendant converses with his counsel in the presence of a third party thought to be a confederate and ally, the defendant assumes the risk" and thereby also renders inapplicable the Sixth Amendment right to consult with counsel and to do so without government intrusion); *Shillinger v. Haworth*, 70 F.3d 1132, 1134–35, 1142 (10th Cir. 1995) (holding the state violated the Sixth Amendment by intentionally and unjustifiably becoming privy to attorney-client communications; declining to address whether the communications were privileged after expressly acknowledging the possibility that the petitioner waived the privilege by speaking with counsel in the presence of a third party).

the essential purpose of the right to effective counsel is to protect the fundamental right to a fair trial.[43]

Petitioners have submitted a privilege log asserting that the recorded conversations at issue are protected by both the Sixth Amendment right to confidential communications with counsel and the ethical and evidentiary protection afforded to attorney-client communications.[44] Petitioners continue to stress that the standard here is constitutional, not evidentiary or ethical— "[t]he latter inform the constitutional question, but neither evidence nor ethics provide the adequate or accurate measure to determine whether communication was, or is, constitutionally protected."[45]  Because the overarching right asserted is the Sixth Amendment right to effective counsel, including the right to confidential communication with counsel, petitioners argue that the "privilege" asserted is a constitutional protection, not merely evidentiary.  In other words, petitioners argue that while communications protected by the privilege are necessarily included under the Sixth Amendment right to confidential communications with counsel, it does not necessarily follow that a communication must be privileged in order to be protected.  The Court agrees in part.

The Court cannot find that waiver of the attorney-client privilege is wholly irrelevant to whether petitioners waived their Sixth Amendment right to confidential attorney-client communications.  In the *Black* Order, the Court addressed the waiver issue in the context of whether detainees knowingly and intelligently waived the right to confidential attorney-client

---

[43]*See Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993); *United States v. Cronic*, 466 U.S. 648, 658 (1984) ("[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.").

[44]Doc. 205-2. The Court does not reach the issue of whether there is a constitutional right to nondisclosure, as asserted in the privilege log.

[45]Doc. 23 at 7.

communications with respect to recorded calls.[46] There, the FPD urged the Court to conclude as a matter of law that neither the preamble warning at the beginning of CCA-recorded phone calls, nor the signage near the phones at CCA, were sufficient to allow for a knowing waiver of any detainee's Sixth Amendment right to confidential communications with counsel.[47] The government argued that the Court could not determine on the record before it whether the Sixth Amendment right to confidential communications with counsel was waived because such a showing must turn on the particularized facts of each recording and that prosecutors reasonably believed that there was a blanket waiver of the attorney-client privilege by detainees at CCA when they used CCA telephones.[48] The Court held such a waiver of the Sixth Amendment right to counsel requires "an intentional relinquishment or abandonment of a known right or privilege."[49] The Court further noted that confidentiality of an attorney-client communication "will be 'lost if the client discloses the substance of an otherwise privileged communication to a third party.'"[50]

After distinguishing the cases relied on by the government, the Court concluded that:

> while the Government may be able to demonstrate facts in individual cases that a detainee knowingly and intelligently waived the right to confidential attorney-client communications, the record developed after the Special Master's two-year investigation in this case calls into doubt the Government's ability to establish waiver based on the orientation packet, inmate handbook, preamble, and signage, particularly in the face of evidence that defense attorneys advised their clients that their calls would not be recorded.[51]

---

[46] *Black* Order at 167.

[47] *Id.*

[48] *Id.*

[49] *Id.* at 168 (citing *Patterson v. Illinois*, 487 U.S. 285, 292 (1988) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

[50] *Id.* (quoting *United States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008)).

[51] *Id.* at 175–76.

The Court noted, however, that "*Shillinger* itself stands for the proposition that it takes more than the mere presence of a third-party for a person to waive their Sixth Amendment right to confidential attorney-client communications," where the presence of a deputy did not vitiate the privilege.[52] The Court went on to hold that "[s]imilarly, the mere fact that CCA warned detainees in various ways that their calls would be subject to recording and monitoring is not enough, *standing alone*, to waive the privilege given the many other facts in the record that detainees and their attorneys were led to believe these warnings did not apply to them."[53]

Accordingly, it remains an open question what constitutes additional facts supporting waiver of the attorney-client privilege or Sixth Amendment right to confidential attorney-client communications. Likewise, whether the rule in *Shillinger* and *Weatherford* would extend beyond the mere presence of a third party—for example, a knowing and intelligent waiver or relinquishment of the right to confidential communication with counsel—remains an open issue. Clearly, there is overlap between the issue of waiver of the privilege and waiver of the constitutional right. Additionally, the Court has determined that the existence of a protected attorney-client communication is an element of petitioners' Sixth Amendment claim. Thus, information relative to waiver is pertinent to the government's defense that petitioners cannot meet the "protected attorney-client communication" element of their Sixth Amendment claims, and the Court rejects petitioners' argument that the government has not established good cause to conduct discovery on this issue.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's implied-waiver argument is **overruled and denied**.

---

[52] *Id.* at 176; *see also Weatherford v. Bursey*, 429 U.S. 545, 554 (1977).

[53] *Id.* (emphasis added).

13

**IT IS FURTHER ORDERED** that petitioners' argument that the government has not established good cause for discovery on whether a petitioner waived the attorney-client privilege is **overruled and denied**. The government's remaining requests for discovery (Doc. 139) and objections thereto shall be resolved by Magistrate Judge O'Hara.

**IT IS SO ORDERED.**

Dated: June 4, 2020

 S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE