UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

In re: CCA Recordings 2255 Litigation,
                              Petitioners,

v.                                        Case No. 19-cv-2491-JAR

United States of America,                 (This Document Relates to All Cases)
                              Respondent.

## **ORDER**

These habeas cases, consolidated for discovery purposes, involve claims that the government violated petitioners' Sixth Amendment rights when United States Attorneys obtained recordings of attorney-client communications occurring at the detention facility operated by Corrections Corporation of America in Leavenworth, Kansas ("CCA").[1] The government has filed a motion for leave to conduct discovery under Rule 6 of the Rules Governing Section 2255 Proceedings ("Rule 6"), seeking permission to serve on each petitioner 24 interrogatories,[2] 24 document requests,[3] and 8 requests for admission[4] (ECF No. 139). Although the court finds the government has satisfied Rule 6(a) by demonstrating good cause exists for discovery, not all the discovery proposed is

---

[1] CCA is now called CoreCivic.

[2] ECF No. 139-1.

[3] ECF No. 139-2.

[4] ECF No. 139-3.

1

appropriately narrow under Rule 6(b).  Thus, the motion is granted in part and denied in part, as discussed in detail below.

## I.  Legal Standards

In § 2255 proceedings, a party requesting discovery "must provide reasons for the request" and include copies of the proposed discovery.[5]  The court may authorize discovery if the party shows "good cause why discovery should be allowed."[6]  The government may show good cause by demonstrating the requested discovery is necessary for the government to respond to the petitioner's § 2255 motion.[7]  Thus, in evaluating whether good cause has been shown, the court must consider the "essential elements" of the petitioner's claim.[8]  The presiding U.S. District Judge, Julie A. Robinson, discussed the elements of petitioners' Sixth Amendment claims in *United States v. Black*.[9]  Citing the Tenth Circuit's opinion in *Shillinger v. Haworth*,[10] she ruled, "a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully

---

[5] Rule 6(b).

[6] Rule 6 of the Rules Governing Section 2254 Cases, 1976 Advisory Committee Notes.  Rule 6 of the § 2254 rules is "fully applicable to discovery under these rules for § 2255 motions."  Rule 6 of the Rules Governing Section 2255 Proceedings, 1976 Advisory Committee Notes.

[7] *United States v. Jack*, No. 09-2626, 2013 WL 12329174, at *1 (D.N.M. Oct. 2, 2013).

[8] *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

[9] *United States v. Carter*, No. 16-20032-02, 2019 WL 3798142, at *75 (D. Kan. Aug. 13, 2019).

[10] 70 F.3d 1132, 1142 (10th Cir. 1995).

2

intruded into the attorney-client relationship; (3) the government becomes 'privy to' the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest."[11] Prejudice suffered by the petitioner because of the intrusion, though not an element of a per se Sixth Amendment violation, is relevant in considering a petitioner's remedies.[12]

If a party succeeds in establishing good cause exists for discovery to occur, the court then must consider the moving party's proposed discovery and "make certain that the inquiry is relevant and appropriately narrow."[13]  At the discovery stage, relevance is broadly construed.[14] "[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" is deemed relevant.[15]

---

[11] *Carter*, 2019 WL 3798142, at *75.

[12] ECF No. 87 at 108 (citing *United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007)).

[13] Rule 6 of the Rules Governing Section 2254 Cases, 1976 Advisory Committee Notes.

[14] *See Erickson, Kernell, Deruseau, & Kleypas v. Sprint Sols., Inc*., No. 16-mc-212-JWL, 2016 WL 3685224, at *4 (D. Kan. July 12, 2016).

[15] *Rowan v. Sunflower Elec. Power Corp*., No. 15-9227-JWL, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). *See also Waters v. Union Pacific R.R. Co.,* No. 15-1287-EFM, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." (internal quotations and citation omitted)).

Ultimately, "the scope and extent of . . . discovery is a matter confided to the discretion of the District Court."[16]

## II.    Good Cause for Discovery

The government asserts discovery is necessary for it to determine whether (1) the audio and/or video recordings contain protected attorney-client communications; (2) there is evidence to support the purposeful-intrusion, privy-to, and prejudice aspects of petitioners' claims; (3) any petitioner waived any privilege or protection at the time of the recordings; and (4) any petitioner's § 2255 motion is procedurally or time barred.[17]   The court finds the government has demonstrated good cause for conducting discovery, as limited below.

