## In the United States District Court
## For the District of Kansas

**In re: CCA Recordings 2255 Litigation**
    Petitioners,                              **Case No. 2:19-cv-2491**

v.                                              **(This Documents Relates to**
                                                        **All Cases)**

**United States of America,**
    Respondent.

### Petitioners' Motion for Sanctions

In a series of lawful orders, this Court directed the government to fully respond to Petitioners' discovery requests. For two reasons, the government refused to do so. First, it decided the orders were wrong. Second, it claimed it couldn't possibly search its repositories and produce the requested information (ESI) in just 32 days.[1] Setting aside any dispute over the orders' validity, "all orders and judgments of courts must be obeyed 'however erroneous the action of the court may be,' until the order 'is reversed by orderly review.'" Absent such reversal, even the government recognizes its willful disobedience may result in sanctions.[2] Further, the government has known for years that it would likely have to search its repositories; presumably, that's why the Court ordered the government to preserve them in the first place. And that likelihood became a certainty more than six months before the August 28, 2020 production deadline expired—not a mere 32 days before it did so.[3]

---

[1] Doc. 540 at 1, 7; *see* Doc. 79 (approving requests); Doc. 96 (same); Doc. 126 (same); Doc. 98 (extending production deadline); Doc. 127 (same); Doc. 446 (ordering the government to search certain repositories; extending deadline), *In re: CCA Recordings 2255 Litigation*, 2:19-cv-2491.

[2] *Lundahl v. Halabi*, 600 F. App'x 596, 605 (10th Cir. 2014) (unpublished) ("[D]isobedience of [a court order] is contempt of [the court's] lawful authority, to be punished." (quoting *Howat v. Kansas*, 258 U.S. 181, 189–90 (1922))); *see* Doc. 540 at 1.

[3] Doc. 79; Doc. 446; *see, e.g.*, Docs. 146, 155, 690, 713, & 694 at 313–14, *United States v. Black et al.*, 2:16-cr-20032. With the exception of Doc. 758 (hereinafter, *Black* Order), citations to filings in 2:16-cr-20032 are prefaced with "*Black* Doc."

Faced with this Court's early discovery orders, the government could have made a diligent effort to search its electronic repositories and produce the requested ESI. It could have attempted to reduce or eliminate its production obligations by negotiating a settlement or by stipulating to certain facts. Or it could have immediately filed notice of its intent to defy this Court's orders, subjected itself to contempt findings, and appealed.[4] Instead, the government hedged its bets. For months, it signaled it would obey this Court's orders—including a direct order to search its electronic repositories.[5] Only later, when it became clear the Court would accept nothing less than the government's *full* compliance, did the government say it had no intention of complying after all. Of course, this isn't the first time the government has feigned an intent to abide by this Court's orders, only to flout those orders in the end. Nor is it the first time Petitioners and our judicial system have suffered as a result. The government previously escaped any meaningful sanctions for its disobedience, only to recidivate.[6] The Court should therefore impose dispositive sanctions now.[7] Nothing less will suffice.

---

[4] *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981). It also could have tried to appeal without a contempt ruling, *see United States v. Nixon*, 418 U.S. 683, 691 (1974), or sought certification or a writ of mandamus, *see* 28 U.S.C. § 1292(b); *United States v. Copar Pumice Co.*, 714 F.3d 1197, 1205 (10th Cir. 2013).

[5] *See, e.g.*, Doc. 359 (asking the Court to relieve the government of certain obligations, but giving no indication the government would refuse to fulfill those obligations if the Court denied its request).

[6] *See, e.g.*, *Black* Order at 4, 56–59; *Black* Doc. 690 at 3; *Black* Doc. 713 at 18, 23–24, 31; *Black* Doc. 805.

[7] On August 26–27, 2020, the Federal Public Defender (FPD) notified government counsel of Petitioners' intent to seek sanctions if the government defied this Court's orders, and again expressed the FPD's willingness to negotiate a settlement or stipulations that might render this motion unnecessary. Government counsel indicated they would discuss these matters and provide a response. *Cf.* Fed. R. Civ. P. 37(a)(1), (d)(1)(B); D. Kan. R. 37.2. Although Assistant United States Attorney Steven Clymer later stated he was amenable to discussing certain stipulations in the handful of cases where he represents the government, government counsel in the remaining cases

**1. The Court has discretion to impose dispositive sanctions.**

By refusing to fully and timely respond to Petitioners' requests, the government violated (1) the Court's February, March, and April 2020 orders approving the requests and directing the government to respond; (2) the order denying a protective order but extending the government's production deadline to August 28, 2020; and (3) the scheduling order's ultimate discovery deadline.[8] The Court therefore has considerable discretion in determining whether and what sanctions are appropriate.[9] Among other things, the Court may direct that facts be taken as established; prohibit the government from opposing claims or supporting defenses; strike its responses; hold it in contempt; or even enter default judgment.[10]

Default judgment is a harsh sanction. But in light of the government's repeated, willful, and bad-faith violations, the Court should consider imposing it here—both to penalize and to deter.[11] The Court would be justified in doing so, even under Rule 55(d).[12] Alternatively, if Rule 55(d) dissuades the Court from entering default

---

offered no further response. And entering the stipulations AUSA Clymer indicated he was willing to consider wouldn't alter the list of sanctions Petitioners ask the Court to impose.

[8] Doc. 79; Doc. 96; Doc. 126; Doc 127 (setting a September 1, 2020, discovery deadline); Doc. 446.

[9] *See Xyngular v. Schenkel*, 890 F.3d 868, 872 (10th Cir. 2018) (discussing the court's inherent power to impose sanctions); *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011) (discussing the court's discretion to impose Rule 37 sanctions); *Gripe v. City of Enid*, 312 F.3d 1184, 1188 (10th Cir. 2002) (discussing the court's discretion to impose Rule 16(f) sanctions).

[10] Fed. R. Civ. P. 37(b)(2)(A); *see* Fed. R. Civ. P. 16(f)(1)(c); D. Kan. R. 11.1; *Xyngular*, 890 F.3d at 871; *Fish v. Kobach*, 320 F.R.D. 566, 571 (D. Kan. 2017).

[11] *See Nat's Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *cf. United States v. Chapman*, 524 F.3d 1073, 1084–85 (9th Cir. 2008) (discussing the district court's authority to use its supervisory powers to deter future misconduct); *Ruiz v. Cady*, 660 F.2d 337, 340 (7th Cir. 1981) (concluding that although entering default judgment against the state in a § 2254 proceeding may "conflict with the public's right to protection," this option "should be preserved as a sanction").

[12] Fed. R. Civ. P. 55(d) (stating default judgement may be entered against the government only once a claimant "establishes a claim or right to relief by evidence"). *But see Giampaoli v. Califano*, 628 F.2d 1190, 1193–96 (9th Cir. 1980) (concluding that the language and history of Rule 55(d) indicate it should apply only where the government fails to file a response, not to bar sanctions "at a later

judgment, that only strengthens the case for imposing sanctions that "produce the same result."[13] Rule 55 "puts the government in a privileged position above all other litigants."[14] The government shouldn't be permitted to abuse that privilege for strategic gain by committing with impunity those acts that, if committed by any other litigant, would result in swift and dispositive sanctions.[15] Just the opposite. "[T]he public interest requires not only that Court orders be obeyed but further that Governmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders." Thus, "[t]he effectiveness and need for harsh measures is particularly evident" where, as here, "the disobedient party is the government."[16]

Accordingly, if the Court declines to enter default judgment, it may nevertheless treat as admitted those facts that Petitioners might have proved but for the government's refusal to produce discovery; preclude the government from pursuing its defenses; and strike its responses—even if doing so is tantamount to entering

---

stage in the proceedings"); *Sparrow v. United States*, 174 F.R.D. 491, 492 (D. Utah 1997) (noting the court's "discretion to apply default standards" against the government in the context of § 2255).

[13] 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2702 (4th ed. 2020) (explaining that this approach complies with Rule 55's language without depriving courts of the ability to enforce their orders); *see, e.g.*, *In re Attorney Gen.*, 596 F.2d 58, 65–66, n.15 (2d Cir. 1979); *Reynolds v. United States*, 192 F.2d 987, 998 (3d Cir. 1951), *rev'd on other grounds*, 345 U.S. 1 (1953); *Kahn v. Sec'y of Health, Ed., & Welfare*, 53 F.R.D. 241, 244, 246 (D. Mass. 1971).

[14] *Giampaoli*, 628 F.2d at 1195.

[15] *Id.*

[16] *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir. 1980) (quoting *Perry v. Golub*, 74 F.R.D. 360, 366 (N.D. Ala. 1976))).

default judgment,[17] and even though this litigation arises under § 2255.[18] Were it otherwise, courts would be powerless to compel the government to comply with their orders, a result that surely wasn't "contemplated by those who wrote the Rules."[19]

Specifically, Petitioners ask the Court to deem established, and preclude the government from challenging, the following facts as to each petitioner:

- Before each petitioner entered a plea, was convicted, or was sentenced, each member of the prosecution team intentionally, and without a legitimate law-enforcement purpose, became privy to each recording listed in the petitioner's privilege log (the Recordings), either by watching or listening to them or by directly or indirectly obtaining information about them from someone who did.
- The Recordings captured and reveal confidential attorney-client communications that concern matters related to legal advice or strategy sought by the petitioner.
- Each member of the prosecution team acted with the intent to use, and did in fact use, confidential information gleaned from the Recordings to the petitioner's detriment.
- But for these actions, the petitioner wouldn't have been convicted of any offense. Alternatively, the Court would have imposed a 50% shorter sentence and would have imposed neither (1) financial fees or penalties nor (2) supervised release.
- The prosecution team's actions had a substantial and injurious effect or influence on the outcome of the petitioner's criminal case.[20]
- By virtue of the prosecution team's actions, the petitioner can't fairly be retried.

---

[17] Wright & Miller, *supra* note 13; *see, e.g.*, *In re Attorney Gen.*, 596 F.2d 58, 65–66, n.15 (2d Cir. 1979); *Reynolds v. United States*, 192 F.2d 987, 998 (3d Cir. 1951), *rev'd on other grounds*, 345 U.S. 1 (1953); *Kahn v. Sec'y of Health, Ed., & Welfare*, 53 F.R.D. 241, 244, 246 (D. Mass. 1971).

[18] *United States v. Spencer*, 2014 WL 3573600, at *12 (D. Minn. July 21, 2014) (citing Rule 12 of the Rules Governing Section 2255 Proceedings)); *see, e.g.*, *United States v. Celio*, 388 F. App'x 758, 760–61 (10th Cir. 2010) (unpublished); *Warner v. Parke*, 96 F.3d 1450 (7th Cir. 1996); *Bruner v. United States*, 2020 WL 2085149, at *2 (D.N.M. Apr. 30, 2020); *United States v. Balentine*, 2011 WL 13272258, at *2 (E.D. Wis. Dec. 22, 2011); *cf. Stines v. Martin*, 849 F.2d 1323 (10th Cir. 1988); *Frick v. Quinlin*, 631 F.2d 37, 40 (5th Cir. 1980); *United States ex rel. Mattox v. Scott*, 507 F.2d 919, 924 (7th Cir. 1974); *Bennett v. Collins*, 835 F. Supp. 930, 938 (E.D. Tex. 1993).

[19] *Jackson Buff Corp. v. Marcelle*, 20 F.R.D. 139, 140 (E.D.N.Y. 1957); *cf. Bennett*, 835 F. Supp. at 937 (refusing to adopt a stance that would "strip the district court of power to control respondent, no matter how egregious its behavior in any habeas proceeding").

[20] By asking the Court to take as established certain facts related to actual use and prejudice, Petitioners do not concede they must show either in order to prevail on their claims or to obtain relief. *See, e.g.*, Doc. 87 at 26 (explaining that a showing of individual prejudice may be relevant to, but is not dispositive of, the specific-remedy question).

Additionally, Petitioners ask the Court to impose the following sanctions:

- Preclude the government from pursuing any defense to, or from otherwise opposing, Petitioners' claims, and from filing dispositive motions.
- Strike in full the government's responses to Petitioners' § 2255 motions and the government's challenges to Petitioners' privilege logs.
- Vacate any orders that authorize the government to serve any discovery requests upon Petitioners or that require Petitioners to respond to such requests.

**2. The Court should enter default judgment or its equivalent.**

In determining whether to impose dispositive sanctions, courts typically consider whether the violation at issue resulted in prejudice; the amount of interference with the judicial process; the disobedient party's culpability; the efficacy of lesser sanctions; and whether the disobedient party was on notice of the possibility of such sanctions.[21] These factors weigh in favor of imposing default judgment or its equivalent here.

First, the nature of Petitioners' claims puts them at a severe informational disadvantage. The government's refusal to fully respond to their discovery requests exacerbates this imbalance and impedes Petitioners' ability to prepare. Thus, the government's conduct has "clearly resulted in prejudice."[22] Additionally, it appears the government has long known or suspected that it would refuse to fully discharge its obligations *even if* this Court ultimately insisted that it do so. By delaying notice of this fact, the government forced Petitioners to waste resources litigating other

---

[21] *King v. Fleming*, 899 F.3d 1140, 1150 (10th Cir. 2018); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013) (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)); *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1149–50 (10th Cir. 2007); *Gripe*, 312 F.3d at 1188; *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1182 n.6 (10th Cir. 1999); *Jones v. Thompson*, 996 F.2d 261, 264–66 (10th Cir. 1993).

[22] *Am. Power Chassis, Inc. v. Jones*, 2018 WL 4409434, at *9 (D. Kan. Sept. 17, 2018); *Ecclesiastes*, 497 F.3d at 1145; *see, e.g.*, Doc. 446 at 8; *Black* Order at 155–56.

matters, delayed the proceedings, and potentially prolonged the time many of them must spend incarcerated or on supervised release. This, too, constitutes prejudice.[23]

The government suggests Petitioners cannot suffer prejudice because they entered guilty pleas, don't claim actual innocence, and have not yet proved their claims. But the government's emphasis on the merits is misguided, as is its narrow view of what makes a conviction "wrongful."[24] And its preoccupation with Petitioners' pleas "signal[s] a disregard for the essence of § 2255 litigation."[25]

Second, a party necessarily interferes with the judicial process by flouting multiple court orders—especially where, as here, its disobedience triggers a motion for sanctions and results in delays.[26] Further, as the government concedes, its reasons for defying this Court's orders are "not new." Nor was its duty to search repositories it waited until June 2, 2020, to assess.[27] The government should have

---

[23] *See* Doc. 540 at 1 & n.1, 14; *Ehrenhaus*, 965 F.2d at 921 (finding prejudice based on delays where, e.g., damage to the defendants' reputation persisted as long as the action remained pending).

[24] Doc. 540 at 4–5, 19; *see In re Syngenta AG MIR 162 Corn Litig.*, 2020 WL 4333559, at *8 (D. Kan. July 28, 2020) (explaining that the merits of the underlying claims were irrelevant to the prejudice inquiry); Doc. 608, *United States v. Phommaseng*, 2:15-cr-20020 ("To claim lack of evidence as a basis for denial of discovery is to substitute the cause for the consequence."); *compare* Doc. 540 at 19 (suggesting that only the innocent can be wrongfully convicted); *with* WRONGFUL CONVICTION, Black's Law Dictionary (11th ed. 2019) (indicating that any conviction "overturned or vacated by an appellate court" qualifies as wrongful), *and* https://nij.ojp.gov/topics/justice-system-reform/wrongful-convictions (stating a conviction is wrongful if procedural errors violated the person's rights).

[25] *Taylor v. United States*, 2018 WL 6068804, at *2–3 (S.D. Ind. Nov. 20, 2018) ("[E]very § 2255 movant has either pled guilty to a crime or been convicted of one by a jury. Section 2255 allows for the possibility that a movant has pled guilty or been convicted under circumstances that our legal system does not permit.").

[26] *See* Doc. 548; *Ehrenhaus*, 965 F.2d at 921; *Am. Power Chassis*, 2018 WL 4409434, at *9; *cf. Villanueva Echon v. Sackett*, 809 F. App's 468, 473 (10th Cir. 2020) (unpublished) (finding interference where defendants "unnecessarily occupied Plaintiffs' and the district court's time with motions to compel discovery").

[27] Doc. 540 at 1 n.1; *see Black* Doc. 694 at 267–69, 313–14; Doc. 79; Doc. 359 at 10; Doc. 359-1 (acknowledging that the FPD alerted the government to its expectations regarding other repositories in March 2020); Doc. 117 at 7 (acknowledging in April 2020 that the requests extended beyond emails).

performed this task in February and March 2020, when the Court ordered it to produce discovery; in April 2020, before the government sought an extension of time; or in early May 2020, immediately after this Court ordered the government to respond to additional requests and set a new production deadline. And once it assessed the repositories, the government should have immediately informed the Court and Petitioners of what it instead waited months to say: the government wouldn't search the repositories, even if this Court directly ordered it to do so.[28]

At that point, Petitioners would have requested sanctions. And the Court's resolution of that request may have altered the entire trajectory of the case, thereby conserving judicial resources and avoiding needless delays. For instance,

- If the Court had struck the government's defenses or barred it from opposing Petitioners' claims, the government would have lacked good cause to conduct discovery, even under the at-issue test, thereby rendering it unnecessary for Petitioners to file their motion for review, for the FPD to expend time and resources serving individual discovery responses on behalf of nearly 100 petitioners; or to litigate and resolve what materials Petitioners may withhold.[29]

- If the Court had barred the government's fact-intensive procedural defenses or struck the government's responses, Petitioners could have avoided filing their replies, or at least reduced the time and labor involved in doing so.[30]

- Had the Court taken as established certain facts, it may have been unnecessary to delay the evidentiary hearings—or to conduct them at all.[31]

In short, the government lulled Petitioners and this Court into believing it would fully respond to Petitioners' approved discovery requests, much like it lulled the

---

[28] *See* Doc. 79; Doc. 96; Doc. 114; Doc. 117; Doc. 126; Doc. 127; *Ecclesiastes*, 497 F.3d 1135 at 1148 (finding interference where the plaintiff's noncompliance wasn't "based upon newly-emergent facts or circumstances" but rather upon "concerns that should have been apparent" much earlier).
[29] *See, e.g.*, Doc. 225; Doc. 230; Doc. 354; Doc. 355; Doc. 383; Doc. 400.
[30] *See* Docs. 415–440, 442–445, 449–470, 476–501, 503–524, 529–535.
[31] Doc 127.

Special Master and this Court into believing it would cooperate in *Black*. In doing so, it significantly interfered with the judicial process.[32]

Third, the government—and not just the attorneys who represent it—chose to defy this Court's orders. Thus, its violations were willful and indicative of bad faith.[33] True, the government also asserts that complying with the Court's most recent 32-day deadline was impossible. But the government could have started searching the repositories at issue more than six months before that deadline expired. Instead, it chose to willfully ignore those repositories and focus on an admittedly incomplete and facially inadequate email archive.[34] Indeed, as far as Petitioners know, the government never even imaged the remaining repositories, let alone started to search them. Thus, it cannot establish doing so was impossible.[35]

Fourth, this Court has warned the government that discovery violations may result in sanctions. And the government has expressly acknowledged this fact.[36]

---

[32] *See Black* Order at 140–41; *Black* Doc. 805 at 12; *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 5 (D.C. Cir. 2015) (finding interference where the disobedient party waited until the last minute, after the court had already moved the discovery deadline twice, to refuse to respond to certain discovery requests); *Am. Power Chassis*, 2018 WL 4409434, at *9.

[33] Doc. 540 at 1 & n.1, 14–15 (stating, e.g., that "the United States has determined" it "will not comply"); *see Lundahl*, 600 F. App'x at 607; *Ehrenhaus*, 965 F.2d at 921; *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 873–874, 873 n.2 (10th Cir. 1987); *In re Syngenta*, 2020 WL 4333559, at *4–6; *Cooper v. United States*, 2010 WL 537759, at *3 (D. Colo. 2010).

[34] *See Black* Order at 40–49; Doc. 359 at 6, 11; Doc. 446 at 17; *compare* Doc. 446 at 18–19 (ordering the government, on July 27, 2020, to "redirect its resources and do what is necessary to fully respond"), *with* Att. 1 (indicating that as of August 14, 2020, the government was still preoccupied with the USAO's emails, and that rather than focusing all efforts on producing additional documents, the government was focused on trying to claw back documents it had already produced).

[35] *See* Att. 2 (indicating that as of August 12, 2020, government counsel was still "awaiting further direction" before it conducted additional searches); *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (explaining that to establish impossibility, the disobedient party must show it took all reasonable steps within its power and made a good faith, diligent effort to comply with the order).

[36] *See, e.g.*, *Black* Doc. 694 at 318 ("So we can close the record right now and I think probably adverse inferences would be in order."); *Black* Doc. 805 at 3, 8, 11–12, *Black* Order at 136–37; Doc. 540 at 1;

Fifth, lesser sanctions will not suffice. The only way to cure the prejudice to Petitioners is to take as established the facts they sought to prove via discovery. And the only way to adequately punish the government and deter future disobedience is to impose default judgment or its equivalent. After all, this isn't the first time the government has violated this Court's discovery orders.[37] And the Court gave the government ample opportunities to avoid perpetuating its previous misconduct here. Because the government consciously declined to avail itself of those opportunities, the Court should enter default judgment or its equivalent.[38]

## 3. Conclusion

"Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen."[39] The government has repeatedly broken those rules, both here and in *Black*. And it shows no intention of abandoning this campaign of disobedience. When a party "deliberately and defiantly refuse[s] to comply with" a court's orders and says it "will not comply in the future," the Court may impose dispositive sanctions.[40] Petitioners ask the Court to impose such sanctions here.

---

*Ecclesiastes*, 497 F.3d at 1149–50 (holding that constructive notice constitutes notice; stating that, in any event, notice isn't a prerequisite to imposing dispositive sanctions).

[37] *See Black* Order at 23, 143; *Wash. Metro. Area Transit*, 776 F.3d at 6–7 (noting that the disobedient party had previously been held in contempt by another court for "deliberately ignoring" discovery requests); *Cosby v. Meadors*, 351 F.3d 1324, 1332 (10th Cir. 2003) (holding that the magistrate judge properly considered the plaintiff's similar misconduct in other cases).

[38] *See Lee*, 638 F.3d at 1320–21 (noting that the district court gave plaintiffs "no fewer than three chances to make good their discovery obligation"); Docs. 79, 96, 126 (approving Petitioners' requests); Doc. 98 (giving the government additional time to produce); Doc. 127 (same); Doc. 446 (same).

[39] *Olmstead v. United States*, 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting) ("If the government becomes a lawbreaker, it breeds contempt for law; . . . it invites anarchy.").

[40] *Phipps v. Blakeney*, 8 F.3d 788, 790–91 (11th Cir. 1993); *see* Doc. 540 at 29.

Respectfully submitted,


s/ Melody Brannon
MELODY BRANNON, #17612
Federal Public Defender for the
District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
Email: melody_brannon@fd.org

s/ Kirk Redmond
KIRK C. REDMOND, #18914
First Assistant Federal Public
Defender
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
kirk_redmond@fd.org

s/ Lydia Krebs
LYDIA KREBS, #22673
Research and Writing Specialist
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
lydia_krebs@fd.org

CERTIFICATE OF SERVICE

I certify that on 07/[]/2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties and:

Stephen McAllister
United States Attorney
District of Kansas
stephen.mcallister@usdoj.gov

Duston Slinkard
First Assistant U.S. Attorney
Chief, Criminal Division
duston.slinkard@usdoj.gov

                                        s/ Melody Brannon
                                        MELODY BRANNON, #17612