**In the United States District Court
For the District of Kansas**

**In re: CCA Recordings 2255 Litigation**
    Petitioners,

                                               **Case No. 2:19-cv-2491**
v.                                         **(This Documents Relates to All Cases)**

**United States of America,**
    Respondent.

**Petitioners' Motion for Spoilation Sanctions**

By August 2016, three things were clear. The government faced the threat of imminent Sixth Amendment litigation. It possessed electronically stored information (ESI) relevant to that litigation. And at least some of that ESI resided on a computer (the AVPC) used by Litigation Support Specialist Pauletta Boyd. Yet the government took no steps to preserve this critical ESI before September 6, 2016, when Information Technology Manager David Steeby reformatted both of the AVPC's hard drives as part of a scheduled update.

The government now concedes that at least some ESI on the AVPC was immediately and permanently destroyed on September 6, 2016. But the government has long insisted that some ESI likely continued to reside in the drives' unallocated space even after that point. Likewise, it has long represented that it believed such ESI remained recoverable unless and until it was overwritten with new data. Nevertheless, the AVPC's hard drives remained in use for a full month after Mr. Steeby reformatted them. And in the meantime, the government did the one thing it

1

said would permanently destroy any lingering ESI: it pumped hundreds of thousands of files and folders into the AVPC's drives.

In short, the government knew the ESI at issue was relevant to the imminent Sixth Amendment claims of Petitioners and others like them. Despite this knowledge—or, more accurately, because of it—the government permanently destroyed the ESI. For the reasons discussed below, Petitioners therefore ask the Court to presume the lost ESI was unfavorable to the government. Specifically, they ask the Court to presume the lost ESI would have proved the following:

- Each member of the relevant prosecution team intentionally became privy to the video recordings listed in Petitioners' privilege logs.

- This occurred (1) before the relevant petitioner entered a plea or was convicted by a jury, or (2) if the relevant petitioner entered a plea or was convicted by a jury before the surveillance video came into the government's possession, before that petitioner was sentenced or before judgment was entered.[1]

## 1. Arguments and Authorities

Rule 37(e) provides two paths to spoliation sanctions. Neither is available unless the Court first determines (1) ESI was lost; (2) the government had a duty to preserve the lost ESI; (3) the government failed to take reasonable steps to discharge its duty; and (4) the lost ESI cannot now be restored or replaced.[2] If the Court makes these four threshold findings, the next question is whether the

---

[1] On September 10, 2020, the FPD notified the government of Petitioners' intent to seek these sanctions; offered to discuss the possibility of entering into an agreement that would render it unnecessary for Petitioners to do so, and expressed Petitioners' continued willingness to consider alternative ways of resolving the spoliation issue without the Court's intervention. The following day, the government rejected Petitioners' proposed agreement and informed the FPD that if Petitioners formally requested these sanctions, the government would respond to the request in a subsequent filing. *Cf.* Fed. R. Civ. P. 37(a)(1), (d)(1)(B); D. Kan. R. 37.2.

[2] Fed. R. Civ. P. 37(e).

government acted with the intent to deprive another party of the lost ESI's use in the litigation. If not, the Court may take remedial measures only upon a finding of prejudice. But if so, the Court may presume the lost ESI was unfavorable to the government; no additional showing of prejudice is necessary.[3]

The Court should make each of the Rule 37(e) threshold findings here. First, ESI on the AVPC was lost when, on September 6, 2016, Mr. Steeby reformatted both of the AVPC's hard drives for the purpose of installing a new operating system.[4] Second, the government had an obligation to preserve the ESI by that point. On August 5, 2016, the FPD filed a motion alleging the government possessed CCA surveillance video depicting attorney-client meetings; requested an evidentiary hearing; and indicated it was contemplating further action under the Sixth Amendment. Thus, the government knew by August 5, 2016, that such litigation was imminent.[5] And as demonstrated by a series of emails, the government knew by August 30, 2016, that the lost ESI was relevant to this imminent litigation.[6] Accordingly, as this Court has already determined, the government's duty to

---

[3] *See* Fed. R. Civ. P. 37(e)(1), (e)(2)(A); Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment ("[T]he finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position."); *accord* Doc. 758 at 136 n.491, *United States v. Black et al.*, 2:16-cr-20032-JAR. With the exception of Doc. 758 (hereinafter, *Black* Order), citations to filings and exhibits in 2:16-cr-20032-JAR are prefaced with *Black* Doc. and *Black* Ex., respectively.

[4] *See Black* Order at 34–35; *Black* Doc. 670 at 986, 1000, 1031–32, 1042–43; *Black* Doc. 672 at 1088, 1123, 1132.

[5] *Black* Doc. 82 at 4 (citing *Shillinger v. Haworth*, 70 F.3d 1132 (10th Cir. 1995)); *E.E.O.C v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 964 (10th Cir. 2017) (explaining that the duty to preserve arises once a party knows or should know that litigation is imminent).

[6] *Black* Ex. 1176; *see Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1162–63 (D. Colo. 2015) (explaining that parties have a duty to preserve evidence if they know or should know the evidence "may be relevant to future litigation" (quoting an *Oto Software, Inc. v. Highwall Techs., LLC*, 2010 WL 3842434, at *7 (D. Colo. Aug. 6, 2010))).

preserve the ESI arose no later than August 30, 2016—a week before Mr. Steeby reformatted the drives.[7]

Third, the government failed to take reasonable steps to preserve the ESI before it was lost. Indeed, prior to September 6, 2016, the government did not take *any* steps to preserve the AVPC's ESI.[8] Nor did the government take reasonable steps to preserve the ESI after that point. Notably, both Mr. Steeby and Assistant United States Attorney (AUSA) Duston Slinkard stated they believed that (1) at least some of the lost ESI likely continued to reside in unallocated space even after Mr. Steeby reformatted the hard drives; (2) any such ESI would be permanently destroyed if, and only if, it was overwritten by new data; and (3) unless and until that occurred, the lost ESI could potentially be recovered.[9] Yet neither Mr. Steeby nor AUSA Slinkard took immediate steps to prevent the lost ESI from being overwritten by new data.

Specifically, Mr. Steeby knew no later than September 7, 2016, that preservation was a concern.[10] Thus, based on his belief that at least some of the lost ESI might still reside in the hard drives' unallocated space, he should have removed the hard drives that same day in order to ensure the lost ESI remained recoverable. Likewise, AUSA Slinkard learned as early as October 31, 2016, and no later than November 5, 2016, that at least some of the ESI might still reside in unallocated

---

[7] *Black* Order at 130; *see Black* Ex. 1176.
[8] *Black* Order at 34–35 ("In sum, no USAO manager took responsibility for this critical issue of preserving the data and computers during the cyclical replacement and refresh.").
[9] *Black* Ex. 556 at 2, 12–15; *Black* Doc. 672 at 31–32, 65, 67, 70–72, 79, 84.
[10] *Black* Doc. 672 at 26.

space and could potentially be recovered unless and until it was overwritten.[11] So AUSA Slinkard should have ensured the AVPC's hard drives were removed no later than November 5, 2016, in order to guard against the ESI's permanent destruction.

Instead, it wasn't until November 7, 2016—a month after Mr. Steeby says he first learned preservation was an issue and at least two days after AUSA Slinkard learned the hard drives might still contain recoverable ESI—that USAO management directed Ms. Boyd to power down the AVPC.[12] And it wasn't until the following month that Mr. Steeby placed the AVPC's hard drives in the government's vault.[13] Thus, the government not only failed to take reasonable steps to preserve the ESI before Mr. Steeby reformatted the drives on September 6, 2016; it also failed to take such reasonable steps after that reformatting occurred.

Fourth, the lost ESI cannot now be restored or replaced. Forensic Expert Tami Loehrs searched the unallocated and allocated space of both hard drives (HD01 and HD02), and was unable to recover from either any data associated with the installation or use of the software the government says it installed to view the CCA video.[14] Further, the government now concedes that—contrary to AUSA Slinkard's and Mr. Steeby's representations to the Special Master and to this Court—all ESI residing on HD02 was permanently and irretrievably destroyed on September 6, 2016.[15] In other words, the government concedes the lost ESI is not now, and never

---

[11] *Black* Ex. 556 at 12–15.
[12] *Black* Ex. 1147.
[13] *Black* Doc. 672 at 49.
[14] Att. 1 at 18–22 (discussing HD01); *id.* at 23–32 (discussing HD02).
[15] *Compare Black* Ex. 556 at 12–15 (insisting, e.g., that "all data on the drives [was] *marked unallocated*, and new operating and other software installed, resulting in some or all of the now-

5

was, recoverable from HD02.[16] And even assuming it would have been possible to recover the lost ESI from HD01 at some point, this possibility has since been foreclosed.[17]

Thus, the only remaining question is whether the government acted with the intent to deprive another party of the ESI's use in the litigation.[18] It's not entirely clear whether this Court made such a finding in *Black*.[19] But based on the totality of the circumstances, it's clear the Court should make such a finding now.

On August 30, 2016, the FPD asked the government to "maintain all existing computers, including hard drives and other media that could contain data related to the video recordings," pending the Special Master's investigation.[20] The very next day, USAO management not only acknowledged that this request applied to the AVPC, but acknowledged *why* it applied: the AVPC might contain "metadata on the

---

unallocated previously existing data being *potentially* over-written [sic]" (emphases added)), *id.* at 14 ("Data that has not been overwritten since the September 6, 2016 upgrade may be recoverable."), *and Black* Doc. 672 at 31–32, 65, 67, 70–72, 79, 84 (testifying, e.g.*,* that reformatting the drives "unallocated the entire capacity of both drives"; that anything "marked unallocated would still be there in the same order that it was before" unless it "was overwritten by the new data"; and that a forensic expert "should be able to" locate it,"), *with* Att. 2 at 5 (stating that the "trim command" was activated on HD02, and that as a result, all ESI residing on that hard drive—including ESI in unallocated space—was permanently deleted on September 6, 2016).

[16] Att. 2 at 5.

[17] Att. 1 at 18–32 (stating that Ms. Loehrs tried but failed to recover any ESI associated with the installation or use of the relevant software); *see Jenkins v. Woody*, 2017 WL 362475, at *16–17 (E.D. Va. Jan. 21, 2017) (agreeing that lost ESI couldn't be restored or replaced where the plaintiff's efforts to image a hard drive and recover the lost ESI were unsuccessful); *cf. Blazer v. Gall*, 2019 WL 3494785, at *4 (D.S.D. Aug. 1, 2019) (finding that lost ESI couldn't be restored or replaced where "no known backups or alternatives exist[ed]").

[18] Fed. R. Civ. P. 37(e)(2).

[19] *See Black* Order at 36 (crediting Ms. Loehrs's testimony that there was no reason to reformat both drives to install the new operating system "unless the objective was to destroy the data"); *id.* at 135 (concluding that the government acted with the intent to deprive the Special Master and the FPD of evidence when it failed to preserve certain materials, but not expressly listing the lost ESI).

[20] *Black* Ex. 1176.

6

videos."[21] In light of the FPD's express request, the government's subsequent acknowledgements, and Mr. Steeby's otherwise inexplicable decision to unnecessarily reformat both drives, an intent to deprive is the only possible explanation for the government's failure to preserve those drives before the looming September 6, 2016 refresh—especially when that failure is viewed through the lens of the government's other discovery violations.[22]

Further, even assuming the government's initial failure to preserve the drives left some doubt as to its true intent, that doubt has since been eliminated. As discussed above, both Mr. Steeby and AUSA Slinkard represented they believed (1) at least some lost ESI continued to reside in the hard drives' unallocated space even after September 6, 2016, and (2) this ESI remained potentially recoverable unless and until it was permanently overwritten by new data.[23] Yet USAO management waited until November 7, 2016, to direct Mr. Steeby to "lock . . . down" the AVPC.[24] And in the meantime, Mr. Steeby conspicuously failed to guard against the one thing he testified would permanently destroy the lost ESI. For instance,

---

[21] *Id.*; *see Black* Order at 35 ("Any metadata identifying who, when, and how the PELCO player software was used to view the CCA videos resided on the hard drives of this AVPC computer.").

[22] *See Blazer*, 2019 WL 3494785, at *5 (finding an intent to deprive where the nonmoving party not only failed to take any action to preserve ESI after an attorney for the opposing party asked it to do so, but also failed to preserve and produce *other* evidence); *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 2016 WL 4765689, at *3, 9 (N.D. Ill. Sept. 13, 2016) (finding an intent to deprive based in part on the defendants' "stubborn failure to comply with" *other* discovery duties); *see, e.g.*, *Black* Order at 132–33, 135, 137–43 (detailing the government's history of discovery violations); Doc. 540 at 29 (providing notice of the government's intent to defy this Court's discovery orders).

[23] *Black* Ex. 556 at 12–15; *Black* Doc. 672 at 31–32, 65, 67, 70–72, 79, 84.

[24] *Black* Ex. 1147; *cf. Black* Ex. 556 at 11–13 (indicating that Mr. Steeby provided this information to AUSA Slinkard sometime between October 31, 2016, and November 5, 2016).

7

between September 14, 2016, and October 18, 2016, more than 365,000 files and folders were created on HD01, thereby overwriting data in unallocated space.[25]

The fact that this continued spoliation occurred after the Court issued its September 7, 2016 preservation order is particularly telling.[26] So too is this: on November 3, 2016—three days after Mr. Steeby and AUSA Slinkard exchanged emails about the importance of preserving all of Ms. Boyd's computers, and three days after Mr. Steeby offered to take one of Ms. Boyd's other computers "out of production" for that very purpose—Mr. Steeby himself stored new data on HD02.[27]

The government's current position appears to be that, as an objective matter, Mr. Steeby's actions couldn't have destroyed any lost ESI on HD02 because that lost ESI had already been destroyed.[28] But Mr. Steeby testified that, as a subjective matter, he believed otherwise.[29] Thus, his continued use of the AVPC in the face of multiple preservation orders, coupled with his offer to take one of Ms. Boyd's other computer's completely "offline" in order to comply with those orders, constitutes compelling evidence that Mr. Steeby was attempting to permanently (if unnecessarily) destroy any ESI that happened to be lingering in unallocated space.

---

[25] Att. 1 at 3–4.
[26] *See Black* Order at 36; *Black* Doc. 135 at 56; *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 237 (D. Minn. 2019) (finding an intent to deprive where, after initially failing to preserve evidence, the nonmoving party committed additional acts of destruction—even after the district court ordered it to preserve all relevant ESI); *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) (finding an intent to deprive where the defendants knew they had a duty to preserve certain ESI but nevertheless allowed that ESI to be overwritten).
[27] *See Black* Ex. 556 at 11–12; Att. 1 at 5 (stating that on November 3, 2016, someone created a user account named *usaks-dsteeby* on HD02 and then added approximately 3,000 files to that drive).
[28] Att. 2 at 5 (stating the "trim command" was activated).
[29] *Black* Doc. 672 at 31–32, 65, 67, 70–72, 79, 84.

8

This, too, is powerful proof of the government's intent to deprive any future Sixth Amendment litigants of the benefit of the lost ESI.[30]

In light of that intent, the Court need not find that Petitioners have been prejudiced in order to impose sanctions. Instead, the Court may presume such prejudice occurred. And it may also presume the lost ESI was unfavorable to the government.[31] Indeed, such sanctions are particularly appropriate where, as here, it is the government who has intentionally spoilated evidence.[32] Petitioners therefore ask the Court to presume the lost ESI would have proved the facts listed above. Given the government's repeated discovery violations here and in *Black*—including its recent decision to flout this Court's direct order requiring the government to search its electronic repositories—entering such adverse inferences in an appropriate use of the Court's broad discretion under Rule 37(e)(2).[33] And under the same analysis, it would also be an appropriate use of the Court's inherent authority.[34]

---

[30] *See Black* Order at 36; *Black* Doc. 155; *Black* Ex. 556 at 12; *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (finding an intent to deprive where the nonmoving party failed to preserve certain ESI after demonstrating its ability to preserve other ESI); *DVComm, LLC v. Hotwire Commc'ns, LLC*, 2016 WL 6246824, at *4 (E.D. Pa. Feb. 3, 2016) (rejecting any possibility that the destruction of ESI was the result of "some type of inexplicable mistake" where the individual who deleted the ESI was "skilled in multiple computer devices").

[31] *See* Fed. R. Civ. P. 37(e)(2); Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.

[32] *Cf. United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir. 1980) ("The effectiveness of and need for harsh measures is particularly evident when the disobedient party is the government."); *Perry v. Golub*, 74 F.R.D. 360, 366 (N.D. Ala. 1976) (explaining that government agencies charges with enforcing the law should set an example for other litigants by complying with discovery rules and orders).

[33] *See Black* Order at 137; Doc. 540.

[34] *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 103, 104 n.4 (E.D. Va. 2018) (indicating that the amendments to Rule 37(e) restrict a court's discretion to use its inherent authority to impose the sanctions listed in Rule 37(e)(2) if, *and only if*, there is no showing of an intent to deprive); *Hsueh v. N.Y. State Dep't of Fin. Servs.*, 2017 WL 1194706, at *6 (S.D.N.Y. Mar. 31, 2017) (ruling that an adverse inference was appropriate under either Rule 37(e)(2) or the court's inherent

## 2. Conclusion

The government knew the ESI on the AVPC's hard drives was relevant to the imminent Sixth Amendment claims of Petitioners and others like them. This knowledge should have ensured the ESI's preservation. Instead, it assured the ESI's destruction. Petitioners therefore ask the Court to presume the lost ESI was unfavorable to the government and to enter the adverse inferences requested above.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON, #17612
Federal Public Defender for the
District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
Email: melody_brannon@fd.org

s/ Kirk Redmond
KIRK C. REDMOND, #18914
First Assistant Federal Public
Defender
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
kirk_redmond@fd.org

---

authority); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (same); *cf. Fish v. Kobach*, 320 F.R.D. 566, 571 (D. Kan. 2017) (noting that the Court's inherent authority to sanction bad-faith conduct "exists even when that conduct could also be sanctioned by the Federal Rules of Civil Procedure, and it further exists 'to fill in the interstices' left by those rules" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991))).

10

            s/ Lydia Krebs
            LYDIA KREBS, #22673
            Research and Writing Specialist
            117 SW 6th Avenue, Suite 200
            Topeka, KS 66603-3840
            Phone: 785/232-9828
            Fax: 785/232-9886
            lydia_krebs@fd.org


## CERTIFICATE OF SERVICE

  I certify that on 09/15/2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties and:

Stephen McAllister
United States Attorney
District of Kansas
stephen.mcallister@usdoj.gov

Duston Slinkard
First Assistant U.S. Attorney
Chief, Criminal Division
duston.slinkard@usdoj.gov


            s/ Melody Brannon
            MELODY BRANNON, #17612

11