## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: CCA RECORDINGS 2255 LITIGATION, | ) ) ) | **Case No. 19-cv-2491-JAR-JPO** |
| Petitioners, | ) ) | **This Document Relates to:** |
| v. | ) ) | • **Case No. 16-cr-20041-JAR-**, *United States v. Dehaven, et al*; • **Case No. 18-cv-02474-JAR-JPO,** *Dehaven v. United States*; |
| UNITED STATES OF AMERICA, | ) ) | • **Case No. 18-cv-02413-JAR-JPO,** *Mebane v. United States*; |
| Respondent. | ) ) | • **Case No. 19-cv-02400-JAR-JPO***, Wright v. United States* |
| _____ | ) | |

### GOVERNMENT'S RESPONSE TO PETITIONERS' MOTION FOR SPOLIATION SANCTIONS

**A.      Introduction**

The United States of America, by and through its counsel of record, hereby responds to Petitioners' Motion for Spoliation Sanctions, Document 561 [hereinafter "Spoliation Motion"], as it pertains to the § 2255 motions filed by petitioners Jonathan Dehaven, Darus Mebane, and Brandon Wright.  The Spoliation Motion is based on an allegation that the United States Attorney's Office for the District of Kansas destroyed "electronically stored information," known as "ESI," in the form of metadata stored on an audio-visual personal computer, known as the "AVPC," in that Office during and after an operating system upgrade on September 6, 2016, and did so in bad faith.  According to the Spoliation Motion, the allegedly destroyed ESI was relevant to their claim that Assistant United States Attorneys in the District of Kansas, or their support staff, or law enforcement officials watched recordings of soundless videos of the petitioners meeting with their legal counsel at CCA-Leavenworth because it would show whether such viewing occurred.

As to petitioners Dehaven, Mebane, and Wright, the government hereby explains why the Spoliation Motion is meritless and should be denied.

First, despite clear and unambiguous notice from this Court as to the evidence necessary to support a spoliation motion regarding the purported destruction of ESI on the AVPC, the petitioners make no attempt to show that there ever was ESI/metadata on the AVPC hard drives that was relevant to the claims in their § 2255 motions. This failure is remarkable because the forensic report upon which the petitioners rely, Document 561-1 (report of Tami Loehrs), makes clear that the petitioners had the ability to determine exactly what ESI/metadata would be created and stored on the AVPC if the CCA-Leavenworth soundless videos had been viewed, and yet the Loehrs forensic report is silent on this point. Thus, for the very same reason that this Court previously rejected a spoliation claim by the Federal Public Defender's Office in the *Carter* litigation, it should reject this one.

Second, even had there been spoliation, none occurred in connection with the prosecution of these three petitioners. These petitioners were prosecuted by the United States Attorney's Office [USAO] for the Western District of Missouri [WDMO]. By the time the soundless video recordings came into the possession of the USAO Kansas, and by the time that the AVPC upgrade occurred, the USAO Kansas had been recused from petitioners' criminal case and the USAO Kansas representative had withdrawn his appearance. Accordingly, there was no spoliation by the USAO that was responsible for the prosecution of these petitioners and thus no basis for a spoliation sanction.

Third, even had spoliation occurred, and even if the prosecuting USAO had played a role in it, the AVPC upgrade, and any loss of evidence that occurred in connection with *United States v. Black/Carter* does not warrant an adverse inference in this 2255 litigation.

**B.      The Petitioners Have Not Established that Destruction of Relevant ESI Occurred.**

In order for a § 2255 petitioner here to have a viable spoliation claim, he must establish that the government destroyed evidence on the AVPC *relevant to his claim* that an AUSA, a USAO staff member, or a law enforcement official watched one or more soundless video recordings of his meetings with legal counsel at CCA-Leavenworth.  *Rowe v. Albertson's, Inc.*, 178 Fed. App'x 859, 861 (10th Cir. 2006) (explaining that "the person requesting the presumption of spoliation has the affirmative burden of persuasion to demonstrate the potential relevance of the unavailable evidence"); *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998) (explaining that "before we permit the drawing of an adverse inference, we require some showing indicating that the destroyed evidence would have been relevant to the contested issue").  Here, the petitioners had to produce some evidence that relevant ESI—showing whether, when, and by whom the AVPC was used to watch a soundless video recording of his meeting with defense counsel—would have been created on one or both of the AVPC hard drives.  No petitioner has produced *any evidence* that *any* such ESI was created as to him.

Significantly, this very same issue was joined in the *Carter/Black* litigation.  On October 10, 2018, at the *Carter/Black* evidentiary hearing, the FPD's forensic analyst, Tami Loehrs, testified as follows:

> Q:      Now, you testified I believe that a Windows 7 operating system performs certain logging functions. Correct?
>
> A:      Yes.
>
> Q:      And it will perform those logging functions independently of what kinds of proprietary software the user loads onto the system?
>
> A:      Correct.
>
> Q:      And one of those things it will tell you, for example, is when was the last time somebody used this particular piece of software on the system?

A:      It will show you when it was last opened.

Q:      Thank you. That-- that's the terminology.

A:       Yes.

Q:      In other words, I can open it today and use it a month from now and the Windows logging system would show me the day I opened it up?

A:      Well, if you opened it a month from now—

Q:      Never closed it.

A:      Oh, never closed it?

Q:      Never closed it.

A:      I don't know if that would happen, but okay, I guess. Yeah, I mean, I guess if you never closed it, sure, it would show the last open date from when it was opened.

Q:      So based on your understanding of the logging function of the Windows operating system, it would show when a piece of software was opened, but it won't show the instance the piece of software was used?

A:      Not Windows specifically, no.

Q:      Okay. In addition to whatever logging functions are on a Windows 7 operating system, the PELCO player itself may have had logging functions. Correct?

A:      Correct.

Q:      But you simply don't know if it did or what they are from where you sit?

A:      That's correct.

Q:      And in addition to that, you said that your understanding was the PELCO software that you download would interact with some server somewhere on the Internet in order to run; is that correct?

A:      No. It's a plug-in to your web browser.

Q:      Okay.

A:      So your Internet Explorer, it's actually connected to your Internet Explorer so it becomes part of your web browser.

4

Q:    So the Internet Explorer may have some logging function that works in conjunction with the PELCO player?

A:    Exactly, yes.

Q:    But you don't know that because you couldn't open the PELCO player?

A:    Well, I know Internet Explorer logs files that have been opened, so I do know that that has logging functions. I don't know what PELCO specifically has in combination with that.

     *****

Q:    Are you able to tell us what sort of logging would occur?  If the PELCO plug-in to Internet Explorer was operational, would you know what logging would occur?

A:    I do not.

Hearing Transcript, *United States v. Carter*, Case No. 16-cr-20032-JAR, October 10, 2018 at pp.

1848-51.  Later, Ms. Loehrs testified as follows:

Q:    When you answered questions about the logging functions of other viewers you've used, you don't know which of those functions the PELCO software has, do you?

A:    Correct.

Q:    Would the best way to figure out what logging function the PELCO software in use in 2016 had—strike that.  If you were trying to find out the logging function the PELCO software that was used in 2016 had, would the best way to do it to be to locate an executable file, to download that software and test it?

A:    The best way would be the computer that had it, if that computer still has the software or the executable file.

Q:    Did anybody ask you to look for that?

A:    No.

Q:    Would the next best way to be to find the same software and test it on another computer?

A:    Yes.

Q:    Did anybody ask you to do that?

5

A:      No.

*Id.* at pp. 1860-61.

Accordingly, in its proposed Findings of Fact and Conclusions of Law, the government opposed any request for adverse inferences based on a spoliation claim by the Federal Public Defender, who was an intervener in that case.  The government argued, among other things, that "even assuming that some unidentified AUSA or other government official managed to surreptitiously gain access to the AVPC and CCA-Leavenworth video in [USAO employee Pauletta] Boyd's office, managed to load and use the necessary PELCO video player software, and locate the video evidence, there is no proof that either the Windows operating system, the PELCO software, or the web-browser on the AVPC logged any information about this activity other than the date and time the PELCO player was opened."  *United States v. Carter*, Case No. 16-cr-20032-JAR, Doc. 745 at 144.

This Court agreed.  It rejected the FPD's spoliation claim, including because there was no proof that relevant ESI was ever created on the AVPC in the first place.  *United States v. Carter*, Case No. 16-cr-20032-JAR, Doc. 758 at 131 ("There is no evidence that establishes whether metadata resided on the AVPC hard drive showing information about users' access to the PELCO player other than Boyd.").[1]  The point here is not that this Court's spoliation decision in *Carter* has preclusive effect in this separate § 2255 litigation; rather, this earlier ruling demonstrates that the FPD was on notice that any motion for a spoliation sanction would require evidence that ESI/metadata relevant to its claim would have been created on one or both of the AVPC hard

---

[1] *See also id.* at 132 ("Under these circumstances, the Court cannot make a finding that metadata or logging information, *to the extent it existed in the first place*, cannot be restored. Thus, spoliation sanctions are not available under Rule 37(e) for the destruction of information on the AVPC on this record.") (emphasis added).

drives in the first instance, specifically ESI showing that one or more government officials viewed the soundless video recordings.  None of these three petitioners, nor any other § 2255 petitioner in this litigation, is entitled to an adverse inference without showing that relevant ESI/metadata would have been created on the AVPC, meaning ESI showing that a government official viewed the petitioner's  meeting with his legal counsel.  Such a showing is necessary, but not sufficient, to support a spoliation claim.

By March 2020—six months ago—the petitioners and their forensic specialist had the means necessary to determine exactly what logging ESI/metadata would have been created on the AVPC had a government official viewed any of the soundless video recordings of inmate-attorney meetings.  As Loehrs explained in her forensic report in this case, Document #561-1, by that date, she was in possession of a computer running the same Windows 7 operating system that was on the AVPC before its upgrade, and the same version of the PELCO viewing software that had been loaded on the AVPC.  *See* Doc. 561-1 at 8 ("I installed that software on a test machine running Windows 7 which is the operating system used by Ms. Boyd prior to the upgrade."); *id.* at 9 ("On March 10, 2020 . . . I received a DVD with the DX8100 Client software purported to be the version of software installed on the AV-PC.").  Further, this Court had provided to the FPD the CCA-Leavenworth video recordings.[2]  Consequently, the petitioners were in a position to determine exactly what logging ESI is created by watching the CCA-Leavenworth video recordings, including, for example, whether any ESI is created showing the portion of video that was watched, or who was logged into the AVPC when any such viewing occurred.[3]

---

[2] These video recordings have not been made available to the government despite repeated requests.

[3] In the *Carter* litigation, it was established that only one of the six external hard drives contained soundless video of inmate-attorney meetings.  Further, for anyone to use the AVPC to view video

But, the petitioners have made *no showing at all* of the nature of any ESI that would be created by operation of the Pelco viewing software.  Instead, the Loehrs report offers only assertions about certain ESI that is created during the *installation* (not *operation*) of the Pelco viewing software, *see, e.g.*, Doc. 561-1 at 9 ("I forensically analyzed the computer to identify artifacts created by installing the software."), and generalized, unhelpful conclusory statements that ESI *of some sort* is created by operation of the viewing software.  *Id.* at 7 (describing efforts to locate forensic evidence now on the AVPC hard drives, with no mention of what would have been created by use of the Pelco software); *id.* (referring to "the forensic artifacts I would expect to find from the installation and use of the Pelco Media Player, the government *may have* been able to generate log files from the Pelco account that was used to login and view the CCA" without describing any effort to determine what logging information actually would be created by use of the viewing software) (emphasis added).  Nowhere does Ms. Loehrs' report describe the specific logging ESI created—by Windows 7, by the Pelco viewing software, or by the web browser—during *operation* of the Pelco viewer.  And, the petitioners' Spoliation Motion simply *assumes* that relevant ESI was created, without ever citing to *any* evidence supporting this assumption or bothering to describe the nature of such ESI/metadata.  *See, e.g.*, Doc. 560 at 1 (stating without support in the record that "[the government] possessed electronically stored information (ESI) relevant to that litigation"); *id.* at 2 (falsely stating that "the government knew the ESI at issue was relevant to the imminent Sixth Amendment claims of Petitioners and others like them"); *id.* at 3 (falsely stating that "the government knew by August 30, 2016, that the lost ESI was relevant to this imminent litigation"); *id.* at 10 (falsely stating that "[t]he government

_____

with the Pelco software, they would have had to log in with their own username and password. *United States v. Carter*, Case No. 16-cr-20032-JAR, October 3, 2018 at pp. 986-88, 1032-34.

knew the ESI on the AVPC's hard drives was relevant to the imminent Sixth Amendment claims of Petitioners and others like them.").

There are two explanations for this deficit of supporting evidence.  The first is that the petitioners simply neglected to ask Ms. Loehrs to perform the simple forensic task of determining what ESI logging data is created when the Pelco player is used, even though this Court made clear in *Carter* that such evidence is necessary.  The second is that the petitioners *did* task Loehrs to determine the nature of the ESI created and the outcome of her efforts was inconsistent with their spoliation motion—namely, her test showed that no relevant ESI would have been created on the AVPC.  It does not matter which of these possibilities explains the deficit of evidence; whatever the reason, the petitioners' failure to provide the evidence that this Court made clear is necessary defeats their spoliation motion.[4]

C.      **There is No Evidence of Spoliation by the Federal Prosecutors of These Petitioners.**

It is beyond dispute that the Kansas USAO withdrew from the criminal prosecution of these three petitioners on April 25, 2016, *see United States v. Dehaven, et al*; Case No. 16-cr-20041-JAR, Docket Entry #15, well before the September 6, 2016 upgrade of the USAO Kansas AVPC; and that Assistant United States Attorneys from the WDMO USAO prosecuted that criminal case to final judgment.  Further, there is no allegation that any of these three petitioners made any request to the WDMO USAO to preserve any ESI/metadata stored on the USAO Kansas AVPC, or that the WDMO USAO either knew or reasonably could have known of imminent litigation in which such ESI/metadata (had it ever existed) was relevant.  *See Equal Employment Opportunity*

---

[4] If the Court has any uncertainty about whether to deny the spoliation motion, the government requests that it conduct an evidentiary hearing at which the Court and the government can question Ms. Loehrs about the ESI that is created by operating the relevant Pelco viewing software on a computer with the Windows 7 operating system and, if necessary, have Ms. Loehrs conduct a demonstration for the Court.

*Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 964 (10th Cir. 2017) (describing "imminent" litigation requirement). Further, there is no allegation or proof that the WDMO AUSAs acted in bad faith in any way regarding any stored ESI. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (requiring showing of bad faith to support adverse inference based on spoliation). As a result, there is no proof of spoliation here and no basis for drawing an adverse inference in favor of these three petitioners.

D.     **These § 2255 Motions are Too Remote in Time from the Alleged Spoliation in an Entirely Different Case to Support a Sanction.**

Even had one or more of these petitioners established that the AVPC upgrade caused the loss of ESI relevant to his § 2255 claim, his spoliation motion would fail. The computer upgrade occurred on September 6, 2016, during the *Carter/Black* litigation. Any proven loss of relevant evidence through the government's actions may have had a bearing on the propriety of a spoliation claim *in that litigation*. But, this is different litigation. And these petitioners did not file their § 2255 motions until approximately *two years or more* later, too long afterwards to support any viable claim that this litigation was "imminent" at the time of the AVPC upgrade. *See United States v. Dehaven*, 16-cr-20041-JAR, Doc. 95 (Mebane § 2255 motion, filed August 13, 2018); *id.* at Doc. 107 (Dehaven § 2255 motion, filed September 18, 2018); *id.* at 119 (Wright § 2255 motion, filed July 17, 2019). Under these circumstances, there is no viable spoliation claim.

The government further adopts, joins in, and incorporates by reference the arguments made at pages 141-45 of Document 745 in *United States v. Carter*, 16-cr-20032-JAR, and in the response of the USAO Kansas to the petitioners' Spoliation Motion.

E.     **Conclusion**

For the reasons stated above, the government respectfully requests that the Court deny the petitioners' Spoliation Motion and request for adverse inferences.

Respectfully submitted this 25th day of September, 2020.

Steven D. Clymer
Assistant United States Attorney
Special Attorney for the United States
NDNY Bar Roll #509281

United States Attorney's Office
900 Federal Building
100 South Clinton Street
Syracuse, NY 13261
315-448-0672
steven.d.clymer@usdoj.gov

**Certificate of Service**

I hereby certify that on the 25th day of September, 2020, the foregoing was electronically filed with the clerk of the court for the District of Kansas using the CM/ECF system, which will send a notice of electronic filing to all counsel.

*S/Deanna Lieberman*
Deanna Lieberman
United States Attorney's Office
Northern District of New York
