IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**In re: CCA Recordings**
**2255 Litigation**,

                **Case No. 19-cv-2491-JAR-JPO**

    Petitioners,

v.                          **(This Document Relates to All Cases.)**

**United States of America,**

    Respondent.

### UNITED STATES' RESPONSE TO PETITIONERS' MOTION FOR SANCTIONS

Without evidence to support its clients' Sixth Amendment claims—despite years of investigating the U.S. Attorney's Office for the District of Kansas (USAO)—the Federal Public Defender (FPD) has pursued a sanctions-or-bust strategy to litigating these consolidated 28 U.S.C. § 2255 petitions. At the outset, the FPD candidly said its plan was to serve discovery, and when the government is unable to produce the "requested material[,] . . . then . . . ask for an adverse inference and . . . proceed to hearings." Doc. 39 at 29. It is unfortunate these cases have arrived at the FPD's intended destination. And it is telling that the FPD's primary complaint is not that the government failed to produce anything in particular, but that the government should have given up earlier. *See* Doc. 560 at 2, 6-8. The FPD even criticizes the government's "emphasis on the merits" as "misguided." *Id.* at 7. The FPD's avoidance of the merits, only to ask the Court to "deem established" facts that in many cases contradict undisputed facts, and in all cases lack support, undermines the petitioners' motion for sanctions and underscores how ill-suited these consolidated proceedings are to handle individual cases and claims.

The government takes seriously any allegation that a defendant's constitutional rights have been violated, and has worked diligently and in good faith to comply with the extraordinary

discovery requests in these cases. *See* Docs. 117, 125, 359, 401; Doc. 446 at 11. It has been transparent about its efforts, about its need for more time, and about its limitations. *See* Doc. 112 at 1-2; Doc. 117 at 3-4; Doc. 408-2 at 1, 3. The government has not "feigned" (Doc. 560 at 2) anything or "lulled" (*id.* at 8) anyone. The motion for sanctions (Doc. 560) should be denied.

      A.      **The discovery orders exceed the Court's authority.**

The petitioners ask the Court to sanction the United States for its inability to fully comply with certain discovery-related orders. Doc. 560 at 3. No sanction is warranted, however, because the orders (and the procedures adopted in these cases generally) exceed the Court's authority. *See generally* Doc. 540. Many of the cases were improperly taken from the "judge who conducted the proceedings being challenged," even though that judge was available, contrary to Rule 4(a) of the Rules Governing Section 2255 Proceedings. And the § 2255 petitions have not been "examine[d]" to determine whether the "moving party is . . . entitled to relief" before allowing discovery, as Rule 4(b) requires. *See* Doc. 540 at 15-17. Among the most egregious examples, though just the tip of the iceberg, are nine petitioners whose claims are based on soundless videos the USAO received *after entry of judgment* in their criminal cases.

With respect to discovery, in § 2255 proceedings a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a). Under the Federal Rules of Civil Procedure, which the Court has chosen to apply, any discovery must be "proportional to the needs of the case," which requires considering, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The discovery the Court approved—without even requiring Petsamai Phommsaeng (the only living petitioner who has served discovery requests) to allege a Sixth Amendment violation,

2

*see* Doc. 540 at 16 (citing Doc. 56 at 9)—are neither appropriately narrow nor proportional to his Sixth Amendment claims.[1]  *See* Doc. 540 at 20-25.  In response to the requests, the government has devoted countless attorney and staff hours, and more than $300,000 contracting for outside resources to respond.  It collected and reviewed nearly 100,000 e-mails and attachments, and produced more than 20,000 of them.  It reviewed more than 100 physical case files and produced more than 2,700 pages from those files.  *See* Doc. 359 at 5-10.  In addition, the USAO sent 20 retired hard drives from computers assigned to the Assistant United States Attorneys who prosecuted the petitioners' cases to the Department's Computer Crimes and Intellectual Property Section Cybercrime Laboratory ("CCIPS Lab"), in Washington, D.C.  The Lab found no evidence of the audio files or video files containing the recordings that form the basis of the petitioners' claims, except on the hard drive of former SAUSA Erin Tomasic, whose assignment to the USAO was terminated in May 2017.  *See* Doc. 359 at 8-10; Doc. 401 at 7-8; Doc. 401-4.

Yet the Court insisted that the government provide additional discovery that is estimated to cost at least $3.5 million and take more than a year to produce.  *See* Doc. 395-1 at 2, ¶¶ 8-9; Doc. 401-2 at 2-4.  And it ordered the government to do so in just 32 days*, see* Doc. 446 at 18-19, which is impossible, *see* Doc. 540 at 26-28.  At the same time, the Court has shielded the petitioners from the government's discovery requests and declined to engage with the parties.[2]

**B.    The sanctions requested are improper and exceed the Court's discretion.**

**1.**   The petitioners' motion for sanctions is filed on behalf of "each petitioner."  Doc. 560

---

[1] Petitioner Mamoudou M. Kaba also served a request for production of documents, but he has since passed away.  *See* Doc. 374.  For simplicity, the government refers to all approved discovery requests as being Phommaseng's requests.  *See* Doc. 475 at 1-2.

[2] The petitioners' motion for review of Chief Magistrate Judge James P. O'Hara's order granting in large part the government's motion for leave to serve discovery has been fully briefed for 57 days. *See* Docs. 230, 354, 410, 471.  The government's motions challenging the petitioners' privilege logs have been fully briefed for 70 days. *See* Docs. 400, 411.  The government has asked the Court to hold a conference or hearing with the parties to address scheduling and discovery issues twice, and the Court has declined each time.  *See* Doc. 117 at 4; Doc. 127; Doc. 401 at 2; Doc. 446.

3

at 5. But the Court has found only one petitioner—Phommaseng—to have shown good cause to serve discovery. No other petitioner has shown good cause, and many could not do so given the facts of their cases. Those petitioners are not entitled to discovery from the government, and have no basis for requesting sanctions based on Phommaseng's requests. *See* Doc. 123 at 8.[3]

**2.** "Default judgments against the United States are especially disfavored." *Harvey v. United States*, 685 F.3d 939, 946 (10th Cir. 2012). Under Fed. R. Civ. P. 55(d), "a default judgment may be entered against the United States . . . only if the claimant establishes a claim or right to relief by evidence that satisfies the court." Here, no petitioner has presented evidence that his or her Sixth Amendment rights were violated. *See, e.g.*, *Harvey*, 685 F.3d at 946 (requiring evidence). Also, "[d]efault judgment is not an available procedural tool for [a] petitioner in a habeas corpus case." *Blaurock v. Kansas*, No. 15-3274-DDC, 2016 WL 5410828, at *3 (D. Kan. Sept. 28, 2016); *cf. Stines v. Martin*, 849 F.2d 1323, 1324 (10th Cir. 1988) (leaving open the possibility of default judgment as a sanction only where the government's "delay itself rises to the level of a due process violation").

**3.** The Court's "discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular "claim" which was at issue in the order to provide discovery.'" *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (*CBG*)). Phommaseng must demonstrate a connection between the sanctions sought and the particular "facts" he was "seeking to establish through discovery." *CBG*, 456 U.S. at 709. The "most severe sanctions of dismissal or default," however, may "be imposed only if the failure to

---

[3] *See* Doc. 105; Doc. 130; Doc. 142; Doc. 189 (certificates of service that make clear the requests are for Phommaseng and Kaba alone). The Court's order allowing the petitioners to share discovery the government provided to Phommaseng does not mean each petitioner is deemed to have shown good cause or is entitled to discovery. *See* Doc. 96.

comply is due to willfulness, bad faith, or fault, *and not to an inability to comply*." *In re Attorney Gen. of U.S.*, 596 F.2d 58, 66 (2d Cir. 1979) (emphasis added).[4]

The petitioners ask the Court to "treat as admitted those facts Petitioners might have proved but for the government's refusal to produce discovery." Doc. 560 at 4. But they have not articulated any connection between the facts they ask the Court to "deem established" and any portion of Phommaseng's discovery requests to which the government has not responded. In roughly half of the petitioners' cases, facts the petitioners ask the Court to deem established contradict undisputed, publicly available facts. And the government has not acted in bad faith. Filing the notice that it could not comply with the remaining aspects of Phommaseng's discovery requests was not the United States' preferred course; it was a last resort forced by the Court's and the petitioners' unlawful and unreasonable demands that left the government with no choice given the literal impossibility of responding to the remaining aspects of Phommaseng's discovery requests in 32 days, *see* Doc. 540 at 26, or even within the six-month time frame the petitioners prefer to use, *see* Doc. 560 at 1. *See Patterson v. C.I.T. Corp.*, 352 F.2d 333, 336 (10th Cir. 1965) ("involuntary noncompliance" does not justify dismissal as sanction). The United States has established, with affidavits, its inability to comply. *See* Docs. 359, 401. The Court lacks discretion to impose the sanctions the petitioners request.

    **a.** The petitioners ask the Court to deem established a variety of facts that for many petitioners are *demonstrably false*. *See* Doc. 560 at 5 (bullet points 1, 3, 4, 5). For example,

- At least nine of the petitioners with soundless video claims were sentenced before June 1, 2016, when the USAO received the soundless videos;[5]

---

[4] Although "[n]o wrongful intent need be shown," dispositive sanctions cannot be imposed where a party's failure to comply with an order is due to "inability." *In re Standard Metals Corp.*, 817 F.2d 625, 629 (10th Cir. 1987). *See also* 8B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2283 (3d ed.).

[5] There is no good faith basis for the claims in these cases or the 12 below. *See* Fed. R. Civ. P. 11(b). It "plainly appears" the "moving party is not entitled to relief." Rule 4(b) of the Rules Governing 2255 Proceedings.

- In at least 12 other cases the petitioners entered binding pleas to a specific term of imprisonment on or before June 1, 2016;

- Another 28 pleaded guilty or were convicted at trial before June 1, 2016; and

- Three other petitioners were prosecuted by the Western District of Missouri.

The government produced all responsive documents from each petitioner's physical file, except for one that could not be located, and responsive e-mails from between May 2014 and April 2020.  *See* Doc. 359 at 6 n.7.  Given the discovery the government has produced, and the petitioners' failure to articulate a basis for imposing sanctions in any particular case, deeming established any facts in any case would be an abuse of discretion.

**b.**  The petitioners ask the Court to deem established that the recordings at issue "captured and reveal confidential attorney-client communications that concern matters related to legal advice or strategy sought by the petitioner."  Doc. 560 at 5.  This "fact" is unrelated to the government's inability to fully comply with Phommaseng's discovery requests.  The petitioners alone have the recordings and nothing the government could produce in response to Phommaseng's requests would bear on the content of the recordings.

**c.**  The petitioners ask the Court to deem established that, but for the prosecution team becoming privy to the recordings at issue, the Court would have imposed uniformly less severe sentences on each petitioner.  Doc. 560 at 5.  Again, this flies in the face of undisputed facts in many petitioners' cases.  If the petitioners are seeking by this sanction a modification of their sentences, the Court lacks authority to do so.  *See* 18 U.S.C. § 3582; *see also* Doc. 474 at 10.

**d.**  The petitioners ask the Court to deem established that the petitioners cannot fairly be retried (though only a few were tried in the first place).  Sixth Amendment claims "are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."  *Shillinger v. Haworth*,

6

70 F.3d 1132, 1142 (10th Cir. 1995).  Whether a defendant can be fairly retried requires considering all circumstances and options, including "retrial by a new prosecutor." *Id.*  The petitioners fail to explain how any approved discovery would have established that no petitioner could be fairly retried, including by an out-of-district prosecutor.  *See United States v. Orozco*, 916 F.3d 919, 926 (10th Cir. 2019) (reversing determination that defendant could not be retried).

  **4.** Each of the additional requested sanctions (Doc. 560 at 6) is deficient because none identifies any connection between the sanction sought and particular "facts" the petitioners were "seeking to establish through discovery." *CBG*, 456 U.S. at 709.  The Court lacks discretion to impose a sanction without that connection.  *Ehrenhaus*, 965 F.2d at 920.  Striking government defenses, motions, arguments, or discovery without notice of the facts Phommaseng sought but was unable to establish through discovery would be inappropriate.  *See White v. Gen. Motors Corp.*, 908 F.2d 675, 686 (10th Cir. 1990) (requiring "persons to be sanctioned be provided enough detail concerning the basis of the requested fees to permit an intelligent analysis").

  For example, the petitioners' privilege logs purport to describe evidence in the FPD's sole possession, the government's challenges are unrelated to Phommaseng's discovery requests, and depriving the government of the petitioners' evidence violates principles of due process.  *See* Docs. 36, 42, 355, 400.  The government's procedural defenses are also based on information in the petitioners' sole possession and are unrelated to Phommaseng's requests.  And "if the government raises procedural bar, the courts must enforce it . . . ." *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994).  Other defenses challenge whether the Court has Article III jurisdiction to adjudicate certain claims.  *See* Doc. 474 at 9-10; Doc. 552-1.  Those defenses are primarily if not entirely based on publicly available, undisputed facts.  Even if the Court strikes those defenses, it has an independent obligation to determine whether it has jurisdiction—*before*

7

imposing any sanction. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1122 (10th Cir. 2003) ("Article III limits a federal court's authority to impose and enforce sanctions . . . ."). "[T]he court's jurisdiction . . . must be addressed before proceeding." *Carolina Cas. Ins. Co. v. Pinnacol Assur.*, 425 F.3d 921, 926 (10th Cir. 2005). It "can't 'assume,'" or "deem established" (Doc. 560 at 5), a petitioner's "Article III standing." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016).

      **C.**      **Imposing dispositive sanctions would be an abuse of discretion.**

*First*, the petitioners' motion for sanctions does not identify any "actual prejudice" due to the government's inability to fully comply with Phommaseng's discovery requests. *Ehrenhaus*, 965 F.2d at 921. The only purported prejudice they identify is "delaying notice" that the government would be unable to fully comply with the requests. Doc. 560 at 7. The petitioners' only basis for this claim is speculation—and it is wrong. The government did not "delay"; the government "made good-faith efforts to comply with discovery orders," Doc. 446 at 11.

These consolidated cases have been on a breakneck pace. *See* Doc. 39 at 30; *see also* Scheduling Order (Doc. 22) at 2, *Huff v. CoreCivic, Inc.*, No. 17-2320-JAR-JPO (D. Kan.) (giving private parties in a related case 10 months for class certification discovery alone). For six months, the government diligently and in good faith worked to produce as much of the most-relevant discovery as possible. *See* Docs. 117, 359, 401. As early as April 2020, the government said its ability to search network storage locations was "an open question." Doc. 117 at 3. Since June 4, 2020, the FPD has known the government's position that certain electronically stored information is not in the government's possession, custody, or control, and that the government was still in the process of identifying all locations it would need to search. Doc. 408-2 at 1-3. The government has worked diligently and in good faith to assess and comply with

Phommaseng's requests. The ordinary time it takes to conduct discovery and litigate a complex case, and the ordinary burdens of pursuing one's claims, is not "actual prejudice."[6]

*Second*, the petitioners claim the government has interfered with the judicial process by attempting to ascertain the scope of and comply with Phommaseng's approved discovery requests, before finally determining that full compliance was impossible, instead of refusing to comply from the outset. *See* Doc. 560 at 8. That is absurd, but unfortunately not surprising. To the contrary, it is the petitioners' avowed use of discovery requests as a tool for seeking sanctions—rather than information—that has interfered with the judicial process.

*Third*, the government has not acted in bad faith. The government has devoted enormous time and resources to these cases in an effort to fully comply with all of its obligations. As the government has detailed before, those efforts yielded the production of more than 160,000 pages. *See* Doc. 401 at 8-9. That was the product of searching more than 100 physical files, nearly 100,000 e-mails, more than 1,700 discarded media, and other electronic and physical files. *Id.* at 8-9, 13-14; Doc. 359 at 18. The government also provided 70 pages of interrogatory responses, filed more than 90 responses to the petitions, filled out portions of more than 100 fact sheets, voluntarily had 20 computer hard-drives forensically searched, and produced an expert report—all in six months. The government also worked to assess the other electronic storage locations Phommaseng's requests identified, and sought bids from third-party contractors to do the work. When the government learned the cost and time it would take to complete, it became obvious that it was impossible to comply with the requests—and would have been impossible even if the government had begun the multi-million-dollar project the moment the Court approved the requests. Only after it became clear the petitioners' and the Court's expectations were

---

[6] This case is not like *King v. Fleming*, 899 F.3d 1140, 1151 (10th Cir. 2018). *See* Doc. 560 at 6 n.21. The government has not relied on any false evidence or premise to perpetuate this litigation.

impossible to satisfy (completing a $3.5 million, 1-year discovery production in 32 days) did the government conclude that it finally had to surrender.  *See* Docs. 359, 401, 540.

*Fourth*, from the outset of this litigation the FPD has said it intended to move for sanctions—even before any of Phommaseng's discovery requests were granted.  *See* Doc. 39 at 29.  Neither the initial threat of requesting sanctions, nor the petitioners' motion, however, provide sufficient notice of the basis for the sanctions sought.  *See White*, 908 F.2d at 686.

*Fifth*, any sanction should be the least severe necessary to serve its purpose, and "dismissal . . . or its equivalent [i]s 'a weapon of last, rather than first, resort.'" *T & W Funding Co. XII v. Pennant Rent-A-Car Midwest, Inc.*, 210 F.R.D. 730, 734 (D. Kan. 2002).  The petitioners request across-the-board dispositive sanctions without articulating any actual prejudice to any particular petitioner.  No sanction, much less dispositive sanctions, are warranted on this record.  *See, e.g.*, *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 739-40 (10th Cir. 2005) (faulting district court for not explaining what "relevant electronic data" should have been preserved and produced).  Further, any sanction should be limited to the Phommaseng case.  And certainly a lesser sanction than dismissal would suffice if any sanction is warranted.

## CONCLUSION

The petitioners' motion for sanctions should be denied.  If the Court is inclined to impose sanctions, the government requests notice and an opportunity to be heard on the specific basis for any such sanction.  The government repeats its request that the Court rule on—and deny—the petitioners' pending § 2255 petitions without further discovery from the government.  If the Court does not dismiss the petitions, the government asks the Court to rule on the petitioners' motion for sanctions, all pending motions (Docs. 351, 352, 353, 354, 355, 474), and any later-filed dispositive motions at least 90 days before any evidentiary hearings are held.

Respectfully submitted,

s/ Stephen R. McAllister
Stephen R. McAllister, #15845
United States Attorney
District of Kansas
500 State Ave., Suite 360
Kansas City, KS 66101
Tel: (913) 551-6730
stephen.mcallister@usdoj.gov

Attorney for the United States in the consolidated cases except for *DeHaven v. United States*, No. 18-cv-2474, *Mebane v. United States*, No. 18-cv-2413, *Wright v. United States*, No. 19-cv-2400

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2020, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in the above-captioned case.

s/ Stephen R. McAllister