# In the United States District Court
## For the District of Kansas

**In re: CCA Recordings 2255 Litigation**

     Petitioners,

v.

**United States of America,**

     Respondent.

**Case No. 2:19-cv-2491**
**(This Document Relates to All Cases)**

---

### Petitioners' Reply to Government's Response to Motion for Sanctions

---

The United States government and the attorneys who represent it wield enormous power in criminal proceedings. Federal courts have the authority and obligation to ensure they do so responsibly and ethically—and to "hold them accountable if they do not."[1] Petitioners ask the Court to exercise that authority here by imposing dispositive sanctions.

## 1. The Court has authority to impose sanctions in all cases.

The government says Petsamai Phommaseng is the only petitioner who can request sanctions.[2] Although Mr. Phommaseng is the only petitioner who sought discovery, all Petitioners may rely on the discovery he sought. So all Petitioners were prejudiced when the government refused to produce that discovery. Thus, all Petitioners may request Rule 37(b) sanctions.[3] Rule 6 doesn't counsel otherwise.[4]

---

[1] *United States v. Nejad*, 2020 WL 5549931, at *2 (S.D.N.Y. Sept. 16, 2020).

[2] *See* Doc. 570 at 2–4, 10.

[3] *See Payne v. Exxon Corp.*, 121 F.3d 503, 509–10 (9th Cir. 1997); Doc. 96 at 1 (ruling Petitioners may share discovery).

[4] *See* Rule 6 (requiring parties to get court approval before serving attached discovery requests); *Harris v. Nelson*, 394 U.S. 286, 297–98 (1969) (explaining that allowing petitioners to serve discovery without such preapproval would impermissibly burden the recipients of the requests); *compare* D. Kan. R. 26.3(a) (noting that discovery requests aren't filed with the Court), *with* D. Kan. R. 7.1(a)

And even if it did, Petitioners invoke other sources of the Court's sanction authority, none of which require them to "show[] good cause."[5]

The government says the Court has no such authority in the reassigned cases. But any challenge to the reassignment orders is untimely.[6] Besides, there's no evidence the clerk failed to "promptly forward" each § 2255 motion to the presiding judge, if available.[7] Indeed, the fact that some motions were later reassigned to this Court proves they were first assigned to a different judge.[8] Likewise, in the absence of contrary evidence, Petitioners presume the Court "promptly examine[d]" their motions and determined summary dismissal was inappropriate.[9] Alternatively, if the Court opted to delay this analysis until discovery was complete, the government acquiesced to the delay by agreeing Petitioners could share discovery.[10]

## 2. The requested sanctions are just and related to Petitioners' claims.

The government professes confusion as to the connection between the requested sanctions and the "portion of [the] discovery requests" it refused to respond to.[11] But the government didn't refuse to fully respond to some portion of the requests. It refused to fully respond to *all* of them. And this Court has already determined those

---

(requiring Petitioners to file their sanctions motion with the Court, thereby triggering the Court's oversight and rendering further preapproval unnecessary under the letter or spirit of Rule 6).

[5] Doc. 570 at 4; *see* Doc. 560 at 3 & nn.9–11 (invoking Rule 16(f) and this Court's inherent authority).

[6] *See* Doc. 527 at 3 & n.13 (citing D. Kan. R. 7.3(b)).

[7] Rule 4(a).

[8] *See, e.g.*, Minute Order, *Vasquez-Montalvo v. United States*, 5:18-cv-04101-JAR-JPO (D. Kan. Aug. 22, 2019) ("Case *reassigned* to Chief District Judge Julie A. Robinson and Magistrate Judge James P. O'Hara . . . . District Judge Daniel D. Crabtree *no longer* assigned to case." (emphases added)).

[9] Rule 4(b); *see United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir. 2007).

[10] *See* Doc. 90 at 3; Rule 6 of the Rules Governing § 2254 Proceedings, committee's notes to 1976 adoption (recognizing that courts may authorize discovery before—and rely on discovery in—determining whether evidentiary hearings are warranted).

[11] Doc. 570 at 5.

requests seek facts that are relevant to the only "particular 'claim' . . . at issue."[12] The government is familiar with (1) the established elements of that claim; (2) its own theories regarding additional elements; and (3) its own defenses. The connections between these matters, the approved discovery requests, and the facts that Petitioners ask the Court to deem established are self-evident.[13]

Further, Petitioners explained how their sanction requests are collectively connected to the government's misconduct. Where, as here, a defendant opts to defy existing discovery orders and states it has no intention of complying with future ones, default judgment is warranted—both to deter and to punish.[14] Thus, if the Court cannot enter default judgment, it should impose its functional equivalent: the Court should deem established any facts that Petitioners must actually or supposedly prove;[15] preclude the government from advancing its defenses or opposing Petitioners' claims;[16] strike any filings in which the government has

---

[12] *Id.* at 4 (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992)); *see* Rule 6(b) (requiring courts to find that requests are relevant and narrow before approving them).

[13] *See, e.g.*, Doc. 56 at 8 (recognizing that Petitioners needed discovery to prove the privy-to element of their *Shillinger* claims); Doc. 50 at 5 ¶1(a) (requesting information showing the government became privy to Petitioners' recorded communications); Doc. 560 at 5 (asking the Court to sanction the government's refusal to fully respond to this request by deeming this fact established).

[14] *See* Doc. 560 at 3–6, 10. The Court need not try lesser sanctions first; the government has said it won't produce the discovery no matter how many chances the Court gives it. Doc. 540 at 29; *see Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv.*, 776 F.3d 1, 7 (D.C. Cir. 2015).

[15] *See* Doc. 560 at 5 & n.20. The government disputes Petitioners' proposed facts. Doc. 570 at 5–6. But such factual disputes are what trigger requests for adverse inferences, not what defeat them; courts need not presume what the parties agree is so. In any event, even if the government's assertions are true, that doesn't mean Petitioners' are false. *Compare* Doc. 570 at 6 (stating some petitioners were *convicted* before the government obtained the recordings), *with* Doc. 560 at 5 (asking the Court to presume the government became privy to those recordings before each petitioner was convicted *or sentenced*). And even if the evidence necessary to prove certain facts is in Petitioners' possession, the Court may still preclude the government from attempting to disprove those facts. *Grochocinski v. Schlossberg*, 402 B.R. 825, 833, 843 (N.D. Ill. 2009); *cf.* Doc. 570 at 6.

[16] Although the Court should indeed consider any procedural bars the government actually raises, it has discretion to preclude the government from raising such bars in the first place. *Bennett v.*

already done so; and relieve Petitioners of the obligation to produce information the government might rely on to do so in the future.[17]

### 3. The relevant factors weigh in favor of imposing dispositive sanctions.

The government's *Ehrenhaus* analysis neither acknowledges nor addresses Petitioners' actual arguments. Petitioners don't rely solely on the government's delayed notice to prove prejudice; they also describe how the government deprived them of critical information.[18] Petitioners don't assert their motion put the government on notice that sanctions were possible; they assert this Court's earlier warnings did so.[19] Petitioners don't seek to avoid the underlying merits; they recognize the underlying merits are irrelevant to the issue at hand.[20] Petitioners don't argue the government should have "given up" on fully responding sooner; they assert the government should have been up front about the fact that it never intended to fully respond in the first place.[21] Petitioners don't dispute that the government searched some laptop hard drives; they note it declined to fully review

---

*Collins*, 835 F. Supp. 930, 934 (E.D. Tex. 1993); *cf.* Doc. 570 at 7. Further, the Court may impose punitive sanctions even in the absence of underlying subject-matter jurisdiction. *See Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1552, 1554–57 (10th Cir. 1996); *accord Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1122 n.9 (10th Cir. 2003); *cf.* Doc. 570 at 7–8.

[17] "It would be nonsensical" to require Petitioners to finish producing discovery when the government refuses to do so—especially if the Court strikes the government's defenses. *Bennett*, 835 F. Supp. at 937; *see* Fed. R. Civ. P. 26(b)(2)(C)(iii). Further, the Court didn't "shield[]" Petitioners from the government's discovery requests; it merely stayed their time for responding *per the parties' agreement*. Doc. 570 at 3; *see* Doc. 380. Despite this stay, Petitioners have informally responded to approximately 600 ROGs and formally responded to approximately 300 RFPs. Doc. 380; Doc. 390.

[18] *Compare* Doc. 570 at 8, *with* Doc. 560 at 6 & n.22.

[19] *Compare* Doc. 570 at 10, *with* Doc. 560 at 9–10 & n.36. Petitioners also assert actual notice isn't required, especially because the government acknowledged the Court could sanction it. Doc. 540 at 1.

[20] *Compare* Doc. 570 at 1, *with* Doc. 560 at 7 & nn.24–25.

[21] Doc. 570 at 1; *compare id.* at 9, *with* Doc. 560 at 7–9 & nn.27–28, 32 (noting the government openly admitted that its reasons for choosing not to fully respond are "not new" (quoting Doc. 540 at 1 n.1)).

the results of those searches and refused to search other laptop hard drives altogether.[22] And Petitioners don't rely solely on the government's initial failure to search certain repositories; they also cite its willful refusal to avail itself of the extra 32 days the Court gave it to perform that task. Perhaps the government would have been unable to produce all the requested information within those 32 days, or even within six months. But it could have produced some of it.[23] By refusing to even try, the government fatally undermined its impossibility argument.[24]

## 4. Conclusion

The government is right about one thing: the FPD suspected it would have to request adverse inferences. But that's because the FPD knew the government didn't preserve certain information. It wasn't because the FPD predicted the government would refuse to produce the information it *did* preserve—something the government assured Petitioners and this Court it would not do.[25] The monetary cost of making good on these assurances would have been high. The societal cost of allowing the government to renege on those assurances with impunity would be higher.[26]

---

[22] *Compare* Doc. 570 at 3, *with* Doc. 359 at 9, Doc. 408 at 2, *and* Doc. 408-2.

[23] *See* Doc. 446 at 19 n.64; Att. 1 at 1, 3–4, 5–6 (asking the government to prioritize certain searches).

[24] *Compare* Doc. 570 at 9–10, *with* Doc. 560 at 9 & nn.34–35 (citing Doc. 560-1; Doc. 560-2). In support for its doomed impossibility argument, the government says it performed certain acts only *after* "the Court approved the requests." Doc. 570 at 9. In doing so, the government proves what this Court already found: "the Government failed to cooperate with the Special Master by delaying and avoiding document production." *Black* Order at 141; *see* Doc. 560 at 10 & n.37 (arguing the government's discovery violations in *Black* weigh in favor of imposing dispositive sanctions here).

[25] *Compare* Doc. 570 at 1, 9, *with* Doc. 39 at 29 ("I would certainly anticipate the government's response to most of those questions is they don't have the requested material."), *Black* Order at 136 (anticipating this possibility), *and* Doc. 561 (requesting limited and discrete spoliation sanctions); *cf.* Doc. 117 at 4 ("The government . . . does not seek to shirk its responsibility to respond to the petitioners' court-approved discovery requests.").

[26] *See Nejad*, 2020 WL 5549931, at *15 ("With each misstep, the public faith in the criminal-justice system further erodes. With each document wrongfully withheld, an innocent person faces the chance of wrongful conviction.").

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON, #17612
Federal Public Defender for the
District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
Email: melody_brannon@fd.org

s/ Kirk Redmond
KIRK C. REDMOND, #18914
First Assistant Federal Public
Defender
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
kirk_redmond@fd.org

s/ Lydia Krebs
LYDIA KREBS, #22673
Research and Writing Specialist
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
lydia_krebs@fd.org

## CERTIFICATE OF SERVICE

I certify that on 07/[]/2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties and:

Stephen McAllister
United States Attorney
District of Kansas
stephen.mcallister@usdoj.gov

Duston Slinkard
First Assistant U.S. Attorney
Chief, Criminal Division
duston.slinkard@usdoj.gov

s/ Melody Brannon
MELODY BRANNON, #17612