# In the United States District Court
# For the District of Kansas

**In re: CCA Recordings 2255 Litigation**
    Petitioners,

v.

**United States of America,**
    Respondent.

**Case No. 2:19-cv-2491**
**(This Document Relates to All Cases)**

## Petitioners' Reply to Government's Response to Motion for Spoliation Sanctions

In responding to Petitioner's motion for spoliation sanctions, the government focuses almost exclusively on relevance; it says nothing at all about its post-September 6, 2016 conduct. But the government's latter conduct is sufficient, standing alone, to show it acted with the requisite intent to deprive. And a finding that the government acted with the requisite intent to deprive is sufficient, standing alone, to support an inference of relevance. Accordingly, Petitioners ask the Court to grant their motion for spoliation sanctions.

**1. Petitioners demonstrated the requisite intent to deprive.**

The government says Petitioners cannot show it harbored the requisite intent to deprive when, on September 6, 2016, David Steeby initiated the process that reformatted the AVPC's hard drives.[1] But contrary to the government's assertions, USAO managers "kn[e]w enough" by September 6, 2016, to prevent Mr. Steeby from initiating this process.[2] And even if they didn't, the government doesn't dispute that

---

[1] Doc. 571-1 at 2; *see* Fed. R. Civ. P. 37(e)(2).
[2] Doc. 571 at 9–10; *see Black* Ex. 1176 (recognizing six days earlier that although it was possible the AVPC was "not even being replaced," it was also possible the AVPC contained "metadata on the

1

its conduct *after* that date is sufficient to show an intent to deprive.³ Indeed, when it comes to that conduct, the government says nothing at all.

**2. Petitioners need not establish actual relevance.**

The government says Rule 37(e)(2) requires Petitioners to prove it destroyed "*relevant* ESI."⁴ But the plain language of Rule 37(e)(2) contains no actual-relevance requirement. And the Court need not and should not read one into it.⁵

Rule 37(e)(2) is based "on the premise that a party's intentional . . . destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to" that party.⁶ Thus, once a court determines the destroying party acted with the requisite intent to deprive, this finding triggers both "an inference that the lost information was unfavorable to" the destroying party *and* "an inference that the opposing party was prejudiced."⁷ In other words,

---

videos," and that Mr. Steeby should therefore "verify that nothing will be lost"); *id.* ("Check with [Mr. Steeby] to make sure."); Doc. 571 at 9 (admitting no one checked with Mr. Steeby); *Black* Order at 39 (noting the government acknowledged the need for a potential litigation hold as early as August 11, 2016 (citing *Black* Ex. 1207)); *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018) (stating that Rule 37(e)(2)'s intent requirement doesn't distinguish between affirmatively destroying data and passively allowing it to be lost).

³ *See* Doc. 561 at 1–2, 4–5, 7–9 (describing how the government continued to use the AVPC for a month, despite believing the lost ESI remained recoverable unless and until it was overwritten with new data through continued use); *id.* at 7 & n.22 (describing the government's other discovery violations); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 110 (2d Cir. 2002) (explaining that courts may consider *all* intentional acts "that hinder discovery" in deciding whether a party acted with the requisite bad faith, not just those acts that directly caused the destruction of the missing evidence); *United States v. Nejad*, 2020 WL 5549931, at *9, 13 (S.D.N.Y. Sept. 16, 2020) (noting that even when the government offers what appears to be a plausible explanation for one misstep, a pattern of continuing missteps can undermine the credibility of that explanation).
⁴ Doc. 571 at 4 (emphasis added).
⁵ *See Bates v. United States*, 522 U.S. 23, 24 (1997) ("[T]his Court ordinarily resists reading words into a statute that do not appear on its face."); *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 123 (1989) (applying rules of statutory interpretation to the Federal Rules of Civil Procedure).
⁶ Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment.
⁷ *Id.*

Rule 37(e)(2)'s intent element renders proof of prejudice superfluous: once the intent element is satisfied, prejudice is presumed. And under the same rationale, so too is relevance.[8] After all, a party cannot be prejudiced by the loss of ESI in litigation if that ESI is wholly irrelevant to the moving party's claims or defenses.[9]

The fact that the moving party need not separately demonstrate prejudice is what distinguishes Rule 37(e)(1) from Rule 37(e)(2). To impose sanctions under Rule 37(e)(1), a court must make an independent finding of prejudice.[10] To impose sanctions under Rule 37(e)(2), a court must instead find an intent to deprive.[11] This finding triggers an inference of prejudice and, by extension, an inference of relevance—thereby obviating the need to make a separate finding of either.[12] In short, Rule 37(e) requires *either* a finding of prejudice (including a finding of relevance) *or* a finding of intent to deprive. It does not require both.[13]

---

[8] *See Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580–81 (S.D.N.Y. 2017) (explaining that in the adverse-inference context, relevance and prejudice largely overlap; ruling that the evidence before the court established both "relevance *and* prejudice" because it showed the plaintiff acted with the requisite intent to deprive (emphasis added)); *cf. Sampson v. City of Cambridge*, 251 F.R.D. 172, 179 (D. Md. 2008) ("A failure to preserve documents in bad faith, such as intentional or willful conduct, alone establishes that the destroyed documents were relevant. The reason relevance is presumed following a showing of intentional or willful conduct is because of the logical inference that, when a party acts in bad faith, he demonstrates fear that the evidence will expose relevant, unfavorable facts." (citation omitted)); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) ("[I]n the case of willful spoliation[,] the degree of culpability give[s] rise to a presumption of the relevance of the documents destroyed.").

[9] *See Ungar*, 329 F.R.D. at 15 (explaining that for purposes of Rule 37, proving prejudice means proving the lost evidence was relevant to and "would affirmatively support" the moving party's claim); *cf. Zubulake*, 229 F.R.D. at 431 ("In the context of a request for an adverse inference instruction, the concept of 'relevance' encompasses not only the ordinary meaning of the term, but also that the destroyed evidence would have been favorable to the movant.").

[10] *Ungar*, 329 F.R.D. at 15 (citing Fed. R. Civ. P. 37(e)(1)).

[11] *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 371–72 (D. Or. 2017) ("A finding of intent, however, eliminates the requirement that the opposing party be prejudiced by the spoliation.").

[12] *See id.*; Fed. R. Civ. P. Rule 37(e)(2) advisory committee's notes to 2015 amendment (explaining why Rule 37(e)(2) "does not require any further finding of prejudice").

[13] *See, e.g., Ungar*, 329 F.R.D. at 14 & n.2, 15–16 (ruling that (1) the plaintiff wasn't entitled to sanctions under Rule 37(e)(2) because he failed to prove an intent to deprive, and (2) he wasn't

In arguing otherwise, the government cites two cases: *Aramburu v. Boeing Co.*, and *Rowe v. Albertson's, Inc.*[14] But *Aramburu* says nothing about Rule 37(e)(2), which wouldn't be promulgated for another 18 years.[15] And although *Aramburu* does make a passing reference to relevance,[16] this statement is dictum. The Tenth Circuit concluded the plaintiff in *Aramburu* wasn't entitled to sanctions because he failed to show the requisite intent, not because he failed to show relevance.[17]

In *Rowe*, on the other hand, the Tenth Circuit interpreted and applied Texas law, not Rule 37(e)(2).[18] Thus, *Rowe* isn't persuasive either, let alone controlling. And even if it were, it wouldn't help the government. Under Texas law, the moving party isn't entitled to an adverse inference "if the nonproducing party testifies as to the substance or content of the missing evidence."[19] The government offers no such

---

entitled to sanctions under Rule 37(e)(1) because he failed to prove prejudice, but stating that if the defendant had shown an intent to deprive, "an adverse[-]inference instruction would have been appropriate"—even though the plaintiff offered no proof that the lost ESI would have supported his claim—because "such proof" could have "be[en] inferred from" the finding of intent).

[14] Doc. 571 at 4 (first citing *Rowe*, 178 F. App'x 859 (10th Cir. 2006) (unpublished); then citing *Aramburu*, 112 F.3d 1398 (10th Cir. 1997)).

[15] *See Marten Transp., Ltd. v. Plattform Advert., Inc.*, 2016 WL 492743, at *4 n.10 (D. Kan. Feb. 8, 2016) (noting that the amended version of Rule 37(e) took effect on December 1, 2015).

[16] *See* 112 F.3d at 1407.

[17] *Id*. Similarly, it wasn't the absence of evidence proving actual relevance that gave this Court pause in *Black*; it was the presence of evidence—much of which was presented by the government, and much of which the government now concedes was false—suggesting the ESI could still be restored. *See Black* Order at 132; Doc. 561 at 5 & n.15 (describing the government's shifting positions). Although forensic expert Tami Loehrs has since confirmed it cannot be, the government now asserts her analysis was deficient. *See* Doc. 571 at 5 ("[Although] the FPD and [Ms. Loehrs] had all of the components necessary to conduct forensic testing to determine whether logging metadata was created by the viewing of videos," Ms. Loehrs's report "is silent on that point."). But if the government wanted to know what metadata using the DX8100 software leaves behind, it could have asked its own lab to conduct such testing. *See Anderson v. Cryovac, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988) ("As between guilty and innocent parties, the difficulties created by the absence of evidence should fall squarely upon the former.").

[18] 178 F. App'x at 861.

[19] *Id.* (citation omitted) (describing testimony indicating two employees reviewed a video recording and verified that it contained no relevant information before allowing it to be overwritten).

4

testimony here. Further, even Texas law doesn't require a showing of actual relevance. It merely requires a showing of "potential relevance."[20] To the extent Rule 37(e)(2) requires a similar showing, that showing is largely, if not entirely, subsumed by Rule 37(e)'s duty-to-preserve element.[21] In any event, the government doesn't dispute that it knew the AVPC's hard drives contained potentially relevant ESI.[22] And Ms. Loehrs's subsequent expert report confirms as much.[23]

### 3. Conclusion

The government says its destruction of the lost ESI was the regrettable but wholly excusable result of an innocent failure to communicate.[24] The evidence before the Court says something very different. In light of this evidence, Petitioners ask the Court to sanction the government by entering the requested adverse inferences.[25]

---

[20] *Id.*

[21] *See* Fed. R. Civ. P. 37(e) (authorizing courts to impose sanctions only where the lost ESI "should have been preserved"); *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1162–63 (D. Colo. 2015) (explaining that parties have a duty to preserve evidence only if they know or should know the evidence "may be relevant to future litigation" (citation omitted)).

[22] *See* Doc. 561 at 4 & n.7; *Black* Order at 32–33, 130; *Black* Ex. 1176.

[23] *See, e.g.*, Doc. 561-1 at 7 ("[I]t is my opinion that viewing the CCA videos with the Pelco Media Player would have left behind forensic evidence in numerous locations on the AV-PC that should have been recoverable with forensic tools."); *id.* at 17 ("[F]orensic searches for the term "pelco" should recover artifacts resulting from the installation *and use* of the Pelco Media Player on a hard drive even if that software has been deleted." (emphasis added)); *id.* at 9 ("My analysis revealed the [DX8100] software to be very similar to the Pelco Media Player software previously analyzed with regard to forensic artifacts."); *id.* at 20 (same); *id.* at 27 ("When a file is opened on a computer running the Windows operating system, the file name . . . is saved with a .lnk file extension . . . . These links contain dates and times when the files were opened . . . . ").

[24] Doc. 571 at 10.

[25] *See* Doc. 561 at 2.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON, #17612
Federal Public Defender for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
Email: melody_brannon@fd.org

s/ Kirk Redmond
KIRK C. REDMOND, #18914
First Assistant Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
kirk_redmond@fd.org

s/ Lydia Krebs
LYDIA KREBS, #22673
Research and Writing Specialist
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
lydia_krebs@fd.org

CERTIFICATE OF SERVICE

      I certify that on 09/30/2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties and:

Stephen McAllister
United States Attorney
District of Kansas
stephen.mcallister@usdoj.gov

Duston Slinkard
First Assistant U.S. Attorney
Chief, Criminal Division
duston.slinkard@usdoj.gov

                                          s/ Melody Brannon
                                          MELODY BRANNON, #17612