**In the United States District Court
for the District of Kansas**

---

**In re: CCA Recordings 2255 Litigation**,
                                          **Petitioners,**

**v.**

                                    **Case No. 19-cv-2491-JAR-JPO**
                                    **(This Document Relates to All Cases)**

**United States of America,**
                              **Respondent.**

---

**<u>MEMORANDUM AND ORDER</u>**

On August 20, 2020, one week before its deadline to comply with the Court's July 27, 2020 order denying its request for a protective order, the government filed a Notice of Intent Not to Provide Further Discovery in these habeas proceedings.[1]  This matter is now before the Court on Petitioners' Motion for Sanctions (Doc. 560) and Motion for Spoliation Sanctions (Doc. 561). These motions are fully briefed, and the Court is prepared to rule.  For the reasons explained in detail below, the Court finds the government's refusal to fully and timely comply with certain discovery orders issued by the Court is sanctionable under Fed. R. Civ. P. 37(b)(2), but that petitioners are not entitled to most of the sanctions they seek.  Instead, the Court intends to take as conclusively established certain facts petitioners might have proved regarding the "privy to" element of their Sixth Amendment claims but for the government's disobedience of the Court's orders.  To the extent it is not rendered moot, the Court sets the Rule 37(e) spoliation sanctions matter for evidentiary hearing.

---

[1] Doc. 540.

1

## I.      Background

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black Order*") that precipitates the § 2255 motions before the Court.[2]  The Court does not restate the underlying facts in detail but will provide excerpts from the *Black* Order as needed to frame its discussion of the issues presently before it.

Over 100 habeas motions under 28 U.S.C. § 2255, filed by the Federal Public Defender pursuant to a Standing Order, have been reassigned to this Court for determination on the merits of petitioners' claims that the government violated their Sixth Amendment rights when it obtained audio and video recordings of attorney-client communications while they were detained at Corrections Corporation of America ("CCA").[3]  Pursuant to Fed. R. Civ. P. 42(a), these cases were also consolidated for discovery to be overseen by Magistrate Judge James P. O'Hara.[4]  At the outset, the Court set a procedure under Rule 6 of the Rules Governing Section 2255 Proceedings ("Rule 6") for parties to obtain approval from the Court prior to service of proposed discovery.[5]  As Judge O'Hara noted, "[t]his procedure enables the court to ensure good cause exists for the proposed discovery and that the proposed discovery is appropriately narrow," as required by Rule 6.[6]

This Court previously found that petitioner Petsamai Phommaseng had demonstrated good cause to conduct discovery on his audio recording claims, overruling the government's procedural defenses, but leaving specific disputes regarding scope and relevance to Judge

---

[2] Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019).

[3] Doc. 1. The facility has been renamed CoreCivic, but for convenience will be referred to as CCA in this Order.

[4] *Id.*

[5] Doc. 82.

[6] Doc. 446 at 2.

O'Hara.[7]  From January to April 2020, petitioners sought leave to serve three sets of discovery on behalf of Phommaseng and one set of discovery on behalf of petitioner Mamoudou Kaba, expanding their requests to include video recording claims.

The government opposed the discovery, continuing to maintain that Phommaseng's claims were procedurally defaulted and that the requests were overbroad and unduly burdensome.  On February 24, 2020, the Court overruled the overbreadth and undue burden objections because they were not sufficiently specific and were not supported by affidavit.[8]  The Court also declined the government's request to bifurcate discovery into merits and remedy phases, disagreeing with the government that the pattern of behavior by the United States Attorney's Office for the District of Kansas ("USAO") is relevant solely to the issue of remedy.[9] The Court found that such evidence could speak to whether the USAO's intrusion into Phommaseng's relationship with his attorney was "purposeful," whether the USAO had no "legitimate law enforcement purpose" when it acquired the audio and video recordings of his conversations with counsel, and witness credibility on a host of issues.[10]  The Court further concluded that bifurcating discovery on this issue would be inefficient.[11]  The government's deadline to respond to the discovery requests was March 18, 2020.

On March 12, 2020, the parties agreed and the Court ordered that, for the sake of efficiency, the information produced pursuant to these discovery requests may be used by any of the consolidated petitioners.[12]  On April 27, 2020, Judge O'Hara granted the government

---

[7] *United States v. Phommaseng*, No. 15-20020-JAR-5, Doc. 608 (D. Kan. Aug. 13, 2019).

[8] Doc. 79 at 6–9.

[9] *Id.* at 2–5.

[10] *Id.*

[11] *Id.* at 5.

[12] Doc. 96 at 2–3.

additional time to respond after it represented that, despite its diligence, it could not complete its

discovery production by the deadlines previously set by the court due to delays caused by the

COVID-19 pandemic and the resulting "stay at home" orders issued by local governments.[13]  He

found that the government had demonstrated good cause to amend the scheduling order and

extended the government's deadline to respond to all outstanding written discovery until July 1,

2020.[14]  Evidentiary hearings originally set to begin in November 2020 were continued until

January 26, 2021.

On June 16, 2020, after it completed filing its responses to petitioners' § 2255 motions,

the government sought a protective order that states it is not required to undertake additional

searches of electronically stored information ("ESI") in responding to petitioners' approved

discovery requests.[15]  The motion focused on the approved requests that seek ESI held in

government repositories beyond the email accounts of key prosecutors that date back to 2010

(upon agreement of the parties).[16]  The government asserted that a protective order is necessary

because its diligent efforts to comply with petitioners' requests revealed that fully responding is

"not just difficult or overly burdensome, but impossible,"[17] and that hiring a third party to

conduct the search would cost $3.5 million and take a year to complete.

Exercising its broad discretion, the Court was not persuaded that the government had

demonstrated impossibility or made a showing that the discovery sought is disproportional to the

needs of the case, and thus found that the government had not met its burden of establishing the

---

[13] Doc. 127 at 3.

[14] *Id.* at 4.

[15] Doc. 359 at 2.

[16] Doc. 446 at 17; Doc. 180 at 1.

[17] Doc. 446 at 17.

need for a protective order.[18]  The Court noted in its July 27, 2020 Order that the requests for discovery had been vetted through the procedure the Court followed pursuant to Rule 6 to ensure good cause exists for the proposed discovery and that it is appropriately narrow, requiring the petitioners to seek leave to do so and giving the government the opportunity to raise any objections.[19]  The Court analyzed the factors to show "good cause" to issue a protective order under Rule 26(c)(1), concluding: (1) both significant public policy and personal rights were at stake in these cases alleging violations of petitioners' Sixth Amendment right to effective assistance of counsel; (2) petitioners' lack of access to the  government's ESI that contains highly relevant information regarding whether the government purposefully intruded into the attorney-client relationship and became privy to attorney-client communication because of its intrusion; (3) the government suggested no reason the Department of Justice ("DOJ") would not be expected to help finance this litigation; (4) the importance of the discovery to resolution of the issues in this case, in particular whether the government became "privy to" attorney-client information, such as whether the USAO requested, obtained, or relied upon recordings of attorney-client communications; and (5) the government's estimated cost and time to conduct such discovery was questionable, noting, for example, that the government could pursue a more focused keyword search.[20]  The Court denied the motion and ordered the government to "redirect its resources and do what is necessary to fully respond to petitioners' discovery requests on a rolling basis," with a deadline of August 28, 2020.[21]

---

[18] *Id.* at 1–2, 17–18.

[19] *Id.* at 2.

[20] *Id.* at 5–17.

[21] *Id.* at 18–19.  The Court strongly suggested that petitioners prioritize the order in which they would like the government's repositories searched and so inform the government.  *Id.* at 19 n.64.

The government's Notice followed.[22]  After petitioners indicated they intended to file a motion for imposition of sanctions against the government, the court modified the scheduling order, vacated the deadlines for the pretrial conference and submission of the pretrial order, and entered deadlines for the parties to file and respond to petitioners' motion for sanctions.[23]

Petitioners filed two motions for sanctions under Fed. R. Civ. P. 37: (1) Rule 37(b)(2), alleging disobedience of the Court's discovery orders and (2) Rule 37(e), alleging spoliation sanctions related to ESI on a computer used by the government to view the video recordings at issue.  As discussed in detail below, the requested sanctions range from default judgment to drawing an adverse inference that the lost ESI was unfavorable to the government.  Because these motions seek sanctions in the form of dispositive relief, they were referred to this Court for consideration.

## II.     Discussion

### A.     Sanctions Under Fed. R. Civ. P. 37(b)(2)(A)

#### 1.     Standard

Rule 37(b)(2) authorizes courts to appropriately respond to and deal with parties that have disobeyed discovery orders.  "It is a basic proposition that all orders and judgments of courts must be obeyed 'however erroneous the action of the court may be,' until the order is 'reversed by orderly review, either by itself or by a higher court' and that 'disobedience of them is contempt of [the court's] lawful authority, to be punished.'"[24]  When a discovery violation

---

[22] The government produced a significant amount of discovery to petitioners by the July 1, 2020 deadline. That production is the subject of a pending motion to compel, which has been referred to Judge O'Hara and is unrelated to the Rule 37 matters before the Court.  Doc. 572.

[23] Doc. 548.

[24] *Lundahl v. Halabi*, 600 F. App'x 596, 605 (10th Cir. 2014) (quoting *Howat v. Kansas*, 258 U.S. 181, 189–90 (1922)).

occurs, the district court has discretion to determine the appropriate sanction, provided the sanction is both just and related to the particular claim at issue.[25]  Although broad, the court's discretion is not unlimited and in making this determination, the court must be mindful of the purposes for sanctions, which include: "(1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse and (4) streamlining court dockets and facilitating case management."[26]  The primary goal of sanctions is to deter misconduct.[27]

Pursuant to Fed. R. Civ. P. 37(b)(2), the court may issue sanctions, including default judgment, against a party who disobeys a discovery order.[28]  In addition, courts have broad inherent power to sanction misconduct and abuse of the judicial process, including the power to enter default judgment.[29]  Default judgment is generally considered a harsh sanction that should be used only when a party's noncompliance is due to "willfulness, bad faith, or any fault of the [disobedient party]" and not when a party is unable to comply with a discovery order.[30]

Before imposing default judgment or its equivalent as a sanction, the Court must consider the following so-called *Erenhaus* factors:

> (1) the degree of actual prejudice to the [moving party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[31]

---

[25] *Proctor and Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005).

[26] *White v. Gen. Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990) (considering Rule 11 sanctions).

[27] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990).

[28] *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013).

[29] *See id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1992)).

[30] *Id.* (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)).

[31] *Id.* at 1159–60 (citing *Erenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)).

"These factors do not constitute a rigid test; rather, they represent criteria for the Court to consider before imposing default judgment as a sanction."[32]  Dismissal of an action with prejudice or its equivalent should be used as "a weapon of last, rather than first, resort."[33] "Default judgment is usually appropriate only where a lesser sanction would not serve the interest of justice; it is clearly a severe sanction and it is reserved for extreme circumstances."[34]

## 2.    Application

As noted, there is no real dispute that the government committed a discovery violation when it filed the Notice that it "cannot and will not comply" with the July 27 Order, which the [DOJ] has concluded is both unreasonable and contrary to law."[35]  Seemingly emboldened by the constraints upon this Court in its consideration of appropriate sanctions for government misconduct, the government made the clear decision to simply refuse to provide the approved requests for discovery.  The government tries to sidestep this issue by claiming it had no choice but to defy the Court's order, effectively characterizing its Notice that it could not comply with the remaining aspects of the discovery requests as a last resort instead of willful disobedience of a court order.[36]  Although the government opposed all of petitioners' requests for discovery at every turn, as lacking both good cause and relevance under Rule 6, it never moved for reconsideration of the Court's orders nor indicated anything other than it was attempting to comply with them—including the order to search its electronic repositories.  In fact, the email chain between AUSA Clark and AFPD Krebs indicates the parties were discussing how to

---

[32] *Id.* (citing *Erenhaus*, 965 F.2d at 921).

[33] *Erenhaus*, 965 F.2d at 920 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1520 n.6 (10th Cir. 1987) (footnote omitted)).

[34] *Am. Power Chassis, Inc. v. Jones*, No. 13-4134-KHV, 2018 WL 4409434, at *8 (D. Kan. Sept. 17, 2018).

[35] Doc. 540 at 1.

[36] *Id.* at 1–7, 29.

prioritize and streamline the ESI search as suggested in the July 27 Order, right up to the date United States Attorney McAllister received the directive from the DOJ not to comply and filed the government's Notice.[37]  The government now asserts that the Court's discovery orders were incorrectly decided, that this Court overstepped its authority, and that it could not possibly search its repositories and produce the requested ESI in just 32 days, and demands that the Court either rule on petitioners' § 2255 motions or permit dispositive motions without delay and without further discovery from the government.

　　　While the substance of the government's Notice by all accounts seeks reconsideration of the Court's discovery orders—and raises myriad procedural issues and defenses previously raised in its responses regarding the pending § 2255 motions that the Court was in the midst of reviewing when confronted with the instant dispute—it is the Court that is left with no choice but to construe the Notice as nothing less than an outright refusal to comply.  Thus, the question is not whether the government has disobeyed the Court's order, but rather what sanction, if any, is appropriate and permitted within the context of motions for habeas relief under § 2255.

　　　Petitioners urge the Court to consider entering default judgment outright, arguing that nothing less than dispositive sanctions will suffice for the government's conduct.  If the Court declines, petitioners seek the following sanctions: deem as admitted those facts that petitioners might have proved but for the government's refusal to produce discovery; preclude the government from pursing its defenses; and strike in full the government's responses to

---

[37] Doc. 574-1.  Notably, in apparent recognition that the government's conduct may result in sanctions, only United States Attorney McAllister signed the pleading; the three AUSAs who have entered an appearance in the case did not sign the Notice or the government's response to petitioners' motion for sanctions.  *See* Doc. 540 at 30; Doc. 570 at 11.  AUSA Clark withdrew from the case the day the Notice was filed.  Doc. 539.

Petitioners' § 2255 motions and the government's challenges to Petitioners' Privilege Logs.  The Court discusses the proposed sanctions in turn.

### a.    Default Judgment

"Default judgments against the United States are especially disfavored."[38]  Under Fed. R. Civ. P. 55(d), "a default judgment may be entered against the United States . . . only if the claimant establishes a claim or right to relief by evidence that satisfies the court."  Default judgment against the government is particularly limited in the context of these § 2255 proceedings.  Although the Tenth Circuit has not ruled out default judgment as appropriate against the government in a habeas proceeding, such a sanction should be limited to cases where the delay itself rises to the level of a due process violation.[39]  The government's refusal to comply with the Court's discovery order simply does not rise to this level and thus the Court declines to enter default as a sanction for the government's discovery misconduct.

### b.    Preclude Defenses and Strike Responses

Petitioners further request the Court to preclude the government from pursuing any defense to, or from otherwise opposing, petitioners' claims, and to strike in full the government's responses to petitioners' § 2255 motions.  Although such sanctions are among those enumerated in Rule 37(b)(2)(A) (ii) and (iii), they would be akin to a default judgment and not an available procedural tool in these § 2255 proceedings.  These requests are denied.

---

[38] *Harvey v. United States*, 685 F.3d 939, 946 (10th Cir. 2012).

[39] *United States v. Williams*, No. 15-20034-JWL, 2020 WL 2572409, at *1 (D. Kan. May 21, 2020) (citing *Stines v. Martin*, 849 F.2d 1323, 1324 (10th Cir. 1988)).

### c.      Strike Challenges to Privilege Logs, Vacate Discovery Order, and Deny Leave to file Dispositive Motions

Petitioners ask the Court to strike the government's challenges to petitioners' privilege logs, vacate any orders that authorize the government to serve any discovery requests upon petitioners or that require petitioners to respond to such requests, and prevent the government from filing dispositive motions.  None of these sanctions are related to the particular claim at issue in the discovery order and the Court intends to issue a separate order ruling on the pending motions relating to these issues.[40]  These requests are also denied.

### d.      Deem Facts Established as to Each Petitioner

Finally, petitioners ask the Court to treat as admitted the following facts petitioners might have proved but for the government's refusal to produce discovery:[41]

- Before each petitioner entered a plea, was convicted, or was sentenced, each member of the prosecution team intentionally, and without a legitimate law enforcement purpose, became privy to each recording listed in the petitioner's privilege log (the "Recordings") either by watching or listening to them or by directly or indirectly obtaining information about them from someone who did;

- The Recordings captured and reveal confidential attorney-communications that concern matters related to legal advice or strategy sought by the petitioner;

- Each member of the prosecution team acted with the intent to use, and did in fact use, confidential information gleaned from the Recordings to the petitioner's detriment;

- But for these actions, the petitioner would not have been convicted of any offense. Alternatively, the Court would have imposed a 50% shorter sentence and would have imposed neither (1) financial fees or penalties nor (2) supervised release;

- The prosecution team's actions had a substantial and injurious effect or influence on the outcome of the petitioner's criminal case; and

- By virtue of the prosecution team's actions, the petitioner cannot be fairly retried.

---

[40] *See* Docs. 351, 352, 353, 355 (challenges to privilege logs); Doc. 354 (objection to discovery order); Docs. 473, 474 (leave to file dispositive motions).

[41] Doc. 560 at 4.

Such sanctions are among the enumerated forms of possible sanctions set forth in Rule 37(b)(2)(A)(i).  The cumulative effect of these sanctions, however, would avoid critical aspects of petitioners' Sixth Amendment claims on the merits, and is tantamount to a prohibited default judgment against the government.  In addition, all but one of the requests are unrelated to the particular ESI discovery orders precipitating the government's refusal to comply.  For example, the recordings of attorney-client meetings and calls are unrelated to the discovery order, as petitioners alone have access to the recordings thus far in these proceedings; the contents and confidential nature of those conversations set out in Privilege Logs remain pending before the Court.  Likewise, the sanction requests that the Court find as established that it would have imposed uniformly less severe sentences or that petitioners cannot fairly be retried require consideration beyond the scope of any alleged facts the discovery order might have established. As the Court noted in the July 27 Order, however, the ESI discovery seeks information that goes to whether the government became "privy to" attorney-client communications.[42]  Accordingly, the Court limits its consideration to petitioners' request to deem as admitted facts related to the "privy to" element of their Sixth Amendment claims.

The Court is guided by the so-called *Ehrenhaus* factors.  Although that case involved the extreme sanction of dismissal, the Tenth Circuit's reasoning centering around whether "aggravating factors outweigh[ed] the judicial system's strong predisposition to resolve cases on their merits" has also been applied to Rule 37(b)(2)(A)(i) sanctions designating that facts be taken as established for purposes of the action.[43]

---

[42] Doc. 446 at 12.

[43] *See Pipeline Prods., Inc. v. Madison Cos.*, No. 15-4890-KHV, 2019 WL 2011377, at *4 (D. Kan. May 7, 2019) (quoting *Erenhaus*, 965 F.2d at 921).

On balance, these factors counsel in favor of petitioners' requested sanction on the "privy to" element. The government's conduct has prejudiced petitioners' ability to meaningfully develop their motions for evidentiary hearing without any valid justification. The government continues to argue that until petitioners present evidence that his or her Sixth Amendment rights were violated, they are not entitled to proceed with either their claims or discovery. But as petitioners argue, the nature of their claims puts them at an informational disadvantage, and the government's refusal to fully respond to their discovery requests exacerbates that imbalance. In addition, the government has interfered with the judicial process. It is now apparent that the government has yet to start searching the repositories, despite obtaining additional time and new production deadlines and despite lulling petitioners and the Court into believing that it would do so, much like it lulled the Special Master into believing it was fully cooperating in the *Black* investigation.[44] And clearly, the government is culpable, as its refusal to comply is intentional. Accordingly, applying these factors, the Court concludes that the appropriate sanction is for the Court to take as established certain facts under Rule 37(b)(2)(A)(i).

More specifically, because the government's conduct is plainly directed toward frustrating petitioners' ability to demonstrate the "privy to" element of their Sixth Amendment claims, the Court intends to take as established petitioners' claim that before each petitioner entered a plea, was convicted, or was sentenced, each member of the prosecution team became "privy to" each recording listed in the petitioner's privilege log, either by watching or listening to them or by directly or indirectly obtaining information about them from someone who did. Of the elements necessary to prove the Sixth Amendment claim, proof of this element rests almost entirely within the government's control, prompting in large part the *Black* investigation and the

---

[44] *See, e.g.*, *Black* Order at 140.

eventual hearing on issues including the government's failure to cooperate with both the Special Master and the Court.[45]  And as the FPD predicted at the November 2019 status conference, it was this element on which petitioners anticipated having to seek an adverse inference if and when the government was unable to produce the requested material.[46]  Because the Court previously held, and the parties agreed, that all petitioners may rely on the discovery sought by Phommaseng, the Court intends to enter this sanction in all cases.[47]

Although taking as established an element of petitioners' Sixth Amendment claims, this sanction is the least severe necessary to serve its purpose and stops short of effectively granting default judgment.  First, as set forth in the Memorandum and Order entered contemporaneously today, the Court will continue to review the parties' motions, responses, and replies, and rule on the procedural defenses and merits challenges in determining whether individual petitioners are entitled to an evidentiary hearing, as required by the Rules Governing Section 2255 Proceedings. In that Order, the Court directs the parties to supplement their responses and replies on both procedural and jurisdictional defenses and anticipates that some petitioners may not successfully survive this analysis.  Second, the Court has previously held that petitioners must demonstrate that the recordings contained protected attorney-client communications before determining whether the government became privy to those communications.  That holding is not disturbed by this sanctions order, and the government may still defend the claims on that ground as well as

---

[45] *See* Doc. 446 at 5–9.

[46] Doc. 39 at 29.

[47] This includes the three motions for petitioners prosecuted in the Western District of Missouri.  The government is a single party and was required to produce documents in the possession, custody, or control of the government at large, including the USAO for the District of Kansas and the Western District of Missouri, the DOJ, and any other government agency, department, or representative.  *See, e.g.*, Doc. 572.  Although the government's Notice was signed only by United States Attorney McAllister, the government indicated that the Notice related to all cases in this consolidated litigation, including those cases in which the government is instead represented by AUSA Clymer, and that the DOJ and the United States government had decided not to engage in any further efforts to produce the requested discovery.  Doc. 540 at 1.

grounds that its intrusion into the attorney-client relationship was not purposeful or that it was for a legitimate law enforcement purpose.  Third, the Court will not enter sanctions in individual cases until it has determined a petitioner is entitled to an evidentiary hearing.  And finally, given the nature of these § 2255 proceedings and the significance of the Court's intended sanction, this Order provides the government additional notice of the Court's intent to exercise its authority to impose specific sanctions beyond the warnings in its July 27 Order.

### B.      Spoliation Sanctions Under Fed. R. Civ. P. 37(e)

Petitioners also allege that the ESI on the AVPC computer used by the government's Litigation Support Specialist to view the video recordings was permanently destroyed, ostensibly as part of a scheduled update.  Pursuant to Rule 37(e), petitioners ask the Court to presume the lost ESI was unfavorable to the government and to presume the lost ESI would have proved (1) each member of the relevant prosecution team intentionally became privy to the video recordings listed in petitioners' privilege logs; and (2) this occurred either before the relevant petitioner entered a plea or was convicted by a jury, or alternatively, before that petitioner was sentenced or judgment was entered.

In support of their motion, petitioners offer the report of forensic expert Tami Loehrs, who examined and conducted testing on the AVPC.  The government responds that despite Ms. Loehrs' forensic examination of the AVPC, petitioners have failed to establish that relevant ESI was lost through the government's actions.  In support of its defense that destruction of the ESI was not intentional but the result of an automatic upgrade procedure out of its control, stemming from a mere failure of communication between government actors, the government offers the Declaration of Glenn Shrieves, the Office Automation Assistant Director for the Executive Office of United States Attorneys, an agency within the DOJ.

To the extent the Court enters the Rule 37(b)(2) sanctions in any individual case taking as established the "privy to" element of petitioners' audio and video recording claims, this motion will likely be moot.  To the extent the issue is still pending, it is clear an evidentiary hearing is required.  The Court will set the matter for hearing after it hears argument on the sanctions it intends to impose under Rule 37(b)(2).

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioners' Motion for Sanctions (Doc. 560) pursuant to Fed. R. Civ. P. 37(b)(2) is **denied in part and taken under advisement in part**; the Court notifies the government that it intends to take as established facts proving the "privy to" element of petitioners' Sixth Amendment claims as set forth above with respect to any petitioner who establishes that he or she is entitled to an evidentiary hearing under 28 U.S.C. § 2255.

**IT IS FURTHER ORDERED** that subject to the Court's imposition of sanctions on the Rule 37(b)(2) motion, Petitioners' Motion for Spoliation Sanctions (Doc. 561) pursuant to Fed. R. Civ. P 37(e) is set for evidentiary hearing to begin **February 1, 2021 at 9:00 a.m.**

**IT IS SO ORDERED.**

Dated: <u>October 15, 2020</u>

                           S/ Julie A. Robinson
                           JULIE A. ROBINSON
                           CHIEF UNITED STATES DISTRICT JUDGE