**In the United States District Court
for the District of Kansas**

---

**In re: CCA Recordings 2255 Litigation**,
                        **Petitioners,**

**v.**

                                    **Case No. 19-cv-2491-JAR-JPO**
                                 **(This Document Relates to All Cases)**

**United States of America,**
                        **Respondent.**

---

## MEMORANDUM AND ORDER

The following related motions are before the Court: (1) the government's Motions Challenging Petitioners' Privilege Logs (Docs. 351, 352, 353, 355); (2) petitioners' Motion to Review the Court's Order Granting in Part and Denying in Part the Government's Motion for Leave to Conduct Discovery (Doc. 354); and (3) the government's Motions for Leave to File Dispositive Motions (Docs. 473, 474).[1]  Having carefully reviewed the record and the arguments presented, and as discussed in detail below, the Court: (1) sustains in part the government's challenges to the privilege assertions in the logs and establishes a procedure for *in camera* review; (2) sustains in part petitioners' objections to the discovery order and directs petitioners to expand the record as set forth in detail below; and (3) denies the government's motion for leave to file dispositive motions but directs the parties to file supplemental briefs on the collateral-attack waiver by guilty plea procedural defense and grants the government leave to supplement its responses to raise jurisdictional arguments.

---

[1] The Court also enters a separate related order on this date ruling on petitioners' Motions for Sanctions (Doc. 587).

I.      **Procedural History and Background**

The Court assumes the reader is familiar with the proceedings that precipitate the matters before the Court, including the June 4, 2020 Orders granting in part the government's motion for discovery, and does not restate the underlying facts in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.[2]  Likewise, the Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motions before the Court.[3]  That comprehensive opinion was intended to provide a roadmap for future consideration of the many anticipated motions filed pursuant to 28 U.S.C. § 2255.  It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties.  This approach appeared to be working at first, with the parties agreeing on several matters, including sharing discovery, the format for Privilege Logs on the recordings at issue, the details to include in fact sheets for each petitioner, and a scheduling order with deadlines for filing and supplementation of the § 2255 motions discovery, responses and replies, and ultimately a hearing date for late January 2021.

As evidenced by the matters before the Court, however, that initial cooperation gave way to multiple disputes before the Court caused in large part by the parties' conflicting interpretation of or outright refusal to accept the rulings in the *Black* Order.  As discussed in the Court's Order addressing petitioners' request that it sanction the government for discovery violations entered contemporaneously today, this dispute culminated in the government's notice that it refuses to

---

[2] Docs. 225, 230.

[3] Case No. 16-20032-JAR, Doc. 785 (D. Kan. Aug. 13. 2019).  As discussed in that Order, petitioners' Sixth Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at Corrections Corporation of America ("CCA").  That facility has since been renamed CoreCivic.  For convenience, the Court refers to CCA in this Order.

comply with discovery orders and demands that the Court rule immediately on both the procedural and merits defenses it raises in its responses to approximately 100 § 2255 motions. Similarly, review of those motions and responses was delayed while the Court considered petitioners' request for dispositive sanctions against the government for its discovery violations. This opinion attempts to reset the course of these proceedings and rule as expeditiously as possible on the numerous matters before the Court within the context and parameters of the Rules Governing Section 2255 Proceedings. Given the posture of these proceedings, the Court intends to eventually issue a comprehensive order on common legal standards and issues before it as applied to individual petitioners. Before it does so, however, the Court must address the parties' disputes over the Privilege Logs and discovery orders that will inform those decisions, and orders discrete supplementation as set forth below.

## II.     Government's Challenges to Privilege Logs

### A.     Background

#### 1.     The *Black* Order

As discussed throughout the *Black* Order, the Tenth Circuit decision in *Shillinger v. Haworth* held that the type of per se Sixth Amendment violation alleged in these cases occurs only when there is an intrusion into a confidential attorney-client relationship.[4]  The Tenth Circuit explained that "when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed."[5] Accordingly, this Court found in *Black* that a "protected attorney-client communication" is an

---

[4] 70 F.3d 1132 (10th Cir. 1995).

[5] *Id.* at 1142.

element of petitioners' Sixth Amendment claims.[6]  That element is the topic of great debate in these proceedings.

The Court held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[7]  The Court explained, "[a] Sixth Amendment claim arising from the alleged intrusion into the recordings at issue will not lie unless the communications in the videos or calls are *privileged or confidential*."[8]  Once a claimant has shown the privilege is applicable, the Court must determine whether the government became privy to those attorney-client communications because of its purposeful intrusion into the claimant's attorney-client relationship.[9]  However, the Court rejected the Federal Public Defender's ("FPD") argument that the Court could presume that all of the recordings contained protected attorney-client communications without reviewing them, instead finding that a minimal showing by the § 2255 litigants was required, including affidavits from defense counsel that confirm the nature and purpose of the meetings or calls were within the ambit of protected communications.[10]

While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the soundless video recordings, the Court rejected the government's argument that the soundless communication in the videos is too rudimentary to

---

[6] *Black* Order at 162.

[7] *Id.* at 163.

[8] *Id.* at 162–63 (emphasis added).

[9] *Id.* at 163.

[10] *Id.*

discern whether it involves legal advice or strategy or to disclose the content of any accompanying verbal communication.[11]  The Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the video of the attorney-client meeting exists; (2) the quality of the non-verbal communication in the video is sufficient to confirm communication between the detainee and counsel; and (3) an affidavit from defense counsel confirming that the nature of the meeting related to legal advice or strategy, including but not limited to defense preparation, plea negotiations, or review of discovery.[12]

With respect to audio recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) telephone recording(s) exist; (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client; and (3) an affidavit from defense counsel in each individual case sufficient to confirm the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[13]

With both the video and audio recordings, the Court explained that this threshold showing does not require the petitioner to reveal the substance of the conversation, and, therefore review of the recordings and/or submission of the affidavit will not constitute a waiver of any individual defendant's attorney-client privilege under Fed. R. Evid. 502.[14]  The Court also explained that any further review of the recordings will be facilitated according to a court-ordered process in the pending § 2255 proceedings and the parties would be given the

---

[11] *Id.* at 164–65.

[12] *Id.* at 166.

[13] *Id.*

[14] *Id.* at 166–67.

opportunity to weigh in on the procedure for review, for example, determination by the Court *in camera* or by a neutral government party.[15]

As discussed below, it was the Court's intent that this threshold showing would assist in eliminating claims where it was clear that no protected communication existed, for example, where there was no recording at all, the recording was not viewable or audible, or the purpose of the meeting or conversation was not to seek legal advice or strategy.  To date, the FPD has voluntarily dismissed sixteen cases for lack of evidence.  In addition, the fact sheets submitted by the parties have reduced the number of challenged attorney-client phone call recordings originally estimated in some of the motions.[16]

### 2.      Litigation over Recordings in these Proceedings

On May 4, 2020, the government filed a motion for leave to conduct discovery under Rule 6 of the Rules Governing Section 2255 Proceedings, which included requests for production of the audio and video recordings underlying petitioners' Sixth Amendment claims.[17] The government asserted that production of the recordings is necessary for it to determine whether they contain protected attorney-client communications and that by placing the content of those communications at issue in their § 2255 motions the petitioners impliedly waived any right to preclude discovery of those communications.[18]  The government continued to advocate for using an out-of-district government filter attorney to review the recordings.  Petitioners objected on the ground that such discovery would require petitioners to disclose privileged attorney-client communications.  Meanwhile, before the Court ruled on the government's request for discovery

---

[15] *Id.* at 165–67.

[16] *See* Doc. 194-1.

[17] Doc. 138.

[18] *Id.* at 3.

of the recordings, petitioners submitted their Privilege Logs ("PLs") as scheduled on May 13, 2020.[19]

Notably, the Notice of Submission of Petitioners' Privilege Logs specifies that the PLs are submitted "as a means of showing, as a preliminary matter, that the recordings that form the basis of their Sixth Amendment claims depict confidential attorney-client phone calls and/or meetings, during which petitioners and their attorneys discussed matters related to legal advice or strategy sought by petitioners and that the quality of the non-verbal communication captured by the videos is sufficient to confirm communication between petitioners and counsel.[20]  Petitioners stressed that the PLs were not submitted pursuant to Fed. R. Civ. P. 26(b)(5) because the Court had neither ruled that the government had good cause to proceed with civil discovery nor authorized the government to serve petitioners with discovery requests.

Each individual petitioner's PL includes a cover page that states the log is being provided per the Court's order, that the FPD has reviewed the video and/or audio recording(s) of the in-person meetings or phone calls with trial counsel, and that the recording(s) "should not be disclosed to the government because the content is protected by both the Sixth Amendment right to confidential communications with counsel and the evidentiary and ethical protection afforded to attorney-client communications."[21]  Per the parties' agreed format, each petitioner's PL details the protected communication by item, date, content, privilege asserted, and reviewer.[22]  The PLs do not include affidavits from trial counsel.

---

[19] Doc. 182-1.  The PLs were subsequently amended on June 2, 2020.  *See, e.g.*, Docs. 205-1 and 205-2.

[20] Docs. 205-1 and 205-2.

[21] *Id.*

[22] *See* Doc. 83 (commending the parties on their cooperation on the PLs and fact sheets).

On June 4, 2020, this Court entered an order rejecting the government's argument that petitioners implicitly waived attorney-client privilege over the communications when they placed the communications at issue in bringing their habeas petitions.[23]  Later that day, Judge O'Hara ruled in a separate order that petitioners "are at liberty to make well-founded attorney-client-privilege assertions in response to the government's discovery, if they provide the required privilege log."[24]  Judge O'Hara conditionally sustained petitioners' privilege objection to the requests for the audio and video recordings because, by their nature, such recordings include communications that petitioners assert are subject to the attorney-client privilege.  The court noted that nearly every petitioner filed a PL with details of the recordings on May 14, 2020,[25] and permitted the government to file a motion specifically addressing the challenged recordings if it had *specific* good cause to challenge the privilege(s) asserted in any one of them.[26]  The court referenced its discussion of how the government might limit its challenges during the September 5, 2019 status conference.  Finally, because the court did not know how many privilege assertions the government would challenge, Judge O'Hara explained he was not in a position to set the process for review of the challenged privileged assertions.  Accordingly, the court explained that should more than 20 hours of recordings be challenged, the court will likely appoint a special master to conduct the review, rejecting the government's suggestion that a government taint or filter attorney be assigned to review all recordings petitioners withhold on

---

[23] Doc. 225 at 5–9.

[24] Doc. 230 at 12.

[25] Doc. 205-2.

[26] Doc. 230 at 13 (emphasis in original).

privilege grounds.[27]  Alternatively, the court directed the parties to address the possibility of "sampling" of withheld information for *in camera* review.[28]

### B.    Discussion

As promised, after the Court overruled the implied-waiver argument, the government lodged Rule 26(b)(5)(A) objections to each and every PL.  The government objects to the PLs on grounds that (1) the Sixth Amendment is not a basis for withholding the recordings, and (2) because the PLs do not meet the standards under Fed. R. Civ. P. 26(b)(5)(A), any privilege asserted should be deemed waived and petitioners should be required to produce the recordings. Alternatively, the government requests the Court adopt a sampling procedure by which it can review the recordings for itself and make a determination as to whether the recordings are privileged.

Petitioners respond that the PLs are not governed by Rule 26(b)(5)(A), but rather, by the parties' agreement.  Petitioners assert that the PLs submitted before the government was granted leave to conduct discovery were intended to satisfy the Court's legal standard for proving the "protected-communication element" of petitioners' Sixth Amendment claims.  Petitioners disclaim any attempt to satisfy Rule 26(b)(5)(A) by filing the PLs because that rule was not "in play" at the time of submission.

 In other words, the government does not dispute that the PLs are sufficient to show the Sixth Amendment protection attached during petitioners' criminal prosecutions, but instead asserts that, as a matter of law, the Sixth Amendment protection expired when each petitioner's defendant's criminal prosecution ended, and was therefore extinguished by the time § 2255

---

[27] *Id.* at 14 n.47.

[28] *Id.* at 14–16.

habeas motions were filed.  As a result, petitioners argue that the dispositive issue before the Court is a purely legal one: "does the Sixth Amendment protection that attaches to a defendant's attorney-client communications during a criminal prosecution remain in effect during the defendant's § 2255 proceeding, such that it provides protection from disclosure?"[29]  Because the government has purportedly waived any argument that the PLs are insufficient as a factual matter to show the recordings are entitled to this constitutional protection, petitioners urge that the recordings remain protected under the Sixth Amendment and are not discoverable during this litigation.  Because the Sixth Amendment subsumes the privilege, petitioners argue that the Court need not address whether the recordings are also protected by the attorney-client privilege.

Because the issues of Sixth Amendment protection and Rule 26(b)(5) objections had not yet been determined prior to submission of the PLs or Judge O'Hara's June 4 discovery order, the matters were referred to this Court for decision.

### 1.    Nondisclosure and the Sixth Amendment

In its order overruling the government's implied-waiver argument, this Court noted but declined to decide whether there is a constitutional right to nondisclosure of the recordings as asserted in the PLs.[30]  In support of its implied-waiver argument, the government primarily relied on *United States v. Pinson*, where the Tenth Circuit held that § 2255 petitioners impliedly waive the attorney-client privilege "with respect to" those attorney-client communications that are "necessary to prove or disprove" their § 2255 claims.[31]  The government contended that petitioners impliedly waived the attorney-client privilege by placing the content of the communications in the recordings at issue by filing their § 2255 motions.  The government asked

---

[29] Doc. 383 at 7.

[30] Doc. 225 at 11 n.44.

[31] 584 F.3d 972, 978 (10th Cir. 2009); *see* Doc. 22 at 6–7, 9; Doc. 42 at 4–5.

the Court to apply *Pinson* to the ineffective assistance claims in this case, in support of its position that in order to defend itself, the government must be permitted to independently assess the contents of the attorney-client communications petitioners claimed were protected by the attorney-client privilege.

Significantly, the government acknowledged that any finding of implied waiver of the attorney-client privilege should be construed narrowly, accounting for the possibility of future prosecutions and trials should this Court grant petitioners relief.  Thus, the government suggested that review of the recordings be undertaken by an out-of-district filter attorney who would have no further involvement in this litigation or any retrials.  Thus, in raising this argument, the government acknowledged both that the recordings at issue are protected by the attorney-client privilege and that petitioners' Sixth Amendment rights were still in play.  However, the Court was reluctant to extend *Pinson*'s implied-waiver rule beyond actual ineffectiveness claims that put defense counsel's advice in issue to the claims raised here, where petitioners allege intentional interference claims that do not require the court to evaluate the reasonableness of defense counsel's decisions.[32]  Such application would effectively require petitioners to disclose privileged attorney-client communications in order to prove that the communications are privileged or protected.

As noted, *Pinson* held that the scope of any implied waiver—and any concomitant discovery orders—must be "carefully tailored to protect petitioners' Sixth Amendment rights."[33] Petitioners now argue that because there would be no need for courts to tailor their § 2255 production orders "to protect a right that doesn't exist," *Pinson* necessarily recognizes that the

---

[32] Doc. 225 at 8–9.

[33] *Pinson*, 584 F.3d at 978–79.

Sixth Amendment provides defendants in criminal cases with a right to nondisclosure and that this right remains in place during their § 2255 proceedings.[34]  Petitioners frame the issue broadly—does the Sixth Amendment protection that attaches to a defendant's attorney-client communications during a criminal prosecution remain in effect during the defendant's § 2255 proceeding, such that it provides protection from disclosure?  *Pinson* suggests that it does, at least in cases where "a habeas petitioner claims that he received ineffective assistance of counsel, [putting] communications between himself and his attorney directly at issue, and thus by implication waives the attorney-client privilege with respect to those communications."[35]

By contrast, the issue in these § 2255 proceedings is narrower than the issue in *Pinson*—does the Sixth Amendment protection from disclosure that attaches to a defendant's attorney-client communications during a criminal prosecution remain in effect in § 2255 proceedings when the government's acquisition of that communication in the criminal case is being challenged as a Sixth Amendment intentional intrusion claim violation in the § 2255 proceedings?

The government asserts that petitioners incorrectly rely on the Sixth Amendment as a basis for not producing the recordings because the constitutional protection only applies to criminal proceedings.  It argues that the Sixth Amendment does not provide an independent basis for withholding discoverable materials in these collateral § 2255 proceedings following the end of petitioners' criminal prosecutions.  Instead, the government contends that only the attorney-client privilege can serve as a basis for withholding materials reflecting attorney-client communications in these cases.  Thus, the government effectively asserts that it is entitled to do

---

[34] Doc. 383 at 9.

[35] 584 F.3d at 977–78.

in these § 2255 proceedings what the Sixth Amendment precluded it from doing in the

underlying criminal prosecutions—listen to the phone calls and view the recorded attorney-client

meetings.

In support of its position, the government cites *Greater Newburyport Clamshell Alliance*

*v. Public Service Co.*, where the First Circuit Court of Appeals held that the "[S]ixth

[A]mendment provides a shield for the attorney-client privilege only in criminal proceedings;

upon termination of those proceedings and initiation of a civil action putting the privilege at

issue, that constitutional protection ends."[36]  In *Newburyport*, plaintiffs filed a civil rights action

under 42 U.S.C. § 1983 against the Public Service Company of New Hampshire, one of its

employees, and various members of the New Hampshire State Police.  The plaintiffs had been

arrested during a protest at the nuclear power plant owned and operated by Public Service

Company and charged with criminal trespass.[37]  In the § 1983 action, the plaintiffs alleged Public

Service Company and the State Police conspired to get an undercover agent to infiltrate their

organization, and having succeeded, the informant attended the meetings between the plaintiffs

and their lawyers who were preparing the defense of the criminal charges.[38]  The "critical [S]ixth

[A]mendment claim was that [the defendants] used the information provided by [the informant]

to prepare testimony for the prosecution at the upcoming [criminal trial]."[39]  When it was

revealed that one of the defendants had been a police informant, the criminal charges were

dismissed.[40]

---

[36] 838 F.2d 13, 19 (1st Cir. 1988).

[37] *Id.* at 15.

[38] *Id.* at 16.

[39] *Id.*

[40] *Id.*

During the § 1983 case, the defendants subpoenaed records from counsel who represented the plaintiffs in the criminal case, which the plaintiffs moved to quash on Sixth Amendment grounds.[41]  The district court held that the plaintiffs had waived their attorney-client privilege by bringing the § 1983 action and counsel appealed.[42]  The First Circuit held that counsel was required to respond to the discovery requests, rejecting arguments that the Sixth Amendment allowed the attorney to refuse to respond.[43]

The *Newburyport* decision is both distinguishable and instructive.  First, unlike the civil § 1983 action before the First Circuit, a § 2255 proceeding is not entirely separate from the criminal case.  Under Rule 1 of the Rules Governing Section 2255 Proceedings, "a motion under § 2255 is a further step in the movant's criminal case and not a separate civil action."  While the Supreme Court has held "there is no dispute that § 2255 proceedings are 'collateral,'" it declined to rule on whether § 2255 proceedings are civil or criminal in nature.[44]  As the Tenth Circuit explained, prior to the "enactment of the Rules Governing § 2255 Proceedings [in 1976], . . . this circuit, following the lead of the Supreme Court, interpreted § 2255 to be a separate civil action which required either payment of a filing fee in the district court or leave to proceed *in forma pauperis* by the district court.[45]  Accordingly, it is now clear that, while civil in some respects, a § 2255 proceeding is a continuation of a defendant's federal criminal case.[46]  Indeed, the Tenth

---

[41] *Id.*

[42] *Id.*

[43] *Id.* at 22–23.

[44] *See Wall v. Kholi*, 582 U.S. 545, 559–60 (2011) (citations omitted).

[45] *United States v. Cook*, 997 F.2d 1312, 1319 (10th Cir. 1993); *compare* Rule 1 of the Rules Governing Section 2255 Proceedings ("[A habeas] motion under § 2255 is a further step in a movant's criminal case and not a separate civil action."), *with* Rule 1 of the Rules Governing Section 2254 Cases ("[H]abeas corpus is a separate civil action and not a further step in the criminal case in which a petitioner is sentenced.").

[46] *Cook*, 997 F.2d at 1319 (citations omitted).

Circuit has described the "enigmatic character" of § 2255 proceedings, noting that one indication of their civil nature is that "§ 2255 petitioners don't always enjoy the full panoply of rights the Constitution affords criminal defendants (like the right to be present or the right to be assisted by counsel)."[47]

Second, although the First Circuit held that the Sixth Amendment did not apply in the civil § 1983 action, it recognized that the plaintiffs' claim was "quasi-constitutional" and that "[S]ixth [A]mendment concerns" were still at play.[48]  The court noted that "the attorney-client relationship which the government is attempting to invade through this discovery action is the very relationship which it allegedly violated while the privilege was still under cover of the constitution."[49]  Thus, the First Circuit adopted a balancing test: it presumed that the plaintiffs' communications remained immune to disclosure and ruled that to overcome that presumption, the government had to show that its need to obtain those communications were proportionate to the residual "[S]ixth [A]mendment concerns" that justified nondisclosure.[50]  The court instructed that "the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails."[51]  The court explained that "[t]he burden on the defendant is proportional to the importance of the privilege," and that the court "should develop the parameters of its discovery order by carefully weighing the interests involved, balancing the

---

[47] *United States v. Bergman*, 746 F.3d 1128, 1130 (10th Cir. 2014) (noting confusion).

[48] *Id.* at 16, 20.

[49] *Id.* at 20.

[50] *Id.*

[51] *Id.*

importance of the privilege asserted against the defending party's need for the information to construct its most effective defense."[52]

To make this determination, the court looked to the elements of the plaintiffs' Sixth Amendment claim.[53] The court found that review of the elements of the plaintiffs' claim and defendants' possible defenses weighed in favor of the defendants' interest in disclosure of what transpired at the meetings the informant attended. Significantly, the First Circuit required a showing of prejudice in Sixth Amendment intentional intrusion claims, and lack of prejudice was a defense.[54] An additional consideration in favor of disclosure was that the criminal charges were dropped and the statute of limitations on new charges had run.[55] A consideration against disclosure was that the essence of the Sixth Amendment right to effective assistance of counsel is the privacy of communication with counsel; this "free exchange of information between attorney and client could be inhibited by requiring a criminal defendant, in effect, to waive subsequent enforcement of personal rights due to the content of communications during the criminal action."[56]

As in *Newburyport*, the attorney-client relationship the government is attempting to invade through production of the recordings is the very relationship that it allegedly violated while the privilege was still unquestionably covered by the Sixth Amendment. And the government has acknowledged that relief in these proceedings may entail a new trial or withdrawal of the plea agreement. Granting the government's request for production would

---

[52] *Id.*

[53] *Id.* (citing *Weatherford v. Bursey*, 429 U.S. 545, 554 (1977); *United States v. Mastroianni*, 749 F.2d 900, 905–08 (1st Cir. 1984)).

[54] *Id.* at 20.

[55] *Id.* at 21.

[56] *Id.* (citations omitted).

effectively perpetuate the underlying Sixth Amendment violations by authorizing the government to do now precisely what it is accused of doing in the underlying criminal cases—obtain access to confidential attorney-client communications without any legitimate law enforcement justification for doing so.[57]

Additionally, the government makes no attempt to overcome *Newburyport's* presumption of nondisclosure.  The factors discussed in the Court's implied-waiver order continue to weigh against disclosure, at least at this stage of these proceedings.  As this Court previously explained, because petitioners' theory of relief under *Shillinger* does not require a showing of prejudice for purposes of establishing a Sixth Amendment violation, the government has no need to independently assess the content of the communications at issue in order to defend against petitioners' claims, let alone a need strong enough to outweigh Sixth Amendment concerns that weigh in favor of keeping those communications confidential.[58]  Further, unlike the plaintiffs in *Newburyport*, the petitioners here are not necessarily immune from further prosecution, strongly weighing in favor of nondisclosure.  Clearly, the Sixth Amendment concerns at play in petitioners' criminal cases do not wholly "evaporate" in their § 2255 proceedings.  Instead, *Newburyport* instructs that those concerns give rise to at least a presumption of nondisclosure in these cases, which constitute a continuation of the same federal prosecutions during which the alleged prosecutorial misconduct occurred.  The government has not even attempted to overcome this presumption by showing that its need for information is "proportional to the importance" of the residual constitutional concerns.  Thus, *Newburyport* does not strip Sixth Amendment protection from petitioners' § 2255 motions.  As discussed below, however, this does not mean

---

[57] *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).

[58] Doc. 225 at 6.

that the Court need not address whether the recordings are protected by the attorney-client privilege.

### 2.   Rule 26(b) Objections

#### a.   Legal Standard

The Court clarified in its June 4, 2020 Order that "[b]ecause the [S]ixth [A]mendment ensures a right to effective assistance of counsel, it should follow that the [S]ixth [A]mendment subsumes the attorney-client privilege, a necessary underpinning of that right."[59]  The privilege is an evidentiary rule that prevents courts from compelling disclosure of confidential communications by those the privilege shields.[60]  Thus, the protection afforded by the Sixth Amendment includes, but is not limited to, the scope of the attorney-client privilege.[61]  Indeed, the essential purpose of the right to effective counsel is to protect the fundamental right to a fair trial.[62]

As the Fifth Circuit explained in discussing intentional intrusion cases, a communication that "is intended to remain confidential and was made under such circumstances that it was reasonably expected and understood to be confidential" is protected by both the attorney-client

---

[59] *See* Note, *Government Intrusions into Defense Camp: Undermining the Right to Counsel*, 97 Harv. L. Rev. 1143, 1145 (1984) (citing *Weatherford v. Busey*, 429 U.S. 545, 563 (1977); *United States v. Levy*, 577 F.2d 200, 209 (3d Cir. 1978)).

[60] *Howell v Trammell*, 728 F.3d 1202, 1222 (10th Cir. 2013) (citation omitted).

[61] *See Weatherford*, 429 U.S. at 554 (rejecting the idea that every time "a defendant converses with his counsel in the presence of a third party thought to be a confederate and ally, the defendant assumes the risk" and thereby also renders inapplicable the Sixth Amendment right to consult with counsel and to do so without government intrusion); *Shillinger*, 70 F.3d at 1134–35, 1142 (holding the state violated the Sixth Amendment by intentionally and unjustifiably becoming privy to attorney-client communications; declining to address whether the communications were privileged after expressly acknowledging the possibility that the petitioner waived the privilege by speaking with counsel in the presence of a third party).

[62] *See Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993); *United States v. Cronic*, 466 U.S. 648, 658 (1984) ("[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.").

privilege and from government intrusion under the Sixth Amendment.[63]  In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client."[64]

Since these § 2255 proceedings arise under a federal statutory scheme, federal law provides the rule of decision as to application of the attorney-client privilege.[65]  The essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal advisor, (8) except if the protection is waived.[66]  Although this description suggests that the privilege only operates to protect the client's communications to a lawyer, the Tenth Circuit recognizes that a lawyer's communication to a client is also protected if it is "related to the rendition of legal services and advice."[67]  "A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed."[68]

Caselaw provides a wealth of guidance as to what is—and is not—protected by the attorney-client privilege.  First, it is important to note that "personal, confidential, [or] private

[63] *United States v. Melvin*, 650 F.2d 641, 645 (5th Cir. 1981).

[64] *Id.* (emphasis omitted) (quoting *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998)).

[65] *In re Universal Serv. Fund Tel. Billing Prac. Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005) (citing *Sprague v. Thorn Am., Inc.*, 129 F.3d 1355, 1368–69 (10th Cir. 1997)).

[66] *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2017 WL 2555834, at *1 (D. Kan. June 13, 2017) (citing *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 424 (D. Kan. 2009)).

[67] *Sprague*, 129 F.3d at 1370; *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093, 06-2360, 06-2359, 2008 WL 217203, at *2 (D. Kan. Jan. 25, 2008).

[68] *United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2013) (quoting *Foster v. Hill*, 188 F.3d 1259, 1264 (10th Cir. 1999)).

information" is not necessarily privileged.[69]  Second, it is clear that "[u]nderlying facts are not protected by the privilege."[70]  "Similarly, neither the acts or services performed by an attorney during the course of his representation, nor the scope of the representation, are within the attorney-client privilege because they are not 'communications.'"[71]  Nor are "general topics of attorney-client discussions" or ultimate "legal conclusions" of counsel protected.[72]

### b.    Waiver of PL Objections

Before reaching the government's specific PL objections, the Court addresses petitioners' argument that if the Court reaches the attorney-client privilege question, it should conclude that the government waived any Rule 26(b)(5)(A) objections to the PLs by failing to  raise them with petitioners or this Court by the February 14, 2020 deadline in the scheduling order.  Petitioners stress that the government agreed to the proposed format of the PLs, which contain all the information the government agreed they must contain in order to perform their intended function—to make a showing that the Sixth Amendment applies.  The government did not assert that when petitioners initially submitted the PLs *before* the evidentiary hearings, they had to submit affidavits from trial counsel or otherwise demonstrate the PLs would be admissible *at* the evidentiary hearings.  Instead, the government indicated to the FPD that its real quarrel was not with the content of the sample PLs, but with whether the government was entitled to disclosure of the actual recordings.[73]

---

[69] *AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003, 2014 WL 2760860, at *7 (D. Kan. June 18, 2014).

[70] *Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684, 11-2685, 11-2686, 2014 WL 545544, at *4 (D. Kan. Feb. 11, 2014) (quoting *Willliams v. Sprint/United Mgmt. Co.*, No. 03-2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006)).

[71] *Id.* at *6 (quoting *In re Universal*, 232 F.R.D. at 675).

[72] *Id.*

[73] Doc. 400-1.

The email chain submitted by the parties confirms that the government, via United States Attorney McAllister, agreed that the sample PL form was reasonable and confirmed there was no need to file a joint motion resolving any disputes as suggested by the Court.[74]  Petitioners argue that they included more information and details in the PLs than the government suggested and agreed upon, such as descriptions of the participants' nonverbal gestures, statements about documents and media the parties appeared to be reviewing, information about specific topics discussed during the attorney-client phone calls, and, where possible, trial counsel's recollections about the specific topics discussed during the attorney-client meetings.  Petitioners argue that this explains why the government did not challenge the format of PLs as deficient when petitioners submitted them, or petitioners' statement that the recordings were a means of satisfying the Court's threshold showing that the recordings were protected attorney-client communications, as opposed to an attempt to satisfy Rule 26(b)(5)(A).  Thus, petitioners conclude, the government has waived any argument that the PLs are insufficient as a factual matter to show the recordings are entitled to the legal protection afforded by the Sixth Amendment.

As petitioners point out, there is a distinction between satisfying Rule 26(b)(5)(A) when it is asserted as a mechanism for withholding otherwise discoverable information and, as in this case, determining whether Sixth Amendment protection attaches because a communication is privileged.  Under the latter, if the government has a valid objection to an assertion of privilege, or a concomitant argument that the privilege was waived or there was no reasonable expectation of privacy at the time of the communication, this does not mean the recording should be disclosed—it means the protected communication element of the per se Sixth Amendment claim arguably has not been met and the case should be dismissed.

---

[74] *Id.*

But the Court's ruling that any Sixth Amendment protection that attaches in this case remains in effect during petitioners' § 2255 proceedings does not mean further review of the recordings is unnecessary.  Although petitioners attempt to remove the attorney-client privilege from the analysis, it is not a "redundant" additional layer of protection.  In fact, "it seems that the traditional sanctity of the attorney-client relationship, characterized by the confidentiality of communications between the attorney and client, is precisely what [petitioners] in this case have sought to vindicate as against government intrusions."[75]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court has consistently applied principles relating to the attorney-client privilege as an appropriate framework for showing that the recordings between petitioners and counsel are protected communications under the Sixth Amendment.[76]

After the Court directed the recordings to be released, it outlined a procedure whereby the FPD would conduct an initial review to determine if the recordings met a very minimal threshold of being protected communications.  This showing inquired into the general character of the recorded conversation, without revealing the substance.  This preliminary review was necessary to determine whether the recordings existed, were viewable or discernable, and whether they related to legal advice or strategy—threshold findings if petitioners are entitled to proceed to an evidentiary hearing under the Rules Governing Section 2255 Proceedings.

Once the Court denied its implied-waiver argument, the government proceeded to argue the communications in the recordings were otherwise discoverable because they were not protected from disclosure by the attorney-client privilege.  It is now clear that the government

---

[75] *United States v. Melvin*, 650 F.2d 641, 645 (5th Cir. 1981).

[76] *Id.* (explaining a communication that "is intended to remain confidential" is protected by both the attorney-client privilege and from government intrusion under the Sixth Amendment).

either misapprehended petitioners' Sixth Amendment protection argument or banked on prevailing on the implied-waiver argument, as they made clear when the parties agreed on a format for the PLs for purposes of satisfying the preliminary showing that the recordings are protected by the Sixth Amendment, not as an assertion of an evidentiary attorney-client privilege in response to the government's request for leave to conduct discovery. Nevertheless, the Court agrees that it is the content that determines whether the PLs pass muster and, even though it agreed to the format, it is the content of the PLs that the government has challenged. Petitioners' waiver argument is overruled.

Accordingly, determining whether a recording is privileged continues to be the logical starting point for the Court's analysis of whether petitioners have made a threshold showing on the "protected attorney-client communication" element of their claims.[77] And as discussed below, the nature of the government's specific objections to the PLs requires *in camera* review of all the recordings.

### c.     Specific Objections

### i.     All Recordings

The government objects to all recordings that are not supported by competent evidence, that is, affidavits from defense counsel to confirm that the nature and purpose of the meetings and calls were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery. Although this requirement was reiterated by the Court at both status conferences, the parties did not include it in the agreed PL format.[78]

---

[77] As discussed below, the government has now responded to all of the § 2255 motions and argues, *inter alia*, that petitioners had no reasonable expectation of confidentiality in and/or waived the protected attorney-client privilege and/or Sixth Amendment protection.

[78] *See* Doc. 21 at 32, 51; Doc. 39 at 21 (discussing what would pass muster in the PLs and suggesting the parties comply with what the Court required rather than the parties' interpretation, fully expecting that the Court would have to resolve this issue prior to submission of PLs).

The Court agrees that the PLs must provide enough information, with sufficient detail, to allow the government and the Court to assess whether the recording can provide the basis for the petitioners' Sixth Amendment claims and that affidavits are necessary for this showing.

After this discovery matter went under advisement, petitioners started filing replies on July 24, 2020, with a rolling deadline of August 14, 2020.  All of the replies to claims involving video recordings include declarations from defense counsel stating that counsel met with the petitioner at CCA to discuss legal advice or strategy only; that counsel considered the meetings at CCA to be confidential; that counsel was unaware that the meetings were video recorded or did not consent to any recordings or distribution; that an interpreter was present, where applicable; and that counsel has reviewed the recording and that it contains discussions about legal advice or strategy.[79]

By contrast, while a few of the § 2255 motions filed or supplemented by the FPD after the *Black* Order include declarations from defense counsel regarding their understanding of the process at CCA regarding attorney privatization or the recording of calls between inmates and counsel, no affidavits were included in petitioners' replies to motions involving audio recordings. Contrary to petitioners' position, submissions of affidavits from defense counsel is required as part of the Court's threshold determination, a determination that must be made before  the evidentiary hearing.  Accordingly, within sixty (60) days of the date of this Order, petitioners with audio recording claims who have not already done so shall supplement their PLs with affidavits from defense counsel specific to their clients that confirm the recorded communications are within the ambit of Sixth Amendment protection.

---

[79] *See, e.g.*, Docs. 415–443; 451–472.

####    ii.    Soundless Videos

The Court first addresses the government's argument that the soundless video recordings are not privileged because the substance of the attorney-client communications is not discernable from the recordings.  At the September 2019 status conference, the government requested the opportunity to brief the issue of what legal standards apply to the soundless video recordings and requested that, before discovery begins, the Court issue another order setting forth those standards.  At the November 2019 status conference, the Court explained that establishing the protected communication element where soundless videos are at issue requires an evaluation of the quality of the non-verbal communications to determine whether there was communicative value.  The Court declined the government's request to issue another order,[80] noting it had previously discussed the applicable standards, guided by the Tenth Circuit's analysis in *Shillinger*,[81] in the *Black* Order,[82] and in *United States v. Phommaseng*.[83]  The Court reaffirms these applicable standards here.

In the *Black* Order, the Court addressed the government's challenge to the soundless video recordings as "too rudimentary for an observer to discern whether it involves legal advice or strategy or to disclose the content of any accompanying verbal communications."[84]  The Court adopted its previous findings that soundless videos can constitute privileged attorney-client communication, and that non-aural communication can be valuable to the observer.[85]  The Court

---

[80] Doc. 38.

[81] 70 F.3d 1132, 1142 (10th Cir. 1995).

[82] Case No. 16-20032, Doc. 758 at 163–66.

[83] Case No. 15-20020, Doc. 608 at 19–21.

[84] *Black* Order, 16-20032, Doc. 758 at 164–66.

[85] *Id.*

further found that given the subjective nature of the content of the videos, its value or significance would not necessarily be apparent to the Court or an outside viewer.[86]

Nevertheless, the government continues to assert that the privilege only applies to recordings that establish both (1) that any attorney-client communication depicted in the soundless videos is a confidential communication by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor, and (2) that the substance of the privileged communication is discernable.  After all, the government argues, it is "the substance of the communication which is protected, not the fact that there has been communication."[87]  There is no real dispute about the first requirement.  But the second requirement effectively requires that the communication have actual adversarial value to the objective viewer and is just another way of positing that the communication in the videos is not discernable because they are soundless.

The government cites *United States v. Hodgson* in support of its second purported requirement for a communication to be privileged.[88]  In that case, the IRS issued a summons to an attorney requesting records of all charges to his client for legal services and all moneys received for such services.[89]  The Tenth Circuit held the privilege did not extend to the records and information sought from the attorney, explaining that "the privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence."[90]  But matters relating to receipt of fees from a client are not usually privileged, because "payment of a

---

[86] *Id.* at 165.

[86] *Id.*

[87] *Burton v. R.J. Reynolds Tobacco, Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997).

[88] 492 F.2d 1175, 1177 (10th Cir. 1974).

[89] *Id.* at 1176.

[90] *Id.* at 1177 (internal quotation omitted).

fee is not normally a matter of confidence or a communication."[91]  "Absent confidentiality, the

privilege does not apply."[92]  Thus, the fact that the client paid or retained the attorney did not

reveal any confidence, and was not protected.

*Hodgson* would apply to this case, for example, if petitioners merely offered the CCA

attorney visitation logs in support of their privilege assertions.  But here, the recordings disclose

more than just the fact of the communication.  For example, the actual or subjective adversarial

value of actually observing a defense attorney review sentencing guidelines with a client on a

certain date or watching a defendant's unhappy demeanor when meeting with an attorney cannot

be objectively quantified or qualified.  As this Court explained in the *Black* Order,

> In cases where wrongful intrusion results in the prosecution
> obtaining the defendant's trial strategy, the question of prejudice is
> more subtle.  In such cases, it will often be unclear whether, and
> how, the prosecution's improperly obtained information about the
> defendant's trial strategy may have been used, and whether there
> was prejudice.  More important, in such cases the government and
> the defendant will have unequal access to knowledge.  The
> prosecution team knows what it did and why. The defendant can
> only guess.[93]

 And as this Court further noted, "[t]he prosecution makes a host of discretionary and judgmental

decisions in preparing its case.  It would be virtually impossible for an appellant or a court to sort

out how any particular piece of information in the possession of the prosecution was consciously

or subconsciously factored into each of these decisions."[94]  Thus, the relevant question is not

---

[91] *Id.*

[92] *Id.*

[93] *Black* Order at 155–56 (quoting *United States v. Danielson*, 325 F.3d 1054, 1070 (9th Cir. 2003))
(adopting burden-shifting analysis for Sixth Amendment claims alleging governmental interference with attorney-
client relationship; defendant must make prima facie showing of prejudice that government affirmatively intruded to
obtain privileged information about trial strategy; burden then shifts to government to show there has been no
prejudice to defendant as a result of these communications).

[94] *Id.* at 156 (quoting *Danielson,* 325 F.3d at 1071).

whether the substance of the silent video is discernable—a nearly impossible standard with silent video recordings—but whether the silent video recording has discernable communicative value that was made in confidence by a client seeking legal advice or strategy.

The government's suggested "adversarial value" element effectively reads out the presumption of prejudice under *Shillinger*. Under the per se Sixth Amendment theory pursued by petitioners, when a petitioner establishes a recording was a protected attorney-client communication, the Court must determine whether the government became privy to that communication because of its purposeful intrusion into the claimant's attorney-client relationship.[95] Once those elements are established, prejudice is presumed and a per se Sixth Amendment violation occurs.[96] This presumption is justified because adversarial communicative value rests in the eye and ear of the intruder, as the *Black* case demonstrated. As petitioners point out, the government's own conduct belies its argument that prosecutors can only exploit the information learned from a conversation by becoming privy to its actual substance.[97]

In addition to the general objection discussed above, the government objects to the soundless video PLs on grounds of lack of specificity and attaches a chart breaking down how it claims the PLs are deficient. The government references the Court's comments at the September 2019 status conference, where it explained that PLs for soundless videos would need to describe the specific topic of any confidential attorney-client communication, for example, plea negotiations as well as "some nonverbal communication going on about that [topic] that . . . is observable."[98] The government argues that many of the PLs fail this subjective test because (1)

---

[95] *Id.* at 163.

[96] *Id.* at 154 (quoting *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995)).

[97] *See id.* at 67–80 (describing in detail the instigating event in this litigation in *United States v. Dertinger*).

[98] Doc. 21 at 50.

many of the PLs do not even describe the topic of any communication or describe the communicative value of any observable nonverbal gestures; (2) boilerplate statements that a video reveals attorney communications or that communication was about legal advice and strategy are too vague; and (3) pointing to documents or a laptop alone is not sufficient to establish privileged attorney-client communications are depicted on a soundless video. The Court must review the recordings in order to rule on these objections.

### iii.    Audio Recordings

The government also continues to maintain that the attorney-client privilege does not attach (or is waived) when an inmate initiates an outgoing call after being warned that the call may be subject to recording. The government objects to the audio PLs because they do not include whether the call included a recorded preamble that warned the participants on the call that it may be subject to recording. Although the information included in the fact sheets indicates whether a preamble was played, the government requests this information be included in the PLs.[99]   As discussed below, the Court will listen to the audio recordings and this objection is moot.

### iv.    Waiver of Privilege Claims/Sampling

The government argues that, given the Court's admonitions and instructions regarding the PLs, the deficiencies cited in its objections warrant the Court deem waived any claim of privilege as to the soundless videos, overrule petitioners' objections to the government's discovery request for the actual recordings, and require each petitioner to produce to the government any and all

---

[99] The government also argues that petitioner Damon Griffin's PL regarding a March 24, 2014 phone call is insufficient to determine whether the call is privileged. The Court will address this objection in a separate order.

video recordings on which petitioner relies on as a basis that the government violated his or her Sixth Amendment rights.

Alternatively, the government requests that the Court adopt an *in camera* sampling and review procedure. The government proposes the Court: (1) review soundless video from roughly 20% of the cases, chosen at random, to determine whether the videos themselves reveal the substance of the attorney-client communication; and (2) review of audio recordings in all 23 cases, without waiver or abandonment of any of its legal arguments regarding the elements of Sixth Amendment claims.

The Court declines the government's sampling requests as to the video recordings. As the Court noted at the November 2019 status conference, the government's suggestion that the Court review a sample of the video recordings to determine whether soundless the videos themselves reveal the substance of the attorney-client communication effectively means none of the videos are privileged, regardless of what they show. Moreover, the government requests the Court review all audio recordings, given the relatively small number of cases. Instead, the Court will proceed to conduct an *in camera* review of all recordings in the course of making its determination of whether individual petitioners are entitled to proceed to an evidentiary hearing. This review will be guided by the threshold standards set forth in the *Black* Order and informed by the detail in the PLs as well as the affidavits of defense counsel. Any purported deficiencies in the PLs will either be resolved or confirmed by such review. Further, the recordings will be made a part of the record in every individual petitioner's case as sealed exhibits. Should any § 2255 motion proceed to evidentiary hearing, the Court reserves ruling on whether the recordings will be unsealed at that time and, if so, what is necessary to protect a petitioner's

Sixth Amendment rights in the event the Court finds he or she is entitled to relief that includes future prosecution or retrial.

Finally, the Court notes that petitioners' argument that this threshold showing is the legal standard for proving the protected attorney-client communication element of their claims is misplaced.  This threshold showing is merely that—it is not dispositive of whether petitioners have satisfied the protected communication element of their claims.  As discussed in detail below, petitioners are also required to establish there was a reasonable expectation of confidentiality with respect to the audio recordings and that they did not knowingly or intelligently waive their Sixth Amendment rights.

## III.    Petitioners' Objections to Order Granting Government Leave to Conduct Discovery

In its June 4, 2020 Order, the Court found that the government had established good cause to conduct discovery on the issue of whether petitioners had waived the attorney-client privilege or Sixth Amendment rights.  Judge O'Hara subsequently entered an order granting the government leave to conduct discovery on the elements of petitioners' Sixth Amendment claims. Petitioners object to that order pursuant to Fed. R. Civ. P. 72(a).

### A.    Standard of Review

Fed. R. Civ. P. 72 allows a party to provide specific, written objections to a magistrate judge's order.  With respect to a magistrate judge's order relating to non-dispositive pretrial matters, the district court does not conduct a *de novo* review; rather, the court applies a more deferential standard by which the moving party must show that the magistrate judge's order is "clearly erroneous or contrary to the law."[100]  "The clearly erroneous standard 'requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm

---

[100] 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

conviction that a mistake has been committed.'"[101]  To the extent petitioners raise new arguments in their motion for review that were not articulated in the response to the motion for leave to conduct discovery, they are waived.[102]

### 1.    Rule 6(a) Good Cause Standard

Rule 6 of the Rules Governing Section 2255 Proceedings governs discovery matters, and provides in relevant part:

> **(a) Leave of Court Required**. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. . . .
>
> **(b) Requesting Discovery**. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

Rule 6(a) allows either the petitioner or the government to use the discovery devices available under the Civil or Criminal Rules if the court authorizes such discovery "for good cause."  The Rule requires court authorization; there is no entitlement to discovery.  The Rule is "deliberately not specific about what discovery methods should be used or how discovery procedures should be administered but leaves this to the judge."[103]  In order to show "good cause" under Rule 6(a), a petitioner must provide the court with "specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate

---

[101] *Fish v. Kobach*, 267 F. Supp. 3d 1297, 1301 (D. Kan. 2017) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)).

[102] *Id.* (citing *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1184–85 (10th Cir. 2011)); *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996); *see also Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 n.3 (D. Kan. 1997).

[103] 3 Charles Alan Wright et al., Federal Practice and Procedure § 634, Westlaw (database updated Apr. 2020) (citing *United States v. Balistrieri*, 606 F.2d 216, 221 (7th Cir. 1979) ("It is within the district court's discretion to apply the appropriate rules on the basis of the facts of each case.")).

that he is . . . entitled to relief."[104]  The purpose of Rule 6(b) is to enable the court "to make certain that the inquiry is relevant and appropriately narrow."[105]

After reaffirming these standards, Judge O'Hara held that the government may show good cause by demonstrating that the requested discovery is necessary for the government to respond to the petitioner's § 2255 motion.[106]  Thus, in evaluating whether good cause had been shown, Judge O'Hara considered the "essential elements" of petitioners' claims.[107]  He found the government had demonstrated good cause because the discovery was necessary for the government to fully evaluate and respond to each petitioner's § 2255 motion.[108]

Whether the government established good cause to conduct discovery on the issue of waiver was referred to this Court.  In its order overruling petitioners' objection to the government's request for leave to conduct discovery on whether any petitioner waived the attorney-client privilege at the time of the recording, this Court adopted the same good cause standard as Judge O'Hara and found that information relevant to waiver is pertinent to the government's defense that petitioners' cannot meet the "protected attorney-client communication" element of their Sixth Amendment claims, rejecting petitioners' argument that the government had not established good cause to conduct discovery on this issue.[109]  Judge O'Hara incorporated this Court's order by reference in his order addressing specific objections to

---

[104] *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *LaFevers v. Gibson*, 182 F.3d 705, 723 (10th Cir. 1999).

[105] Rules Governing Section 2254 Cases, Rule 6(b) advisory committee notes.  Rule 6 of the Section 2254 rules is "fully applicable to discovery under these rules for § 2255 motions."  *See* Rule 6 of the Rules Governing Section 2255 Proceedings, advisory committee notes.

[106] Doc. 230 at 2 (citing *United States v. Jack*, No. 09-2626, 2013 WL 12329174, at *1 (D.N.M. Oct. 2, 2013)).

[107] *Id.* (citing *Bracy*, 520 U.S. at 904).

[108] *Id.* at 4.

[109] Doc. 225 at 9–13.

discovery.[110]  While petitioners did not move for reconsideration of this Court's order, they filed their motion within fourteen days of both orders and argued the "at-issue good cause standard," was legally erroneous.  Thus, any objection to or review of Judge O'Hara's discovery order necessarily requires review of this Court's order, which first articulated that standard and was incorporated into his order by reference.  Under D. Kan. Rule 7.3(b), "[a] motion to reconsider is appropriate if the court has obviously misapprehended [the] applicable law."[111]  Moreover, this Court has inherent authority to revise its own interlocutory orders.[112]

The Supreme Court, the Tenth Circuit, and this Court have stated that to show good cause under Rule 6(a), a petitioner must advance specific allegations that give the court reason to believe that the petitioner may be entitled to relief once the facts are fully developed.[113] Petitioners argue that Rule 6(a)'s single standard applies to both parties.  As applied to the government, this means requiring it to give the court reason to believe that, once the facts are fully developed, the government may be able to show that the petitioner is *not* entitled to relief. Petitioners argue that instead of applying that test, which the government also put forward,[114] the court ruled that the government can establish good cause by showing the elements of petitioners' claims are "at-issue" and thus discovery is necessary for it to respond to a petitioner's § 2255 motion.  The government concedes that the standard articulated by Petitioners is the applicable

---

[110] Doc. 230 at 4–5.

[111] *Madrigal v. Ingredient Rest.*, No. 12-4164-JTM, 2013 WL 162089, at *1 (D. Kan. Jan. 15, 2013).

[112] *See Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1224–25 (10th Cir. 2007) (explaining "law of the case" doctrine is discretionary, and that district courts remain free to reconsider their earlier interlocutory rulings made before the entry of judgment).

[113] *See United States v. Phommaseng*, 15-20020-JAR-5, Doc. 608 at 8 (quoting *Bracey v. Gramley*, 520 U.S. 899, 908–09 (1997)); *Curtis v. Chester*, 626 F.3d 540, 549 (10th Cir. 2010).

[114] Doc. 174 at 4 & n.14.

standard, but argues that the two tests amount to "semantic differences" that do not give rise to different standards.

Petitioners are correct.  While the "at-issue" standard cited by the undersigned and followed by Judge O'Hara specifically applies to establishing good cause in actual ineffective-assistance-of-counsel claims where the defendant puts the effectiveness of defense counsel's performance at issue, this standard does not apply more generally to the intentional intrusion claims advanced by these petitioners.[115]  In addition, information is relevant under Rule 6(b) so long as it bears on "any issue that is or may be in the case."[116]  Thus, by ruling that the government has good cause to conduct discovery on any topic that might be "at issue" in this case, this Court effectively conflated the good cause requirement in Rule 6(a) with the relevance inquiry in Rule 6(b).

Accordingly, the Court reconsiders its previous ruling and finds that the applicable standard under Rule 6(a) as applied to the government's request for leave to conduct discovery is the established good-cause test, that is, requiring the government to: (1) give the Court reason to believe that, once the facts are fully developed, the government may be able to show the petitioner is not entitled to relief; and (2) identify evidence that indicates the information supporting those allegations likely exists.  As with requests for leave made by a petitioner, this standard requires more than mere speculation about what information petitioners might have and about what defenses the government might prove.  Because both orders failed to apply this standard in ruling that the government had good cause to proceed with discovery on the topics of prejudice, procedural default or statute of limitations, and waiver, the Court reconsiders whether

---

[115] *See Barrett v. United States*, No. 09-CIV-105-JHP, 2016 WL 7116071, at *4 (E.D. Okla. Dec. 6, 2016).

[116] Doc. 230 at 3.

the government has shown good-cause for discovery on any of these topics under the established test.

### 2.    Prejudice

Although prejudice is not an element of petitioners' per se Sixth Amendment claims, this Court has noted that individual prejudice is relevant to the Court's determination of an appropriate remedy.[117]  Accordingly, Judge O'Hara ruled that if petitioners stipulated they will not attempt to demonstrate individualized prejudice, the government would be prohibited from serving discovery on the issue.[118]  The court authorized the government to serve discovery on the topic of individualized prejudice but gave petitioners until July 8, 2020, one week after the July 1 discovery response deadline, to either (1) submit stipulations on individualized prejudice or (2) respond to those requests.[119]

The court stayed petitioners' deadline pending a ruling on the government's motion for protective order seeking an order excusing it from searching its electronic repositories for responsive information ("ESI") and from producing that ESI to petitioners.[120]  The Court subsequently denied the motion for protective order, set the government's deadline to respond as August 28, 2020, and extended petitioners' deadline to stipulate or respond until September 11, 2020.[121]  In light of the government's Notice that it will not comply with the Court's order regarding ESI discovery, the Court defers ruling on the topic of prejudice.[122]

---

[117] *Id.* at 5 (citing *Black* Order at 181).

[118] Doc. 274 at 1–2.

[119] *Id.*; *see* Doc. 258 at 2 (asking the court to extend the stipulation deadline because petitioners are "unable to fairly and adequately evaluate whether they will seek to prove individualized prejudice in support of their intentional-intrusion claims until the government produces certain discovery").

[120] Docs. 359, 398.

[121] Doc. 446.

[122] *See* Doc. 587.

### 3.    Procedural Defenses

The government seeks evidence showing petitioners knew or should have known the factual bases for their intentional-intrusion claims either (1) more than one year before they filed their respective § 2255 motions; or (2) in time to raise the issue at trial or on appeal.[123]  The former would be relevant to timeliness under § 2255(f) if the petitioner at issue filed their § 2255 motion more than one year after the petitioner's conviction became final.  The latter would be relevant if the petitioner could have raised their Sixth Amendment claim on direct appeal but failed to do so.

Judge O'Hara acknowledged this was a close call under the "at-issue" test, but ultimately reasoned that the government could not know the type of petitioner-specific-timing information necessary to raise such a defense.[124]  The court rejected petitioners' argument that the government had not shown good cause for such discovery because the government did not say why it believes any particular petitioner has information that would render his claims barred. The government argued that it suspects that all or most of the petitioners knew or should have known the factual basis for his or her claim at a time that would result in their Sixth Amendment claim being barred.  It claims that until the petitioners respond to the discovery requests, it does not know precisely when a petitioner knew or should have known the factual basis for his or her claim.  Petitioners argue that there is no good cause for such discovery because the information the government seeks is a matter of public record; if the government's suspicions are backed by evidence, it should have set that evidence forth in is Rule 6 motion.  Instead, as set forth below, it

---

[123] Doc. 139 at 5.

[124] Doc. 230 at 7.

set those allegations forth in great detail in its responses filed *after* the court ruled on the Rule 6 motion.

The Court agrees with petitioners. Judge O'Hara based his good-cause ruling, in large part, on the parties' Joint Fact Sheets submitted for each petitioner, which marked "Yes" in response to the question "Procedural defense asserted by USAO?"[125] But review of the government's responses indicates that "procedural defense" actually meant three possible defenses: collateral-attack waiver, procedural default and waiver, and untimeliness, each with subset arguments and petitioner-specific facts and dates. Since the court's June 4, 2020 Order, the government has filed over 70 responses affirmatively alleging that certain petitioners' claims are untimely under § 2255(f)(4), that certain petitioners' claims are procedurally defaulted, or both. By mid-August, petitioners filed replies affirmatively responding to the government's procedural challenges.

These responses and replies set out these procedural defenses in significant detail and belie the government's request that discovery is needed in order to respond to petitioners' claims. For example, in cases involving audio recordings, the government attaches affidavits from the Assistant United States Attorneys ("AUSAs") in individual cases in support of its argument that on specific dates, several petitioners and their counsel received recordings of attorney-client calls as part of the discovery in their underlying criminal cases. In other cases, the government argues that petitioners or their counsel were on notice that they needed to raise this claim before sentencing or on direct appeal because of the Special Master's Report issued on December 16, 2016.

---

[125] Doc. 194-1.

Similarly, in cases involving video recordings, the government argues that most petitioners or their counsel should have learned the factual predicate for their Sixth Amendment claim on January 31, 2017, when the Special Master issued his First Report Regarding Video Recordings that stated that the USAO had custody of soundless video recordings of attorney-client meetings from CCA for the period between February 20, 2016 and May 16, 2016. The Special Master then distributed to the parties visitation logs and attorney-client sign-in/sign-out sheets that he had obtained from CCA. By May 2018, the FPD began identifying the potential pool of clients that could have a § 2255 claim and identified 102 potential clients, focusing on those in custody. On July 17, 2018, the FPD was appointed to represent defendants with such claims pursuant to Standing Order 18-3, and by August 2018, the FPD had developed a list of defendants with a video recording § 2255 claim.

As discussed below, to the extent any further evidence is needed on this defense, the Court intends to order petitioners to supplement the record under Rule 7 of the Rules Governing Section 2255 Proceedings. Accordingly, petitioners' objection is sustained on the topic of procedural defenses.

### 4.      Waiver of Privilege/Sixth Amendment Protection

As noted, it was this Court that found that the government had shown good cause to conduct discovery on whether any petitioner waived the attorney-client privilege at the time of the recording by, for example, revealing the communications to third parties, placing a call after receiving a warning that the call was recorded, or meeting with counsel in a room that was known to be monitored.[126] Applying the "at-issue standard," the Court found that there is overlap between the issue of waiver of the attorney-client privilege and waiver of the

---

[126] Doc. 225 at 9–10.

constitutional right to effective counsel.[127]  The Court further noted that the existence of a

"protected attorney-client communication" is an element of petitioners' Sixth Amendment

claim.[128]  Thus, the Court found that information relative to waiver is "pertinent" to the

government's defense that petitioners cannot meet that element of their claims.  The question

now before the Court is whether the government has shown good cause for discovery under the

established test.

As a threshold matter, petitioners take issue with the Court's failure to distinguish

between claims based on video and audio recordings.  The Court agrees that the audio and video

recordings present discrete issues and the government's discovery requests should therefore be

addressed separately.  The Court discusses these recordings in turn.

### a.      Audio Recordings

As noted in its June 4 Order, the issue of waiver was addressed in the *Black* Order in the

context of whether detainees knowingly and intelligently waived the right to confidential

attorney-client communications with respect to recorded phone calls.  There, the dispute centered

on whether the preamble warning at the beginning of CCA-recorded calls or the signage near the

phones where sufficient to allow for a knowing waiver of any detainee's Sixth Amendment right

to confidential communications with counsel.[129]  The Court noted that *Shillinger* held that it

takes more than the mere presence of a third party for a person to waive their Sixth Amendment

right and, similarly, the mere fact that CCA warned detainees that their calls would be subject to

recording and monitoring is not enough, standing alone, to waive the privilege on the record

---

[127] *Id.* at 13.

[128] *Id.*

[129] *Black* Order at 167.

before the Court.[130]  Thus, with respect to audio recordings of phone calls at CCA, the government must show that it has reason to believe that it may, if the facts are fully developed, be able to establish that a petitioner has knowingly and voluntarily waived the Sixth Amendment right to confidential attorney-client communications and thus cannot show the "protected attorney-client communication" element of petitioner's claim.

Petitioners argue that the government cannot satisfy the entitled-to-relief prong of the good-cause test because this Court ruled in *Black* that information relative to waiver of the attorney-client privilege is not dispositive of the Sixth Amendment waiver issue.  Petitioners' argument is misplaced.  In *Black*, the Court found that it remains an open question what constitutes additional facts supporting waiver of the attorney-client privilege or Sixth Amendment right to confidential attorney-client communications, noting the overlap between the issue of waiver of the privilege and waiver of the constitutional right.[131]

The government continues to assert the jail call waiver argument in these § 2255 proceedings, specifically, that it is generally accepted that a prisoner who places a call from an institutional phone with knowledge that the call is subject to being recorded has impliedly consented to the recording, so the call is not protected by the attorney-client privilege.  The government argues that as to any recorded call that came into the possession of the government, petitioners consented to the monitoring of the call and therefore conversed with counsel in the presence of a third party.

The government also argues that inmate records, attached to its responses to individual petitioner's motions, confirm that when a petitioner was booked into CCA, he signed the intake

---

[130] *Id.* at 176 (discussing *Shillinger v. Haworth*, 70 F.3d 1132, 1134 (10th Cir. 1995)).

[131] Doc. 225 at 13.

form consenting to recording of his calls except "[a] properly placed phone call to an attorney." The Inmate Handbook, which each defendant is supposed to confirm he received, advised how to comply with procedures to make unmonitored calls to counsel. The government seeks evidence whether a petitioner complied with these procedures. If an inmate received the handbook, the government argues that a petitioner could not have reasonably expected or understood that his communications on any call would be confidential and thus, any such call would not be entitled to Sixth Amendment protection. The Court finds that the government has demonstrated good cause for discovery on the topic of whether a petitioner had a reasonable expectation of confidentiality under these circumstances.

The government also contends that any expectation of confidentiality is lost if a petitioner discloses the substance of a communication to a third party and seeks discovery of such communications.[132] But the government does not explain how such a disclosure after-the-fact destroys the expectation of confidentiality at the time of the actual attorney-client conversation, nor how this waiver of privilege would constitute a knowing and voluntary waiver of any petitioners' Sixth Amendment rights. Moreover, the government does not identify any evidence that would suggest any of the audio petitioners disclosed communications to a third party after the phone call. Thus, the government fails to satisfy the established good-cause test on the basis of after-the-fact disclosures and discovery on this topic is denied.

As discussed below, however, the Court denies the government's request for leave to file a dispositive motion on merits issues. Given the posture of the proceedings, and petitioners' burden to show the recordings contain "protected attorney-client communications," the Court

---

[132] *See In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006). The government also argues that even inadvertent disclosure of an attorney-client communication results in the loss of confidentiality. As this Court explained in the *Black* Order, however, the case law the government relies on was abrogated by Fed. R. Evid. 502(b), which was amended in 2007. *Black* Order at 168 & n.631.

finds that instead of requiring petitioners to respond to the government's proposed discovery, the Court will direct petitioners to supplement the record under Rule 7 and provide declarations as set forth in detail below.

### b.      Video Recordings

The government asserts as a defense that because petitioners could not have had a reasonable expectation of confidentiality in their gestures and gesticulations in the attorney meeting room at CCA, the video recordings are not protected by the Sixth Amendment.  The government anticipates the evidence will show that petitioners and counsel could not reasonably have expected that their meeting would be confidential, given that they were readily observable by others in CCA, including through the windows on some of the meeting rooms and seek discovery on this topic.  In other words, petitioners were gesturing and gesticulating in the presence of third parties, and thus waived attorney-client privilege.  More specifically, the government argues that petitioners could not have reasonably expected that their gestures and gesticulations would be confidential, so they would not be protected by the Sixth Amendment. In support, the government cites the so-called *Melvin* standard, where the Fifth Circuit held that a communication is protected by the attorney-client privilege and protected from government intrusion under the Sixth Amendment if it is intended to remain confidential and was made under such circumstances that it was reasonably expected and understood to be confidential; disclosures made in the presence of third parties may not be intended or reasonably expected to remain confidential.[133]

---

[133] *United States v. Melvin*, 650 F.2d 641, 645 (5th Cir. 1981).

Petitioners do not address the *Melvin* standard, but argue that the Court rejected this argument in the *Black* Order.  Petitioners cite to *Weatherford v. Bursey*[134] and *Shillinger* as supporting their broad argument that waiver of a privilege by having the attorney-client conversation in the presence of a third party does not vitiate protection under the Sixth Amendment.  In *Weatherford*, where an undercover agent met with the defendant and his attorneys to discuss defense matters, the Court rejected the idea that every time "a defendant converses with his counsel in the presence of a third party thought to be a confederate and ally"—an act that, as this Court has pointed out, would typically waive the privilege—"the defendant assumes the risk" and thereby also waives the Sixth Amendment right to bar the government from such conversations.[135]  And as this Court noted in the *Black* Order, "*Shillinger* itself stands for the proposition that it takes more than the mere presence of a third-party for a person to waive their Sixth Amendment right to confidential attorney-client communications," where the presence of a deputy did not vitiate the privilege.[136]

Significantly, in those cases the third party was either an undercover agent or a sheriff's officer.  In other words, having law enforcement present under those circumstances did not destroy the defendant's reasonable expectation of the confidentiality of the communications.  Similarly, the fact that petitioners met with counsel in a visitation room that was monitored by CCA for security purposes, either through a window or via camera, is no different from authorizing a deputy to monitor trial-prep sessions for the same purpose.[137]  Accordingly, the mere fact that a visitation room at CCA might have had windows does not give the Court reason

---

[134] 429 U.S. 545 (1977).

[135] *Id.* at 547–48, 554; *see Black* Order at 168 (quoting *United States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008)).

[136] *Black* Order at 176; *see also Weatherford*, 429 U.S. at 554.

[137] *Shillinger v. Haworth*, 70 F.3d 1132, 1134 (10th Cir. 1995).

to believe that the government may be able to show a petitioner is not entitled to relief.  Thus, the government fails to satisfy the established good-cause test on the topic of waiver by petitioners asserting video claims.

Finally, the government argues that any expectation of confidentiality is lost if a petitioner discloses the substance of a communication to a third party.  Like petitioners with claims involving audio recordings, the government does not identify any evidence that would suggest a video petitioner did what the government alleges.  The government fails to satisfy the established good-cause test on the topic of third-party waiver, and therefore it is not entitled to discovery.

## IV.     Leave to File Additional Dispositive Motions

### A.     Background

On July 17, 2018, Standing Order 18-3 appointed the FPD to represent any defendant from the District of Kansas who may have a post-conviction Sixth Amendment claim based on the recording of in-person attorney-client meetings or attorney-client phone calls by any holding facility housing federal detainees within this District.  After the parties' settlement fell through in July 2018, the FPD filed approximately fifteen motions pursuant to 28 U.S.C. 2255 raising Sixth Amendment claims related to video recordings based on visitation logs at CCA.  Although the government filed responses to a some of these early § 2255 motions, most of the deadlines were stayed until after the October 2018 evidentiary hearing and the August 13, 2019 *Black* Order.  On August 21, 2019, these motions were assigned to the undersigned for determination of petitioners' Sixth Amendment claims and defenses and consolidated for discovery.[138]

---

[138] Doc. 1.

Per the scheduling orders entered in these proceedings, petitioners supplemented the early motions and filed new motions solidifying their claims after the *Black* Order.  The government was ordered to file responses and petitioners have filed replies.  The government was also required to seek leave of the Court to file any additional dispositive motions by July 31, 2020.

**B.    Discussion**

Citing both the Rules Governing Section 2255 Proceedings and Fed. R. Civ. P. 12(b)(6), the government asks the Court to freely grant it leave to file numerous dispositive motions, characterized as follows: (1) procedural motions, including an objection to the reassignment of these § 2255 motions to the undersigned and alleging error to allow petitioners unilateral access to the recordings at issue; (2) motions regarding petitioners' deficient Sixth Amendment allegations and evidence, including procedural and affirmative defenses, failure to demonstrate the elements of their Sixth Amendment claims, failure to demonstrate confidentiality of calls or meetings, and failure to demonstrate prejudice; and (3) motions regarding relief sought.

Section 2255(b) states, in pertinent part, that "[u]nless the [2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the [district] court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  The Supreme Court has interpreted this statutory language to mean that a hearing is unnecessary in those instances (a) "where the issues raised by the motion were conclusively determined either by the motion itself or by the 'files and records' in the trial court," or (b) where the motion alleges circumstances "of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or

46

recollection."[139]  In contrast, where "the factual allegations contained in the petitioner's motion

and affidavit" are "put into issue by the affidavit filed with the Government's response" and

"relate[ ] primarily to purported occurrences outside the courtroom and upon which the record

could . . . cast no real light," a hearing is required under the statute.[140]

The procedure for responding to § 2255 motions is set forth in Rules 4 and 5 of the Rules

Governing Section 2255 Proceedings.  Rule 4(b) directs the court to determine whether

prehearing dismissal of a § 2255 motion is appropriate.  Rule 5 addresses responses and replies;

a response from the government is not required unless the judge so orders and must address the

allegations in the motion.  Courts may authorize discovery under Rule 6 before—and rely on

discovery in—determining whether an evidentiary hearing is warranted.[141]

Rule 7 allows the Court, if it has not dismissed the motion summarily, to order expansion

of the record by the inclusion of additional materials relevant to the motion, including affidavits.

The Tenth Circuit has noted that the district court retains the "flexibility" or discretion "to utilize

alternative methods to expand the record without conducting an extensive hearing."[142]  The

Supreme Court has said that a § 2255 movant is not always entitled to a full hearing simply

because the record "does not conclusively and expressly belie his claim."[143]  District courts

retain the "discretion to exercise their common sense" and dispose of these issues without an

---

[139] *United States v. Fields*, 949 F.3d 1240, 1246 (10th Cir. 2019) (quoting *Machibroda v. United States*, 368 U.S. 487, 494–95 (1962)).

[140] *Id.*

[141] Rule 6 of the Rules Governing Section 2254 Proceedings, cmt. notes to 1976 adoption.

[142] *United States v. Lee -Speight*, 529 F. App'x 903, 907 n.5 (10th Cir. 2013).

[143] *Machibroda v. United States*, 368 U.S. 495 (1962).

evidentiary hearing when a movant's factual allegations are "vague, conclusory, or palpably incredible."[144]

In these cases, the claims raised in petitioners' motions could not be summarily dismissed under Rule 4(b) upon initial review of the motions and the Court ordered the government to respond.  The government has availed itself of the procedure contemplated by Rules 4 and 5 by filing a response to each § 2255 motion.  All but seven responses seek dismissal of the respective motion on grounds that the petitioners' claims are untimely, procedurally defaulted, and/or barred by their pleas or plea agreements.  Likewise, many of the government's arguments on the merits of the pending motions are specifically raised and briefed in the responses and replies, challenging whether petitioners' allegations, even if true, entitle them to relief.[145]  Petitioners have replied and addressed the government's grounds for dismissal and denial of their respective motions.  Accordingly, as discussed below, a Rule 12(b)(6) motion would be unnecessarily duplicative and not contemplated by Rule 12 of the Rules Governing Section 2255.[146]

### 1.     First Category

The first category of proposed dispositive motions includes motions alleging it was error for the Court to: (1) reassign the § 2255 motions where the trial or sentencing judge is available, and (2) allow petitioners' unilateral access to the recordings.  As petitioners note, neither of these motions would be dispositive.

---

[144] *Id.* at 495–96.

[145] *See In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009) (holding a § 2255 motion must allege facts that, if proven, would warrant relief from petitioner's conviction or sentence).

[146] *See* Fed. R. Civ. P. 81(a)(4)(A) ("These rules apply to proceedings for habeas corpus . . . to the extent that the practice in those proceedings . . . is not specified in . . . the Rules Governing Section 2255 Cases.").  The government does not cite any authority permitting such motion practice in the context of a § 2255 proceeding and the Court's independent research was similarly unavailing.

First, the § 2255 motions were originally assigned to the sentencing judge pursuant to Rule 4(a) of the Rules Governing Section 2255 Proceedings.  All of the *Black*-related § 2255 motions pending before other judges in this District were subsequently *re*assigned to this Court for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery, as the claims have a common nucleus of facts that stem from the *Black*  investigation over which this Court presided.[147]  However, the underlying criminal cases were not reassigned to this Court and the Court will not decide any additional pending claims in those cases beyond the *Black*-related Sixth Amendment claims.  And while the Court acknowledges that petitioners are seeking a global remedy of dismissal or reduction of sentence based on the government's alleged pattern of misconduct, the Court has not yet determined whether it will decide the appropriate remedy to impose should any petitioner prevail of the merits of his or her claim or instead leave that issue to the sentencing judge.[148]  Moreover, the government did not object to reassignment of the § 2255 motions in August 2019, nor raise the issue in the responses filed in June 2020.  Finally, even if the government were to prevail on this argument, the § 2255 motion would simply be transferred back to the original judge, not dismissed.

Nor is the government's allegation that the Court has wrongfully deprived it of access to the recordings dispositive of the § 2255 motions for any individual petitioner.  The government did not seek reconsideration of the Court's implied-waiver ruling,[149] and the issue of whether the recordings remain protected in this § 2255 litigation was addressed in the government's

---

[147] Doc. 1.

[148] The Court notes that this reassignment included multiple motions pending before The Hon. Carlos Murguia.  After Judge Murguia resigned from the Court, his criminal cases were randomly reassigned to other judges in the District of Kansas per normal administrative protocol on February 21, 2020.  Many of the motions the government cites as improperly reassigned to this Court were reassigned from Judge Murguia in the normal course of court business rather than as part of the *Black* § 2255 reassignment.  *See* Doc. 552-1 at 1–3.

[149] Doc. 225.

objections to the PLs and in its responses to the § 2255 motions.  The government's motion is denied with respect to the first category of proposed dispositive motions.

### 2.      Second Category

The second category of proposed dispositive motions is characterized by the government as "deficient Sixth Amendment allegations and evidence" and can be divided into two camps: non-substantive obstacles to relief and challenges to the merits of petitioners' Sixth Amendment claims.[150]  Dismissal of § 2255 motions is specifically contemplated by Rule 8(a) of the Rules Governing Section 2255 Proceedings and requires the judge to determine whether an evidentiary hearing is warranted if the motion is not dismissed.  It is clear that under the applicable Rules, this Court is obliged to determine the procedural grounds for dismissal raised by the government before it delves into the merits of Petitioners' Sixth Amendment claims.[151]  Accordingly, as discussed below, the Court will proceed as directed by the Rules Governing Section 2255 Proceedings and decide first whether an individual petitioner's claim is subject to dismissal on non-substantive grounds.  If a motion is not dismissed, the Court will proceed to determine whether an evidentiary hearing is required or whether the files and records, including the PLs, recordings, affidavits from defense counsel, discovery, and any materials produced under Rule 7, conclusively show that a petitioner is not entitled to relief.[152]

---

[150] Doc. 474 at 6–7.

[151] *See United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994) ("[I]f the government raises procedural bar, the courts must enforce it unless cause and prejudice or a miscarriage of justice is shown."); *Grady v. United States*, 269 F.3d 913, 919 (8th Cir. 2001) ("[A]n untimely § 2255 motion presents the government with an affirmative defense that precludes a court from granting relief on the merits of the claim.").

[152] Rule 8(a) Rules Governing Section 2255 Proceedings.

### a.   Non-Substantive Procedural Defenses

The government's procedural defenses include collateral-attack waiver by guilty plea, procedural default and waiver, and timeliness.  In nearly all of its responses, the government specifically seeks dismissal of individual petitioners' § 2255 motions on one or more of these grounds.  Per the Court's request, the government filed a chart confirming which procedural defenses apply to each petitioner.[153]

The Court finds the government's responses raising procedural defenses are fully briefed, comprehensive, and detailed, as are petitioners' replies.  Many of these procedural defenses are fact-specific and require a case-by-case inquiry.  With the exception of the collateral-attack waiver issue, these defenses are ready for consideration and decision.

### i.   Procedural Default and Timeliness

The government argues that forty-five petitioners have procedurally defaulted their Sixth Amendment claims because they were not presented on direct appeal.  As previously discussed, the government alleges specific dates and time frames that the factual grounds for each petitioner's claims were reasonably available to him or her before sentencing, yet the petitioner failed to raise the claim before the district court or on direct appeal, resulting in procedural default.  Accordingly, the government argues that these petitioners cannot show "cause" for not raising his or her potential Sixth Amendment claim either in the district court or on direct appeal.  Relatedly, the government alleges that eleven petitioners filed Rule 41(g) motions alleging Sixth Amendment claims with respect to video recordings but waived or abandoned their claims by proceedings with sentencing and failing to create a record or seek a ruling prior to judgment.

---

[153] Doc. 552-1.

The government also claims that sixty-five petitioners' claims are time-barred under § 2255(f). In each case, the government alleges specific dates and time frames during which it asserts that each petitioner could have discovered his claim, had he exercised due diligence. Many of the government's timeliness arguments overlap with the procedural default arguments. For example, with respect to audio recordings, the government argues that recordings of phone calls from CCA were disseminated to petitioners on specific dates as part of the criminal case discovery. The government argues other attorney-client calls were obtained as part of the *Black* investigation and were identified in the Special Master's Report issued December 16, 2016. With respect to video recordings, the government argues many petitioners or their counsel could have discovered their claim sometime in February 2017, after the Special Master issued his First Report Regarding Video Recordings that stated the USAO had custody of soundless video recordings.

The Court finds that no further dispositive motion is necessary on these defenses and the government's motion is denied.

### ii.     Collateral-attack Waiver by Plea Agreement

The Court previously addressed this issue in *United States v. Phommaseng*, in the context of the government's response to petitioner Phommaseng's motion for leave to conduct discovery under Rule 6 of the Rules Governing Section 2255 Proceedings with respect to his audio recording claims.[154] In that case, Phommaseng's Fed. R. Crim. P. 11(c)(1)(C) plea agreements contained the following waiver provision:

> **Waiver of Appeal and Collateral Attack**. The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the length and conditions of

---

[154] Case No. 15-20020-JAR-5, Doc. 608 (D. Kan. Aug. 13, 2019).

supervised release, as well as any sentence imposed upon revocation of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). **Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct**.[155]

The government argued that Phommaseng could not show good cause for his discovery requests under Rule 6(a) because his Sixth Amendment "confidential communications claim" was waived by operation of law under *Tollett v. Henderson*,[156] or by the express waiver provision he signed as part of his three plea agreements. The Court agreed with Phommaseng that (1) his Sixth Amendment claim was not an "independent Sixth Amendment confidential communications claim," but rather, a prosecutorial misconduct claim alleging the government's misconduct violated his Sixth Amendment right to effective counsel, which was expressly excepted from the waiver provision in the plea agreements that affirmatively assured a defendant who is pleading guilty that he "in no way waives" the right to bring such claims, and (2) rejected the government's argument that Phommaseng had waived any Sixth Amendment claim because prosecutorial misconduct can only arise in the context of the Fifth Amendment.[157]

Phommaseng filed a supplemental § 2255 motion on February 28, 2019, arguing broadly that the government's interference with the attorney-client relationship violates the Sixth

---

[155] *Id.* at 10 (emphasis added).

[156] 411 U.S. 258, 267 (1973) (holding a criminal defendant who enters a valid guilty plea "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").

[157] *Phommaseng*, Doc. 608 at 11–12 (citing *United States v. Christy*, 916 F.3d 814, 824–25 (10th Cir. 2019)).

Amendment by infringing on his right to the effective assistance of counsel as well as his right to counsel in general and that, unlike a petitioner who alleges that defense counsel's performance was constitutionally adequate, intentional-intrusion claims either presume that prejudice occurred or treat it as altogether irrelevant.[158]  Without any discussion of the specifics or timing of his plea agreements, Phommaseng argues that his decision to enter a plea does not render the Tenth Circuit's per se approach inapplicable and thus he does not need to show that he would have proceeded to trial rather than entering a plea.[159]

The government now raises the collateral-attack waiver procedural bar in response to twenty of the pending § 2255 motions: four motions where petitioners had plea agreements with waiver language identical to the language in *Phommaseng* (the "standard plea agreements");[160] three motions where the language in petitioner's plea agreement was different;[161] and thirteen motions where the petitioner pled guilty without an agreement.[162]  The government continues to argue that because petitioners, regardless of the type or lack of plea agreement waiver, raise independent claims relating to the alleged deprivation of constitutional rights that purportedly occurred before the entry of their guilty pleas—and do not challenge their plea as either uncounseled or involuntary—their claims are foreclosed under *Tollett*.  The government also argues that petitioners who pled guilty without a plea agreement may only attack the voluntary

---

[158] Doc. 87 at 16–19.

[159] Doc. 522 at 29–31.

[160] *See Franco*, Case No.18-2415-JAR-JPO; *Gutierrez*, Case No. 18-4102-JAR-JPO; *Ponce-Serrano*, 16-Case No.18-4104-JAR-JPO; *Rapp*, Case No. 18-2117-JAR-JPO.

[161] *See* Doc. 552-1.

[162] *See id.*

and intelligent character of the guilty plea by showing that the advice they received from counsel was not within the range of competence demanded of attorneys in criminal cases."[163]

In their replies, however, petitioners who entered into standard plea agreements do not argue that the carve-out to the collateral-attack waiver language creates an exception to a waiver by operation of law under *Tollett* and its progeny.  Instead, like petitioners without a plea agreement, they contend that their Sixth Amendment claims allege that by intruding on their confidential attorney-client communications, the government violated their right to effective assistance of counsel, thus disabling counsel from fully assisting and representing them.  To the extent that misconduct occurred before petitioners entered a plea, petitioners now assert that the claims "necessarily and implicitly" attack the voluntary and intelligent nature of their pleas. Alternatively, assuming a claim falls outside *Tollett's* ineffective-assistance-of-counsel exception, petitioners argue that does not necessarily mean that a claim falls within *Tollett's* general rule because that rule only precludes defendants from raising claims that relate to the deprivation of constitutional rights that occurred *prior to* the entry of a guilty plea.

Petitioners' reply argument—that their Sixth Amendment claims implicate the voluntary or intelligent nature of the pleas by showing the advice petitioner received from counsel was deficient or ineffective—raises new issues regarding collateral attack of the voluntary and intelligent character of their guilty pleas and the necessary showing required to succeed on such a claim.  Accordingly, the Court directs supplemental briefing from both parties on the following issues: (1) whether petitioners with standard plea agreements rely on the carve-out to the collateral attack waiver language to create an exception to the waiver-by-operation-of-law rule

---

[163] *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973) (citing *McMann v Richardson*, 397 U.S. 759, 771 (1970)).

under *Tollett* and its progeny, and if so, clarify the grounds for such an exception; and (2) address the argument that the Sixth Amendment intentional-intrusion claims implicate the voluntary or intelligent nature of the pleas by showing the advice each petitioner received from counsel was deficient or ineffective, how that argument might be impacted by the nature and timing of petitioner's plea agreement or lack thereof, and the necessary showing required to succeed on such a claim and how to reconcile the per se prejudice argument with the standard set forth in *Tollett*.

### b.      Merits Challenges

The second sub-category of proposed dispositive motions includes challenges to the merits of petitioners' Sixth Amendment claims.  In its responses, the government raises myriad challenges to the elements of the Sixth Amendment claims, including:

- the recordings at issue are not constitutionally protected in these § 2255 proceedings;

- petitioners fail to show the recordings contain any privileged or protected attorney-client communications because the soundless video recordings do not reveal the substance of the privileged communication or because there was no reasonable expectation that the communications were confidential where the Petitioner failed to follow procedures and consented to monitoring of phone calls;

- the *Shillinger* per se rule does not apply to plea agreements;

- petitioners fail to demonstrate a purposeful intrusion into their attorney-client relationship by the prosecution;

- none of the prosecution team members learned the substance of or became privy to the communications;

- a Sixth Amendment violation requires a showing of prejudice and petitioners have failed to demonstrate a realistic probability of prejudice;

- the facts of *Shillinger* are not comparable to the allegations in these cases;

- any Sixth Amendment violation was harmless; and

- petitioners are not entitled to the relief requested.

These issues, many of which mirror or overlap the issues raised in the challenges to the PLs and objections to discovery, are likewise fully and comprehensively briefed.

Rule 8 of the Rules Governing Section 2255 Proceedings states that "if the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."  As the Tenth Circuit has explained, the decision not to hold an evidentiary hearing on a § 2255 motion involves a merits determination:

> The decision not to hold an evidentiary hearing is essentially the equivalent of a dismissal for a failure to state a claim or a summary judgment, because the district court has concluded that the record does not entitle the prisoner to relief; either the prisoner has failed to allege facts on which relief could be predicated, or the record conclusively contradicts the prisoner's allegations.  Thus, there could be no error in denying an evidentiary hearing unless the district court made an incorrect merits determination.[164]

The burden "for establishing an entitlement to an evidentiary hearing is relatively light."[165]  Where "[t]he factual allegations contained in the petitioner's motion and affidavit" are "put into question by the affidavit filed with the Government's response," and "relate[ ] primarily to purported occurrences outside the courtroom and upon which the record could . . .

---

[164] *United States v. Ciocchetti*, 480 F. App'x 912, 914 (10th Cir. 2012) (quoting *In re Lindsey*, 582 F.3d 1173, 1175–76 (10th Cir. 2009) (per curiam)).

[165] *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (citation omitted).

cast no real light," a hearing is required under the statute.[166]  When presented with factual allegations, "a district court may only forego a hearing where 'the petitioners allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."[167]  Thus, a Rule 12(b)(6) motion would be unnecessarily duplicative of the responses already filed by the government

Further, the factual pleading requirements under § 2255 place a burden on the movant that ordinary civil plaintiffs are not subjected, since under Fed. R. Civ. P. 56, summary judgment is awarded only if the plaintiff would not be entitled to relief under any set of facts that could be proven in support of his claim.[168]  By contrast, when a habeas petitioner alleges all of the particular facts on which he relies, he should not be denied the opportunity to prove at a hearing that they support his conclusion unless the court is certain, as a matter of substantive law, that the facts pleaded do not entitle the petitioner to relief.[169]  As previously noted, the government asserts that denial of nearly all of the § 2255 motions is appropriate because petitioners' allegations, even if true, do not entitle them to relief.  Thus, any further dispositive motions on the merits of petitioners' Sixth Amendment claims would be inconsistent with the Rules Governing Section 2255 Proceedings and the government's motion is denied.

That being said, in the event a motion to vacate survives dismissal, the Court foresees the need to exercise its discretion to develop the record on the issue of waiver with respect to the audio recording claims.  Although typically the Court would not order expansion of the record to include materials relevant to the substantive claims before determining non-substantive grounds

---

[166] *Field*, 949 F.3d at 1246 (quoting *Machibroda*, 368 U.S. at 494–95).

[167] *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

[168] Fed. R. Civ. P. 56(a).

[169] 28 U.S.C. § 2255(b).

for dismissal, this issue in particular warrants advance notice to petitioners, so as to avoid any further delay should the Court determine evidentiary hearings will proceed.  The issue of whether there was a reasonable expectation that jailhouse calls were confidential or that a petitioner waived or consented to the audio recordings has been at the center of this controversy since 2016.  As previously discussed, this defense has been raised by the government in all twenty-three cases involving audio recordings, arguing that petitioners consented to the monitoring of any recorded call that came into the possession of the government and therefore conversed with counsel in the presence of a third party.  Indeed, petitioners have been on notice since the September 2019 status conference that the Court contemplated they would submit such affidavits before an evidentiary hearing.[170]

Accordingly, petitioners with claims involving audio recordings of phone calls from CCA will be expected to supply a sworn statement setting forth the factual details in support of their assertion that the phone calls meet the "protected attorney-client communication" element of their claims.  This sworn statement, declaration, or affidavit should specifically address each call detailed in the PLs including, but not limited to, details addressing the government's waiver argument as set forth in its responses.  In addition, the Court will review the audio recordings submitted *in camera* to determine: (1) the exact wording used in the warning on the call; (2) how many times the warning is given on the call; and (3) whether any parties on the call made any statements acknowledging the warning or evincing awareness that the call was being recorded during their conversation.  The Court will consider these materials in deciding any motions that survive dismissal.

---

[170] Doc. 21 at 65–67.

### 3.      Third Category

Finally, the third category of motions seeks leave to file motions relating to petitioners' failure to establish entitlement to the relief requested, including failure to demonstrate prejudice and no basis for reduction in the term of imprisonment.  As with the merits defenses, these issues are addressed in the parties' motions, responses, and replies and the Court will evaluate the issues in due course without need for additional dispositive motions.

Surprisingly, however, this category also includes challenges to certain petitioners' Article III standing to challenge their conviction or sentence, including any individuals who have been deported, regardless of timing, as well as any petitioners who received the mandatory minimum term of imprisonment and who pled guilty or were sentenced before June 1, 2016, when the USAO received the video recordings at issue.[171]  In both its motion for leave to file additional dispositive motions and its chart summarizing its defenses, the government characterizes these defenses as jurisdictional and not subject to waiver; yet none of these defenses were "expressly stated" in the government's responses.

The "federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief" only for persons "in custody."[172]  "It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte*."[173]  Thus, although the government did not raise this issue in its responses, it is incumbent upon this Court to determine as a threshold matter whether it has jurisdiction to consider and rule upon certain

---

[171] Doc. 474 at 9–10; Doc. 552-1 at 4 nn.3–4.

[172] *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

[173] *United States v. Ausby*, No. 72-67 (BAH), 2019 WL 2870232, at *4 (D.D.C. July 3, 2019) (quoting *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008)).

§ 2255 motions before it.  Accordingly, the government is directed to supplement its responses solely to raise issues related to this Court's subject matter jurisdiction.  The Court cautions the government that any such supplemental responses shall be strictly limited to jurisdictional challenges; any additional or tangential arguments are not well-taken and will be stricken.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's Motions Challenging Petitioners' Privilege Logs (Docs. 351, 352, 353, 355) are **sustained in part**. **Within sixty (60) days** of the date of this Order, petitioners who have not already done so shall supplement the PLs with affidavits from defense counsel regarding the audio recordings.  In addition, petitioners shall submit forthwith all recordings detailed in their PLs, as well as any available transcripts of the audio recordings, for *in camera* review by the Court as set forth above;

**IT IS FURTHER ORDERED** that petitioners' Motion to Review the Court's Order Granting in Part and Denying in Part the Government's Motion for Leave to Conduct Discovery (Doc. 354) is **sustained in part**.  **Within sixty (60) days** of the date of this Order, petitioners asserting audio recording claims shall supplement the record with affidavits on the issue of waiver as set forth above.

**IT IS FURTHER ORDERED** that the government's Motions for Leave to File Dispositive Motions (Docs. 473, 474) are **denied.**  The parties are ordered to supplement the record as follows:

(1)  **Within fourteen (14) days** of the date of this Order, the government shall supplement its responses to address **jurisdictional defenses only**; any additional or tangential arguments are not well-taken and will be stricken.  Petitioners subject to any jurisdictional challenge shall reply within **fourteen (14) days** of service the

61

government's supplemental response.  The parties' responses and replies shall be limited to twenty (20) pages and filed in the master case as one pleading with all applicable petitioners named in the caption, as well as in petitioner's individual corresponding civil cases; no further briefs will be permitted; and

(2) the parties are directed to file supplemental briefs addressing the collateral-attack waiver by plea agreement issue detailed above.  Petitioners' brief shall be filed within **fourteen (14) days** of the date of this Order; the government's response shall be filed within **fourteen (14) days** of service of petitioners' brief.  The parties' briefs shall be limited to twenty (20) pages and filed in the master case as one pleading with all applicable petitioners named in the caption, as well as in each petitioner's individual corresponding civil cases; no further briefs will be permitted.

**IT IS SO ORDERED.**

Dated: <u>October 15, 2020</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE