**In the United States District Court
for the District of Kansas**

---

**In re: CCA Recordings 2255 Litigation**,
                              **Petitioners,**

v.                                             Case No. 19-cv-2491-JAR-JPO

                                               **(This Document Relates to Case No. 12-cr-20066-JAR-37,** *United States v. Vernon Brown*, **and Case No. 20-cv-2233-JAR-JPO,** *Vernon Brown v. United States*)

**United States of America.**
                              **Respondent.**

---

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Vernon Brown's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. 2255 (Doc. 2211).[1] Petitioner alleges the government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to his attorney-client communications and asks the Court to find that he has made a sufficient showing to warrant an evidentiary hearing. As a remedy, he asks the Court to vacate his judgment with prejudice to refiling or, alternatively, to reduce his term of imprisonment by approximately 50% and vacate his term of supervised release.[2] The government has responded[3] and Petitioner has

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, Case No. 12-20066-JAR-37. Citations prefaced with "*CCA Rec. Lit.*, Doc." refer to filings and entries in this consolidated case, Case No. 19-2491-JAR-JPO. With the exception of *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in Case No. 16-20032-JAR are prefaced with "*Black*, Doc."

[2] Evidentiary hearings in these consolidated cases were originally scheduled to begin January 26, 2021 and continue until completed. Pursuant to Administrative Rule 2020-13, due to the COVID-19 pandemic, all in-person hearings scheduled to begin before February 15, 2021, have been continued subject to further order of the Court. The January 26, 2021 hearing date has been converted to a status conference.

[3] *Brown v. United States*, Case No. 20-2233-JAR-JPO, Doc. 3. The government does not raise any procedural defenses to Petitioner's motion.

replied.[4] For the reasons explained in detail below, the Court finds that an evidentiary hearing is warranted because the record before the Court does not conclusively show that Petitioner is not entitled to relief on his 28 U.S.C. § 2255 motion.

## I. Background

### A. Procedural History

Petitioner was charged in Count 1 of a superseding indictment with conspiracy to manufacture, possess with intent to distribute, and distribute 280 grams or more of cocaine and five kilograms or more of cocaine mixture.[5] Count 1 carried a statutory mandatory minimum of ten years' imprisonment and a maximum term of life imprisonment.[6]

On January 6, 2014, Petitioner was convicted by a jury on all counts. On May 8, 2014, the Honorable Judge Thomas Marten sentenced him to 120 months' imprisonment, the mandatory minimum term for his count of conviction, imposed a five-year term of supervised release, and made him jointly and severally liable with his codefendants for a money judgment of $28,500,000.[7] Petitioner filed a direct appeal to the Tenth Circuit Court of Appeals, which affirmed his conviction on November 20, 2015.[8]

The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in this matter on July 17, 2018.[9] On May 5, 2020, Petitioner filed this § 2255 motion, claiming he is entitled to vacatur of his conviction and sentence. Because Petitioner will complete his custodial

---

[4] *Id.* Doc. 4.

[5] Doc. 401.

[6] *Id.* at 56; *see also* 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846.

[7] Docs. 1556, 1522.

[8] *United States v. Brown*, 631 F. App'x 605 (10th Cir. 2015).

[9] D. Kan. Standing Order 18-3 (July 17, 2018), http:/www.ksd.uscourts.gov/wp-content/uploads/2018/07/Standing-Order-18-3-Appointing-FPD.pdf.

sentence on January 25, 2021, before an evidentiary hearing can be completed, he withdraws his alternative request to reduce his term of imprisonment by approximately 50% and asks the Court to vacate his five-year term of supervised release and any monetary penalties.[10]

### B. The *Black* Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motions before the Court.[11] That comprehensive opinion was intended to provide a record for future consideration of the many anticipated motions filed pursuant to § 2255 and is incorporated by reference herein. The Court does not restate the underlying facts and conclusions of law in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events that came to light in the *Black* case and investigation, which involved audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were incarcerated at CCA. The government admits that it obtained videos from CCA in connection with the *Black* case, which focused on drug and contraband trafficking inside CCA. The government's possession of these recordings came to light in August 2016, when then-Special Assistant United States Attorney ("SAUSA") Erin Tomasic and AUSA Kim Flannigan accused defense attorney Jacquelyn Rokusek of "jeopardiz[ing] their investigation" in *Black*.[12] The defense also discovered that the

---

[10] *Brown v. United States*, 20-2233-JAR-JPO, Doc. 4 at 2. Evidentiary hearings in these consolidated cases were originally scheduled to begin January 26, 2021 and continue until completed. Pursuant to Administrative Rule 2020-13, due to the COVID-19 pandemic, all in-person hearings scheduled to begin before February 15, 2021, have been continued subject to further order of the Court. The January 26, 2021 hearing date has been converted to a status conference.

[11] Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019). As discussed in that Order, petitioners' Sixth Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at Corrections Corporation of America ("CCA"). That facility has since been renamed CoreCivic. For convenience, the Court refers to it as CCA in this Order.

[12] *Black* Order at 70–80.

3

United States Attorney's Office for the District of Kansas ("USAO") had routinely obtained recorded attorney-client phone calls, and that it did so without notice to the attorneys, clients, or courts.[13]

Once notified of the video and audio recordings, this Court ordered (1) all local federal detention facilities to cease recording attorney-client meetings and phone calls;[14] (2) the video and audio recordings in USAO custody to be impounded;[15] and (3) the government to preserve its computer hard drives.[16] By October 11, 2016, the Court had appointed a Special Master to assist in what the Court termed "Phase I and Phase II" of the Court's investigations, that is, determining the number of recordings possessed by the government and how to index and segregate them, and to identify privileged or confidential information within those recordings.[17] The government did not cooperate with the Special Master's investigation, however, and its failure to cooperate ultimately resulted in a lengthy delay in this Court's ability to rule on these issues.[18] Finally, despite the delay associated with the government's failure to cooperate and its litigation efforts challenging the propriety of the Special Master's investigation, the Court conducted a full evidentiary hearing on all pending matters in this case in October and November 2018.

---

[13] *Id.* at 29.

[14] *Black*, Doc. 253 at 3.

[15] *Id.* at 3 & 12 ("The Court subsequently issued a clawback order directing the government to gather and surrender to the Court all audio recordings in its possession, in the possession of investigative agencies, and in the possession of other defendants who had received them in discovery.").

[16] *Id.* at 40. At the September 7, 2016 hearing in *Black*, "[t]he Court ordered the government to retain and preserve all of the hard drives as well as all of the hardware necessary to access the information on the hard drives." *Id.*

[17] *Black*, Doc. 146 (Appointment Order).

[18] *Black* Order at 23–56.

4

On August 13, 2019, the Court issued the *Black* Order, which detailed, among other things, the government's practice of obtaining attorney-client communications and its view that these communications are not protected, and whether the "preamble" language that played at the beginning of Securus telephone calls constituted a waiver of the attorney-client privilege.[19] The Order also addressed the applicable standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[20] The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit decision in *Shillinger v. Haworth*,[21] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[22] Once those elements are established, prejudice is presumed.[23]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[24] While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment. With respect to the audio recordings, the Court determined that the following threshold showings must be made after review and verification by

---

[19] *Id.* at 101–06.

[20] *Id.* at 145–62.

[21] 70 F.3d 1132 (10th Cir. 1995).

[22] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[23] *Id.*

[24] *Id.* at 163.

5

the FPD: (1) the telephone recording exists, and (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client.[25] This threshold showing requires an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[26]

### C. Proceedings in Consolidated Master Case

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[27] It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties. Although the underlying criminal cases were not reassigned as part of that Order, for unrelated reasons, Judge Vratil reassigned Petitioner's criminal case to this Court for all further proceedings on October 23, 2020.[28]

The Court likewise assumes the reader is familiar with the proceedings in the consolidated master case that precipitate the matter before the Court, and does not restate the underlying facts and legal conclusions in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it. As detailed in the Court's October 15, 2020 Orders, the parties' initial efforts at cooperation culminated in the government's notice that it refuses to comply with discovery orders and demands that the Court

---

[25] *Id.* at 166.

[26] *Id.*

[27] *CCA Rec. Lit.*, Doc. 1.

[28] Doc. 2277.

6

rule immediately on both the procedural and merits defenses raised in its responses to the § 2255 motions.[29] Highly summarized, the Court: (1) reaffirmed its previous ruling on the government's implied waiver argument and, in light of the government's blanket objections to petitioners' privilege logs, established a procedure for *in camera* review of the recordings; (2) ordered petitioners asserting audio recording claims to supplement the record with affidavits on the issue of waiver; (3) ordered the parties to supplement their responses and replies to address jurisdictional defenses and the collateral-attack waiver by plea agreement issue; and (4) found the government's refusal to comply with discovery orders issued by the Court is sanctionable under Fed. R. Civ. P. 37(b)(2) and notified the government of its intent to take as conclusively established certain facts petitioners might have proved regarding the "privy to" element of their Sixth Amendment claims with respect to any petitioner who establishes that he or she is entitled to an evidentiary hearing; and (5) to the extent it is not rendered moot, the Court sets the Rule 37(e) spoliation sanctions matter for evidentiary hearing.[30]

On January 18, 2021, the Court issued an order: (1) reaffirming and expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the collateral-attack waiver by plea issue; and (3) addressing jurisdictional defenses raised by the government, including certification requirements under Rule 2(b) of the Rules Governing Section 2255 Proceedings.[31]

### D. Recordings in this Case

Pending trial, Petitioner was detained at CCA from May 30, 2012, to June 13, 2014. Upon arriving at CCA, Petitioner signed several documents acknowledging that telephone calls that he made from CCA may be monitored and recorded and advising him that calls with his

---

[29] *CCA Rec. Lit.*, Docs. 587, 588.

[30] *Id.*

[31] *Id.* Doc. 730.

attorney were subject to being monitored unless he followed the privatization procedure in place to make an unmonitored call.[32] While at CCA, Petitioner called his attorney, Eric Kjorlie, to discuss his case.

Per the parties' agreement, as part of the *Black* investigation, the government began surrendering recordings and derivative evidence of audio calls from CCA that were in its possession.[33] The FPD reviewed six audio recordings of Petitioner speaking by telephone with Kjorlie from CCA between May 15, 2013 and August 1, 2013.[34] Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communication, verifying that during these phone conversations, Petitioner discussed matters "relat[ing] to legal advice or strategy" with Kjorlie.[35] Petitioner also provided a sworn Declaration from Kjorlie, stating that he reviewed the recordings of the six calls listed on the privilege log and confirms that during each of these calls: (1) he and Petitioner were the only two individuals on the line; (2) the matters discussed related to legal advice or strategy sought by Petitioner, as detailed in the logs and the declaration; (3) he had no knowledge nor did he believe that the calls were subject to monitoring or recording, that he would not have consented to such, and that he never informed Petitioner before the calls were made that they were subject to such monitoring and recording in a manner that would be dispensed to prosecutors and, if so, would not have conversed with his client over the phone concerning trial strategy or plea matters to negotiate with the government; and (4) at

---

[32] *Brown*, 20-2233-JAR-JOP, Doc. 3-4.

[33] *Black*, Doc. 705.

[34] *CCA Rec. Lit.*, Doc. 205-2 at 19–21.

[35] *Id.*

8

the time the calls were placed, he had no reason to consider privatizing the phone conversations with Petitioner.[36]

Petitioner was prosecuted by the team of AUSA Terra Morehead and AUSA David Zabel. AUSA Morehead made a general request for Petitioner's calls on August 22, 2013, citing "trial prep" as the reason for needing the calls.[37] AUSAs Morehead and Zabel deny that they listened to the recordings during the pending of the underlying case.[38]

After the government objected to Petitioner's privilege log, the Court reviewed the audio recordings *in camera*.[39] As set out in the privilege log, the Court confirms that the content of the calls contains discussions relating to legal advice or strategy, including: filing a specific pretrial motion, co-defendants' change of pleas, charges to which Petitioner should or should not plead, the strength of the government's case, counsel's review of discovery, plans to speak to the prosecutor about specific matters, counsel's trial strategy, and Petitioner's concerns about trial specifics and family matters.[40] At the beginning of each call, a recorded preamble states the following language: "This is a collect call from an inmate at CCA-Leavenworth Detention Center. This call is subject to recording and monitoring." There is no discussion of this preamble between Petitioner and Kjorlie in any of the calls listed in the privilege log, nor any statements acknowledging the warning or evincing awareness that the calls were being recorded during their conversation.

---

[36] *Id.* Doc. 705-1.

[37] *Brown*, 20-2233-JAR-JOP, Doc. 3-1 ¶ 7.

[38] *Id.* Docs. 3-1, 3-2.

[39] *CCA Rec. Lit.*, Docs. 355, 588.

[40] *Id.* Doc. 205-2 at 19–21.

Pursuant to the Court's order, Petitioner supplemented the record with a sworn statement addressing the issue of waiver with respect to his audio recording claims.[41]  Petitioner acknowledges signing the Inmate Handbook, but does not recall receiving or reading it before he placed the calls to Kjorlie.[42]  He also acknowledges signing the Monitoring of Inmate Telephone Calls sheet, but does not recall reading it or having anyone else read it to him before placing the calls.  At the time he signed the monitoring sheet, nobody informed him that he had the right to speak privately with counsel and that if he waived that right, CCA could provide his recorded attorney-client calls to the USAO or that the government could use those calls against him in court.  He also avers that he did not know that by signing the document, he was consenting to the monitoring and/or recording of his attorney-client calls unless he took certain steps, or that he was consenting to CCA giving the recordings to the USAO and its agents.  Petitioner further avers that at the time he placed the calls listed on the privilege log, he did not believe that the recorded preamble applied to attorney-client calls, that the written warning signs placed on or near the telephone applied to attorney-client calls, that his attorney-client calls were subject to monitoring or recording, or that the USAO or its agents could obtain recordings of his attorney-client calls from CCA.

Accordingly, the Court overrules the government's objections to Petitioner's privilege log and finds that Petitioner has met the threshold showing for a protected communication.  The Court further finds that the Declarations submitted by Petitioner and Kjorlie create issues of disputed material facts regarding whether Petitioner waived his Sixth Amendment rights by placing the calls despite signing the documents, the preamble warning, and signage.

---

[41] *Id.* Doc. 588 at 59, 61.

[42] *Id.* Doc. 667-1.

**II.     Discussion**

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[43] The Supreme Court has interpreted this statutory language to mean that a hearing is unnecessary in those instances (a) "where the issues raised by the motion were conclusively determined either by the motion itself or by the 'files and records' in the trial court," or (b) where the motion alleges circumstances "of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection."[44]

A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[45] An evidentiary hearing is not necessary where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[46]

Given the record before it, the Court finds genuine factual disputes remain as presented in the parties' affidavits and concludes that it must conduct an evidentiary hearing in this case. Thus, subject to Rule 2(b) certification of Petitioner's motion, the Court grants Petitioner an evidentiary hearing on his Sixth Amendment claim, specifically, the question of whether the government intentionally interfered with his attorney-client relationship by intentionally and unjustifiably becoming privy to his attorney-client communications while detained at CCA.

---

[43] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)); Rule 4 of the Rules Governing Section 2255 Proceedings.

[44] *United States v. Fields*, 949 F.3d 1240, 1246 (10th Cir. 2019) (quoting *Machibroda v. United States*, 368 U.S. 487, 494–95 (1962)).

[45] *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).

[46] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995) ("[T]he allegations must be specific and particularized, not general or conclusory."); *United States v. Fisher*, 38 F.3d 1143, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that are merely conclusory in nature and without supporting factual averments).

**IT IS THEREFORE ORDERED BY THE COURT** that an evidentiary hearing is **granted** on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, subject to Rule 2(b) certification of his motion.  The Court will discuss the hearing date and other pretrial matters with the parties at the status conference scheduled for **January 26, 2021**.

**IT IS SO ORDERED.**

Dated: January 18, 2021

                                         S/ Julie A. Robinson
                                         JULIE A. ROBINSON
                                         CHIEF UNITED STATES DISTRICT JUDGE