## In the United States District Court
## for the District of Kansas

---

**In re: CCA Recordings 2255 Litigation**,
                              **Petitioners,**

**v.**                                          **Case No. 19-cv-2491-JAR-JPO**

                                                **(This Document Relates to Case No. 13-
                                                cr-20051-JAR, *United States v. William
                                                Mitchell*, and Case No. 17-cv-2380-JAR-
                                                JPO, *William Mitchell v. United States*)**

**United States of America.**
                              **Respondent.**

---

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner William Mitchell's Motion to Vacate and

Discharge with Prejudice under 28 U.S.C. 2255, as supplemented (Docs. 185, 208).[1]  Petitioner

alleges the government violated the Sixth Amendment by intentionally and unjustifiably

becoming privy to his attorney-client communications and asks the Court to find that he has

made a sufficient showing to warrant an evidentiary hearing.  As a remedy, he asks the Court to

vacate his judgment with prejudice to refiling or alternatively, to reduce his term of

imprisonment by approximately 50% and vacate his term of supervised release.[2]  The

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, Case No. 13-20051-JAR.  Citations prefaced with "*CCA Rec. Lit.*, Doc." refer to filings and entries in this consolidated case, Case No. 19-2491-JAR-JPO.  With the exception of *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in Case No. 16-20032-JAR are prefaced with "*Black*, Doc."

[2] Evidentiary hearings in these consolidated cases were originally scheduled to begin January 26, 2021 and continue until completed.  Pursuant to Administrative Rule 2020-13, due to the COVID-19 pandemic, all in-person hearings scheduled to begin before February 15, 2021, have been continued subject to further order of the Court. The January 26, 2021 hearing date has been converted to a status conference.

government has responded and Petitioner has replied.  For the reasons explained in detail below,

subject to certification pursuant to Rule 2(b) of the Rules Governing Section 2255 Proceedings,

the Court finds that an evidentiary hearing is warranted because the record before the Court does

not conclusively show that Petitioner is not entitled to relief on his 28 U.S.C. § 2255 motion.

## I.      Background

### A.      Procedural History

Petitioner was charged, via a sealed Indictment, on May 8, 2013.[3]  John Duma was

appointed to represent Petitioner on May 10, 2013, and Petitioner was thereafter ordered

detained pending trial.[4]  Duma filed a motion for mental examination on June 11, 2013, and

competency proceedings ensued.[5]  On October 15, 2013, Judge Kathryn H. Vratil found

Petitioner competent to stand trial.[6]

In December 2013, a four-count Superseding Indictment charged Petitioner with

conspiracy to distribute and possess with intent to distribute cocaine base, distribution of cocaine

base, possession to distribute cocaine base, and using a communication facility to facilitate a

drug crime.[7]  Defendant filed a number of pretrial motions, including a motion to suppress

evidence.[8]  These motions were litigated before Magistrate Judge David J. Waxse, who issued a

---

[3] Doc. 1.

[4] Docs. 3, 14.

[5] Docs. 18, 21, 27, 30, 31, 38, 39, 40.

[6] Doc. 46.

[7] Doc. 60.

[8] Doc. 48.

Report and Recommendation recommending the denial of Petitioner's motion to suppress evidence.[9]  The court overruled his objection and adopted the Report and Recommendation.[10]

On January 21, 2014, the case was reassigned from Judge Vratil to Judge Carlos Murguia.[11]  On February 19, 2014, John Duma was allowed to withdraw as Petitioner's attorney,[12] and John Jenab was appointed to represent Petitioner the following day.[13]

On April 14, 2014, a jury convicted Petitioner on all four counts after a five-day trial.[14] On December 17, 2014, Judge Murguia sentenced Petitioner to 168 months' imprisonment.[15] The government presented evidence at the sentencing hearing, and the court overruled Petitioner's objections to the Presentence Investigation Report and denied his request for a downward variance.[16]

Petitioner filed a direct appeal with the Tenth Circuit Court of Appeals, challenging the court's denial of his motion to suppress evidence.[17]  The Tenth Circuit affirmed the court's decision,[18] and the Supreme Court denied his petition for a writ of certiorari on January 9, 2017.[19]

On June 30, 2017, Petitioner timely filed a *pro se* motion pursuant to 28 U.S.C. § 2255, setting forth three grounds for relief: (1) trial counsel provided ineffective assistance of counsel

---

[9] Doc. 71.

[10] Doc. 93.

[11] Doc. 75.

[12] Doc. 88.

[13] Doc. 89.

[14] Doc. 118.

[15] Doc. 107.

[16] Docs. 158, 165.

[17] Doc. 143.

[18] *United States v. Mitchell*, 653 F. App'x 651 (10th Cir. 2016).

[19] *Mitchell v. United States*, 137 S. Ct. 629 (2017) (denying certiorari).

based on his failure to protect his speedy-trial rights, to object to evidence admitted at trial, and to cross-examine witnesses after the government amended the indictment; (2) the government was in possession of telephone calls recorded at CCA between himself and counsel in violation of Due Process and the Sixth Amendment; and (3) the district court relied on inconsistent testimony in order to enhance his sentence based on drug quantity.[20]

The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in this matter on July 17, 2018.[21]  After the Court granted leave, the FPD supplemented Petitioner's motion with respect to his Sixth Amendment claim.[22]  Petitioner is currently housed at FCI Williamsburg, with a projected release date of April 7, 2025.[23]

### B.       The *Black* Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motions before the Court.[24]  That comprehensive opinion was intended to provide a record for future consideration of the many anticipated motions filed pursuant to § 2255 and is incorporated by reference herein.  The Court does not restate the underlying facts and conclusions of law in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events that came to light in the *Black* case and investigation, which involved audio recordings of telephone conversations and soundless video

---

[20] Docs. 185, 186.

[21] D. Kan. Standing Order 18-3 (July 17, 2018), http:/www.ksd.uscourts.gov/wp-content/uploads/2018/07/ Standing-Order-18-3-Appointing-FPD.pdf.

[22] Doc. 208

[23] Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Jan. 15, 2020).

[24] Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019).  As discussed in that Order, petitioners' Sixth Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at Corrections Corporation of America ("CCA").  That facility has since been renamed CoreCivic.  For convenience, the Court refers to it as CCA in this Order.

recordings of meetings between attorneys and their clients who were incarcerated at CCA.  The government admits that it obtained videos from CCA in connection with the *Black* case, which focused on drug and contraband trafficking inside CCA.  The government's possession of these recordings came to light in August 2016, when then-Special Assistant United States Attorney ("SAUSA") Erin Tomasic and AUSA Kim Flannigan accused defense attorney Jacquelyn Rokusek of "jeopardiz[ing] their investigation" in *Black*.[25]  The defense also discovered that the United States Attorney's Office for the District of Kansas ("USAO") had routinely obtained CCA recorded attorney-client phone calls, and that it did so without notice to the attorneys, clients, or courts.[26]

Once notified of the video and audio recordings, this Court ordered (1) all local federal detention facilities to cease recording attorney-client meetings and phone calls;[27] (2) the video and audio recordings in USAO custody to be impounded;[28] and (3) the government to preserve its computer hard drives.[29]  By October 11, 2016, the Court had appointed a Special Master to assist in what the Court termed "Phase I and Phase II" of the Court's investigations, that is, determining the number of recordings possessed by the government and how to index and segregate them, and to identify privileged or confidential information within those recordings.[30]  The government did not cooperate with the Special Master's investigation, however, and its

---

[25] *Black* Order at 70–80.

[26] *Id.* at 29.

[27] *Black*, Doc. 253 at 3.

[28] *Id.* at 3 & 12 ("The Court subsequently issued a clawback order directing the government to gather and surrender to the Court all audio recordings in its possession, in the possession of investigative agencies, and in the possession of other defendants who had received them in discovery.").

[29] *Id.* at 40.  At the September 7, 2016 hearing in *Black*, "[t]he Court ordered the government to retain and preserve all of the hard drives as well as all of the hardware necessary to access the information on the hard drives." *Id.*

[30] *Black*, Doc. 146 (Appointment Order).

failure to cooperate ultimately resulted in a lengthy delay in this Court's ability to rule on these issues.  Finally, despite the delay associated with the government's failure to cooperate and its litigation efforts challenging the propriety of the Special Master's investigation, the Court conducted a full evidentiary hearing on all pending matters in this case in October and November 2018.

On August 13, 2019, the Court issued the *Black* Order, which detailed, among other things, the government's practice of obtaining attorney-client communications and its view that these communications are not protected, and whether the "preamble" language that played at the beginning of Securus telephone calls constituted a waiver of the attorney-client privilege.[31]  The Order also addressed the applicable standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[32]  The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit decision in *Shillinger v. Haworth*,[33] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[34] Once those elements are established, prejudice is presumed.[35]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-

---

[31] *Black* Order at 101–06.

[32] *Id.* at 145–62.

[33] 70 F.3d 1132 (10th Cir. 1995).

[34] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[35] *Id.*

client communications.[36]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the audio recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the telephone recording exists, and (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client.[37]  This threshold showing requires an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[38]

### C.      Proceedings in Consolidated Master Case

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[39]  It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties.  Although the underlying criminal cases were not reassigned as part of that Order, after Judge Murguia resigned from the bench, Petitioner's case was reassigned to this Court for all further proceedings on February 21, 2020.[40]

---

[36] *Id.* at 163.

[37] *Id.* at 166.

[38] *Id.*

[39] *CCA Rec. Lit.*, Doc. 1.

[40] Doc. 210.

The Court likewise assumes the reader is familiar with the proceedings in the consolidated master case that precipitates the matter before the Court, and does not restate the underlying facts in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.  As detailed in the Court's October 15, 2020 Orders, the parties' initial efforts at cooperation culminated in the government's notice that it refuses to comply with discovery orders and demands that the Court rule immediately on both the procedural and merits defenses raised in its responses to the § 2255 motions.[41]  Highly summarized, the Court: (1) reaffirmed its previous ruling on the government's implied waiver argument and, in light of the government's blanket objections to petitioners' privilege logs, established a procedure for *in camera* review of the recordings; (2) ordered petitioners asserting audio recording claims to supplement the record with affidavits on the issue of waiver; (3) ordered the parties to supplement their responses and replies to address jurisdictional defenses and the collateral-attack waiver by plea agreement issue; and (4) found the government's refusal to comply with discovery orders issued by the Court is sanctionable under Fed. R. Civ. P. 37(b)(2) and notified the government of its intent to take as conclusively established certain facts petitioners might have proved regarding the "privy to" element of their Sixth Amendment claims with respect to any petitioner who establishes that he or she is entitled to an evidentiary hearing; and (5) to the extent it is not rendered moot, the Court sets the Rule 37(e) spoliation sanctions matter for evidentiary hearing.[42]

On January 18, 2021, the Court issued an order: (1) reaffirming and expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the collateral-attack waiver

---

[41] *CCA Rec. Lit.*, Docs. 587, 588.

[42] *Id.*

by plea issue; and (3) addressing jurisdictional defenses raised by the government, including certification requirements under Rule 2(b) of the Rules Governing Section 2255 Proceedings.[43]

### D. Recordings in this Case

Pending trial, Petitioner was detained at CCA from May 10, 2013, through August 7, 2013, and from September 20, 2013, through March 10, 2015.  Upon arriving at CCA, Petitioner signed several documents acknowledging that telephone calls that he made from CCA may be monitored and recorded and advising him that calls with his attorney were subject to being monitored unless he followed the privatization procedure in place to make an unmonitored call.[44] While at CCA, Petitioner called Duma to discuss his case.

Per the parties' agreement, as part of the *Black* investigation, the government began surrendering recordings and derivative evidence of audio calls from CCA that were in its possession.[45]  The FPD reviewed eight audio recordings of Petitioner speaking by telephone with Duma, his staff, and partner, from CCA between May 23, 2013 and December 27, 2013.[46] Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communication, verifying that during these phone conversations, Petitioner discussed matters "relat[ing] to legal advice or strategy" with Duma.[47]  Petitioner also provided a sworn Declaration from Duma, stating that he reviewed the recordings of four of calls listed on the privilege log placed on July 15, 18, and 22, 2013, and December 27, 2013, and confirms that during each of these calls: (1) after the calls were transferred by the receptionist, he and

---

[43] *Id.* Doc. 730.

[44] *Mitchell v. United States*, D. Kan. No. 17-2380-JAR-JPO, Docs. 7-2, 7-3.

[45] *Black*, Doc. 705.

[46] *CCA Rec. Lit.*, Doc. 549-2.

[47] *Id.*

Petitioner were the only two individuals on the line; (2) the matters discussed related to legal advice or strategy sought by Petitioner, as detailed in the logs and the declaration; (3) he had no knowledge nor did he believe that the calls were subject to monitoring or recording as they were attorney-client protected, that he did not consent to such, and that he did not inform Petitioner before the calls were made that they were subject to such monitoring and recording in a manner that would be dispensed to prosecutors and, if so, would not have conversed with his client over the phone concerning trial strategy or plea matters to negotiate with the government; and (4) he does not recall if, at the time the calls were placed, he attempted to privatize his phone number, as he believed there was no need to do so because the attorney-client calls were treated as confidential.[48]

Petitioner was prosecuted by the team of AUSA David Zabel and former SUASA Tomasic. Zabel avers that he reviewed the discovery files in this case and it appears that Tomasic obtained two sets of Petitioner's CCA-recorded calls, which were sent to John Jenab in March 27 and April 8, 2014 discovery letters.[49] Zabel states that while he did not direct Tomasic to obtain Petitioner's calls between he and his attorney, he was aware that she did so but denies that he heard or was privy to any calls between Petitioner and counsel.[50]

After the government objected to Petitioner's privilege log, the Court reviewed the audio recordings *in camera*.[51] As set out in the privilege log, the Court confirms that the content of the calls contains discussions relating to legal advice or strategy, including: the complexity of the case and anticipated paperwork; particulars of evidence provided in discovery and a meeting

---

[48] *Id.* Doc. 707-1.

[49] *Mitchell*, 17-2380-JAR-JPO, Doc. 7-1 at 3–4.

[50] *Id.*

[51] *CCA Rec. Lit.*, Docs. 355, 588.

with the prosecutors; discussion of whether there is a reasonable basis upon which to file a particular motion; whether Petitioner has standing to raise a particular argument and whether that argument would be inconsistent with litigation strategy; whether a co-defendant changed his testimony; the strength of the charges against Petitioner and the possibility of entering a plea; how to prove certain issues; requests for Petitioner's mental health records; particulars of a certain motion; Petitioner's competency examination; review of evidence; and discussion about Petitioner's feelings about proceeding to trial and his potential Guidelines sentence.[52]  At the beginning of each call, a recorded preamble states the balance of Petitioner's pre-paid call account and the following language: "This is a call from an inmate at CCA-Leavenworth Detention Center.  This call is subject to recording and monitoring."  There is no discussion of this preamble between Petitioner and Duma, his staff, or partner in any of the calls listed in the privilege log, nor any statements acknowledging the warning or evincing awareness that the calls were being recorded during their conversation.

Pursuant to the Court's order, Petitioner supplemented the record with a sworn statement addressing the issue of waiver with respect to the audio recording claims.[53]  Petitioner acknowledges signing the Inmate Handbook, but does not recall receiving or reading it before he placed the calls to Duma.[54]  He also acknowledges signing the Monitoring of Inmate Telephone Calls sheet, but does not recall reading it or having anyone else read it to him before placing the calls.  At the time he signed the monitoring sheet, nobody informed him that he had the right to speak privately with counsel and that if he waived that right, CCA could provide his recorded attorney-client calls to the USAO or that the government could use those calls against him in

---

[52] *Id.* Doc. 549-2.

[53] *Id.* Doc. 588 at 59, 61.

[54] *Id.* Doc. 669-1.

court.  He also avers that he did not know that by signing the document, he was consenting to the monitoring and/or recording of his attorney-client calls unless he took certain steps, or that he was consenting to CCA giving the recordings to the USAO and its agents.  Petitioner further avers that at the time he placed the calls listed on the privilege log, he did not believe that the recorded preamble applied to attorney-client calls, that the written warning signs placed on or near the telephone applied to attorney-client calls, that his attorney-client calls were subject to monitoring or recording, or that the USAO or its agents could obtain recordings of his attorney-client calls from CCA.  Finally, he states that at some point, he believes Duma informed him that CCA calls were recorded and could be turned over to the USAO, but he does not remember when this occurred.

Accordingly, the Court overrules the government's objections to the privilege log and finds that Petitioner has met the threshold showing for a protected communication.  The Court further finds that the Declarations submitted by Petitioner and Duma create issues of disputed material facts regarding whether Petitioner waived his Sixth Amendment rights by placing the calls despite signing the documents, the preamble warning, and signage.

## II.    Procedural Default Defense

The government asserts that Petitioner should have learned the facts underlying his claim no later than April 8, 2014, and that he therefore defaulted his claim by failing to raise it in the district court or on direct appeal.  Courts usually will not entertain a § 2255 motion if the movant did not raise the claim on direct appeal.[55]  "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial

---

[55] *United States v. Torres-Laranega*, 473 F. App'x 839, 842 (10th Cir. 2012); *see United States v. Frady*, 456 U.S. 152, 165 (1982).

resources and to respect the law's important interest in the finality of judgments."[56]  If the government raises a procedural bar, courts must enforce it unless cause and prejudice or a miscarriage of justice is shown.[57]

As a threshold issue, the Court first addresses whether Petitioner's claims fall within an exception to the procedural default doctrine for claims that could not be presented without further factual development.  The Supreme Court has determined that the procedural default doctrine is inapplicable during collateral proceedings where the petitioner's claim is based on facts that were outside the appellate record and not open to consideration and review on direct appeal.[58]  Courts will thus dismiss a procedural default defense where the factual predicate for the petitioner's claim is not within the appellate record and further factual development is necessary to resolve the claim.[59]

Here, the facts regarding Petitioner's Sixth Amendment claim were neither in the record nor available for consideration and review on direct appeal.  The government bases its argument on Tomasic's apparent disclosure of the calls to Petitioner's second attorney, John Jenab, during discovery.  The Court disagrees.  First, Tomasic did not advise Jenab that any attorney-client calls the government provided were included with hundreds of other non-attorney-client calls

---

[56] *United States v. Snyder*, 871 F.3d 1122, 1126–27 (10th Cir. 2017) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

[57] *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994).

[58] *Bousley v. United States*, 523 U.S. 614, 621–22 (1998) (holding procedural default doctrine inapplicable where the claim rests on facts that were "dehors the record and their effect on the judgment was not open to consideration and review on appeal" (quoting *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (per curiam))).

[59] *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 504–05 (holding that a § 2255 motion is preferable to a direct appeal because, when a claim is brought on direct appeal, "appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate" for the purpose of litigating or preserving the claim); *United States v. Chalan*, 438 F. App'x 710, 712, (10th Cir. 2011) (unpublished) (recognizing that "if the factual predicate for a claim is not available, it would appear to qualify under *Bousley* as a 'claim[] that could not be presented without further factual development'" (alteration in original) (quoting *Bousley*, 523 U.S. at 621–22)).

placed by Petitioner.  As Petitioner notes, unless Jenab had Dumas's phone number committed to memory, there would be no reason for him to notice Dumas's phone number in the call-detail records the government provided.

Second, even if the government's discovery would have enabled Petitioner to verify before his December 2014 sentencing and subsequent appeal that the government had requested and obtained his attorney-client calls, this knowledge in and of itself would not have been sufficient to prove a per se Sixth Amendment violation under *Shillinger*, because Petitioner must also demonstrate that the government intentionally became privy to his protected communications.[60]  The critical facts necessary to Petitioner's Sixth Amendment claim were not available to him either in district court or on direct appeal.  Here, facts establishing the USAO's conduct with respect to the audio recordings were not available until this Court held the full evidentiary hearing in *Black* in October 2018.

Moreover, the government's varying positions on this issue diminishes the credibility of its procedural-default argument.  First, the government has insisted the Court dismiss § 2255 motions raising similar *Black*-related claims without a hearing unless the petitioner could demonstrate that a video of the petitioner meeting with counsel at CCA "actually exist[ed]."[61]  Second, the government has argued to the district court that it must dismiss pretrial motions for relief on the same grounds.[62]  Third, the government has argued to the Tenth Circuit that the

---

[60] *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).

[61] *See, e.g.*, *Johnson v. United States*, D. Kan. No. 18-04099-JAR-JPO, Doc. 2 at 5 (asking this Court to dismiss the petitioner's Sixth Amendment claim without a hearing because the petitioner merely "speculate[d]," but had not yet verified, the existence of a video depicting the petitioner meeting with his attorney).

[62] *See, e.g.*, *United States v. Duarte-Tello*, D. Kan. No. 16-20016-DDC-2, Doc. 256 at 4 (arguing the defendant's motion to dismiss should be denied because, *inter alia*, the defendant did not "claim to have any evidence of any such soundless videos involving [the defendant] and counsel in his immediate possession"; asserting the defendant could not rely on facts derived from the *Black* litigation to support his own claim); *United States v. Velazquez*, D. Kan. No. 16-20031-CM, Doc. 280 at 4 (same).

Sixth Amendment claim at issue was "cognizable only as a § 2255 motion," and urged the Tenth

Circuit to reject such a claim on direct appeal as factually unsubstantiated.[63]  The Tenth Circuit

agreed, noting the "absence of record evidence" to support the claim.[64]  And finally, the

Department of Justice has taken a contrary position when it informed the Court that § 2255

provides the "appropriate mechanism" for raising an intentional intrusion Sixth Amendment

claim.[65]  As this Court previously noted, had Petitioner argued his claim before the district court

or on direct appeal, he likely would have met with the same result—it is not a great leap to

predict that the government would have taken the stance that his Sixth Amendment claim was

cognizable only on collateral review.  Thus, Petitioner's failure to pursue his Sixth Amendment

claim for relief in district court and on appeal is excepted from procedural default.[66]

　　　　Even if the procedural default defense was available to the government, however,

Petitioner can establish cause and prejudice.  To establish cause, a defendant must "show some

external objective factor—such as governmental interference, unavailability of the relevant

factual or legal basis, or ineffective assistance of counsel—prevented him from raising the issue

on direct appeal."[67]  "Cause excusing procedural default is shown if a claim 'is so novel that its

legal basis [wa]s not reasonably available to counsel' at the time of the direct appeal."[68]  The

factual basis for Petitioner's Sixth Amendment claims was not reasonably available to him at the

---

[63] Brief for Appellee, *United States v. Harssfell*, 735 F. App'x 553 (10th Cir. 2018) (No. 17-3235), 2018 WL 3241028, at *13–15.

[64] *Id.* at 554.

[65] *Black*, Doc. 713 at 35 ("AUSA Clymer has argued in at least three briefs filed in these proceedings that the 'appropriate mechanism' for investigation of any Sixth Amendment violations is 28 U.S.C. § 2255 . . . ." (citing *Black*, Doc. 697 at 41–42)).

[66] *See Bousley v. United States*, 523 U.S. 614, 621–22 (1998).

[67] *United States v. Torres-Laranega*, 473 F. App'x 839, 842 (10th Cir. 2012); *see United States v. Zander*, 723 F. App'x 617, 619 (10th Cir. 2018).

[68] *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017) (alteration in original) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

time of his direct appeal, due in large part to the government's strategy of delay, denial, and deflection in the *Black* case and its handling of attorney-client recordings, including Petitioner's.[69]  The existence and scope of potential Sixth Amendment claims was not certain until January 2019 for audio recording claims, well past Petitioner's sentencing and deadline for filing a direct appeal.

To establish prejudice, a defendant "must show that the error of which he complains is an 'error of constitutional dimensions' that 'worked to his actual and substantial disadvantage.'"[70] Where a petitioner raises a Sixth Amendment claim in which prejudice is presumed, that prejudice is not just a mere possibility of prejudice, but is a sufficient basis to establish prejudice under the procedural default rule.[71]  If Petitioner's Sixth Amendment allegations are proved correct, extant Tenth Circuit law directs that "a prejudicial effect on the reliability of the trial process must be presumed."[72]  Therefore, Petitioner can establish prejudice under the procedural default doctrine.

Accordingly, the Court denies the government's motion to dismiss Petitioner's Sixth Amendment claim on procedural default grounds.

---

[69] *See generally Black* Order.

[70] *Snyder*, 871 F.3d at 1128 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

[71] *See, e.g.*, *Garza v. Idaho*, 139 S. Ct. 738, 742 (2019) (clarifying presumption of prejudice stemming from counsel's failure to perfect appeal applies "regardless of whether the defendant has signed an appeal waiver," and stating prejudice is presumed "with no further showing from the defendant of the merits of his underling claims" (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000))); *Jones v. Cowley*, 28 F.3d 1067, 1073 (10th Cir. 1994) (reversing and remanding, finding cause-and-prejudice standard met if counsel failed to perfect petitioner's appeal in violation of petitioner's right to counsel since prejudice is presumed); *United States v. Skurdal*, 341 F.3d 921, 928 (9th Cir. 2003) (finding that, because the denial of counsel under the circumstances was "prejudicial per se," petitioner "demonstrated cause and prejudice for the failure to raise the contentions on direct appeal"); *Rosenwald v. United States*, 898 F.2d 585, 587 (7th Cir. 1990) (holding the prejudice inquiry under procedural-default doctrine for petitioner's Sixth Amendment conflict-of-interest claim turns on the merits of the claim given that prejudice either must be presumed or requires something less than "the full showing of prejudice usually required under *Strickland*").

[72] *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).

### III.    Discussion

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[73] The Supreme Court has interpreted this statutory language to mean that a hearing is unnecessary in those instances (a) "where the issues raised by the motion were conclusively determined either by the motion itself or by the 'files and records' in the trial court," or (b) where the motion alleges circumstances "of a kind that the District Judge could completely resolve by drawing upon [their] own personal knowledge or recollection."[74]

A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[75]  An evidentiary hearing is not necessary where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[76]

Given the record before it, the Court concludes that it must conduct an evidentiary hearing in this case on Petitioner's Sixth Amendment intentional-intrusion claim.  As detailed in the *Black* Order, Tomasic's conduct with respect to the video recordings was the catalyst for the investigation; her subsequent admission that she listened to attorney-client recordings in another criminal case ultimately led to her termination by the USAO.  The Court further finds genuine factual disputes presented in the parties' affidavits.  Thus, subject to Rule 2(b) certification of

---

[73] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)); Rule 4 of the Rules Governing Section 2255 Proceedings.

[74] *United States v. Fields*, 949 F.3d 1240, 1246 (10th Cir. 2019) (quoting *Machibroda v. United States*, 368 U.S. 487, 494–95 (1962)).

[75] *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).

[76] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995) ("[T]he allegations must be specific and particularized, not general or conclusory."); *United States v. Fisher*, 38 F.3d 1143, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that are merely conclusory in nature and without supporting factual averments).

Petitioner's motions, the Court grants Petitioner an evidentiary hearing on his Sixth Amendment claim, specifically, the question of whether the government intentionally interfered with his attorney-client relationship by intentionally and unjustifiably becoming privy to his attorney-client communications while detained at CCA.  The Court defers ruling on his ineffective-assistance-of-counsel claims against defense counsel raised in Grounds 1 and 3.

**IT IS THEREFORE ORDERED BY THE COURT** that, subject to Rule 2(b) certification of his motions, an evidentiary hearing is **granted** on Petitioner's Sixth Amendment intentional-intrusion claim.  The Court will discuss the hearing date and other pretrial matters with the parties at the status conference scheduled for **January 26, 2021**.

**IT IS SO ORDERED.**

Dated:  **January 19, 2021**          <u>s/  Julie A. Robinson</u>
                                      **CHIEF UNITED STATES DISTRICT JUDGE**