IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**In re: CCA Recordings**
**2255 Litigation**,

           Petitioners,

Case No. 19-cv-2491-JAR-JPO

v.

(This Document Relates to All Cases.)

**United States of America,**

           Respondent.

### GOVERNMENT'S NOTICE REGARDING APPLICATION OF THE COURT'S ORDERS TO PARTICULAR CASES

On March 10, 2021, certain petitioners provided notice (Doc. 793) of their view of whether and how the Court's recent rulings (Docs. 730, 784) apply to their cases. The government agrees with much of the petitioners' notice. But because the notice is not comprehensive and appears to misapply the Court's rulings regarding *Tollett v. Henderson*, 411 U.S. 258 (1973), the government now provides notice of its view of how the Court's rulings apply to each of the consolidated cases.[1]

This notice and the chart attached are limited to the application of the Court's rulings in Docs. 730 and 784. The notice and chart do not address all of the government's defenses and should not be construed as abandoning any defense or argument. Instead, the notice and chart are intended to assist the Court in applying its rulings to specific cases. The chart should speak for itself, but in summary, 13 petitioners are subject to immediate dismissal of their entire 28 U.S.C. § 2255 motion (in addition to the six the Court dismissed on March 22 and 23, 2021), 50 others

---

[1] The government's chart represents the government's view of how the Court's rulings in Docs. 730 and 784 apply in each of the petitioners' cases. In providing this notice and the attached chart, the government does not waive or forfeit any defense or argument. Nor does it abandon its request that every petitioner's 28 U.S.C. § 2255 motion be dismissed immediately for failure to allege a Sixth Amendment claim. If the Court would like an electronic version of the government's chart, government counsel would be happy to provide it.

are subject to total dismissal under *Tollett*, and 25 other petitioners' challenges to their convictions are subject to dismissal. Stated differently, setting aside the petitioners whose § 2255 motions are subject to dismissal under *Tollett*, only 37 petitioners' § 2255 motions survive the Court's two orders (Docs. 730 and 784). Of those, 25 can only challenge their sentences and one (Vernon Brown) can only challenge his conviction. Eight others are subject to partial dismissal for various reasons. For each of the petitioners, the government has asserted case-specific defenses that require dismissal of each petitioner's § 2255 motion.

The one issue that appears to require explanation in light of the petitioners' notice is the application of the Court's rulings regarding *Tollett*. The Court has ruled on this issue twice. *See* Doc. 730; Doc. 784. Yet it appears the petitioners refuse to accept those rulings. *See* Doc. 756; Doc. 793. Their notice attempts to evade, and in effect alter, this Court's rulings under *Tollett*. *See* Doc. 793 at 6-7; Doc. 793-1 (Table C). The Court's rulings make clear that any Sixth Amendment intentional-intrusion claim that is based on a recording the government obtained before the petitioner pled guilty is subject to dismissal in its entirety under *Tollett*. *See* Doc. 730 at 39-42; Doc. 784 at 9-12, 15-16. For any petitioner who asserts Sixth Amendment claims based only on soundless videos, this means the petitioner's entire § 2255 motion is subject to dismissal under *Tollett* if the petitioner pled guilty after May 17, 2016, when the U.S. Secret Service received hard drives containing the soundless video recordings. *See* Doc. 784 at 9-12, 15-16. In discussing Petitioner Luis Villa-Valencia, the petitioners' notice acknowledges that this is what the Court has ruled. *See* Doc. 793 at 9 ("[B]ecause Mr. Villa-Valencia pleaded guilty after the USSS obtained the videos on May 17, 2016, his video-based challenge to his conviction is subject to dismissal unless he amends his § 2255 motion."). But in separating other petitioners into Tables A, B, C, and D, the petitioners' notice elides this ruling.

The petitioners' notice states that "the Court intends to dismiss the video-only petitioners' challenges to their convictions if they pleaded guilty before the [U.S. Secret Service] obtained the videos," Doc. 793 at 6 (citing Doc. 730 at 54; Doc. 784 at 9, 13), and "intends to dismiss the video-only petitioners' challenges to their *sentences* if . . . they pleaded guilty after August 9, 2016," Doc. 793 at 6 (emphasis added) (citing Doc. 784 at 16, 27). The second category of video-only petitioners—those who pled guilty after August 9, 2016—appears to refer to petitioners who are subject to dismissal under *Tollett*.[2] *See* Doc. 784 at 15-16. But the petitioners mischaracterize the Court's clear rulings regarding its temporal classification of the petitioners' claims and its intended application of *Tollett* to the petitioners' cases. The Court has concluded that, with respect to claims based on soundless video recordings, "the earliest date a violation could have occurred is May 17, 2016,"[3] Doc. 784 at 13, and that "where a petitioner challenges his conviction and the government obtained the video recordings prior to that petitioner's guilty plea, *Tollett* applies to the alleged pre-plea violation," Doc. 784 at 9. In such cases, the petitioner's challenges to both his conviction and his sentence are subject to dismissal because the Court rejected the petitioners' continuing-violation and disjunctive-adverse-inference arguments. *See* Doc. 730 at 39-42; Doc. 784 at 10-12. The Court concluded that these arguments are "inconsistent with the rule in *Tollett* as well as the discovery sanction," and denied the petitioners' request to "clarify or rule that only pre-plea challenges to convictions are subject to dismissal." Doc. 784 at 16; *see also* Doc. 730 at 42.

---

[2] Of the 36 petitioners listed in Table C, 30 are subject to dismissal under this Court's rulings regarding the application of *Tollett* to the petitioners' cases. *See* Doc. 793-1 at 2.

[3] The government disagrees with this ruling, *see* Doc. 762 at 7-8, but accepts the ruling while preserving its objection.

The Court observed that petitioners' claims based on telephone call recordings "do not have such clearly established temporal parameters." Doc. 784 at 8. And it declined to rule on whether the date on which a call was first "accessed" according to Securus call access logs was the earliest possible date a Sixth Amendment violation could have occurred. *See* Doc. 784 at 13-14. But the petitioners' notice indicates that they agree that they have no way of proving that anyone became privy to a telephone call recording before it was first accessed on the Securus platform, and cannot rely on an adverse inference to establish that the prosecution team became privy to a telephone call recording before that point. *See* Doc. 793 at 7-8 (acknowledging that petitioners whose calls were first accessed after they were sentenced "cannot prove anyone actually accessed the relevant audio recordings until after the petitioners were sentenced") (citing the government's motion to supplement the record, Doc. 785). Thus, any claim that is based on a telephone call recording that was accessed before the petitioner pled guilty is subject to dismissal under *Tollett*. *See, e.g.*, Doc. 784 at 11 n.26 (explaining that although Petitioner Petsamai Phommaseng "may not use the pre-plea audio recordings to attack both his conviction and sentence, he may use the pre-plea video recordings to challenge his sentence, as the intrusion could not have occurred until after he entered his plea"). *But see* Doc. 786 (explaining that 7 of the 16 telephone call recordings on Phommaseng's privilege log were accessed only because his defense counsel requested the recordings). This does not mean that anyone actually listened to the recordings, just that someone obtained a copy of the recording, along with other recordings, from the Securus platform after the petitioner was sentenced.

Understanding that this is now the second time the petitioners have sought to alter this Court's clear rulings regarding the application of *Tollett*, the government does not wish to consume any more of the Court's time and resources on this issue. But the government does wish

to highlight the petitioners' latest attempt to evade this Court's clear rulings. In its January 18, 2021 Memorandum and Order (Doc. 730), the Court concluded, among other things, that each petitioner who pled guilty and now challenges his conviction "is held to the applicable standard for showing his plea was involuntary." Doc. 730 at 39. The Court rejected the petitioners' argument that a "per se violation [under *Shillinger v. Haworth*, 70 F.3d 1132 (10th Cir. 1995)] presumptively renders a guilty plea involuntary or unknowing," concluding that the "petitioners' presumption-of-prejudice argument does not satisfy the applicable standard in *Brady*, *Tollett*, or *Hill*." Doc. 730 at 40 (referencing *Brady v. United States*, 397 U.S. 742 (1970); *Tollett v. Henderson*, 411 U.S. 258 (1973); and *Hill v. Lockhart*, 474 U.S. 52 (1985)). The Court then ruled that "[b]ecause no petitioner in these consolidated proceedings attempts to meet this standard, . . . they have not established that their guilty pleas are subject to vacatur and their § 2255 motions are subject to dismissal on this basis." Doc. 730 at 40.

Instead of dismissing these cases outright, the Court "g[a]ve petitioners who allege pre-plea violations additional time to consider whether to seek leave to amend their motions to withdraw their respective pleas under the applicable standard for showing their guilty pleas were involuntary." *See* Doc. 730 at 40-41. The Court indicated that this category of petitioners included those "whose Sixth Amendment claims are based on audio and/or video recordings the USAO received before they entered their guilty pleas." Doc. 730 at 40 n.179.

The petitioners asked the Court to clarify or reconsider this ruling, arguing that a "pre-plea seizure isn't necessarily a pre-plea violation," Doc. 756 at 2, and arguing that "petitioners who pleaded guilty after the government obtained their recordings may logically invoke the disjunctive adverse inference to allege pre-plea *and* post-plea violations," Doc. 756 at 4. The petitioners urged the Court to "clarify or rule that in cases where the government obtained the

petitioners' recordings before the plea—and therefore could have logically become privy to the recordings either before the petitioners pleaded guilty or after they did so—the petitioners can rely on the disjunctive adverse inference to allege both pre- *and* post-plea violations." Doc. 756 at 4.

Although the Court agreed with the petitioners "that the date the prosecution team became privy to the protected recording marks the earliest possible violation date," Doc. 784 at 8, it otherwise rejected the petitioners' argument that they "can rely on the disjunctive adverse inference to allege both pre- *and* post-plea violations," Doc. 756 at 4. Doc. 784 at 8-12. The Court declined "to ignore the date, when known, that the government actually came into possession of recordings when determining the time at which it became privy to the recordings." Doc. 784 at 8. It explained that, "In cases where a petitioner challenges his conviction and the government obtained the video recordings prior to that petitioner's guilty plea, *Tollett* applies to the alleged pre-plea violation." Doc. 784 at 9. Thus, the Court's rulings make clear that any claim based on a recording the government obtained before the petitioner pled guilty is subject to dismissal in its entirety under *Tollett*. *See* Doc. 784 at 9-12, 15-16. The Court then explained for a second time that "these petitioners must request leave to amend their motions to seek vacatur of their guilty pleas under the applicable standard or face dismissal of their challenges to conviction and may not use pre-plea violations to attack their sentence." Doc. 784 at 9.

The Court went on to directly reject the petitioners' attempt to "rely on the disjunctive adverse inference to allege both pre- *and* post-plea violations," Doc. 756 at 4. The Court reiterated that it "rejected this 'continuing violation' theory because petitioners cited no authority for it and because it would render meaningless the rule in *Tollett*." Doc. 784 at 11. It then "agree[d] with the government that [the petitioners'] attempt to recast [their] continuing-

violation theory as advancing 'dual allegations' is both an attempted end-run around *Tollett* and its progeny and inconsistent with that rule and the authority cited by the Court." Doc. 784 at 11. The Court concluded that it "does *not* clarify or rule that only pre-plea challenges to convictions are subject to dismissal." Doc. 784 at 11 (emphasis added). And it required that, "Any petitioner who has a good-faith basis to allege an individualized and specific post-plea violation of this nature must seek leave to amend his § 2255 motion and must advise the Court in the proposed amended pleading that he is opting to have the Court presume that the government became privy to the recordings prior to sentencing but after plea or conviction." Doc. 784 at 11.

The Court also rejected the petitioners' "window of opportunity" argument, reaching the same conclusion it did with respect to their "dual allegations" argument. As the Court described the petitioners' argument, the petitioners "again request[ed] the Court to apply the discovery sanction in the disjunctive to apply to both pre-plea and post-plea violations." Doc. 784 at 15. The Court stated that the petitioners defined this category as including petitioners who "pleaded guilty or were convicted on or after August 10, 2016." Doc. 784 at 16. And it concluded that, "[f]or the reasons previously discussed, this argument is also inconsistent with the rule in *Tollett* as well as the discovery sanction," and "[t]he Court does *not* clarify or rule that only pre-plea challenges to convictions are subject to dismissal." Doc. 784 at 16 (emphasis added). The Court again required that, "Any petitioner who has a good-faith basis to allege an individualized and specific post-plea violation of this nature must seek leave to amend his § 2255 motion and must advise the Court in the proposed amended pleading that he is opting to have the Court presume that the government became privy to the recordings prior to sentencing but after plea or conviction." Doc. 784 at 16.

7

Thus, under the Court's orders, 51 petitioners' § 2255 motions are subject to dismissal in their entirety under *Tollett*, one of which (Jose Garcia-Velasquez) is also subject to immediate dismissal for failure to provide verified interrogatory responses. *See* Doc. 766 at 2-3; Doc. 806. The Court has given those petitioners until April 2, 2021, to file "individual" motions for leave to amend their § 2255 motions. The Court also "stresse[d] that by giving petitioners additional time to seek leave to amend their motions, it neither predicts nor guarantees the outcome of any such individual petitioner's request." Doc. 784 at 19.

In addition to the April 2, 2021 deadline, more than 40 petitioners—including Vernon Brown whose evidentiary hearing is scheduled for June 21, 2021—still have not complied with the Court's order requiring each petitioner to comply with Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings. *See* Doc. 776; Doc. 781. Rule 2(b)(5) requires each § 2255 motion to "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant." As this Court has said, the petitioners "must . . . comply, or their motions will be dismissed." Doc. 730 at 58. The current deadline for compliance is March 29, 2021. *See* Doc. 782; Doc. 783.

Respectfully submitted,

s/ Duston J. Slinkard
Duston J. Slinkard, #21294
Acting United States Attorney
District of Kansas
444 SE Quincy, Suite 290
Topeka, KS 66683-3592
Tel: (785) 295-2850
Fax: (785) 295-2853
duston.slinkard@usdoj.gov

       s/ Carrie N. Capwell
       Carrie N. Capwell, #78677
       Assistant United States Attorney
       District of Kansas
       500 State Ave., Suite 360
       Kansas City, KS 66101
       Tel: (913) 551-6730
       Fax: (913) 551-6541
       carrie.capwell@usdoj.gov

       s/ James A. Brown
       James A. Brown #14254
       Assistant United States Attorney
       District of Kansas
       444 SE Quincy Ave., Ste. 290
       Topeka, KS  66683
       Tel: (785) 295-7683
       Fax: (785) 295-2853
       james.brown2@usdoj.gov

       Attorneys for the United States in the consolidated cases except for *DeHaven v. United States*, No. 18-cv-2474, *Mebane v. United States*, No. 18-cv-2413, *Wright v. United States*, No. 19-cv-2400


       s/ Steven D. Clymer
       Steven D. Clymer
       Assistant United States Attorney
       Special Attorney for the United States
       NDNY Bar Roll #509281

       United States Attorney's Office
       Northern District of New York
       900 Federal Building
       100 South Clinton Street
       Syracuse, NY 13261
       (v) 315-448-0672
       (f) 315-448-0658

       Attorney for the United States in *DeHaven v. United States*, No. 18-cv-2474, *Mebane v. United States*, No. 18-cv-2413, *Wright v. United States*, No. 19-cv-2400

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2021, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in the above-captioned case.

s/ Carrie N. Capwell
Carrie N. Capwell, #78677
