IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**In re: CCA Recordings 2255 Litigation**,
        **Petitioners**,

v.
        Case No. 19-cv-2491-JAR-JPO

**(This Document Relates to Case No. 14-cr-20068-DDC-6,** *United States v. Matthew C. Spaeth***, and Case No. 19-cv-2413-JAR-JPO,** *Matthew C. Spaeth v. United States***)**

**United States of America.**
        **Respondent.**

---

# MEMORANDUM AND ORDER

On April 2, 2021, this Court dismissed Petitioner Matthew Spaeth's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255 and granted him a certificate of appealability ("COA") on two issues.[1] This matter is now before the Court on Petitioner's Motion to Clarify the scope of the COA (Doc. 896). The government objects to Petitioner's request.[2] For the reasons explained below, the Court denies Petitioner's request to expand the scope of the COA but grants his motion in part to clarify its ruling.

**I.      Background**

After he entered into a binding unconditional plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) and pleaded guilty to one count of conspiracy to possess with the intent to distribute 50 grams or more of methamphetamine, Petitioner filed a § 2255 motion, asking the Court to vacate his conviction and sentence and to discharge him immediately with prejudice to any

---

[1] Doc. 874; *Spaeth* Doc. 10. Citations to "Doc." Refer to filings in *In re CCA Recordings 2255 Litigation*, No. 19-cv-2491-JAR-JPO. Citations to "*Spaeth*, Doc." refer to filings in *Spaeth v. United States*, No. 19-cv-2413-JAR-JPO. Citations to "*Black*, Doc." refer to filings in *United States v. Black*, No. 16-cr-20032-JAR.

[2] Doc. 905.

further prosecution, or in the alternative, to reduce his custodial sentence by 50%.³  Petitioner raised a single claim in his § 2255 motion: that the government committed a per se Sixth Amendment violation under *Shillinger v. Haworth*⁴ by intentionally and unjustifiably becoming privy to his attorney-client communications, specifically, audio recordings of telephone conversations with his counsel while he was detained at Corrections Corporation of America ("CCA").⁵  In response, the government invoked the rule in *Tollett v. Henderson*,⁶ which limits a defendant's ability to collaterally challenge his unconditional guilty plea.⁷

The Court directed supplemental briefing from the parties on two legal issues:

> (1) whether petitioners with standard plea agreements rely on the carve-out to the collateral attack waiver language to create an exception to the waiver-by-operation-of-law rule under *Tollett* and its progeny, and if so, clarify the grounds for such an exception; and (2) address the argument that the Sixth Amendment intentional-intrusion claims implicate the voluntary or intelligent nature of the pleas by showing the advice each petitioner received from counsel was deficient or ineffective, how that argument might be impacted by the nature and timing of petitioner's plea agreement or lack thereof, and the necessary showing required to succeed on such a claim and how to reconcile the per se prejudice argument with the standard set forth in *Tollett*.⁸

On January 18, 2021, the Court issued a Memorandum and Order ruling on these two issues, concluding that: (1) the so-called "carve-out provision" in the standard unconditional plea agreements like Petitioner's did not create an exception to the rule of law in *Tollett*;⁹ (2)

---

³ *Spaeth*, Doc. 1.

⁴ 70 F.3d 1132 (10th Cir. 1995).

⁵ That facility has since been renamed CoreCivic.  For convenience, the Court refers to it as CCA in this Order.

⁶ 411 U.S. 258 (1973).

⁷ *Spaeth*, Doc. 3 at 45.

⁸ Doc. 588 at 55–56.

⁹ Doc. 730 at 24–29.

petitioners like Spaeth who allege pre-plea Sixth Amendment violations must satisfy the requirements for collaterally challenging an unconditional plea agreement, specifically, that the plea was not knowing or voluntary, by showing "a reasonable probability that, but for the government's misconduct, he would not have pleaded guilty and would instead have insisted on going to trial," and that "a decision to go 'to trial would have been rational under the circumstances'";[10] (3) that petitioners' "presumption-of-prejudice" argument under *Shillinger* "does not satisfy the applicable standard in *Brady*, *Tollett*, or *Hill*";[11] and (4) *Tollett* precludes petitioners from challenging their sentence based on an alleged pre-plea Sixth Amendment violation.[12]

Because Petitioner alleged that the government became privy to audio recordings of his phone calls with counsel from CCA that took place and were obtained by the government prior to entry of his guilty plea,[13] his motion was subject to dismissal.[14] Rather than dismissing Petitioner's motion outright, however, the Court gave him and similarly-situated petitioners an opportunity to seek leave to amend their § 2255 motions to assert that their guilty pleas were not knowing and voluntary under the applicable standard.[15] Instead, petitioners filed a motion to reconsider the Court's rulings, arguing that "pre-plea seizure isn't necessarily a pre-plea violation," and that "petitioners who pleaded guilty after the government obtained their recordings may logically invoke the disjunctive adverse inference to allege pre-plea *and* post-

---

[10] *Id.* at 39 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)); *see also* Doc. 730 at 29–41 (citing *Brady v. United States*, 397 U.S. 742 (1970), *Tollett*, 411 U.S. at 258, *Hill v. Lockhart*, 474 U.S. 52 (1985), and *United States v. Ruiz*, 536 U.S. 622 (2002), for the applicable standard).

[11] Doc. 730 at 39.

[12] *Id.* at 41–42 (rejecting petitioners' "continuing violation" theory).

[13] *Spaeth*, Doc. 10 at 11; *Black*, Doc. 806 at 5.

[14] Doc. 730 at 40.

[15] *Id.* at 40–41.

plea violations."[16] On March 3, 2021, the Court denied in most part petitioners' motion to reconsider, but gave petitioners time to seek leave to amend their § 2255 motions to opt to assert a good-faith basis to allege a discrete, individualized, and specific post-plea, pre-sentence violation of this nature.[17] In so ruling, the Court stressed the need for temporal classification of petitioners' claims and explained that while many petitioners challenge both their conviction and sentence, a petitioner may only challenge his conviction if the Sixth Amendment violation occurred prior to that petitioner entering a guilty plea.[18]

On March 30, 2021, Petitioner filed a notice that he did not intend to seek leave to amend his § 2255 motion, either to allege that his plea was not knowing and voluntary or to allege a discrete post-plea Sixth Amendment violation, with the understanding that his decision would result in the dismissal of his § 2255 motion in its entirety.[19] The Court dismissed Petitioner's § 2255 motion as barred by *Tollett* for the reasons stated in its January 18 and March 3 Orders.[20] The Court stated that it was uncontested that Petitioner's Sixth Amendment claim was based on recordings of five calls made before he entered his guilty plea, that the government subpoenaed his calls from CCA in May 2016 as part of its investigation in *Black*, and that those calls and derivative material were impounded in August 2016 as part of the Court's clawback order.[21] The Court concluded that: (1) the carve-out provision in Petitioner's unconditional standard plea agreement does not create an exception to the rule of law in *Tollett*, nor did the government waive or forfeit application of that standard; (2) Petitioner's presumption-of-prejudice argument

---

[16] Doc. 756 at 2, 4.

[17] Doc. 784 at 16.

[18] *Id.* at 5–10.

[19] *Spaeth*, Doc. 9.

[20] *Spaeth*, Doc. 10.

[21] *Id.* at 11 (citing *Spaeth*, Doc. 4 at 2 n.10; *Black*, Doc. 806 at 5).

4

does not satisfy the applicable standard in *Brady*, *Tollett*, or *Hill*; (3) because Petitioner did not attempt to show that his plea was involuntary by demonstrating a reasonable probability that, but for the government's misconduct, he would have instead insisted upon going to trial, he did not establish that his guilty plea was subject to vacatur; and (4) that *Tollett* precludes him from challenging his sentence based on any alleged pre-plea Sixth Amendment violation.[22]

The Court granted Petitioner a certificate of appealability ("COA") on the following issues: (1) whether the carve-out provision in Petitioner's unconditional standard plea agreement created an exception to the rule of law in *Tollett*; and (2) whether Petitioner's per se intentional-intrusion Sixth Amendment claim as alleged satisfies the standard in *Tollett* and its progeny.[23] Petitioner's motion to clarify followed.

## II. Discussion

When a district court dismisses a petitioner's § 2255 motion, it "must issue or deny a [COA]."[24] "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[25] If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[26] A court granting a COA must "indicate which specific issue or issues

---

[22] *Spaeth*, Doc. 10 at 15, 19–20.

[23] *Id.* at 21.

[24] Rule 11(a) of the Rules Governing Section 2255 Proceedings.

[25] 28 U.S.C. § 2253(c)(2).

[26] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

satisfy" this substantial showing requirement.[27]

Petitioner asks the Court to confirm that the COA encompasses the Court's "entire procedural *Tollett* ruling," including, but not limited to the Court's application of the adverse-inference sanction and its conclusion that Petitioner only alleged a pre-plea Sixth Amendment violation.[28] Petitioner contends that the Court's two *Tollett*-related rulings are actually composed of four subparts. He defines additional subpart one as the Court's ruling that he was not entitled to an adverse inference sanction on a post-plea Sixth Amendment claim and subpart two as the Court's ruling that he only alleged a pre-plea Sixth Amendment violation because his Sixth Amendment claim was based on recordings that the government obtained and were impounded before he pled guilty.[29] These rulings, however, are not part of the *Tollett*-related rulings on which the Court has granted Petitioner a COA.

The Court will not belabor the point. The recordings on which Petitioner bases his Sixth Amendment claim, along with any derivative information, were both obtained by the government and impounded by the Court before he pleaded guilty. Petitioner did not move to amend his § 2255 motion to either assert that his plea was not knowing or voluntary or to allege a discrete post-plea Sixth Amendment violation. Thus, Petitioner effectively requests the Court to expand the COA to allow him to appeal its rejection of a post-plea Sixth Amendment claim that he has neither alleged nor indicated that he has a good faith basis to allege. The Court declines to do so, as no reasonable jurist could conclude that Petitioner has a viable post-plea Sixth Amendment claim that simultaneously and alternatively alleges both pre- and post-plea violations.

---

[27] 28 U.S.C. § 2253(c)(3).

[28] Doc. 896 at 4.

[29] *Id.*

That being said, to avoid any confusion and in light of the requirement that it must state the specific issues that satisfy the showing required by § 2253(c)(2), the Court clarifies the scope of its original grant of a COA as follows: (1) whether the carve-out provision in Petitioner's unconditional standard plea agreement constitutes a waiver of the government's right to raise, or created an exception to, the rule of law in *Tollett*; and (2) whether Petitioner's per se intentional-intrusion Sixth Amendment claim as alleged satisfies the standard in *Tollett* and its progeny, specifically, (a) whether a pre-plea *Shillinger* violation renders a plea unknowing and involuntary and, because Petitioner did not otherwise challenge the validity of his unconditional plea under the applicable standard, whether the rule in *Tollett* procedurally bars his claim; and (b) whether *Tollett* precludes Petitioner from challenging his sentence based on an alleged pre-plea Sixth Amendment violation.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner's Motion to Clarify the Scope of his Certificate of Appealability (Doc. 896) is **granted in part**; the Court declines to expand the scope of the COA but instead clarifies the issues as set forth above.

**IT IS SO ORDERED.**

Dated: May 14, 2021

                                                 S/ Julie A. Robinson
                                                 JULIE A. ROBINSON
                                                 CHIEF UNITED STATES DISTRICT JUDGE