# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

---

In re: CCA Recordings 2255 Litigation,
                                                    **Petitioners,**

v.                                                  **Case No. 19-cv-2491-JAR**

                                                    **(This Document Relates to Case No. 14-20130-JAR-2,** *United States v. Enoch Clark, III,* **and Case No. 19-2410-JAR,** *Enoch Clark, III v. United States*)

**United States of America.**
                                                    **Respondent.**

---

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Enoch Clark's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255 (Doc. 256).[1]  Petitioner alleges the government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to his attorney-client communications, and asks the Court to reject the government's request to dismiss this action on procedural grounds and find that he has made a sufficient showing to warrant an evidentiary hearing.  As a remedy, he asks the Court to vacate his judgment with prejudice to refiling or, alternatively, to reduce his custodial sentence by approximately 50% and vacate his term of supervised release.  The matter is fully briefed, and the Court is prepared to rule.  For the reasons explained in detail below, the Court dismisses Petitioner's challenge to his conviction.

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, No. 14-20130-JAR-2.  Citations prefaced with "*CCA Rec. Lit.* Doc." Refer to filings and entries in this consolidated master case, No. 19-cv-2491-JAR-JPO.  With the exception of *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in Case No. 16-20032-JAR are prefaced with "*Black*, Doc."

Petitioner's challenge to his sentence, including any term of supervised release, is denied without an evidentiary hearing.  Petitioner is also denied a certificate of appealability.

## I.    Background

### A.    Procedural History

Petitioner was charged in a Second Superseding Indictment with conspiracy to possess with the intent to distribute at least 5 kilograms of cocaine (Count 12); and two counts of possessing firearms in furtherance of and/or during and in relation to drug trafficking crimes (Counts 5, 13).  Count 1 carried a statutory mandatory minimum term of ten years' imprisonment and a maximum term of life; Counts 5 and 13 carried mandatory, consecutive sentences of at least five years.[2]  If convicted on both Counts 5 and 13, Petitioner faced a combined mandatory, consecutive sentence of 30 years.[3]

Petitioner was detained at Corrections Corporation of America ("CCA") from November 5, 2014 through August 30, 2016.[4]  He was represented by Mark Thomason in the underlying criminal proceedings.

On May 19, 2016, Petitioner entered into a written binding plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), and pleaded guilty to the conspiracy charge in Count 12.[5]  Pursuant to this agreement, the parties proposed that this Court sentence Petitioner to a total sentence of 144 months' imprisonment on Count 12.[6]  The government agreed to dismiss the remaining counts in the Second Superseding Indictment, including the two § 924(c) charges that carried

---

[2] Doc. 74 at 3, 7–8; *see also* 18 U.S.C. § 924(c)(1)(A)(i); 21 U.S.C. § 841(b)(1)(A)(ii).

[3] *See* 18 U.S.C. § 924(c)(1)(C)(i) (2006).

[4] CCA was subsequently renamed CoreCivic and shuttered in December 2021.

[5] Doc. 193.

[6] *Id.* ¶ 3.

consecutive, mandatory minimum sentences.[7]  The government further agreed not to file additional charges arising out of the facts forming the basis for the present indictment.[8]  The plea agreement specifically reserved Petitioner's right to collaterally attack his conviction and sentence based on ineffective assistance of counsel and prosecutorial misconduct.[9]

Based on a total offense level of 29 and a criminal history category of III, the Presentence Investigation Report ("PSIR") calculated Petitioner's applicable Guidelines range at 108 to 135 months' imprisonment.[10]  However, because the applicable mandatory minimum sentence in this case was 120 months, the Guidelines range was 120 to 135 months' imprisonment.[11]  The government did not file any objections to the PSIR or a sentencing memorandum prior to the sentencing hearing.

On August 8, 2016, this Court adopted the PSIR's sentencing calculations and determined that the applicable Guidelines range was 120 to 135 months' imprisonment.[12]  Notwithstanding this calculation, this Court accepted the parties' recommendation in the plea agreement and sentenced Petitioner to 144 months' imprisonment, followed by five years of supervised release.[13]  The government dismissed the remaining counts of the Indictment.[14]  Petitioner did not file a direct appeal, nor has he filed a prior habeas motion under 28 U.S.C. § 2255.

---

[7] *Id.* ¶ 5.

[8] *Id.*

[9] *Id.* ¶ 12.

[10] Doc. 209 ¶ 76.

[11] *Id.*

[12] Doc. 217.

[13] Doc. 216.

[14] *Id.*

The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in his § 2255 proceedings on July 17, 2018.[15]  On July 17, 2019, the FPD filed this § 2255 motion on Petitioner's behalf, setting forth a single ground for relief: the government violated the Sixth Amendment by intentionally and unjustifiably intruding into his attorney-client relationship. Petitioner's release date is June 13, 2025.

### B.    The *Black* Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motion before the Court.  That comprehensive opinion was intended to provide a record for future consideration of the many anticipated motions filed pursuant to § 2255 and is incorporated by reference herein.  The Court does not restate the underlying facts and conclusions of law in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events documented in the *Black* case and investigation, which included audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were detained at CCA.  On August 13, 2019, the Court issued the *Black* Order, which addressed, *inter alia*, the governing standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[16]  The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit's decision in *Shillinger v. Haworth*,[17] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to the

---

[15] Standing Order 18-3.

[16] *Black* Order at 145–62.

[17] 70 F.3d 1132 (10th Cir. 1995).

attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[18]  Once those elements are established, prejudice is presumed.[19]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[20]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the audio recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the telephone recording exists, and (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client.[21]  This threshold showing requires an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[22]

### C.    Proceedings in Consolidated Master Case

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[23]  It was this Court's intent that by

---

[18] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[19] *Id.*

[20] *Id.* at 163.

[21] *Id.* at 166.

[22] *Id.*

[23] *CCA Rec. Lit.*, Doc. 1.

reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties.  Like the *Black* Order, the Court assumes the reader is familiar with the proceedings in the consolidated master case that precipitates the matter before the Court, and does not restate the underlying facts in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Relevant here, on January 18, 2021, the Court issued an order: (1) reaffirming and expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the collateral-waiver-by-plea issue; and (3) addressing jurisdictional defenses raised by the government, including certification requirements under Rule 2(b) of the Rules Governing Section 2255 Proceedings.[24]  Specifically, the Court ruled that three petitioners in this consolidated litigation who proceeded to trial in their underlying criminal proceedings are entitled to evidentiary hearings on their audio recording Sixth Amendment claims.  Second, the Court determined that the rule in *Tollett v. Henderson* procedurally barred petitioners who alleged pre-plea Sixth Amendment violations from advancing those claims.[25]  Third, the Court determined that approximately twenty petitioners lacked standing to advance their Sixth Amendment claims for various reasons, including: claims that alleged post-sentencing violations; claims where petitioners who had been deported challenged only their sentence; claims where petitioners challenging their sentence had been sentenced to the mandatory-minimum sentence; and claims involving binding pleas that were accepted by the court at the change-of-plea hearing.[26]

---

[24] *CCA Rec. Lit.*, Doc. 730 (clarified and reconsidered in part on other grounds, *id.*, Doc. 784).

[25] *Id.*  (citing 411 U.S. 258 (1973)).

[26] *CCA Rec. Lit.*, Docs. 730, 784.

On December 10, 2021, the Court issued an order that concluded petitioners in the temporal category of claims who alleged Sixth Amendment violations that occurred post-plea or conviction but before sentencing could not rely on *Shillinger*'s per se rule.[27]

### D.    Recordings in this Case

Upon arriving at CCA, Petitioner signed several documents acknowledging that telephone calls that he made from CCA may be monitored and recorded and advising him that calls with his attorney were subject to being monitored unless he followed the privatization procedure in place to make an unmonitored call.  While Petitioner was detained at CCA, he called his attorney to discuss his case.

In the *Black* case, the government surrendered to the Court recordings and derivative evidence of audio calls from CCA that were in its possession, including the recordings of the calls in Petitioner's case.  Copies of the recordings were provided to the FPD on January 9, 2019. The FPD reviewed two audio recordings of Petitioner speaking with Thomason from CCA on January 11, 2016 and June 6, 2016.[28]

Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communications, and verifying that during these calls, Petitioner discussed matters "relat[ing] to legal advice or strategy" with Thomason.[29]  Petitioner also provided a sworn declaration from Thomason, stating that any conversation with an incarcerated client was "related to their case and my representation."  Thomason also attested that he knew calls could be recorded for security purposes, that his partner had faxed a request to privatize the firm's

---

[27] *Id.*, Doc. 1034.

[28] *Id.*, Doc. 205-2 at 36–37.

[29] *Id.*

number to CCA years before this litigation, and that he did not believe such recordings would be dispensed to prosecutors.[30]

Pursuant to the Court's Order, Petitioner supplemented the record with a sworn statement addressing the issue of waiver with respect to his audio-recordings claim.[31]  He avers that he does not remember receiving a copy of  the Inmate Handbook and Call Monitoring Sheet, that if he did, he did not read it before he placed the attorney-client calls, that he did not understand that by signing he was consenting to the monitoring and/or recording of his attorney-client calls unless he took certain steps, or that he was consenting to CCA giving the recordings to the USAO and its agents.  Petitioner further avers that at the time he placed the calls listed on the privilege log, he did not believe that the recorded preamble applied to attorney-client calls, that the written warning signs placed on or near the telephone applied to attorney-client calls, that his attorney-client calls were subject to monitoring or recording, or that the USAO or its agents could obtain recordings of his attorney-client calls from CCA.

Petitioner was prosecuted by AUSA Terra Morehead, who denies that she listened to the recordings during the pending underlying case.[32]  Morehead confirmed that she made two requests for audio recordings of phone calls Petitioner made from CCA, including a request on January 29, 2016, for calls from December 20, 2015 through February 2, 2016.[33]

After the government objected to Petitioner's privilege log, the Court reviewed the audio recordings *in camera*.  At the beginning of each call, a recorded preamble states the balance of Petitioner's pre-paid call account and the following language: "This is a collect call from an

---

[30] *Clark v. United States*, 19-2410-JAR, Doc. 7-1.

[31] *Id.*, Doc. 5-1.

[32] *Id.*, Doc. 3-1.

[33] *Id.*

inmate at CCA-Leavenworth Detention Center.  This call is subject to recording and monitoring."  As set out in the privilege log, the calls include discussions relating to legal advice or strategy, including the impact of a recent court order, whether the government would comply with certain obligations, and factors that might impact Petitioner's sentence.

## II.    Discussion

Petitioner's claim is in the temporal category of motions alleging both pre- and post-plea/pre-sentencing Sixth Amendment violations.  Petitioner falls in a sub-category of these claims involving a Rule 11(c)(1)(C) binding plea agreement for a specific term.  Two recent decisions by the Tenth Circuit Court of Appeals control this Court's analysis of Petitioner's claim.  The Court first discusses his pre-plea violation, then turns to his post-plea/pre-sentence violation.

### A.    *Tollett*

Petitioner is one of many petitioners in this consolidated matter who allege pre-plea Sixth Amendment violation claims, including Matthew Spaeth, whose pre-plea claim was dismissed by this Court as foreclosed by the rule in *Tollett*.[34]  In that case, the United States Supreme Court rejected a pre-plea constitutional challenge where the defendant failed to show that the violation rendered his guilty plea involuntary and unknowing.[35]  Many of these petitioners, including Mr. Clark, declined the opportunity afforded by the Court to amend their § 2255 motions to seek relief under *Tollett* or to allege a post-plea violation, and acknowledged that by doing so, they

---

[34] 411 U.S. 258, 266 (1973).

[35] *Id.*

rendered their pre-plea Sixth Amendment claims vulnerable to dismissal.[36]  The Court deferred

ruling on Petitioner's § 2255 motion pending the outcome of Mr. Spaeth's appeal.[37]

On June 12, 2023, the Tenth Circuit Court of Appeals affirmed this Court's ruling in

*Spaeth*.[38]  The Tenth Circuit ruled: (1) the carve-out provision in Spaeth's unconditional standard

plea agreement did not constitute a waiver of the government's right to raise, or create an

exception to, the rule of law in *Tollett*, and because Spaeth had not met his burden under *Tollett*

to vacate his unconditional guilty plea, this Court did not err in ruling that *Tollett* bars his Sixth

Amendment challenge;[39] (2) Spaeth's reliance on the per se Sixth Amendment violation rule in

*Shillinger* is misplaced because that case did not concern *Tollett*'s guilty-plea situation and "has

nothing to do with whether a guilty plea is voluntary or knowing";[40] and (3) *Tollett* precludes

Spaeth from challenging his sentence based on an alleged pre-plea Sixth Amendment violation.[41]

The court concluded:

> We abide by several principles that the Supreme Court made
> transparent 50 years ago.  When a defendant voluntarily and
> knowingly pleads guilty, the defendant acknowledges that
> unconstitutional conduct preceding the guilty plea is irrelevant to the
> admission of factual guilt.  As a result, we do not assess the merits
> of pre-plea constitutional claims but instead ask whether ineffective
> assistance of counsel caused defendants to enter their guilty pleas
> involuntarily and unknowingly.  *Tollett* and its progeny tell us how
> to answer that question: challengers must show ineffective
> assistance of plea counsel.  Because Spaeth does not even contend

---

[36] *CCA Rec. Lit.*, Doc. 836; *see Hill v. Lockhart*, 474 U.S. 52, 58–60 (1985) (adopting two-part test for ineffective assistance of counsel claim in the plea context: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

[37] *See Spaeth v. United States*, No. 19-2413-JAR-JPO, Docs. 3, 7, 8; *CCA Rec. Lit.*, Docs. 730, 785, 922.

[38] *United States v. Spaeth*, 69 F.4th 1190 (10th Cir. 2023).  The mandate issued August 21, 2023.

[39] *Id.* at 1204–08.

[40] *Id.* at 1211.  The court declined to decide "what effect any per se presumption of a Sixth Amendment violation might have in applying the *Hill* prejudice standard—a reasonable probability that the defendant would not have pleaded guilty absent the deficient performance."  *Id.*

[41] *Id.* at 1212–13.

that his counsel performed deficiently, or that such deficient performance prejudiced him by depriving him of a trial right he would have chosen, we conclude that Spaeth's § 2255 motion must be dismissed.[42]

The Tenth Circuit's ruling in *Spaeth* compels dismissal of Petitioner's § 2255 motion based on the January 11, 2016 phone call. This recording was made and obtained by the government before Petitioner entered his guilty plea on May 19, 2016.[43] Petitioner challenges both his conviction and his sentence based on this alleged pre-plea Sixth Amendment violation by the government. Like Mr. Spaeth, Petitioner relies on the per se prejudice rule in *Shillinger* and does not attempt to meet the applicable *Tollett* standard for showing that ineffective assistance of counsel caused him to enter his plea involuntarily and unknowingly. He is also precluded from challenging his sentence or term of supervised release based on any alleged pre-plea violation.

### B.      *Orduno-Ramirez*

The second recorded phone call between Petitioner and Thomason took place on June 6, 2016. The government acknowledges that this call was made and accessed after Petitioner pleaded guilty on May 9, 2016 and before he was sentenced on August 8, 2016.[44] Thus, any alleged Sixth Amendment violation could not have occurred until after Petitioner's plea but before he was sentenced.

The Court's December 10, 2021 Order concluded petitioners in the temporal category of claims who alleged Sixth Amendment violations that occurred post-plea or conviction but before

---

[42] *Id.* at 1213.

[43] *See CCA Rec. Lit.*, Doc. 809-1 at 3.

[44] *Id.*

sentencing could not rely on *Shillinger*'s per se rule.[45]  The Tenth Circuit Court of Appeals affirmed this Court's decision in another § 2255 proceeding raising a similar Sixth Amendment violation claim involving video recordings.  In *United States v. Orduno-Ramirez*, the Tenth Circuit declined to categorically extend a conclusive presumption of prejudice to post-plea or -conviction intrusions into attorney-client communications.[46]  After noting this Court held that the petitioner must show prejudice in such cases, the Tenth Circuit did "not decide which party bears the burden because the Government has shown that Mr. Orduno-Ramirez has not been prejudiced, and he does not contend otherwise."[47]  Nevertheless, the court found that the government showed that the intrusion did not cause Mr. Orduno-Ramirez prejudice, and Orduno-Ramirez did not contend that he was prejudiced, relying instead on the presumption of prejudice in *Shillinger*.[48]  The court further found that the government showed that the lead prosecutor did not view the videos, the soundless video recordings provided no strategic value to the prosecution, and the record reveals no irregularity in the petitioner's sentencing proceedings.[49]

The Tenth Circuit also denied Orduno-Ramirez's request to order supplemental briefing on the burden of proof question.[50]  In a separate related case on appeal, however, the court recently agreed to address the issue of "[w]hether the district court erroneously required [Petitioner] to demonstrate prejudice to establish his Sixth Amendment claim."[51]

---

[45] *CCA Rec. Lit.*, Doc. 1034.

[46] 61 F.4th 1263, 1273–77 (10th Cir. 2023) (discussing *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995)).

[47] *Id.* at 1276.

[48] *Id.* at 1277.

[49] *Id.*

[50] *Id.* at 1277 n.24.

[51] *United States v. Valdez*, No. 22-3025 (10th Cir. Sept. 12, 2023).

Although the question of whether the petitioner must show prejudice or whether the government must show lack of prejudice is an open question, the Court easily finds that Petitioner has not been prejudiced in this case.  While the December 10, 2021 Order held that Petitioner bore the burden to show prejudice resulting from the intentional intrusion into his attorney-client communications, the government introduced evidence and arguments showing that he suffered no prejudice.[52]  Critically, Petitioner entered into a binding Rule 11(c)(1)(C) plea agreement and was sentenced consistent with that agreement.  The government's discretion or capacity to prejudice the defendant was curtailed by the specific terms of the plea agreement. The government did not raise any objections to the PSIR or file any other motions regarding Petitioner's sentencing, and the 144-month sentence included in the binding plea agreement provided a substantial reduction to his potential sentence.  As noted in the PSIR, had Petitioner been convicted on the dismissed § 924(c) counts, he would have faced at least an additional 60-month sentence consecutive to his Guidelines sentence on the conspiracy charge, for a controlling sentence of 180 to 195 months' imprisonment.[53]  If he had been convicted on both counts, he would have faced an additional 30-year consecutive sentence.  Thus, the only governmental conduct that had any effect on sentencing was its offer of a binding plea agreement that allowed Petitioner to avoid a potential 30-year consecutive sentence.

The Court agrees that none of the information the Court, the United States Probation Office, or the government relied on for sentencing could have come from the June 6, 2016 audio recording.  Even assuming the government bears the burden of proving lack of prejudice, it has

---

[52] As was the case in *Orduno-Ramirez*, the government submitted an affidavit from the lead prosecutor stating that at no time during her involvement in the case did she listen or become privy to any audio recordings of Petitioner at CCA.  AUSA Morehead's reputation for lack of credibility in other cases in the consolidated matter is well documented, and the Court gives little weight to her affidavit in this case.

[53] Doc. 209 ¶ 78.

met that burden because the record reveals no irregularity in or threat to the reliability or fairness of Petitioner's sentencing proceedings, where he received the sentence he bargained for in his Rule 11(c)(1)(C) plea agreement.  Because the government has shown the intrusion did not cause prejudice—and Petitioner does not contend that he was actually prejudiced—there is no Sixth Amendment violation and no ground for relief under § 2255.[54]

## III.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[55]  If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[56]  For the reasons explained above, Petitioner has not made a substantial showing on either prong and the Court therefore denies a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Enoch Clark, III's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. 2255 (Doc. 256) is **dismissed in**

---

[54] *United States v. Orduno-Ramirez*, 61 F.4th 1263, 1266 (10th Cir. 2023).  The Court does not reach the issue of whether Petitioner waived the attorney-client privilege and/or his Sixth Amendment rights with respect to these calls.  This issue is pending before the Tenth Circuit in a separate related § 2255 proceeding, *United States v. Hohn*, Nos. 19-cv-2491, 12-cr-20003-JAR-3, 2021 WL 5833911 (D. Kan. Dec. 9, 2021), *appeal filed*, No. 22-3009 (10th Cir. Jan. 24, 2022).

[55] 28 U.S.C. § 2253(c)(2).

[56] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

**part and denied in part** without an evidentiary hearing.  Petitioner is also denied a certificate of appealability.

      **IT IS SO ORDERED.**

Dated: <u>October 4, 2023</u>

                            S/ Julie A. Robinson
                            JULIE A. ROBINSON
                            UNITED STATES DISTRICT JUDGE