**In the United States District Court
for the District of Kansas**

---

**In re CCA Recordings 2255 Litigation,**
                **Petitioners,**

v.                                             Case No. 19-cv-2491-JAR-JPO

                                                  **(This Document Relates to Case No. 16-40091-DDC,** *United States v. Marco Antonio Cortes-Gomez*, **and Case No. 20-4052-JAR-JPO,** *Marco Antonio Cortes-Gomez v. United States*)

**United States of America,**
                **Respondent.**

---

**MEMORANDUM AND ORDER**

Petitioner Marco Antonio Cortes-Gomez filed a Motion to Vacate and Discharge with Prejudice Pursuant to 28 U.S.C. 2255 (Doc. 127), alleging that the government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to his attorney-client communications.[1] As a remedy, he asks the Court to grant him an evidentiary hearing, and to either vacate his judgment or reduce his sentence. This motion has been fully briefed, including supplemental briefs recently filed by the parties.[2] For the reasons explained in detail below, the Court denies Petitioner's motion.

---

[1] After this motion was filed in Petitioner's underlying criminal case and in his civil habeas case, the Court directed the parties to make all related filings in the consolidated case that contains the many motions under 28 U.S.C. § 2255 raising the same Sixth Amendment claims, Case No. 19-2491-JAR-JPO. Thus, while the docket number for the motion is from that underlying criminal case, subsequent docket entries are to the consolidated case file. Unless otherwise indicated, Docket Entry number references in this Order are to the consolidated matter, Case No. 19-2491-JAR.

[2] Docs. 624, 640, 1247, 1249.

**I.      Background**

Petitioner was indicted in this case on two drug charges on October 19, 2016.[3] At the time of his arrest, he had been detained pending trial on charges in another criminal case in this district since January 16, 2016.[4] On March 1, 14, and 21, 2016, Petitioner's defense counsel, Lance Sandage, visited him at his detention facility—Corrections Corporation of America ("CCA"). They discussed matters related to legal advice or strategy.[5]

The case proceeded to trial before United States District Judge Daniel D. Crabtree, and on December 2, 2016, a jury found Petitioner guilty on both counts.[6] Judge Crabtree sentenced Petitioner to a controlling term of 294 months' custody and five years of supervised release, and entered judgment on April 11, 2018.[7] Petitioner filed a direct appeal, and the Tenth Circuit affirmed.[8]

In August of 2016, this Court discovered in a different case, *United States v. Black*,[9] that the United States Attorney's Office ("USAO") for the District of Kansas had obtained soundless video recordings from the attorney visitation rooms at CCA. The *Black* case charged multiple defendants with drug and contraband trafficking inside CCA. The investigation included obtaining audio recordings of telephone conversations and the soundless video recordings of meetings between attorneys and their clients who were detained at CCA. These soundless videos

---

[3] Case No. 16-40091-DDC, Doc. 7.

[4] *See* Case No. 16-40004-DDC, Doc. 10. That case was dismissed on the government's motion after the court empaneled the jury but before it was sworn. This second case alleged the same facts and charges as the earlier case. *See* Doc. 26.

[5] Case No. 16-40091-DDC, Doc. 127-1 ¶¶ 3, 7–9.

[6] *Id.*, Doc. 38.

[7] *Id.*, Doc. 104.

[8] *Id.*, Doc. 117.

[9] Case No. 16-20032-JAR [hereinafter *Black*].

include the three meetings between Petitioner and Mr. Sandage in March 2016. The government's counsel in Petitioner's case—Anthony W. Mattivi and Skipper S. Jacobs—both attest that they were unaware of the video recordings and did not view them.[10]

The Court ultimately determined in the *Black* case that the government's possession of the video recordings began when the United States Secret Service picked up DVR 6 from CCA on May 17, 2016.[11] And there is no dispute that the USAO disgorged the video recordings to the Court on August 9, 2016. Nor is there evidence that the government maintained copies of the video recordings after that date.[12]

The Court eventually conducted a full evidentiary hearing on all pending matters in *Black* in October and November 2018. And on August 13, 2019, the Court issued the *Black* Order, which detailed, among other things, the government's view that soundless video recordings are not protected communications and rejected the government's argument that the communication in the videos is too rudimentary to discern whether it involves legal advice or strategy or to disclose the content of any accompanying verbal communication.[13]

The Order also addressed the governing standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[14] The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit's then-governing decision in *Shillinger v. Haworth*,[15] which held that a per se Sixth Amendment violation occurs when: (1)

---

[10] Docs. 624-1, 624-2.

[11] *Black*, Doc. 784 at 13.

[12] Doc. 546 (Consolidated Petitioners' Notice of Errata withdrawing any such allegations individually or collectively advanced).

[13] *Black*, Doc. 758 at 164–65.

[14] *Id.* at 145–62.

[15] 70 F.3d 1132 (10th Cir. 1995), *overruled by United States v. Hohn*, 123 F.4th 1084 (10th Cir. 2024), *cert. denied*, 2025 WL 2906501 (Oct. 14, 2025).

there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[16] Under *Shillinger*, once those elements are established, prejudice is presumed.[17]

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[18] It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties. This instant case was transferred from Judge Crabtree to the undersigned in the consolidated action after it was filed on September 10, 2020.

## II. Discussion

Petitioner originally moved to vacate and discharge based on the structural-error rule in *Shillinger*. His motion argued that the four elements of a *Shillinger* Sixth Amendment violation are met here, so he is not required to show prejudice resulting from the intrusion. The Court held this case in abeyance while the Tenth Circuit considered in a related appeal the government's challenge to the *Shillinger* decision that governed the Sixth Amendment inquiry in this case.[19]

---

[16] *Black*, Doc. 758 at 162 (citing *Shillinger*, 70 F.3d at 1142).

[17] *Id.*

[18] Doc. 1.

[19] *See* Doc. 1234.

On December 16, 2024, the Tenth Circuit, sitting en banc, overruled *Shillinger* in *United States v. Hohn*.[20] The appellant in *Hohn* filed a petition for certiorari before the Supreme Court, which was recently denied.[21] In *Hohn*, the Tenth Circuit comprehensively reconsidered *Shillinger* in light of Supreme Court precedent on structural error. It held "that a Sixth Amendment violation of the right to confidential attorney-client communications requires the defendant to show trial prejudice resulting from the government's intrusion into the attorney-client relationship, even when the intrusion was purposeful and done without any law-enforcement justification."[22] After the United States Supreme Court denied Hohn's petition for certiorari on October 14, 2025, this Court directed the parties to file supplemental briefs addressing how the Tenth Circuit's decision in *Hohn* impacted the remaining issues in this case. In those supplemental briefs, both parties confirm that *Hohn* is dispositive because Petitioner relies on the structural error rule to establish prejudice in this case.

Assuming Petitioner is able to establish the other elements of his Sixth Amendment claim, he concedes that he is unable to demonstrate prejudice from the government's intrusion into his three confidential communications with Mr. Sandage in March 2016. *Hohn* makes clear that Petitioner must "tether governmental intrusion to a realistic possibility of injury from the *use* of confidential communications at trial."[23] And, "not all attorney-client conversations contain information that would prejudice the defendant if used at trial."[24] To show prejudice, Petitioner needed to "connect something that he and his attorney discussed . . . to anything used during the

---

[20] 123 F.4th 1084 (10th Cir. 2024), *cert. denied*, 2025 WL 2906501 (Oct. 14, 2025).

[21] *Id.*

[22] *Id.* at 1109.

[23] *Id.* at 1112.

[24] *Id.* at 1108 n.25.

criminal proceedings that either disadvantaged him or advantaged the prosecution."[25] In this case, Petitioner would need to connect something on the soundless video recordings to something used at trial, such as gesturing, or something that the government could see on Mr. Sandage's laptop. Petitioner fails to make this showing, and there is no evidence in the record that suggests or allows the Court to infer that the government used the soundless video recordings at trial in a way that disadvantaged him or advantaged the government.

Moreover, as both parties discuss in the supplemental briefs, there was strong evidence of Petitioner's guilt at his trial, including a controlled delivery of more than two kilograms of methamphetamine and the testimony of four cooperating co-conspirators.[26]

In light of the court's holding in *Hohn* overruling *Shillinger*, Petitioner's motion must be denied for failure to demonstrate prejudice associated with any Sixth Amendment intrusion that may have occurred.[27] And given that Petitioner declined to demonstrate even a minimal amount of prejudice, no evidentiary hearing is warranted.[28]

### III.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[29] To satisfy this standard, the movant must demonstrate

---

[25] *Id.* at 1110.

[26] *See* Case No. 16-40091-DDC, Doc. 72 (reciting the evidence in support of Petitioner's conviction at trial).

[27] Because Petitioner's motion is foreclosed by *Hohn*, the Court does not reach the procedural defenses raised by the government in its original response. Assuming those defenses are not meritorious, Petitioner would not be able to establish a Sixth Amendment claim.

[28] *Hohn*, 123 F.4th at 1116–17 (citing *United States v. Kelly*, 790 F.2d 130, 137 (D.C. Cir. 1986)) (discussing minimal amount of showing that might entitle a petitioner to an evidentiary hearing on prejudice).

[29] 28 U.S.C. § 2253(c)(2).

that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[30]  For the reasons stated above, the Court finds that Petitioner has not made this showing and, therefore, denies a certificate of appealability as to its ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Marco Antonio Cortes-Gomez's Motion to Vacate and Discharge with Prejudice Pursuant to 28 U.S.C. 2255 (Doc. 127) is **denied** without an evidentiary hearing.  Petitioner is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: December 18, 2025

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE

---

[30] *Saiz v. Ortiz,* 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)).