### A. Discovery Regarding Elements of Sixth Amendment Claims

Discovery into the elements of each petitioner's Sixth Amendment claim is necessary for the government to fully evaluate and respond to each petitioner's § 2255 petition.   Petitioners have placed these elements at issue, and fairness dictates the government be allowed to test petitioners' assertions on each element.[18]

Petitioners argue the government has not established good cause to conduct discovery on the issues of waiver of the attorney-client privilege and prejudice.   Judge

---

[16] *Bracy*, 520 U.S. at 909.

[17] ECF No. 139 at 2-3.

[18] *See Barrett v. United States*, No. 09-CIV-105-JHP, 2016 WL 7116071, at *4 (E.D. Okla. Dec. 6, 2016).

O:\19-2491-JAR, In Re CCA\-139.docx

Robinson addressed petitioners' argument as it applies to waiver in a memorandum and order issued separately today.[19]  She concluded there is "overlap between the issue of waiver of the privilege and waiver of the [Sixth Amendment] right," such that "information relative to waiver is pertinent to the government's defense that petitioners cannot meet the 'protected attorney-client communication' element of their Sixth Amendment claims."[20]  Accordingly, there is good cause for the government to conduct discovery on this issue.[21]

As for discovery on the issue of whether individual petitioners suffered prejudice, the court finds, *under the present record*, there is good cause.  As noted above, prejudice is not an element of a per se Sixth Amendment claim.  Judge Robinson has stated, however, that "in tailoring any individual relief, . . . prejudice . . . [is] relevant to the Court's determination of an appropriate remedy."[22]  Petitioners appear to concede that no petitioner will attempt to demonstrate individualized prejudice.[23]  They assert that while they have no objection to answering Interrogatory No. 24 asking whether they claim actual prejudice, there is no good cause for them to produce documents reflecting the harm or prejudice they suffered in response to Request No. 23.  If petitioners are willing to stipulate that they will

---

[19] ECF No. 225 at 9-13.

[20] *Id.* at 13.

[21] *See id.*

[22] Case No. 16-20032-JAR, ECF No. 758 at 181.

[23] ECF No. 174 at 2 n.4 ("True, a showing of specific prejudice could impact the appropriate remedy *in a particular case*.  But no petitioners have alleged they can make such a showing, even for that purpose." (emphasis in original)).

not attempt to demonstrate individualized prejudice, then the court agrees there is no good cause for the government to pursue discovery on this issue.  If, however, the court has misconstrued petitioners' position and they will not so stipulate, then prejudice remains an open issue and the topic may be pursued in discovery.  Therefore, by **June 8, 2020**, petitioners are ordered to file either a stipulation along the lines discussed above or a clarification of their position.  If a stipulation is timely filed, the government shall not serve Interrogatory No. 24 or Request No. 23.  However, if no stipulation is filed, the issue of individualized prejudice will remain open and there will be good cause for the government to conduct the proposed discovery.

### B.  Discovery Regarding Procedural Defenses

A number of the government's proposed discovery requests speak to the government's procedural-bar defenses, which the government asserted in response to most, if not all, of petitioners' claims.[24]  These defenses argue individual petitioners' Sixth Amendment claims are waived or procedurally defaulted because the petitioner failed to raise an issue on direct appeal and/or within the relevant one-year limitations period (e.g., the petitioner learned his communications were being recorded but did not take action

---

[24] *See, e.g.,* ECF No. 226 at 7-10; *see also* ECF No. 194-1 (fact sheets for each petitioner marking "Yes" in response to the question "Procedural defense asserted by USAO?"); *Black*, Case No. 16-20032-JAR, ECF No. 758 at 183 (noting the government had "raised the defense of . . . procedural default in every response filed").

within one year of so learning).  Although petitioners argue the defenses must fail, unless and until Judge Robinson bars them from the case, they are at issue.[25]

The discovery the government proposes (Interrogatory Nos. 12-20 and 22-23; Request Nos. 4, 11-15, and 18-19; and Request for Admission No. 8) largely speaks to the question of when each petitioner knew or should have known his telephone calls and attorney meetings at CCA were being recorded.  Petitioners argue the government has not established good cause for such discovery because it has not said why it believes any particular petitioner has information that would render his claims barred.  Although a close call, the court concludes the standard proposed by petitioners sets the bar too high.  Petitioners do not suggest—and the court cannot fathom—how the government already would have such petitioner-specific-timing information, which would seem to be largely in each petitioner's sole possession.[26]  Thus, the court finds there is good cause to permit the government to conduct discovery relevant to its defenses.  Petitioners' objections to specific discovery requests are addressed below.

---

[25] As petitioners note, Judge Robinson rejected the government's procedural default argument as applied to petitioner Petsamai Phommaseng in an August 13, 2019 memorandum and order.  Case No. 15-20020-JAR, ECF No. 608 at 12-17.  However, the government's procedural defenses are fact specific, and a separate analysis must be made with respect to each petitioner.

[26] Although a couple of the discovery requests seek information that could possibly be obtained from sources other than petitioners, the parties do not address particular requests in their general arguments for and against discovery on the procedural and time-bar defenses.

O:\19-2491-JAR, In Re CCA\-139.docx

### III.    Discovery Permitted

### A. Overarching Objections

Before addressing petitioners' objections to specific discovery requests, the court considers four objections applicable to all (or most) proposed discovery.

<u>Obtaining Discovery from Petitioners.</u>  Petitioners begin by making an overarching argument that because § 2255 motions are "a continuing part of the criminal proceedings," the constitutional prohibition on compelled self-incrimination prohibits the government from seeking discovery directly from petitioners or their habeas counsel.[27]  The court rejects this theory.  Petitioners have cited no caselaw in support, and the court has found caselaw to the contrary.[28]  Petitioners do cite Fed. R. Crim. P. 16, which discusses the differing disclosure requirements applicable to the government and a defendant in a criminal proceeding, but petitioners do not account for the fact that Rule 6 specifically authorizes "a party" (not "a petitioner") to "conduct discovery under [*either*] the Federal Rules of Criminal Procedure *or* Civil Procedure" in a habeas proceeding.[29]  In other words, Rule 6 expressly recognizes that even though a § 2255 motion is in the nature of a continuing criminal proceeding, discovery may be obtained under civil discovery rules.

---

[27] ECF No. 174 at 1 (quoting Rule 6, 1976 Advisory Committee Notes).

[28] *See Barrett,* 2016 WL 7116071, at *4-5 (permitting government to obtain from habeas counsel certain records of trial counsel, ordering habeas counsel to provide a written summary of "any mental health expert he intends to call at the evidentiary hearing," and giving the government leave to conduct a psychiatric examination of petitioner).

[29] Rule 6(a) (emphasis added).

8

Finally, petitioners cite Kansas Rule of Professional Conduct 1.6(b) for the standard of when an attorney may ethically reveal information related to representation of a client without the client's consent, but they do not explain the connection between that rule and the government's specific requests.  Petitioners' objection on this broad basis is overruled.

Service of Interrogatories on Petitioners Individually.  Next, petitioners object to the government's proposal to serve its set of 24 interrogatories on each petitioner separately, arguing this exceeds the limit set in the scheduling order.  The court overrules this objection.  The scheduling order permits each party to serve up to 25 interrogatories "on any other party."[30]  As petitioners themselves recognize, the court has "treated each of the 100+ petitioners as a separate Rule 6 party."[31]  This court has consistently held each petitioner must make an individualized showing of a Sixth Amendment violation to support his § 2255 motion, so it only makes sense that the government may conduct discovery on an individualized basis.

Definition of "Petitioner."  Petitioners' third objection is that the government's proposed discovery seeks information from each "petitioner," which the government defines as "including all present or former agents, representatives, attorneys, or other persons or entities acting on the Petitioner's behalf."[32]  Petitioners assert this definition is

---

[30] ECF No. 83 at 5.

[31] ECF No. 174 at 3 n.10 (citing ECF No. 80 at 1-2; ECF No. 83 at 4; and ECF No. 90 at 3).

[32] *See, e.g.,* ECF No. 139-1 at 3.

too broad and violates Fed. R. Civ. P. 34(a) and Fed. R. Civ. P. 33(a)(1).  As the court understands petitioners' argument, they contend that proceeding under this definition would require their counsel, the Federal Public Defender ("FPD"), to respond to all discovery as if it were being addressed to the FPD directly.  Thus, for example, in response to Request No. 11, the FPD would have to produce any recording in which an FPD attorney suggested to *any* client that the client "be cautious about what is said during telephone conversations made from a detention facility."[33]   The government responds to this argument simply by stating petitioners should not be permitted "to avoid discovery by allowing their attorneys to hold responsive materials."[34]

It is clear the government did not intend the definition of "petitioner" to be read as broadly as it possibly could be.  Rules 33(a) and 34(a) permit the service of discovery on an opposing "party," and discovery under these rules may not be directed to non-parties.[35] However, the law is clear that a party's interrogatory answers must include information within the party's possession, custody, or control, which includes factual information in his attorney's possession.[36]  Likewise, a party has a duty to produce requested documents

---

[33] ECF No. 174-1 at 9 (citing ECF No. 139-2, Request No. 11).

[34] ECF No. 180 at 3.

[35] *See United States v. One Parcel of Real Prop. Described as Lot 41, Berryhill Farm Estates,* 128 F.3d 1386, 1397 (10th Cir. 1997) ("The interrogatories propounded by Dunmore were apparently directed to persons not parties to this litigation in violation of Fed. R. Civ. P. 33.").

[36] *Unified Sch. Dist. 467 v. Gray Architects, LLC*, No. 14-1025, 2016 WL 2727281, at *1 (D. Kan. May 6, 2016) ("This means the responding party must include in its answer

in his possession, custody, or control, and documents held by the party's attorney are deemed to be within the party's control.[37]  Therefore, although the government's proposed discovery may not be addressed to petitioner's counsel directly, petitioners are required to produce information, documents, or other things in their counsel's possession.[38]

Absence of Temporal Limits.   Petitioners also object that the government's proposed discovery fails "to provide any temporal limitations whatsoever."[39]   The government does not suggest an applicable date range in its reply.  Thus, the court follows the approach it recently took in permitting petitioner Phommaseng to serve document requests: the court "leaves it to the parties to confer on the applicable date range," and "[s]hould the parties be unable to reach agreement, they must file a joint motion to resolve the dispute, limited to two pages of argument for each side, **within 5 days** of the filing of this order."[40]

---

all information within its possession, custody, or control—including information known by the responding party's agents."); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05-2164, 2007 WL 756631, at *4 (D. Kan. Mar. 8, 2007).

[37] *MGP Ingredients, Inc. v. Mars, Inc.,* No. 06-2318, 2007 WL 3353401, at *3 (D. Kan. Nov. 10, 2007) ("Generally speaking, a party is deemed to have control over documents held on its behalf by its attorneys.").

[38] To the extent the government is moving to obtain discovery, through petitioners, of information in the possession of petitioner's former counsel, the motion is denied.  The government has not clearly stated which discovery might fall into this category or why it contends petitioners currently have control over such information.

[39] ECF No.174 at 3.

[40] ECF No. 126 at 14 (emphasis added).

11

### B.  Specific Objections

Petitioners have asserted six objections to specific discovery proposed by the government, which the court will now address in turn.

Objection 1: Attorney-Client Privilege.  Petitioners object to service of Interrogatory Nos. 5, 12–19, and 22–23; Request Nos. 1–14, 16–19, and 22–24; and Request for Admission No. 8 on the ground that such discovery would require petitioners to disclose privileged attorney-client communications.   The undersigned notes Judge Robinson recently rejected the government's argument that petitioners implicitly waived attorney-client privilege over communications when they placed the communications at issue in bringing their habeas petitions.[41]   Thus, petitioners are at liberty to make well-founded attorney-client-privilege assertions in response to the government's discovery, if they provide the required privilege log.[42]

Petitioners' privilege objection is overruled as to Request for Admission No. 8 and Interrogatory Nos. 5, 12–19, and 22–23.  This discovery generally seeks information about whether, how, and when petitioners learned that meeting rooms and telephone calls at CCA were being recorded.  It does not request disclosure of protected communications.  Even if answering one of the listed interrogatories would require a petitioner to reveal that his attorney informed him of the recordings, such answer would not reveal the substance of

---

[41] ECF No. 225 at 5-9.

[42] *See* ECF No. 82 at 4 (ruling that responses to discovery may include objections "based on privilege and accompanied by a privilege log").

any legal advice. Instead, it would only indicate "the general topic of discussion between an attorney and client," which is not protected by the attorney-client privilege.[43]

Petitioners' privilege objection is conditionally upheld as to Request Nos. 2 and 7, which seek the audio and video recordings that form the basis of petitioners' Sixth Amendment claims. By their nature, such recordings include communications that petitioners assert are subject to the attorney-client privilege. Nearly every petitioner has filed a privilege log with details of the recordings.[44] If, after reviewing those logs, the government has *specific* good cause to challenge the privilege(s) asserted in any one of them, the government may file a motion specifically addressing the challenged recording(s) **within five business days** of this order.[45] Petitioners may then respond **within five business days**.[46] As the parties address and brief this issue, the court reminds them of their obligations under Fed. R. Civ. P. 26(g) and the sanctions that may be imposed upon individual attorneys, as well as parties, if a discovery request, response, or objection is made in violation of that rule.

---

[43] *See Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC,* No. 11-2684, 2014 WL 545544, at *6 (D. Kan. Feb. 11, 2014); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 427 (D. Kan. 2009).

[44] ECF Nos. 205-2. Privilege logs of five additional petitioners are due June 8, 2020. *See* ECF No. 214.

[45] The court discussed how the government might limit its challenges during the September 5, 2019 status conference. *See* ECF No. 21 at 39-41, 51-52.

[46] No replies are contemplated.

Because the court currently does not know how many privilege assertions the government will challenge after reviewing the petitioners' detailed privilege logs, the court is not in a position to set the process for the review of challenged privilege assertions. Should more than 20 hours of recordings be challenged, the court most likely will appoint a special master to conduct the review,[47] with the cost of such review borne equally by the parties. The envisioned special master will be an expert in both electronically stored information and privilege, so the parties should be aware that this cost could be significant. One approach courts and parties have found useful in reducing the amount of time and cost necessitated by voluminous privilege assertions is the submission of a representative sample of withheld information for *in camera* review.[48] The privilege determinations and

---

[47] The court rejects the government's suggestion that a government "taint" or "filter" attorney be assigned to review all recordings petitioners withhold on privilege grounds. ECF No. 139 at 3 (citing ECF No. 22 at 4 and 9-10, and ECF No. 42 at 2-3 and 9-10). The government has cited no authority that the appointment of a taint attorney is required, and in fact, has acknowledged some courts find the use of taint teams inappropriate. *See* ECF No. 22 at 5 ("However, not all courts approve the use of taint teams." (citing *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006); *In re Search Warrant for Law Offices Executed on March 19, 1992 and Grand Jury Subpoena Duces Tecum Dated March 17, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994)); *see also* ECF No. 21 at 60-61 (acknowledging the government could not identify a case holding the court is required to use a taint attorney). The court agrees with petitioners that giving the government access to allegedly protected recordings—the very misconduct underlying petitioners' claims—makes little sense when neutral channels are available to evaluate privilege challenges.

[48] *See* Hon. John M. Facciola & Jonathan M. Redgrave, *Asserting and Challenging Privilege Claims in Modern Litigation: The Facciola-Redgrave Framework*, 4 Fed. Cts. L. Rev. 19 (2010). The undersigned discussed the sampling method at the September 5, 2019 status conference. *See* ECF No. 21 at 38-39. The FPD then indicated it was not opposed "to a spot check." *Id.* at 43.

14

conclusions reached by the court (or its designee) on the sample are then either (1) applied to the remaining items on the privilege log by the parties,[49] or (2) extrapolated such that if a certain percentage of the sample is deemed not subject to protection, the privilege is deemed waived as to all remaining items.[50]  The court directs the parties to address the possibility of sampling in their briefs on the government's challenges to privilege

---

[49] *See, e.g., In re Syngenta AG MIR 162 Corn Litg.*, No. 14-md-2591, 2017 WL 2555834, at *1 (D. Kan. June 13, 2017) (*in camera* review of 10% of documents claimed subject to privilege); *In re Vioxx Prods. Liab. Litig.*, Nos. 06-30378, 06-30379, 2006 WL 1726675 (5th Cir. May 26, 2006) (supporting district court review of a 2,000-document sample of 30,000 documents designated as privileged); *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 815 (E.D. La. 2007) (applying sampling procedure and recognizing sampling as an "acceptable solution . . . which fully protects the rights of the litigants to claim privilege and at the same time is more feasible for the courts, less expensive for the parties, and less time consuming for everyone involved").

[50] *See, e.g., In re EpiPen Mktg., Sales Practices and Antitrust Litig.*, No. 17-md-2785, 2018 WL 5281604, at *2 (D. Kan. Oct. 24, 2018) (setting sampling process and ruling, "if the Court finds that fewer than four of the documents are entitled to attorney-client protection, the Court will order Mylan to produce all remaining documents"); *Better v. YRC Worldwide Inc.*, No. 11-2072, 2015 WL 11142863, at *3 (D. Kan. Sept. 23, 2015) ("[T]he court hereby orders that if more than 100 documents are submitted for in camera review, the court will select ten at random for review and ruling. If the court finds that fewer than three of that randomly selected sample are entitled to protection, then the undersigned will deem all privileges and protections waived for the remainder of the documents submitted for in camera review."); *Seastrand v. US Bank, N.A.*, No. 2:17-CV-00214, 2018 WL 6705681, at *1 (D. Utah Dec. 20, 2018) ("Upon receipt of the Documents alleged to be privileged, the court will review a random sampling of 5 documents. . . . Based upon the review of the sample, the court will rule on the claim of privilege as to all of the Documents alleged to be privileged."); *Storagecraft Tech. v. Persistent Telecom Sols., Inc.*, No. 2:14-cv-76, 2016 WL 5852464, at *2 (D. Utah Oct. 6, 2016) (planning for *in camera* review of documents to which a party challenges the assertion of a "Confidential Attorneys Eyes Only" designation, and determining that if the court finds over-designation, it will impose sanctions that could include "stripping confidential designations from all of [the] documents").

assertions, including their views on an appropriate sample size and, if the second approach is pursued, the "failure-rate percentage" that would waive privilege over all recordings.

Petitioners' privilege objection to service of Request Nos. 1, 3-6, 8-14, 16-19, and 22-24 is overruled.  These requests, on their face, do not seek documents or recordings that *necessarily* contain privileged attorney-client communications, and the court allows them to be served.  Petitioners note that Request Nos. 1, 22, and 24,[51] "would capture" some protected attorney-client communications.[52]   Petitioners are not barred from making specific privilege assertions in responding to these requests.  To the extent a petitioner withholds certain material on the basis of privilege, he must provide a detailed privilege log that conforms with the law in this district.[53]

Objection 2: Identification of Specific Communication.  Petitioners object to service of Interrogatory Nos. 1-2 and 7-8 on the ground that they seek information duplicative of that provided in each petitioner's privilege log.  This objection is sustained.  These four interrogatories seek information about every recorded attorney-client communication that each petitioner relies on as a basis for his Sixth Amendment claim, including the date and time of the communication, the general topic of discussion, the individuals present or who listened in, and (with respect to video recordings) a description of observable nonverbal

---

[51] Petitioners state this is "not an exhaustive list."  ECF No. 174 at 2 n.7.

[52] *Id.*

[53] See *Fish v. Kobach*, Nos. 16-2105-JAR, 15-9300-JAR, 2016 WL 893787, at *2-3 (D. Kan. March 8, 2016) for a detailed discussion of privilege-log requirements.

O:\19-2491-JAR, In Re CCA\-139.docx

communication.  This information is set out in each petitioner's privilege log[54] and/or fact sheet.[55]  To the extent this discovery seeks interview room numbers, petitioners state the video recordings "don't capture" room numbers; and to the extent it seeks the file names of video recordings by visit, petitioners state the FPD "knows of no way to isolate file names of individual visits."[56]  Because this discovery is not appropriately narrowed under Rule 6(b), it is not permitted.

Objection 3: Relative Access to Information.  Petitioners next object to the service of Interrogatory Nos. 16-19 and Request for Admission Nos. 1, 2, 4, and 6, arguing the information sought by such discovery is "just as accessible to the government" as it is to petitioners.[57]

Petitioners' objection is sustained as to Interrogatory No. 16, which asks whether each petitioner signed a form while detained at CCA regarding the monitoring and recording of telephone conversations within CCA.  Because the government can obtain any such form from CCA as easily as could a petitioner and, more importantly, because it

---

[54] ECF No. 205-2.

[55] ECF No. 194-1.

[56] ECF No. 174 at 2 n.5.

[57] *See* Fed. R. Civ. P. 26(b) (discovery must be "proportional to the needs of the case, considering [among other things] the parties' relative access to relevant information").

Case 2:19-cv-02491-JAR-JPO   Document 230   Filed 06/04/20   Page 18 of 24


appears the government already has such forms in its possession,[58] this discovery is not appropriately narrow.  Although the government asserts Interrogatory No. 16 "is necessary to determine whether the petitioners dispute what the intake forms show,"[59] the question of petitioners' signatures on the form is addressed in Request for Admission No. 7, and, in any event, the intake forms show what they show.  The government is prohibited from serving Interrogatory No. 16.

 Petitioners' objection is overruled as to Interrogatory Nos. 17-19, which ask for information about steps petitioners or their counsel took to have their telephone calls go unmonitored or unrecorded.  This information is in each petitioner's possession and is outside the government's control.  Likewise, their objection is overruled as to Request for Admission Nos. 1, 2, 4, and 6, which ask each petitioner to admit receiving and/or reading certain documents provided him at CCA.  This discovery is relevant and narrowly tailored.

Objection 4: Non-Attorney Calls and Meetings.  Petitioner's fourth specific objection is that the government's proposed discovery about petitioners' knowledge or understanding that telephone calls and meetings at CCA were being monitored or recorded (Interrogatory Nos. 6, 12-13, 15-16, and 20) is irrelevant to the extent the discovery seeks information about the monitoring of conversations with non-attorneys.  Petitioners also

---

[58] *See* ECF No. 194-1 (fact sheets answering in paragraph 18 whether "Government has documentary evidence that Petitioner signed a 'Monitoring of Inmate/Detainee Telephone Calls' intake form").

[59] ECF No. 180 at 3.

O:\19-2491-JAR, In Re CCA\-139.docx

assert it would be unduly burdensome for their counsel to review thousands of telephone calls to non-attorneys to accurately answer the proposed interrogatories on this subject.

The court overrules these objections. Each petitioner's knowledge and understanding of recording and monitoring that was occurring at CCA—including when and how a petitioner came to the knowledge or understanding—is relevant to the government's waiver and time-bar defenses. For example, even if a petitioner states in his interrogatory answer that he was told only non-attorney telephone calls were recorded, such an answer could allow the government to probe further into whether the petitioner had reason to believe such a statement and/or took steps to learn anything more about whether protected communications also were recorded. Moreover, if a petitioner admits to having knowledge or being told that his non-attorney telephone calls and meetings were recorded, the government could argue it is more likely than not the petitioner also knew his attorney telephone calls and meetings were recorded. Finally, if a petitioner discussed his knowledge that calls were being recorded, when he did so is relevant to whether he brought a timely claim.

Petitioners have failed to adequately support their objection that it would be unduly burdensome for them to listen to the non-attorney telephone calls as they prepare to answer the government's proposed discovery. As this court has previously noted, a party asserting undue burden is required to "clearly support" that objection with "an affidavit or other

evidentiary proof of the time or expense involved in responding to the discovery request."[60] In support of their burdensome objection, petitioners submit the declaration of Lydia Krebs, an attorney employed by the FPD.[61]  Krebs estimates the FPD has "more than 1,100 recordings of non-attorney-client calls in its possession."[62]  But she does not indicate the time or expense that would be involved in reviewing these non-attorney telephone calls. She does not, for example, extrapolate from a sample of non-attorney telephone calls an estimate of the length of each call.[63]  Although Krebs states that in addition to the time a reviewer would have to spend listening to each recorded call, the court should consider the time it would take the reviewer to "locate and load each recording" and produce a privilege log, petitioners present no proof of how much time such tasks take.[64]  It seems to the court that the task of listening to non-attorney telephone calls for the information sought by the discovery at issue (e.g., for a discussion that telephone calls at CCA were recorded) could easily be outsourced—even to a person having little familiarity with this case.  Petitioners

---

[60] ECF No. 79 at 6 n.17 (citing *Fish v. Kobach*, Nos. 16-2105-JAR-JPO, 15-9300-JAR, 2016 WL 893787, at *1 (D. Kan. March 8, 2016); *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004); and *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 646 (D. Kan. 2003)).

[61] ECF No. 174-1.

[62] *Id.* at ¶ 10.

[63] *Cf. id.* at ¶ 2 (estimating the length of the average attorney-client call).

[64] In addition, it is not clear what type of privilege petitioners foresee asserting over calls not made to attorneys.

O:\19-2491-JAR, In Re CCA\-139.docx

do not indicate the expense they would incur by such outsourcing.  To put it simply, petitioners have not met their burden of supporting their objection by presenting adequate proof of the time or expense involved in responding to the proposed discovery.

The government is permitted to serve Interrogatory Nos. 6, 12-13, 15, and 20.[65]

Objection 5: Expert Witness Communication.  Petitioners object to Request No. 24, which seeks, "Any and all documents you have provided to or received from, and any correspondence you have had with, any expert witness you anticipate calling to testify on your behalf."[66]  Petitioners assert this request exceeds the scope of what they must provide in expert witness reports under Fed. R. Civ. P. 26(a)(2).  The government responds that the information sought is discoverable under Fed. R. Civ. P. 26(b)(4)(C).

Rule 26(b)(4)(C) provides that "communications between the party's attorney and any [expert witness,] regardless of the form of the communications" are protected as trial preparation materials and need not be disclosed "except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed."[67]  The court,

---

[65] The court prohibited service of Interrogatory No. 16 above.  *See supra* pages 17-18.

[66] ECF No. 139-2 at 24.

[67] *See also Lloyds of London Syndicate 2003 v. Fireman's Fund Ins. Co.,* 320 F.R.D. 557, 561 (D. Kan. 2017) ("Rule 26(b)(4)(C) presumes that all communications between an

therefore, will permit the government to serve Request No. 24 *only if* it is modified to address the limits imposed by Rule 26(b)(4)(C).

 <u>Objection 6: Relevance.</u>  Petitioners' last objection is that Request Nos. 4, 9-15, and 18-19; and Interrogatory Nos. 5-6, 12-14, 16, 20, and 22-23 seek information that is irrelevant because they "go well beyond what Petitioners knew or could have known."[68] This objection is overruled.  The court finds Request Nos. 9-10 seek information about whether petitioners waived attorney-client privilege by disclosing otherwise protected communications to third parties.  As noted above, Judge Robinson has found such information relevant to whether petitioners can meet the "protected communications" element of their Sixth Amendment claims.[69]   Request Nos. 4, 11-15, and 18-19; and Interrogatory Nos. 6, 12-14, 16, 20, and 22-23 are relevant to the government's waiver and time-bar defenses because, as discussed above, they seek information about when each petitioner knew or should have known his telephone calls and attorney meetings at CCA were being recorded.[70]   Interrogatory No. 5 also falls into this category of information relevant to those defenses.

---

expert and a party's attorney are protected as work product unless the communications fall within one of the three exceptions.").

 [68] ECF No. 174 at 3.

 [69] *See supra* pages 4-5.

 [70] *See supra* pages 7 and 18-19.  The court notes that an objection to Interrogatory No. 16 was upheld on other grounds, and it may not be served despite its relevance.  *See supra* pages 17-18.

## IV.   Timing of Petitioners' Responses

Finally, the FPD "objects to any order requiring it to obtain information or notarized documents from petitioners in BOP [Federal Bureau of Prisons] custody by July 1, 2020" (the date on which the government's responses to written discovery are due).[71]   The FPD notes the government's discovery requests are voluminous, and it provides anecdotal evidence that during the Covid-19 pandemic it is not uncommon for 20 days to pass between the time an attorney requests a call with his client in BOP custody and the time the call is scheduled.[72]   Petitioners do not suggest, however, what they believe is an adequate discovery-response time.

Currently, the deadline for motions requesting leave to file dispositive motions is July 6, 2020, and the deadline for completion of all discovery is September 1, 2020.[73] Petitioners must understand that extending their discovery-response deadline past July 1, 2020, will likely necessitate a corresponding extension of these and other remaining deadlines.   Petitioners have previously asserted with dismay that due to past extensions in this case, "a substantial number of petitioners will have already completed, or will be close to completing, their custodial sentences by the time the evidentiary hearings are scheduled to start."[74]   Thus, the court presumes petitioners recognize the need to limit extensions to

---

[71] ECF No. 174 at 5.

[72] ECF Nos. 174 at 5, 174-1, 174-2.

[73] ECF No. 127 at 4.

[74] ECF No. 123 at 24.

O:\19-2491-JAR, In Re CCA\-139.docx

the greatest extent possible.  At this time, the court sets **July 1, 2020**, as petitioners' response deadline.  Should a more particularized need arise to extend this deadline, petitioners may file a motion for extension, addressing therein the effect the requested extension will have on remaining scheduling-order deadlines.

IT IS THEREFORE ORDERED that the government's motion for discovery is granted in part and denied in part.  By **June 10, 2020**, the government may serve all proposed discovery to which an objection has not been sustained herein.  Petitioners must respond by **July 1, 2020**.

Dated June 4, 2020, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara